## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

**FIREARMS REGULATORY
ACCOUNTABILITY COALITION, INC.,**
2021 E. Main Avenue, Suite I
Bismarck, ND 58501

**FRANKLIN ARMORY, INC.,**
2246 Park Place, Suite B
Minden, NV 89423

                                   **Plaintiffs,**

      v.

**MERRICK B. GARLAND, IN HIS
OFFICIAL CAPACITY, as Attorney
General of the United States,**
950 Pennsylvania Avenue, NW
Washington, DC 20530

**THE BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND
EXPLOSIVES,**
99 New York Avenue, NE
Washington, DC 20226

**STEVEN DETTELBACH, IN HIS
OFFICIAL CAPACITY, as Director of the
Bureau of Alcohol, Tobacco, Firearms and
Explosives**,
99 New York Avenue, NE
Washington, DC 20226

                                   **Defendants.**

Civil Action No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

        Plaintiffs Firearms Regulatory Accountability Coalition, Inc. and Franklin Armory, Inc.,

by and through undersigned counsel, file this Complaint pursuant to the Administrative Procedure

Act, 5 U.S.C. §§ 701–06, alleging as follows:

## INTRODUCTION

1.     Plaintiffs in this case challenge two instances of regulatory gamesmanship by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") designed to evade Congress's scheme to regulate firearms in the United States.

2.     *First*, Plaintiffs challenge ATF's erroneous classification of the FAI-15 Antithesis as a "short-barreled rifle" under two statutes:  the Gun Control Act ("GCA") and the National Firearms Act ("NFA").

3.      Under both of these statutes, a weapon cannot be a rifle—or a short-barreled rifle[1]— unless it is "designed . . . and intended . . . to fire only a single projectile."  18 U.S.C. § 921(a)(7) (GCA); 26 U.S.C. § 5845(c) (NFA).

4.     The FAI-15 Antithesis is a new type of weapon that, in addition to firing a fixed cartridge with a single projectile, is designed and intended to fire cartridges that expel multiple projectiles.

5.     The FAI-15 Antithesis is thus designed and intended to fire multiple projectiles, not "only a single projectile."

6.     Accordingly, the plain text of the statute does not permit ATF to classify the FAI-15 Antithesis as "short-barreled rifle."

7.     Nevertheless, ATF did just that.  Specifically, ATF found that the FAI-15 Antithesis was a "short-barreled rifle" designed and intended to fire only a single projectile.

8.     This conclusion is unsupported by record evidence, unwarranted by the facts, arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

9.     ATF's erroneous decision has subjected the FAI-15 Antithesis to onerous and

---

[1]  The NFA does not use the term "short-barreled rifle."  Under the NFA, "a rifle having a barrel or barrels of less than 16 inches in length" is termed a "firearm."  26 U.S.C. § 5845(a)(3).  For simplicity, Plaintiffs generally refer to such weapons as short-barreled rifles.

inapplicable requirements under the NFA and the GCA, in excess of ATF's statutory authority and contrary to congressional intent.

10.    *Second*, Plaintiffs challenge ATF's failure to promulgate a statutorily-required process— after expressly stating in a public letter that it would do so—for parties to seek authorization to sell, deliver, and transport across state lines weapons classified as short-barreled shotguns under the GCA.

11.    In 2017, Plaintiff Franklin designed a new type of weapon called the "Reformation."  The Reformation is unique because it fires proprietary ammunition as well as traditional rifle cartridges through a barrel with straight cut lands and grooves.

12.    In 2019, 16 months after Franklin submitted the firearm for classification, ATF classified the Reformation as a "short-barreled shotgun" under the GCA.  Due to its unique design, however, ATF correctly determined that the Reformation is *not* a short-barreled shotgun (a "firearm")[2] under the NFA which, unlike the GCA, provides that a "shotgun" is a weapon that fires only "a fixed shotgun shell," 26 U.S.C. § 5845(d), not fixed metallic cartridges with a single projectile.

13.    Under the GCA, federal firearms licensees—such as Franklin—must receive authorization from ATF before they sell or deliver certain GCA weapons, including short-barreled shotguns, to non-licensees.  Non-licensees comprise the vast majority of customers.

14.    ATF's existing regulations do not provide a mechanism for seeking this required authorization.  Because a "short-barreled shotgun" under the GCA would typically also be a regulated "firearm" under the NFA, ATF's established process for seeking the required authorization is designed to encompass only weapons that are classified as short-barreled shotguns

---

[2] The NFA also does not use the term "short-barreled shotgun."  Under the NFA, "a shotgun having a barrel or barrels of less than 18 inches in length" is termed a "firearm."  26 U.S.C. § 5845(a)(1).  For simplicity, Plaintiffs generally refer to such weapons as short-barreled shotguns.

under *both* the GCA and the NFA.

15.   ATF has expressly identified this problem.  In 2019—shortly after ATF classified the Reformation—ATF represented to both Franklin, and to the public in an open letter, that the agency was creating new forms and procedures to close this regulatory gap and permit federal firearms licensees to seek the statutorily required authorization from ATF to sell a GCA-only short-barreled rifle.

16.   But to date, ***1,513 days*** after classifying the Reformation, ATF has not issued any such forms or procedures and does not appear to have made any progress on its commitment to carry out the statutory duty it identified.

17.   ATF has offered no reason for its delay, which has resulted in significant and ongoing financial harm to Plaintiffs and has prevented the American public from purchasing a lawful firearm useful for hunting, home defense, and recreational shooting.

18.   ATF's actions demonstrate that it intends to maintain the status quo indefinitely.

19.   ATF has thus unlawfully withheld and unreasonably delayed performance of its statutory and regulatory obligation to promulgate forms and procedures that would enable the agency to receive authorization requests from federal firearms licensees.

20.   Furthermore, by continuing to deny federal firearms licensees any avenue for seeking the statutorily required authorization, ATF has through its inaction effectively banned the otherwise lawful sale of GCA-only short-barreled shotguns to the American public.

21.   This de facto policy is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

22.   Plaintiffs ask this Court to remedy both of ATF's regulatory wrongs.

## **PARTIES**

23.   Firearms Regulatory Accountability Coalition, Inc. ("FRAC") is a non-profit association

working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies.  FRAC serves as the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States.

24.     As part of its advocacy, FRAC regularly files comments with firearms regulatory agencies and litigates firearms regulatory issues.  *See, e.g.*, Comments of FRAC et al., Docket No. ATF 2021R–08, AG Order No. 5070–2021 (filed Sept. 8, 2021)[3]; Amicus Brief of FRAC, et al., *Cargill v. Garland*, No. 20-51016 (5th Cir. Aug. 1, 2022).[4]

25.     FRAC is headquartered in Bismarck, North Dakota.

26.     Franklin Armory, Inc. ("Franklin") is a corporation that specializes in manufacturing quality firearms for sporting and law enforcement applications.

27.     Franklin is a federal firearms licensee under the Gun Control Act.[5]  *See* 18 U.S.C. § 923.

28.     Franklin is a member of FRAC.

29.     Merrick B. Garland ("the Attorney General") is the Attorney General of the United States.  He leads the Department of Justice ("DOJ"), an executive department of the United States. 28 U.S.C. §§ 501, 503.  He is vested with authority to enforce the Gun Control Act, *see* 18 U.S.C. §§ 922, 926, and provisions of the National Firearms Act at issue in this case, 26 U.S.C. § 7801(a)(2).

30.     The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a Bureau within DOJ.  28 U.S.C. § 599A(a)(1).

---

[3]  https://www.regulations.gov/comment/ATF-2021-0002-207706.

[4]  https://www.fracaction.org/post/frac-files-joint-amicus-brief-in-cargill-v-garland-asks-court-to-rein-in-atf.

[5]  https://fflezcheck.atf.gov/FFLEzCheck/ (search license number 988-XXX-XX-XX-04841).

31.   Steven M. Dettelbach ("the Director") is the Director of ATF.  The Attorney General has delegated to the Director authority to enforce the Gun Control Act and the provisions of the National Firearms Act at issue in this case.  *See* 28 C.F.R. § 0.130(a)(1)–(3); *accord* 28 U.S.C. § 510.

32.   This Complaint refers to all Defendants collectively as ATF.

## JURISDICTION AND VENUE

33.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361 because this civil action arises under the laws of the United States and challenges both final agency action and agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. §§ 701–06; *see also* 28 U.S.C. § 1651.

34.   Plaintiffs cannot seek another adequate remedy in a court.  *Id.* § 704.

35.   Venue is proper in this Court because defendants are officers and agencies of the United States, no real property is involved in this action, and Plaintiff FRAC resides in this judicial district. 28 U.S.C. § 1391(e)(1).

## STANDING

### INJURY TO FRANKLIN FROM FAI-15 ANTITHESIS MISCLASSIFICATION

36.   Franklin is financially injured by ATF's misclassification of the FAI-15 Antithesis.  Ex. A ¶¶ 14–17 (Declaration of Jay Jacobson) ("Decl.").

37.   By classifying the FAI-15 Antithesis as a short-barreled rifle subject to the National Firearms Act ("NFA") and the Gun Control Act ("GCA"), ATF has saddled the weapon with unlawful conditions that make it significantly more burdensome for Franklin to sell it to the public. *Id.*

38.   This injury is directly caused by ATF's erroneous classification of the FAI-15 Antithesis. *Id.*

39.    This injury would be redressed by an order of this Court setting aside that adverse classification. *Id.* ¶ 17.

### INJURY TO FRANKLIN FROM REFORMATION DELAY

40.    Franklin is financially injured by ATF's failure to create a mechanism for obtaining authorization to transfer weapons classified as short-barreled shotguns under the GCA (but not the NFA) because Franklin is unable to sell its Reformation weapon to customers that do not hold federal firearms licenses.  Decl. ¶¶ 36–51.

41.    The inability to sell the Reformation to unlicensed customers is causing Franklin to lose millions of dollars in revenue.  *Id.* ¶¶ 40–51.

42.    This injury is directly caused by ATF's failure to issue the required regulations.  *Id.*

43.    This injury would be redressed by an order from this Court requiring ATF to issue the required procedures.  *Id.* ¶¶ 39, 44.

### FRAC'S ASSOCIATIONAL STANDING

44.    FRAC has associational standing to bring suit on behalf of its members because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

45.    *First*, at least one of FRAC's members—Franklin—has standing to sue in its own right. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (to establish standing, an "association must allege that its members, or any one of them, are suffering immediate or threatened injury").

46.    *Second*, bringing an end to ATF's regulatory gamesmanship is germane to FRAC's organizational purpose of protecting the firearms industry from government abuse.  *See Our Mission*, FRAC (last visited Jan. 4, 2023) ("FRAC's sole mission is to aggressively advocate for

and defend firearms, ammunition, and accessories manufacturers and importers from government overreach. This includes holding the government accountable for arbitrary and capricious policies and rulings and ensuring that the government's regulation of the industry is conducted in an open and transparent manner.").[6]

47.     *Third*, neither the claims asserted nor the relief requested require the participation of individual members because Plaintiffs "seek[] only declaratory and prospective injunctive relief." *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005).

## BACKGROUND

### THE NATIONAL FIREARMS ACT AND THE GUN CONTROL ACT

48.     Congress has devised a comprehensive scheme of firearm regulation in the United States through two statutes:  the National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, and the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* ("GCA").

49.     Under this scheme, Congress chose to regulate weapons through discrete categories that sometimes overlap.

50.     Relevant to this case are two of these categories:  (1) short-barreled rifles, the category under which ATF classified the FAI-15 Antithesis; and (2) short-barreled shotguns, the category under which ATF classified the Reformation.

### *Short-Barreled Rifles*

51.     Both the GCA and the NFA impose heightened regulations on short-barreled rifles, which are rifles with "one or more barrels less than sixteen inches in length" or "an overall length of less than twenty-six inches."  18 U.S.C. § 921(a)(8) (GCA); 26 U.S.C. § 5845(a)(3), (4) (similar definition in NFA).

---

[6] https://www.fracaction.org/mission.

52. Weapons are "rifles" under the GCA and the NFA if they are designed and intended "to be fired from the shoulder and . . . to use the energy of an explosive to fire *only a single projectile* through a rifled bore for each single pull of the trigger." 18 U.S.C. § 921(a)(7) (GCA) (emphasis added); 26 U.S.C. § 5845(c) (similar definition in NFA).

53. As explained in more detail below, ATF classified the FAI-15 Antithesis as a short-barreled rifle under both the GCA and the NFA.

*Short-Barreled Shotguns*

54. Both the GCA and the NFA impose heightened regulations on short-barreled shotguns, which are shotguns with "one or more barrels less than eighteen inches in length" or "an overall length of less than twenty-six inches." 18 U.S.C. § 921(a)(6) (GCA); 26 U.S.C. § 5845(a)(1), (2) (similar definition in NFA).

55. Weapons are "shotguns" under the GCA if they are designed and intended "to be fired from the shoulder and . . . to use the energy of an explosive to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." 18 U.S.C. § 921(a)(5).

56. Weapons are "shotguns" under the NFA if they qualify as GCA shotguns and are also designed and intended to "use the energy of the explosive *in a fixed shotgun shell*." 26 U.S.C. § 5845(d) (emphasis added).

57. As explained in more detail below, ATF classified the Reformation as a short-barreled shotgun under the GCA, but not the NFA.

*ATF Classifies Weapons Through Private Letters*

58. Entities may voluntarily submit weapons to ATF for classification. *See* 27 C.F.R. § 478.92(c); *accord* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,709–10 (Apr. 26, 2022) (Final Rule).

59. Upon receipt, "[t]he Director may issue a determination (classification)," 27 C.F.R.

§ 478.92(c), typically through a "private letter ruling."  87 Fed. Reg. at 24,710.

60.    ATF's classifications are "authoritative" as to the submitted sample.   27 C.F.R § 478.92(c); *accord* 87 Fed. Reg. at 24,710 (explaining that classification letters "have the force of law").

61.    While ATF formally codified its classification process last year, the agency employed it "[f]or many years" prior to codification.  Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720, 27,733 (May 21, 2021) (Proposed Rule).

*A Weapon's Classification Determines Its Corresponding Regulatory Burden*

62.    A weapon is subject to varying restrictions and burdens based on its classification.

63.    <u>The NFA.</u>  A weapon classified as a "firearm" under the NFA—a term that includes short-barreled shotguns and short-barreled rifles—is subject to the most burdensome requirements.

64.    Anyone who makes an NFA firearm must submit an application to ATF with identifying information—including his fingerprints—and must pay a $200 tax.  26 U.S.C. § 5822; 27 C.F.R. §§ 479.61, 479.62.

65.    Anyone who transfers an NFA firearm must also submit an application to ATF with identifying information and must pay an additional $200 tax.   26 U.S.C. § 5812; 27 C.F.R. §§ 479.66, 479.84.

66.    Anyone who receives an NFA firearm must provide ATF with his fingerprints and notify his local police department of the transfer.  26 U.S.C. § 5812; 27 C.F.R. §§ 479.85, 479.84(c).

67.    Anyone possessing an NFA firearm must register himself and his NFA firearm in a federal database.  26 U.S.C. § 5841; 28 C.F.R. § 0.131(d); 27 C.F.R. §§ 479.101, 479.102.

68.    Anyone who violates the NFA may be imprisoned for up to ten years and fined up to $10,000.  26 U.S.C. § 5871.

69.    <u>The GCA.</u>  A weapon classified as a short-barreled shotgun or short-barreled rifle under

the GCA is subject to less onerous statutory rules governing the sale, delivery, and interstate transportation of such weapons.

70.    The GCA's rules often turn on whether the relevant actor holds a federal firearms license ("FFL")—*i.e.*, a license issued by the Attorney General "to transport, ship, and receive firearms and ammunition covered by such license in interstate or foreign commerce during the period stated in the license."  18 U.S.C. § 923(c); *accord* 27 C.F.R. § 478.41.

71.    Individuals may "engage in the business of importing, manufacturing, or dealing in firearms" only if they hold an FFL.  18 U.S.C. § 922(a)(1)(A).

72.    FFL holders may "sell or deliver" GCA short-barreled weapons to unlicensed persons only "as specifically authorized by the Attorney General consistent with public safety and necessity."  18 U.S.C. § 922(b)(4); *accord* 27 C.F.R. § 478.98.

73.    FFL holders may "transport" short-barreled weapons "in interstate or foreign commerce" without statutory restrictions.  18 U.S.C. § 922(a)(4).

74.    Unlicensed individuals may "transport" short-barreled weapons "in interstate or foreign commerce" only "as specifically authorized by the Attorney General consistent with public safety and necessity."[7]  18 U.S.C. § 922(a)(4); *see also* 27 C.F.R. § 478.28.

75.    Entities or individuals who sell, deliver, or transport short-barreled weapons without a required authorization from the Attorney General may be imprisoned for up to five years and fined up to $500,000.  18 U.S.C. §§ 924(a)(1)(B), (D); 3571(c)(3); 3559(a)(5).

---

[7] "Interstate or foreign commerce" is a defined term meaning: "commerce between any place in a State and any place outside of that State, or within any possession of the United States (not including the Canal Zone) or the District of Columbia, but such term does not include commerce between places within the same State but through any place outside of that State.  The term 'State' includes the District of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States (not including the Canal Zone)."  18 U.S.C. § 921(a)(2).

76.     The GCA thus contemplates a comprehensive regulatory scheme through which the Attorney General will consider the public safety and necessity of transferring and transporting short-barreled weapons.

77.     The Attorney General has delegated to ATF his authority under the GCA to authorize transferring and transporting short-barreled weapons.  28 C.F.R. § 0.130(a)(1).

### FRANKLIN'S FAI-15 ANTITHESIS FIREARM

#### *Franklin Submits The FAI-15 Antithesis To ATF*

78.     On March 9, 2020, Franklin requested voluntary classification of an FAI-15 equipped with a novel barrel called the Antithesis.  Ex. B at 2–3 (Letter from Jay Jacobson (Mar. 9, 2020)) ("FAI-15 Antithesis Submission").

79.     The Antithesis is a rifled barrel that "is chambered in, and designed to accept, both .410 bore shotshells and 45 Long Colt cartridges."  *Id.* at 3.

80.     In other words, the Antithesis can fire both shotgun shells with multiple projectiles and fixed cartridges with a single projectile.

81.     Franklin inscribed ".410/.45LC" on the FAI-15 Antithesis to indicate that the weapon accepts both types of ammunition.  *Id.*

82.     Franklin explained that it had successfully tested "Remington 'Premier® Nitro Sporting Clays'" .410 bore shotshells and "Grizzly 'Big Bore Ammunition'" "45 Long Colt +P" cartridges with the FAI-15 Antithesis.  *Id.*

83.     Franklin explained that the FAI-15 Antithesis "had great results cycling the action using [those two] loads."  *Id.*

84.     Franklin explained in a separate filing with ATF that a firearm equipped with the Antithesis is not a "rifle" under the GCA or the NFA because it is not designed and intended "to fire only a single projectile."  Ex. C at 1–2 (Letter from Jay Jacobson (Nov. 19, 2019)) ("Antithesis

2019 Explanation Letter") (quoting 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7)) (emphasis omitted).[8]

85.    Rather, an Antithesis-equipped firearm is "designed and intended to fire shot," which consists of multiple projectiles.  *See id.* at 2.

86.    Franklin explained that the "rifling's effect of rapidly increasing the spread of the resulting [shot] pattern is desirable in certain hunting situations such as unexpected close range turkey hunting shots and close shots in thick cover at fast fleeting gamebirds."  Ex. D at 4 (Letter from Jay Jacobson (May 7, 2020)) ("Antithesis 2020 Explanation Letter").

87.    Franklin noted that such designs—including "Browning's rifled Spreader Choke"—were already commercially available and "being used by bird hunters."  *Id.*

88.    Franklin also explained that "projectile stabilization is not a necessary attribute" in "comparatively short-range engagements."  FAI-15 Antithesis Submission at 2.

89.    As evidence, Franklin noted that three commercially successful handguns—the Bond Arms Ranger II, the Taurus Judge Revolver, and the Thompson/Center Arms Contender—utilized designs that "fire[d] singular projectiles as well as ball shot through a rifled bore."  *Id.*

90.    Finally, Franklin explained that an Antithesis-equipped firearm is not a "shotgun" under the GCA or the NFA because it utilizes a "rifled bore."  Antithesis 2019 Explanation Letter at 1–2.

---

[8] This November 2019 filing was in reference to an Antithesis-equipped Connecticut Valley Arms ("CVA") Hunter firearm submitted for voluntary classification on January 16, 2019.  *See infra* Jan. 2019 Clarification Letter at 2; Antithesis 2019 Explanation Letter at 1–2.  ATF classified the CVA Hunter firearm as a short-barreled rifle under both the GCA and the NFA on January 7, 2020.  *See* Ex. E (FTISB Letter 310340) (incorrectly dated January 7, 2019).  This filing is part of the administrative record informing ATF's classification of the Antithesis-equipped FAI-15 at issue in this case.

*ATF Misclassifies The FAI-15 Antithesis As A Short-Barreled Rifle*

91.   On December 23, 2021, ATF erroneously classified the FAI-15 Antithesis as a short-barreled rifle.  *See* Ex. F (FTISB Letter 313628) ("FAI-15 Antithesis Classification Letter").

92.   ATF found that the FAI-15 Antithesis's "barrel extension and the barrel breech are fit and chambered to accept the .45 Colt and .410 Bore cartridges."  *Id.* at 3.

93.   ATF acknowledged that Franklin "state[d] [that] the firearm is designed and intended to fire shot and slugs from .410 bore shotshells and singular projectiles from .45 Long Colt."  *Id.* at 4 (emphasis omitted) (internal quotations omitted).

94.   ATF did not dispute that the FAI-15 Antithesis in fact fires shot using .410 shotshells. *See id.*

95.   Nevertheless, ATF found that the FAI-15 Antithesis was not designed and intended to fire shotshells.  *See id.*

96.   To reach this counterintuitive result, ATF declared that "a rifled bore is an objective design feature designed and made to fire only a single projectile."  *Id.*

97.   ATF apparently based this conclusion on its opinion that a "rifled bore is disadvantageous as an objective design feature when using shot ammunition, as the twist of the shot column traveling down the bore will spread the shot pattern."  *Id.*

98.   ATF thus reasoned that even though the FAI-15 Antithesis fires .410 shotshells, it was necessarily designed and intended to fire only a single projectile because it utilizes a rifled bore. *See id.*

*ATF's Classification Analysis Was Riddled With Errors*

99.   ATF failed to consider at least seven important factors relevant to its classification of the FAI-15 Antithesis.

100.  These factors indicated that the FAI-15 Antithesis was designed and intended to fire shot

ammunition.

101.  *First*, ATF did not acknowledge or discuss the fact that projectile stabilization is not necessary in "comparatively short-range engagements."  FAI-15 Antithesis Submission at 2.

102.  *Second*, ATF did not acknowledge or discuss the fact that rapidly spreading the shot pattern in fact *enhances* the weapon's utility in some contexts, such as close-range shots at gamebirds.  *See* Antithesis 2020 Explanation Letter at 4.

103.  These use cases are plainly relevant to the FAI-15 Antithesis's design and Franklin's intent.

104.  Specifically, these use cases show that "a rifled bore" is *not* "disadvantageous as an objective design feature when using shot ammunition."  *Contra* FAI-15 Antithesis Classification Letter at 4.

105.  *Third*, ATF did not discuss its results firing shot from the FAI-15 Antithesis, despite having "test[ed]" the weapon.  *See id.* at 1.

106.  *Fourth*, ATF did not acknowledge or discuss Franklin's "great results" when it fired shot from the FAI-15 Antithesis.  *See* FAI-15 Antithesis Submission at 3.

107.  The FAI-15 Antithesis's ability to fire shot is plainly relevant to its design and Franklin's intent.

108.  Specifically, "the uses of which a [weapon] is capable" is a key "part of the inquiry into whether a [weapon] is intended to be used" for a given purpose.  *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 601 (1st Cir. 2016).

109.  The FAI-15 Antithesis's capability to fire shot—undisputed by ATF as a result of its testing or otherwise—is thus strong evidence that the weapon was designed and intended to fire shot.

110. *Fifth*, ATF acknowledged that Franklin's stated intent was that the FAI-15 Antithesis was designed to fire .410 bore shotshells, but it did not explain how that stated intent factored into its analysis.  FAI-15 Antithesis Classification Letter at 4.

111. However, as ATF itself acknowledged, Franklin's "purported use of the item" is relevant "in determining whether a weapon is 'designed, made and intended' for a particular purpose." *Id.*

112. Specifically, Franklin's stated intent that the FAI-15 Antithesis was designed to fire .410 shotshells is evidence that this undisputed capability was in fact intended.

113. *Sixth*, ATF did not discuss the inscription of ".410/.45LC" on the weapon.  *See* FAI-15 Antithesis Submission at 3.

114. This inscription is plainly relevant to the FAI-15 Antithesis's design and Franklin's intent.

115. Specifically, it indicates that Franklin intended that the FAI-15 Antithesis would be used to fire .410 shotshells.

116. *Seventh*, ATF "d[id] not dispute the marketability of firearms chambered for dual cartridges."  To the contrary, ATF found that "a weapon with a rifled bore that also fires shotshells may provide a commercial advantage."  Nevertheless, ATF concluded that enhanced marketability "does not indicate that the weapon was 'designed, made and intended' to fire other than a single projectile."  *See* FAI-15 Antithesis Classification Letter at 4.

117. ATF is wrong:  a commercial advantage provides an indication of the design and intent of the FAI-15 Antithesis.

118. Specifically, it demonstrates that gun owners value the ability to fire shot from a rifled bore in some circumstances.

119. This consumer preference is strong evidence that the FAI-15's ability to fire shot from a

rifled bore is an intentional design choice implemented by the designer to meet consumer demand.

120.   This consumer preference also confirms that firing shot from a rifled bore is advantageous in some use cases.

121.   ATF's rules confirm that marketability is relevant to classification decisions by requiring submission of "marketing materials" with certain classification requests.  27 C.F.R. § 478.92(c). According to ATF, this requirement helps "ensure that a proper classification can be made."  87 Fed. Reg. at 24,673.

122.   Had ATF properly analyzed the record evidence, it would not have come to the erroneous conclusion that the FAI-15 Antithesis was designed and intended to fire only a single projectile.

*ATF's Misclassification Is Causing Significant Harm*

123.   ATF's erroneous classification has burdened the FAI-15 Antithesis with inapplicable restrictions and requirements from both the NFA and the GCA.

124.   Under the NFA, owners of the FAI-15 Antithesis must register the firearm and submit their fingerprints to the federal government.

125.   Under the NFA, anyone wishing to obtain the FAI-15 Antithesis must first notify local law enforcement officials of the acquisition.

126.   Under the GCA, FFL holders must receive specific authorization from ATF before they sell or deliver the FAI-15 Antithesis to unlicensed customers.

127.   Under the GCA, unlicensed individuals must receive specific authorization from ATF before they transfer across state lines the FAI-15 Antithesis.

128.   These processes are often slow.  For example, ATF's own statistics indicate that the average wait time to transfer an NFA firearm is six months for electronic applications and a full

year for paper applications.  *See Current Processing Times*, ATF (updated Oct. 1, 2022).[9]

**FRANKLIN ARMORY'S REFORMATION FIREARM**

*Franklin Submits The Reformation Firearm To ATF*

129.  On July 7, 2017, Franklin asked ATF to classify a new barrel design called the "NRS" barrel—short for "Not a Rifle or Shotgun"—that Franklin would use on its forthcoming "Reformation" line of firearms.  *See* Ex. G (Letter from Jay Jacobson (July 7, 2017)) ("NRS Letter").

130.  Franklin explained that the NRS barrel would "feature straight cut lands and grooves" "from the leade ahead of the chamber all the way to the muzzle."  *Id.* at 1 (emphasis omitted).

131.  Franklin reasoned that the NRS barrel would not qualify as a rifle under the NFA or the GCA because a weapon is a rifle under those statutes only if it has "a rifled bore," 18 U.S.C. § 921(a)(7); 26 U.S.C. § 5845(c), but the NRS barrel would not utilize a "rifled bore" because it would "not include helical cuts through the bore" and would thus not "impart spin to a projectile," NRS Letter at 1–2.

132.  Franklin further reasoned that the NRS barrel would not qualify as a shotgun under the NFA or the GCA because a weapon is a shotgun under those statues only if it has a "smooth bore," 18 U.S.C. § 921(a)(5); 26 U.S.C. § 5845(d), but the bore of the NRS barrel would have "ridges caused by the lands and grooves," and would thus not be "smooth," NRS Letter at 3–4.

133.  On July 10, 2017, ATF responded to Franklin's letter, telling Franklin via email that ATF would not classify the NRS unless Franklin submitted "a physical sample."  *See* Ex. H (Email from ATF (July 10, 2017)).

134.  On August 23, 2017, Franklin submitted a .308 Winchester chambered NRS barrel to

---

[9] https://www.atf.gov/resource-center/current-processing-times.

ATF for classification.  *See* Ex. I (Letter from Jay Jacobson (Aug. 23, 2017)).

135.  On March 8, 2018—nearly seven months later—ATF told Franklin it would not classify the NRS barrel unless it was installed on a "complete firearm."  *See* Ex. J (FTISB Letter 307464).

136.  On March 13, 2018, Franklin resubmitted the NRS barrel for classification—this time affixed to four different weapons.  *See* Ex. K (Letter from Jay Jacobson (Mar. 13, 2018)).

137.  These four NRS-equipped weapons were part of Franklin's "Reformation" series, hereinafter referred to as the "Reformation."

*ATF Classifies The Reformation As A GCA-Only Short-Barreled Shotgun*

138.  On November 13, 2018—eight months after Franklin resubmitted the NRS barrel, and more than 16 months after Franklin's original submission—ATF's Firearms Technology Industry Services Branch ("FTISB") classified the Reformation as a short-barreled shotgun under the GCA. *See* Ex. L (FTISB Letter 308531) ("Reformation Private Classification").[10]

139.  ATF first agreed that the Reformation was not a rifle because the "straight cut lands and grooves" in the NRS barrel "ha[d] insufficient rate of twist to spin and stabilize traditional .308 caliber ammunition" and could thus not "be considered 'rifling' under Federal law."  *Id.* at 4.

140.  However, ATF found that the Reformation was a shotgun under the GCA because the NRS barrel had a "smooth bore"—a term it uniquely interpreted as covering all barrels that lacked rifling.  *See id.* at 4–5.

141.  ATF further found that the Reformation was a short-barreled shotgun under the GCA because it incorporated a barrel less than 18 inches in length.  *See id.* at 6–8.

---

[10] ATF classified one of the four Reformation submissions as an "Any Other Weapon" under the NFA.  Reformation Private Classification at 9; *accord* 26 U.S.C. § 5845(e).  Franklin does not challenge that classification, and all further references to the Reformation do not include that submission.

142.  ATF did not issue a finding as to the Reformation's status under the NFA.  *See id.*

143.  On January 16, 2019, Franklin asked ATF to clarify whether the Reformation was a short-barreled shotgun under the NFA.  *See* Ex. M (Letter from Jay Jacobson (Jan. 16, 2019)) ("Jan. 2019 Clarification Letter").

144.  ATF never responded to this letter.

145.  But on November 8, 2019, ATF's Firearms Industry Programs Branch ("FIPB") sent Franklin a letter opining that information "on [Franklin's] website regarding the transfer and interstate transport of [its] Reformation firearm d[id] not accurately reflect the provisions required for the transfer and interstate transport of a short barreled shotgun as required under [the GCA]." Ex. N at 1 (FIPB Letter 819794) ("Reformation Private Letter").

146.  In this letter, ATF informed Franklin that it classified the Reformation as a "short barreled shotgun (SBS) as defined by the Gun Control Act (GCA) but [did] not [find the Reformation] to be a firearm regulated under the National Firearms Act (NFA)."  *Id.*

147.  ATF opined that its regulations governing the transfer and interstate transport of short-barreled shotguns were "limited to NFA firearms" and thus did not govern GCA-only short-barreled shotguns.  *Id.* at 1–2.

148.  Acknowledging that its position created a "gap in the federal firearm regulations," ATF represented that it was "currently developing the procedures and forms" to "provide the mechanism necessary for FFL holders and owners of [GCA-only short-barreled shotguns] to request the statutorily required approvals."  *Id.* at 2.

149.  In the meantime, ATF took the position that FFL holders such as Franklin "may not lawfully transfer the Reformation to a non-licensee" and that "the owner of a [GCA-only short-barreled shotgun], such as the Reformation, may not lawfully transport the firearm across state

lines."  *Id.*

150.  On December 19, 2019, ATF issued an open letter to the public taking the same position: Franklin was not allowed to sell the Reformation to customers without FFLs, and unlicensed individuals who owned the Reformation could "not lawfully transport the firearm across state lines."   Ex. O at 2 (Open Letter regarding the Franklin Armory Reformation Firearm) ("Reformation Open Letter").

151.  The open letter also offered ATF's most fulsome explanation to date for its classification of the Reformation under the NFA:  ATF explained that the Reformation was "not a shotgun as defined in the NFA" "because the Reformation is not chambered for shotgun shells."  *Id.* at 1.

152.  In NFA terms, the Reformation does not "use the energy of the explosive *in a fixed shotgun shell*," 26 U.S.C. § 5845(d) (emphasis added), because it does not fire shotgun shells.

153.  The open letter again represented that "ATF is currently developing the procedures and forms" to "provide the mechanism necessary for FFL holders and owners of [GCA-only] firearms to request the statutorily required approvals."  Reformation Open Letter at 2.

*ATF Delays Creating Rules To Transfer GCA-Only Short-Barreled Shotguns*

154.  Despite ATF's assurances that the agency was creating "procedures and forms to address this gap in the federal firearm regulations," Reformation Private Letter at 2, the procedures and forms have never materialized.

155.  It has been ***1,513*** days since ATF classified the Reformation as a GCA-only short-barreled shotgun.

156.  During this time, ATF has refused to determine whether any transfers of GCA-only short-barreled shotguns are consistent with public safety and necessity.

157.  The end result has been a *de facto* ban on sales of GCA-only short-barreled shotguns (including the Reformation) in the United States for over ***four years***.

158.  That course is not the one charted by Congress.  Instead, Congress requires the Attorney General—or his delegate—to "specifically authorize[]" the sale, delivery, or interstate transportation of short-barreled shotguns where such actions are "consistent with public safety and necessity."  18 U.S.C. § 922(a)(4), (b)(4).

159.  By conditioning the sale, delivery, and interstate transportation of short-barreled weapons on a "specific[] authoriz[ation]" by the Attorney General, Congress necessarily contemplated a mechanism for a party to seek such authorization.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 192 (2012) ("Authorization of an act also authorizes a necessary predicate act.").

160.  Indeed, if ATF had unfettered discretion to ignore such requests, Congress's prescribed standards for considering such authorizations—"public safety and necessity"—would be meaningless, violating the maxim to "give effect, if possible, to every clause and word of a statute." *United States v. Pulsifer*, 39 F.4th 1018, 1021 (8th Cir. 2022) (citations and quotations omitted).

161.  ATF agrees that the GCA requires it to provide a process for submitting authorization requests for GCA-only short-barreled shotguns.

162.  In the aforementioned open letter, ATF explained that the "mechanism" "for FFL holders and owners of [GCA-only short-barreled shotguns] to request the statutorily required approvals" was "*necessary*."  Reformation Open Letter at 2 (emphasis added).

163.  ATF further represented that it was "currently developing the procedures and forms to address this new type of firearm."  *Id.*

164.  Noting that these procedures and forms would be "promulgated," the open letter gave the public guidance on how to proceed "[u]ntil such time."  *Id.*

165.  Pursuant to the GCA and ATF's own statements, the agency has a duty to determine

whether requests to sell, deliver, or transfer short-barreled shotguns should be "specifically authorized," "consistent with public safety and necessity."  18 U.S.C. § 922(a)(4), (b)(4).

166.  ATF's abdication of this duty for more than one-thousand days flouts Congress's carefully defined firearm regulatory scheme and ATF's commitment in the open letter to issue the necessary forms and procedures.

*ATF's Delay Has Resulted In Significant Harm*

167.  In the years since ATF took the position that FFL holders "may not lawfully transfer the Reformation to a non-licensee," Franklin has not been able to sell the Reformation.  Decl. ¶¶ 31–44.

168.  Because the vast majority of customers do not hold FFLs—and those that hold FFLs are generally dealers themselves—there is simply no market for the Reformation until ATF promulgates the necessary forms and procedures to transfer GCA-only short-barreled weapons to non-licensees.  *Id.* ¶ 41.

169.  Franklin would market and sell the Reformation if ATF promulgated the necessary forms and procedures to transfer GCA-only short-barreled weapons to non-licensees.  *Id.* ¶ 39.

170.  Thus, this situation has resulted in significant financial loss for Franklin.  *Id.* ¶¶ 40–51.

171.  For one, Franklin produced 1,195 NRS barrels—designed to be affixed to the Reformation—that it has not been able to sell.  *Id.* ¶ 42.

172.  If Franklin could affix the NRS barrels to Reformation firearms, the firearms would collectively be worth more than a million dollars.  *Id.* ¶ 43.

173.  Until ATF promulgates the necessary mechanism to obtain authorization to transfer such weapons, however, Franklin cannot sell NRS barrels affixed to Reformation firearms.  *Id.* ¶ 44.

174.  The Reformation would sell well if ATF provided a mechanism for Franklin to market and sell the weapon.

175.  Indeed, the National Association of Sporting Goods Wholesalers and the Professional Outdoor Media Association named the Reformation the "Best New Shotgun" of 2019.  *See* Press Release, National Association of Sporting Goods Wholesalers & Professional Outdoor Media Association, NASGW Announces Award Winners at the 2019 NASGW Expo (Oct. 24, 2019).[11]

176.  The National Association of Sporting Goods Wholesalers is an influential trade association comprised of the largest firearms distributors in the United States.  *See Our Association*, National Association of Sporting Goods Wholesalers (last visited Jan. 4, 2023).[12]

177.  The Professional Outdoor Media Association is an influential outdoor sporting association.  *See Why Join POMA?*, Professional Outdoor Media Association (last visited Jan. 4, 2023).[13]

178.  Recognition from these groups evinces the enthusiasm for the Reformation from both the firearms industry and the public.

179.  Franklin estimates that it would bring in $8 million in firearm sales after the first year of producing the Reformation.  *See* Decl. ¶¶ 46, 51; Ex. P at 15 (Franklin Presentation to ATF (Aug. 1, 2018)) ("Franklin Reformation Presentation").

180.  Franklin estimates that it would bring in $25 million in firearms sales per year after the first five years of producing the Reformation.  *See* Decl. ¶¶ 47, 51; Franklin Reformation Presentation at 15.

181.  Franklin estimates that it would sell one million rounds of ammunition for the Reformation in the first year of production.  *See* Decl. ¶¶ 48, 51; Franklin Reformation Presentation

---

[11] https://news.nasgw.org/news/nasgw-announces-award-winners-at-the-2019-nasgw-expo.

[12] https://nasgw.org/about/nasgw.

[13] https://professionaloutdoormedia.org/why-join-poma/.

at 15.

182. Franklin estimates that it would sell ten million rounds of ammunition for the Reformation per year after the first five years of production. *See* Decl. ¶¶ 49, 51; Franklin Reformation Presentation at 15.

183. In addition, Franklin's patent for the exclusive right to utilize the Reformation's straight lands and grooves design (Patent No. 10,295,290) is time-limited.[14] *See* 35 U.S.C. § 154(a)(2).

184. Every day ATF delays cuts into Franklin's patent-protected period to market the Reformation.

185. Franklin has suffered—and will continue to suffer—substantial financial harm from ATF's unexplained delay.

186. The American public have also suffered as a result of ATF's delay.

187. By instituting a *de facto* ban on GCA-only short-barreled shotguns for unlicensed individuals, the vast majority of Americans are deprived of the ability to buy—and transport across state lines—a whole class of weapons useful for hunting, home defense, and recreational shooting. *See* Decl. ¶ 41; Franklin Reformation Presentation at 14.

*ATF's Delay Is Pretextual*

188. ATF has not offered any reason for its years-long delay.

189. To the contrary, it has expressly recognized the need to fix the "gap in the federal firearm regulations" that it created. Reformation Private Letter at 2.

190. But despite that recognition, ATF does not appear to have made any progress.

191. Creating "procedures and forms" to allow for the transfer and sale of the Reformation

---

[14] This patent is held by Franklin's parent company—Franklin Armory Holdings, Inc.—and licensed to Franklin.

should not be a difficult process for the agency.

192.  Indeed, ATF would have to do little more than publish a new form duplicating those already in existence for other GCA and/or NFA firearms.

193.  ATF should be capable of completing such a task in a matter of days or weeks—not years.

194.  Consider the time it took for ATF to tackle a significantly more ambitious policy initiative:  designing rules to regulate so-called "ghost guns."

195.  On April 8, 2021, the Attorney General instructed ATF to "close a regulatory loophole that has contributed to the proliferation of the so-called ghost guns."  Merrick B. Garland, Attorney General, Remarks on Gun Violence Prevention at the White House Rose Garden (Apr. 8, 2021).[15]

196.  On April 26, 2022, ATF issued its final rule promulgating regulations for so-called ghost guns.  *See* 87 Fed. Reg. 24,652.

197.  Thus, it took ATF approximately one year—383 days—to close a perceived regulatory gap through a complex rule that amended more than a dozen federal regulations.

198.  ATF's delay here—*1,513* days to issue a single form—is inexplicable and unjustifiable by comparison.

199.  Indeed, ATF's years-old claim that it "is currently developing the procedures and forms" appears to be false.

200.  The effect of ATF's delay has been to surreptitiously prohibit the sale or transfer of the Reformation without having to do so expressly.

201.  That this was, in fact, ATF's goal all along is shown by ATF having recently informed

---

[15] https://www.justice.gov/opa/speech/attorney-general-garland-s-full-remarks-gun-violence-prevention-white-house-rose-garden.

Franklin that the agency would like to reclassify the Reformation as an NFA firearm, Decl. ¶ 53, a result that would be arbitrary, capricious, and otherwise contrary to law.

202.  The threat of reclassification appears to be yet another delay tactic by the agency.

203.  ATF's surreptitious policy of not creating a mechanism to authorize the sale, delivery, or interstate transfer of GCA-only short-barreled shotguns makes no sense.

204.  ATF already has a mechanism through which it authorizes the sale, delivery, and interstate transfer of weapons classified as short-barreled shotguns under *both* the GCA *and* the NFA.  *See* 27 C.F.R. §§ 478.28, 478.98, 479.84.

205.  But, by definition, Congress chose to subject to more requirements weapons classified under both the GCA and the NFA, than weapons classified under only the GCA.

206.  There is no rational reason to authorize the sale, delivery, and interstate transfer of weapons subject to both the GCA and the NFA, while at the same time instituting a *de facto* ban on the sale, delivery, and interstate transfer of weapons subject to only the GCA.

207.  This Court should hold ATF to account for its regulatory gamesmanship and require it to patch the nonsensical hole it tore in federal firearms regulation.

### FIRST CLAIM FOR RELIEF
#### (Arbitrary-and-Capricious Classification – FAI-15 Antithesis)

208.  Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

209.  The APA authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

210.  ATF's classification of the FAI-15 Antithesis is arbitrary and capricious because it "entirely failed to consider" many "important aspect[s] of the problem."  *Motor Vehicle Mfrs.*

*Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

211. In particular, ATF failed to consider (1) that rifling is not disadvantageous for shooting shotshells in short-range engagements, (2) that rifling can enhance the firing of shotshells in some circumstances, (3) the agency's own results testing the FAI-15 Antithesis, (4) Franklin's testing showing that the FAI-15 Antithesis successfully fires shot, (5) Franklin's stated intent, (6) the inscription of ".410/.45LC" on the FAI-15 Antithesis, and (7) the fact that consumers value the ability to fire shot through a rifled bore.

212. ATF's classification of the FAI-15 Antithesis is arbitrary and capricious because it "offer[s] an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.

213. In particular, each of the seven pieces of evidence ATF selectively failed to consider counseled against the agency's classification of the FAI-15 Antithesis.

214. ATF's classification of the FAI-15 Antithesis is arbitrary and capricious because it failed to "supply a reasoned basis for [its] action." *State Farm*, 463 U.S. at 43 (citation and quotations omitted).

215. In particular, ATF's stated premise—that "the twist of the shot column traveling down the [rifled] bore will spread the shot pattern"—did not support its conclusion that "rifled bore is disadvantageous as an objective design feature when using shot ammunition." FAI-15 Antithesis Classification Letter at 4.

216. ATF also erroneously claimed that the enhanced marketability for a weapon capable of firing multiple projectiles "does not indicate that the weapon was 'designed, made and intended' to fire other than a single projectile." *Id.*

**SECOND CLAIM FOR RELIEF**
**(Unreasonable Delay in Violation of the APA and the Mandamus Act – Reformation Firearm)**

217. Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

218. ATF has unlawfully withheld and unreasonably delayed the issuance of procedures required by law.  5 U.S.C. § 706(1); *see Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

219.   ATF has failed to provide a means for parties to seek "specific[] authoriz[ation]" to sell, deliver, or transport across state lines weapons classified as short-barreled shotguns under the GCA but not the NFA.  *See* 18 U.S.C. § 922(a)(4), (b)(4).

220.   This failure contravenes Congress's clear statutory command.

221.   As ATF itself recognized, the lack of such a mechanism has created a "gap in the federal firearm regulations."  Reformation Private Letter at 2.

222.   Through its open letter, ATF also committed to promulgating such a mechanism when it told the public:  "ATF is currently developing the procedures and forms to address this new type of firearm.  Once promulgated, these new procedures and forms will provide the mechanism necessary for FFL holders and owners of [GCA-only short-barreled shotguns] to request the statutorily required approvals."  *See* Reformation Open Letter at 2.

223.   ATF's commitment to promulgating this mechanism "is binding" because it "speaks of what 'is' done or 'will' be done."  *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1027–30, 1033 (8th Cir. 2003) (requiring agency to comply with its policy statement); *see CropLife Am. v. EPA*, 329 F.3d 876, 881 (D.C. Cir. 2003) (finding agency press release was binding where it used "clear and unequivocal language, which reflect[ed] an obvious change in established agency practice").

224.   ATF's delay in creating this required mechanism is unlawful and unreasonable.

225. The Eighth Circuit "evaluate[s] the reasonableness of delay" by "[a]pplying th[e] approach" "of the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)."  *Irshad v. Johnson*, 754 F.3d 604, 607 (8th Cir. 2014).

226. Under that approach, "[t]ime is the first and most important factor."  *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273–74 (D.C. Cir. 2020) (citations, quotations, and alterations omitted).  "Although there is no per se rule as to how long is too long, a reasonable time for agency action is typically counted in weeks or months, not years." *Id.* at 274 (citations, quotations, and alterations omitted).

227. ATF has failed to act for over ***four years*** since it classified the Reformation.

228. Thus, the length of the delay—the first and most important factor—strongly suggests that ATF's delay is unreasonable.

229. "[T]he court should also take into account the nature and extent of the interests prejudiced by delay," recognizing that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80 (citations omitted).

230. Here, the firearms industry and the gun-owning public are prejudiced by ATF's failure to authorize the sale, delivery, and interstate transportation of GCA-only short-barreled shotguns.

231. The firearms industry has suffered financial harm because it is unable to sell and deliver to unlicensed individuals—the vast majority of customers—a popular class of firearms.

232. And the delay has harmed the American public's welfare by depriving it of the ability to buy, receive, and transport firearms that are useful for useful for hunting, home defense, and recreational shooting.

233. There is no countervailing interest in delay.  Rather, by definition, creating a mechanism

to authorize the sale, delivery, and interstate transfer of GCA-only short-barreled weapons would be "consistent with public safety and necessity."  18 U.S.C. § 922(a)(4), (b)(4).

234.  ATF's delay is also unreasonable because the agency has not offered any explanation for its delay or suggested that the delay is due to "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

235.  To the contrary, the action ATF is required to take—issuing a form on which individuals can explain why the transaction in question is consistent with necessity and public safety—would not require significant time or resources.

236.  Indeed, ATF has undertaken significantly more burdensome actions in a fraction of the time it has delayed here.

237.  Finally, this court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."  *Id.* (citations and quotations omitted).

238.  Here, however, there is a form of impropriety lurking behind the agency's lassitude: ATF's delay effectively prevents all sales, deliveries, and interstate transfers of GCA-only weapons, contrary to the expressed will of Congress.

### THIRD CLAIM FOR RELIEF
#### (Arbitrary and Capricious Policy Enforcement Policy – Reformation Firearm)

239.  Plaintiffs incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

240.  The APA authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

241.  ATF's delay in promulgating a mechanism for GCA-only weapons effects a general enforcement policy in which these weapons are effectively prohibited because the agency offers a

mechanism to sell, deliver, and transfer weapons classified as short-barreled rifles under the GCA *and* the NFA, but does not offer such a mechanism to transfer weapons classified as short-barreled rifles under only the GCA.

242.   ATF's policy of not allowing authorization requests for GCA-only weapons—while facilitating such requests for more heavily regulated weapons covered by both the GCA and the NFA—"is arbitrary and capricious" because the policy choices are "internally inconsistent." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. Cir. 2018).

243.   ATF's policy is also arbitrary and capricious because the agency has also not "articulate[d] a satisfactory explanation for its [enforcement policy] including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (citations and quotations omitted).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants, as follows:

A.   Declare unlawful and set aside ATF's classification of the FAI-15 Antithesis.

B.   Enter an order compelling ATF to—within 30 days—classify the FAI-15 Antithesis consistent with statutory requirements and the evidence before the agency.

C.   Declare that ATF has unreasonably delayed in promulgating procedures to authorize the sale, delivery, and interstate transportation of weapons classified as short-barreled shotguns under only the GCA.

D.   Enter an order compelling ATF to—within 30 days—issue procedures authorizing the sale, delivery, and interstate transportation of weapons classified as short-barreled shotguns under only the GCA.

E.   Grant such further and additional relief as this Court deems just and proper.

January 4, 2023

By:     /s/ Benjamin Sand
Benjamin J. Sand (ND ID #07981)
**CROWLEY FLECK PLLP**
100 W Broadway Ave
Bismarck, ND 58501
Tel: 701.223.6585
Fax: 701.222.4853
bsand@crowleyfleck.com

Stephen J. Obermeier
Jeremy J. Broggi
William K. Lane III
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
JBroggi@wiley.law
WLane@wiley.law
BGarriott@wiley.law

*Counsel for Plaintiffs*