UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., *and* FRANKLIN ARMORY, INC.,

Plaintiffs,

v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States, *et al.*,

Defendants.

Case No. 1:23-cv-00003-DLH

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(3) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Statutory and Regulatory Framework ..... 2

II. Franklin Armory and the Claims Giving Rise to this Action ..... 3

III. FRAC ..... 4

LEGAL STANDARDS ..... 6

ARGUMENT ..... 7

I. Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred to a Proper Venue ..... 7

A. Venue Is Not Proper in This District ..... 7

1. 28 U.S.C. § 1391(e)(1)(A) ..... 8

2. 28 U.S.C. § 1391(e)(1)(B) ..... 8

3. 28 U.S.C. § 1391(e)(1)(C) ..... 9

B. Transfer Is Appropriate Even if Venue Is Proper in This District ..... 13

II. Plaintiffs' Complaint Should Be Dismissed for Lack of Venue Because FRAC Lacks Associational Standing ..... 15

A. FRAC is Neither a Traditional Voluntary Membership Organization, Nor the Functional Equivalent of One ..... 17

B. The Interests FRAC Seeks to Protect Are Not Germane to its Organizational Purpose ..... 19

C. The Claims Asserted Require the Participation of FRAC's Individual Members ..... 21

1. Participation of FRAC's Individual Members is Required Because Individualized Proof is Necessary to Sustain Plaintiffs' Claims ..... 22

2. The Interests of FRAC's Members are Too Diverse and the Possibilities of Conflict Too Obvious to Make FRAC an Appropriate Vehicle to Litigate These Claims ..... 24

CONCLUSION ..... 27

**TABLE OF AUTHORITIES**

**CASES**

*AARP v. U.S. Equal Emp. Opportunity Comm'n.*,
226 F. Supp. 3d 7 (D.D.C. 2016)....................18

*Abels v. Farmers Commodities Corp.*,
259 F.3d 910 (8th Cir. 2001)....................3

*Ariz. Yage Assembly v. Barr*,
No. 3:20-cv-03098-WHO, 2020 WL 5629833 (N.D. Cal. Sept. 21, 2020)....................9

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs. ("ARC of Dallas")*,
19 F.3d 241 (5th Cir. 1994)....................18

*Ass'n of Indep. Gas Station Owners v. QuikTrip Corp.*,
No. 4:11-CV-2083-JCH, 2012 WL 2994079 (E.D. Mo. July 20, 2012)....................21

*Associated Gen. Contractors of N.D. v. Otter Tail Power Co.*,
611 F.2d 684 (8th Cir. 1979)....................*passim*

*Boston Telecom. Grp., Inc. v. Wood*,
588 F.3d 1201 (9th Cir. 2009)....................13

*Cmty. Stabilization Project v. Cuomo*,
199 F.R.D. 327 (D. Minn. 2001)....................24

*Comm. for Reasonable Regul. of Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
365 F. Supp. 2d 1146 (D. Nev. 2005)....................23

*Daughetee v. CHR Hansen, Inc.*,
No. C09-4100, 2011 WL 1113868 (N.D. Iowa Mar. 25, 2011)....................3, 7

*Duncan Place Owners Ass'n v. Danze, Inc.*,
927 F.3d 970 (7th Cir. 2019)....................23

*E.W. Wylie Corp. v. Transp. Tech. Servs., Inc.*,
No. 3:11-cv-47, 2011 WL 13111712 (D.N.D. Oct. 24, 2011)....................6

*Fischer v. First Nat'l Bank of Omaha*,
466 F.2d 511 (8th Cir. 1972)....................13

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985)....................14

*Gage v. Somerset Cnty.*,
322 F. Supp. 3d 53 (D.D.C. 2018)....14

*Grp. Health Plan, Inc. v. Philip Morris, Inc.*,
86 F. Supp. 2d 912 (D. Minn. 2000)....18

*Gulf Ins. Co. v. Glasbrenner*,
417 F.3d 353 (2d Cir. 2005)....6

*Heap v. Carter*,
112 F. Supp. 3d 402 (E.D. Va. 2015)....18

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010)....9, 10, 12

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....*passim*

*King v. Russell*,
963 F.2d 1301 (9th Cir. 1992)....13

*Lab'y Corp. of Am. Holdings v. N.L.R.B.*,
942 F. Supp. 2d 1 (D.D.C. 2013)....15

*Leaming v. Jackson Cnty.*,
No. 03-00940-CV-W-SWH, 2006 WL 1046906 (W.D. Mo. Apr. 19, 2006)....23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....15

*Martensen v. Koch*,
942 F. Supp. 2d 983 (N.D. Cal. 2013)....6, 7, 12

*Md. Highways Contractors Ass'n, Inc. v. Maryland*,
933 F.2d 1246 (4th Cir. 1991)....25, 26

*Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*,
557 F. Supp. 925 (D. Minn. 1983)....16, 21, 22, 24

*Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*,
747 F.2d 1204 (8th Cir. 1984)....16

*Missouri v. W. Sur. Co.*,
51 F.3d 170 (8th Cir. 1995)....7

*Mo. Prot. & Advoc. Servs., Inc. v. Carnahan*,
499 F.3d 803 (8th Cir. 2007)....18

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ....................7

*Morton v. Becker*,
793 F.2d 185 (8th Cir. 1986) ....................3

*Nat'l Distillers & Chem. Corp. v. Dep't of Energy*,
487 F. Supp. 34 (D. Del. 1980) ....................15

*Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*,
263 F. Supp. 2d 82 (D.D.C. 2003) *aff'd*, 366 F.3d 930 (D.C. Cir. 2004)....................24

*Northland Parent Ass'n v. Excelsior Springs Sch. Dist. #40*,
571 F. Supp. 3d 1104 (W.D. Mo. 2021)....................23

*Osborn v. United States*,
918 F.2d 724 (8th Cir. 1990)....................7, 18

*Pinnacle Armor, Inc. v. United States*,
923 F. Supp. 2d 1226 (E.D. Cal. 2013)....................14

*Raines v. Byrd*,
521 U.S. 811 (1997) ....................15

*Rare Breed Triggers, LLC v. Garland*,
No. 3:22-CV-85, 2022 WL 17175089 (D.N.D. Nov. 4, 2022)....................*passim*

*Rogers v. Civil Air Patrol*,
129 F. Supp. 2d 1334 (M.D. Ala. 2001)....................8

*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*,
654 F. Supp. 734 (D.D.C. 1986)....................15

*Sierra Club v. Morton*,
405 U.S. 727 (1972) ....................20

*Sig Sauer, Inc. v. Brandon*,
826 F.3d 598 (1st Cir. 2016)....................2

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976)....................15

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ....................7

*Smirnov v. Clinton*,
806 F. Supp. 2d 1 (D.D.C. 2011) *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012)....................14

*Smith v. Dalton*,
927 F. Supp. 1 (D.D.C. 1996) ........ 8

*Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Plan. Ass'n*,
830 F.2d 1374 (7th Cir. 1987) ........ 26

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
119 F.3d 688 (8th Cir. 1997) ........ 13, 14

*Terre Du Lac Ass'n v. Terre Du Lac, Inc.*,
772 F.2d 467 (8th Cir. 1985) ........ 22, 23, 24

*United States v. Ahrens*,
530 F.2d 781 (8th Cir. 1976) ........ 26

*United States v. Chem. Found., Inc.*,
272 U.S. 1 (1926) ........ 26

*Uviado, LLC ex rel. Khan v. U.S. ex rel. IRS*,
755 F. Supp. 2d 767 (S.D. Tex. 2010) ........ 6, 7, 15

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
517 U.S. 544 (1996) ........ 19

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) ........ 21

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 15-16, 24

*Wash. Legal Found. v. Leavitt*,
477 F. Supp. 2d 202 (D.D.C. 2007) ........ 18

*Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc.*,
424 F.3d 840 (8th Cir. 2005) ........ 7

**STATUTES**

2 U.S.C. § 1603 ........ 5, 10, 11

18 U.S.C. § 921 ........ 2, 3, 4

18 U.S.C. § 922 ........ 2, 4

18 U.S.C. § 923 ........ 2

26 U.S.C. § 5801 ........ 2

26 U.S.C. § 5811 ........ 2

26 U.S.C. § 5821 ....................2

26 U.S.C. § 5822 ....................2

26 U.S.C. § 5841 ....................2

26 U.S.C. § 5842 ....................2

26 U.S.C. § 5845 ....................2, 4

28 U.S.C. § 510....................2

28 U.S.C. § 1391 ....................*passim*

28 U.S.C. § 1404 ....................1, 13

28 U.S.C. § 1406 ....................7, 12, 13

**RULES**

Fed. R. Civ. P. 12(b) ....................6, 7, 12

Fed. R. Civ. P. 41(b) ....................13

Fed. R. Evid. 201(b) ....................17

**REGULATIONS**

27 C.F.R. § 478.92(c) ....................2, 3

28 C.F.R. § 0.130(a)(1)-(3) ....................2

**OTHER AUTHORITIES**

14D Arthur D. Miller, et al., Federal Practice and Procedure § 3815 (4th ed. 2013)....................8

14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3827 (4th ed. 2022)....................13

Blake Stilwell, *Firearms Regulatory Accountability Coalition: Taking On The BATFE*, Recoil (Oct. 10, 2022), https://www.recoilweb.com/firearms-regulatory-accountability-coalition-taking-on-the-batfe-176754.html [https://perma.cc/S6FD-TF3P]....................12

Clerk of the United States House of Representatives, Lobbying Disclosures, https://disclosurespreview.house.gov/?index=%22lobbying-disclosures%22&size=10&keyword=%22\%22firearms%20regulatory%20accountability%20coalition\%22%22&sort=[{%22_score%22:true},{%22field%22:%22registrant.name%22,%22order%22:%22asc%22}] [https://perma.cc/Y7PG-7CZ8]....................5, 11

Delaware Secretary of State, Division of Corporations Entity Search, https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx [https://perma.cc/3DKB-YJB6] ..... 5

Facebook Ad Library, FRACaction, https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country=ALL&view_all_page_id=109498854552688&search_type=page&media_type=all [https://perma.cc/5K48-W666] ..... 6

National Firearms Act Handbook, § 7.2.4 (revised 2009), https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-7/download [https://perma.cc/DE74-3YZF] ..... 2, 3

North Dakota Secretary of State, FirstStop Business Search, https://firststop.sos.nd.gov/search/business [https://perma.cc/KL4T-28C5] ..... 6

State of Delaware Div. of Corps., Field Definitions, Residency, https://icis.corp.delaware.gov/eCorp/FieldDesc.aspx#RESIDENCY [https://perma.cc/TKU9-XSK5] ..... 5, 11

Travis R. White, *Brace Litigation Filed in North Dakota Federal Court*, Firearms Regulatory Accountability Coalition, Inc. (Feb. 9, 2023), https://www.fracaction.org/post/brace-litigation-filed-in-north-dakota-federal-court [https://perma.cc/JJ3K-TKZE?type=image] ..... 17, 18

@FRACAction, Twitter (last visited Mar. 24, 2023), https://twitter.com/fracaction [https://perma.cc/5NYZ-TDTT?type=image]. ..... 6, 11

## INTRODUCTION

By this action, a Nevada gunmaker and a trade association dedicated to lobbying the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in Washington, D.C., attempt to manufacture venue in the District of North Dakota to facilitate their challenge to ATF's regulation of two firearms made by the gunmaker, Franklin Armory, Inc. ("Franklin"): the FAI-15 Antithesis short-barreled rifle ("Antithesis"), and the Reformation short-barreled shotgun ("Reformation"). Plaintiffs' claims do not arise from any events occurring in this district. No Defendant resides in this district. And for the reasons stated below, neither Franklin nor Firearms Regulatory Accountability Coalition, Inc. ("FRAC") reside in this district for purposes of venue. Their Complaint should be dismissed for lack of venue or, in the alternative, transferred under 28 U.S.C. § 1404.

First, venue in the District of North Dakota is not proper. Franklin, the primary stakeholder in the claims regarding weapons it manufactures, is in Nevada. And despite associational Plaintiff FRAC recently filing for incorporation as a foreign non-profit in North Dakota, the available facts—including FRAC's own filings—indicate that FRAC's principal place of business lies outside of this judicial district. Absent the residence of any party, and lacking any factual connection to this district, the Court should therefore dismiss this case for lack of venue.

Second, dismissal is independently warranted because FRAC lacks associational standing to challenge ATF's regulation of Franklin's firearms. FRAC is neither a traditional voluntary membership organization nor the functional equivalent of one for standing purposes, the narrow business interests that it seeks to protect in this case are not germane to its organizational purpose, and the claims asserted require the participation of FRAC's purported members. Accordingly, FRAC must be dismissed for lack of standing. And because Franklin relies on FRAC to secure venue, FRAC's dismissal also requires dismissal.

Even if venue were proper, the relevant factors warrant transfer of this action either to Nevada or to the District of Columbia. This case involves firearms made by a Nevada company and regulated

by officials in Washington, D.C. Because the parties and underlying facts have no connection to this district, and because permitting Plaintiffs' forum-shopping disserves the interests of justice by preventing courts with a closer connection to this action from hearing these claims, the Court should transfer this case if it does not dismiss it for improper venue.

## BACKGROUND

### I. Statutory and Regulatory Framework

The National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, subjects "firearms" to various taxes and regulatory requirements, including that firearms covered by the NFA be registered with ATF. §§ 5811, 5821, 5822, 5841, 5842. The Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, requires anyone who deals in GCA-covered firearms to obtain a federal firearms license or specific authorization from ATF before "importing, manufacturing, or dealing in firearms," and establishes rules that licensees must follow. *See* §§ 922, 923. "Firearms" subject to both the GCA and NFA include short-barreled rifles, *see* 18 U.S.C. §§ 921(a)(7)-(8) (GCA); 26 U.S.C. §§ 5845(a)(3)-(4), 5845(c) (NFA), and short-barreled shotguns, *see* 18 U.S.C. §§ 921(a)(5)-(6) (GCA); 26 U.S.C. §§ 5845(a)(1)-(2), 5845(d) (NFA). However, the definitions of "rifle" and "shotgun" differ slightly between the statutes. *Compare* 18 U.S.C. §§ 921(a)(5), (7) (GCA) *with* 26 U.S.C. §§ 5845(c), (d) (NFA).

Under 28 C.F.R. §§ 0.130(a)(1)-(3) and 28 U.S.C. § 510, the Director of ATF is authorized to enforce the provisions of the GCA and NFA at issue in this case. Pursuant to that authority, ATF permits—but does not require—gun makers to seek classification letters from ATF prior to manufacturing a gun, by submitting a firearm sample for evaluation by the agency's Firearms Technology Industry Services Branch ("FTISB"), in accordance with procedures codified at 27 C.F.R. § 478.92(c). *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016) (describing the classification process). *See also* National Firearms Act Handbook, § 7.2.4 (revised 2009), https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-

7/download [https://perma.cc/DE74-3YZF] ("[A] firearms manufacturer is well advised to seek an ATF classification before going to the trouble and expense of producing [a device]."). A classification letter issued by ATF pursuant to 27 C.F.R. § 478.92(c) sets forth "the agency's official position concerning the status of the firearms under Federal firearms laws" including the NFA and GCA. *Id.* § 7.2.4.1. "Nevertheless, classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations." *Id.*

## II. Franklin Armory and the Claims Giving Rise to this Action

On or about March 13, 2018, Franklin, a Nevada corporation, submitted the Reformation[1] to ATF for classification. *See* Compl. ¶ 136, ECF No. 1; Pl.'s Ex. K at 1, ECF No. 1-11.[2] ATF's subsequent classification decision, issued via letter addressed to Franklin President Jay Jacobson in Minden, Nevada on November 13, 2018, explained that the Reformation constituted "a 'firearm' under the [Gun Control Act], 18 U.S.C. § 921(a)(3), a 'shotgun' under 18 U.S.C. § 921(a)(5), and a 'short barreled shotgun' under 18 U.S.C. § 921(a)(6)." Pl.'s Ex. L at 6-8, ECF No. 1-12. ATF did not find that the Reformation constituted a "firearm" under the NFA. *See* Compl. ¶ 142.

[1] As stated in Defendants' Unopposed Motion for Extension of Time, ECF No. 6, ATF is actively considering the relief Plaintiffs requested regarding the Reformation. ATF now expects to reach a decision as to the Reformation within 45 to 60 days. Because the issues of venue and associational standing are clear now, Defendants have filed their Motion to Dismiss to avoid unnecessarily delaying the Court's consideration of these threshold arguments. Defendants respectfully request that the Court consider resolving Defendants' motion within the 60-day time frame expected for ATF to be able to take action on the Reformation, to the extent the Court is able given its competing obligations, so that Plaintiffs' merits claims can be presented to a court of proper jurisdiction once ATF's decision as to the Reformation is reached. Defendants will promptly notify the Court and Plaintiffs in the event that ATF reaches a decision regarding the Reformation during the pendency of Defendants' Motion to Dismiss.

[2] Plaintiffs' exhibits were attached to the Complaint and are therefore proper for the Court to consider in ruling on a motion to dismiss without converting the motion to one for summary judgment. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). Additionally, "[i]n deciding whether venue is proper, a court a may rely on matters outside the pleadings." *Rare Breed Triggers, LLC v. Garland*, No. 3:22-CV-85, 2022 WL 17175089, at *3 (D.N.D. Nov. 4, 2022) (citing *Daughetee v. CHR Hansen, Inc.*, No. C09-4100, 2011 WL 1113868, at *2 (N.D. Iowa Mar. 25, 2011)).

Given this classification, ATF subsequently informed Franklin "that information listed on your website regarding the transfer and interstate transport of your Reformation firearm do not accurately reflect the provisions required for the transfer and interstate transport of a short-barreled shotgun as required under 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 922(b)(4)." Pl.'s Ex. N at 1, ECF No. 1-14. Because ATF determined that the Reformation constituted a short-barreled shotgun under the GCA but not under the NFA, and because "[o]ther than the Reformation firearms now produced by Franklin Armory[], ATF is unaware of any other firearm manufacturer having produced or sold a [Gun Control Act-only short-barreled shotgun]" such that similar firearms had "not previously been available in the marketplace," ATF warned Franklin that "existing federal firearm regulations do not provide a mechanism to process requests [for sale or transfer] regarding [such firearms] submitted pursuant to Sections 922(a)(4) or (b)(4)," given their unique nature. *Id.* at 2. ATF further stated that it was in the process of developing procedures to address the status of the Reformation firearm. *Id.*

On or about March 9, 2020, Franklin submitted its "novel" Antithesis firearm to ATF for classification by the FTISB. Compl. ¶ 78; Pl.'s Ex. B at 2-3, ECF No. 1-2. ATF's subsequent classification decision, issued via letter addressed to Franklin President Jay Jacobson dated December 23, 2021, after "testing and evaluation" by the FTISB, explained that the Antithesis constituted a "'short-barreled rifle' under 18 U.S.C. § 921(a)(8) and a 'firearm' as defined under [both the GCA and NFA,] 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(a)(3)." Pl.'s Ex. F at 1, 5, ECF No. 1-6.

Franklin, joined by associational Plaintiff FRAC, filed their Complaint in this action on January 4, 2023, challenging ATF's classification of the Antithesis firearm as arbitrary and capricious and challenging the lack of procedures by which to seek authorization to sell or transfer the Reformation firearm as unreasonably delayed or as constituting an arbitrary and capricious enforcement action. *See* Compl. ¶¶ 208-243.

## III. FRAC

FRAC states that it "is a non-profit association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies . . . representing U.S. firearms manufacturers, retailers, importers, and innovators." Compl. ¶ 23. FRAC also alleges that it "is headquartered in Bismarck, North Dakota." *Id.* ¶ 25.

According to records maintained by the Delaware Secretary of State's Division of Corporations, an entity named "Firearms Regulatory Accountability Coalition, Inc.," was incorporated as a "domestic" Delaware corporation (meaning FRAC is "domiciled" in Delaware for purposes of state law) on September 15, 2020. *See* Def.'s Ex. 1;[3] State of Delaware Div. of Corps., Field Definitions, Residency, https://icis.corp.delaware.gov/eCorp/FieldDesc.aspx#RESIDENCY [https://perma.cc/TKU9-XSK5] ("[d]omestic" residency status "means that this entity is domiciled in Delaware").

Representatives of FRAC filed initial lobbying registration reports with the Clerk of the United States House of Representatives shortly after FRAC was incorporated in Delaware, in accordance with the Lobbying Disclosure Act of 1995, 2 U.S.C. § 1603(a)(1). Therein, FRAC's address is listed as "1776 K Street NW, Washington, DC 20006." *See* Def.'s Exs. 2 and 3 at line 7.[4] Although the Lobbying Disclosure Act of 1995 requires that these reports "shall contain," *inter alia*, "the name, address, *and principal place of business* of the registrant's client," 2 U.S.C. § 1603(b)(2) (emphasis added), and the form included a space to provide FRAC's "[p]rincipal place of business (if different than [the address provided on] line 7)," this line is left blank on both documents, indicating that FRAC's

---

[3] Available at Delaware Secretary of State, Division of Corporations Entity Search, https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx [https://perma.cc/3DKB-YJB6].

[4] Available at Clerk of the United States House of Representatives, Lobbying Disclosures, https://disclosurespreview.house.gov/?index=%22lobbying-disclosures%22&size=10&keyword=%22\%22firearms%20regulatory%20accountability%20coalition\%22%22&sort=[{%22_score%22:true},{%22field%22:%22registrant.name%22,%22order%22:%22asc%22}] [https://perma.cc/Y7PG-7CZ8].

"principal place of business" matched the address on line 7, located in the District of Columbia. *See* Def.'s Exs. 2 and 3 at lines 7-8.

According to records maintained by the North Dakota Secretary of State, an entity named "Firearms Regulatory Accountability Coalition, Inc.," filed for North Dakota incorporation using a North Dakota address and filing type "Corporation – Nonprofit – Foreign" on February 16, 2021. Def.'s Ex. 4.[5] On April 19, 2021, however, FRAC continued to provide its address as "1776 K ST NW, Washington, DC 20006" when purchasing advertising on the social media platform Facebook. *See* Def.'s Ex. 5.[6] FRAC continues publicly advertise its location as "Washington, D.C." on social media platforms to this day. *See* Def.'s Ex. 6.[7] On January 4, 2023, FRAC joined Franklin in filing the instant Complaint in the District of North Dakota.

**LEGAL STANDARDS**

Defendants bring this motion under Federal Rule of Civil Procedure 12(b)(3), because the District of North Dakota is not a proper venue, and Rule 12(b)(1) because FRAC lacks standing.

Plaintiffs bear the burden of proving that venue is proper in response to a motion to dismiss under Rule 12(b)(3). *See Rare Breed Triggers, LLC v. Garland*, No. 3:22-CV-85, 2022 WL 17175089, at *2 (D.N.D. Nov. 4, 2022); *Uviado, LLC ex rel. Khan v. U.S. ex rel. IRS*, 755 F. Supp. 2d 767, 779 & n.7 (S.D. Tex. 2010); *Martensen v. Koch*, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013); *E.W. Wylie Corp. v. Transp. Tech. Servs., Inc.*, No. 3:11-cv-47, 2011 WL 13111712, at *2 (D.N.D. Oct. 24, 2011). *See also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (applying the "preponderance of the

---

[5] Available at North Dakota Secretary of State, FirstStop Business Search, https://firststop.sos.nd.gov/search/business [https://perma.cc/KL4T-28C5].

[6] Available at Facebook Ad Library, FRACaction, https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country=ALL&view_all_page_id=109498854552688&search_type=page&media_type=all [https://perma.cc/5K48-W666].

[7] Available at Twitter, FRACaction Profile, https://twitter.com/fracaction [https://perma.cc/5NYZ-TDTT?type=image].

evidence" standard). A court may consider materials outside the pleadings to determine whether venue is proper. *Rare Breed Triggers*, 2022 WL 17175089, at *3 (citing *Daughetee v. CHR Hansen, Inc.*, No. C09-4100, 2011 WL 1113868, at *2 (N.D. Iowa Mar. 25, 2011)). *See also Uviado*, 755 F. Supp. 2d at 780; *Martensen*, 942 F. Supp. 2d at 996. "If the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court." *Martensen*, 942 F. Supp. 2d at 996 (citation omitted); *see* 28 U.S.C. § 1406(a).

In response to a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Missouri v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995). In order for the Court to have subject-matter jurisdiction over a challenge to agency action, the plaintiff must have standing to sue. *See, e.g.*, *Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005). A court may likewise examine materials outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. *See Osborn*, 918 F.2d at 730.

## ARGUMENT

### I. Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred to a Proper Venue

#### A. Venue Is Not Proper in This District

The District of North Dakota is not a proper venue for this case.[8] The Complaint cites 28 U.S.C. § 1391(e)(1) as the basis for venue. *See* Compl. ¶ 35. Under that statute,

> [a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or

[8] Although Defendants also argue that FRAC lacks association standing, *see infra* Part II, the Court does not need to reach that issue, or any other issue, if it dismisses for lack of venue or transfers the case to a different venue. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (citations omitted)).

> an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). However, there is no basis for venue in this district under this statute because none of its enumerated conditions apply to this district as a factual matter.

1. <u>28 U.S.C. § 1391(e)(1)(A)</u>

Plaintiffs do not assert that venue can be established through either of the first two options —§ 1391(e)(1)(A) or § 1391(e)(1)(B). No Defendant resides in this district, so § 1391(e)(1)(A) does not apply. "Federal officials are residents of the district where a 'significant amount' of their duties are performed." *Rare Breed Triggers*, 2022 WL 17175089, at *3 (quoting *Smith v. Dalton*, 927 F. Supp. 1, 6 (D.D.C. 1996)). The named Defendants in this case, an agency of the United States—ATF—and the officials in charge of that agency, sued in their official capacities, are all based in Washington, D.C. *See, e.g.*, 14D Arthur R. Miller, et al., Federal Practice and Procedure § 3815 (4th ed. 2013) ("[T]he relevant inquiry is the official residence . . . ."); *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1338 (M.D. Ala. 2001).

2. <u>28 U.S.C. § 1391(e)(1)(B)</u>

Section 1391(e)(1)(B) also does not apply because no events giving rise to the claims in the Complaint occurred in this district, and as Plaintiffs concede, "no real property is involved in this action[.]" Compl. ¶ 35. The events that gave rise to this case occurred primarily in the District of Columbia, West Virginia, and Nevada; the classification letters were issued by ATF's offices in the District of Columbia and West Virginia,[9] and sent to Franklin President Jay Jacobson at addresses in

[9] The examination reports underlying ATF's classification decisions were completed in Martinsburg, West Virginia. *See, e.g.,* Pl.'s Ex. F at 1. Classifications are a function of ATF headquarters, although the physical location of the examination facility is in West Virginia.

Minden, Nevada.[10] Assuming, *arguendo*, that Plaintiffs claims implicate FRAC at all, *but see infra* part II, FRAC appears to have been formed as a Delaware corporation on September 15, 2020, *see* Def.'s Ex. 1, and was not registered in North Dakota until February 16, 2021, months after ATF's classification of the firearms at issue here. *See* Def.'s Ex. 4. Nowhere does the Complaint allege that any event occurred in North Dakota or that any property is located in North Dakota. In fact, the only mention of North Dakota in the Complaint is Plaintiffs' conclusory allegation that FRAC is "headquartered in Bismarck, North Dakota," which, even if true, does not establish venue under § 1391(e)(1)(B). Compl. ¶ 25.

3. 28 U.S.C. § 1391(e)(1)(C)

Venue cannot be sustained under § 1391(e)(1)(C) because no Plaintiff resides in this district as a factual matter. For purposes of venue,

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, **only in the judicial district in which it maintains its principal place of business** . . . .

28 U.S.C. § 1391(c)(2) (emphasis added). Franklin and FRAC are both incorporated entities with the capacity to sue and be sued, so their residence as plaintiffs for these purposes depends on where they maintain their "principal place[s] of business[.]" *Id.* *See also Rare Breed Triggers*, 2022 WL 17175089, at *3 (plaintiff "must establish its 'principal place of business' is in the District of North Dakota to show venue is proper."). The phrase "principal place of business" refers to the place where a company's officers "direct, control, and coordinate the [company's] activities[,]" also referred to as the company's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). *See also Ariz. Yage Assembly v. Barr*, No. 3:20-cv-03098-WHO, 2020 WL 5629833, at *15 (N.D. Cal. Sept. 21, 2020) (applying the *Hertz* "nerve center" test "[f]or purposes of the federal venue statute" and finding that plaintiffs' pleading

[10] *See* Pl.'s Ex. E at 1, ECF No. 1-5; Ex. J at 1, ECF No. 1-10; Ex. L at 1, and Ex. N at 1. Although one letter was mistakenly addressed to Tempe, Arizona, Defendants aver that this was an error.

regarding corporations' state of incorporation was insufficient to establish venue); *Rare Breed Triggers,* 2022 WL 17175089, at *4-6 (same).

Here, Plaintiffs fail to demonstrate that FRAC's "nerve center" lies in North Dakota, and not Washington, D.C. or elsewhere. Plaintiffs' entire claim for venue rests on a single allegation: that "FRAC is headquartered in Bismarck, North Dakota." Compl. ¶ 25.[11] But the Complaint says nothing about what sorts of activities take place at this address. The Supreme Court has cautioned against finding a principal place of business that is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz*, 559 U.S. at 97. Instead, the Court should look to FRAC's "place of actual direction, control, and coordination." *Id.* Thus, the mere fact that FRAC maintains an address in North Dakota is insufficient to demonstrate that FRAC's principal place of business lies within this judicial district, particularly given statements to the contrary by FRAC itself. *See Rare Breed Triggers,* 2022 WL 17175089, at *4-6 (analyzing venue under the *Hertz* "nerve center" test and finding incorporation and office address in North Dakota insufficient to establish gunmaker's principal place of business).

The Court should take FRAC at its word when it states that its principal place of business lies outside of this judicial district. In initial lobbying registration reports filed with the Clerk of the United States House of Representatives on October 20, 2020, and November 6, 2020, in accordance with 2 U.S.C. § 1603(a)(1), FRAC's address is listed as "1776 K Street NW, Washington, DC 20006." *See* Def.'s Exs. 2 and 3 at line 7. Although the Lobbying Disclosure Act of 1995 expressly requires that these reports "shall contain[,]" *inter alia*, "the name, address, *and principal place of business* of the registrant's client," 2 U.S.C. § 1603(b)(2) (emphasis added), and the form included a space reserved for FRAC's "[p]rincipal place of business (if different than [the address provided on] line 7)," this line is left blank on FRAC's filings, conveying that FRAC's principal place of business was the same as its

[11] Plaintiffs provide no allegation that Franklin's principal place of business is in North Dakota, or anywhere other than Nevada.

address—1776 K Street NW, Washington, D.C.—and *not* in North Dakota, as would be required for venue under § 1391(e)(1)(C). *See* Def.'s Exs. 2 and 3 at lines 7-8. Although FRAC's representatives filed fifteen additional lobbying disclosures between November 2020 and January 2023 (including a disclosure filed as recently as January 20, 2023), none of those filings list any addresses in North Dakota or otherwise indicate that FRAC's principal place of business lies anywhere but the District of Columbia. *See generally* Clerk of the United States House of Representatives, Lobbying Disclosures.[12]

Additional evidence further undermines FRAC's claim to North Dakota residency for purposes of venue. First, information on file with the Delaware Department of State Division of Corporations indicates that an entity named "Firearms Regulatory Accountability Coalition, Inc.," was incorporated as a "[d]omestic" Delaware corporation on September 15, 2020. *See* Def.'s Ex. 1. The Delaware Division of Corporations website states that a residency status of "Domestic means that this entity is domiciled in Delaware." *See* State of Delaware Div. of Corps., Field Definitions, Residency [https://perma.cc/TKU9-XSK5]. And although FRAC lists a Bismarck, North Dakota, address on file with the North Dakota Secretary of State, it appears to be incorporated as a "Corporation – Nonprofit – *Foreign*" in this state. *See* Def.'s Ex. 4 (emphasis added). FRAC's public statements about its location only serve to further distance itself from the District of North Dakota. When FRAC sought to secure paid advertisements on the social media platform Facebook, it listed its location as "Washington, DC," and provided an address of "1776 K ST NW, Washington, DC 20006"—the same address listed on FRAC's lobbying disclosure reports submitted to Congress under 2 U.S.C. § 1603. *See* Def.'s Exs. 2, 3, 5.[13]

---

[12] Available at https://disclosurespreview.house.gov/?index=%22lobbying-disclosures%22&size=10&keyword=%22\%22firearms%20regulatory%20accountability%20coalition\%22%22&sort=[{%22_score%22:true},{%22field%22:%22registrant.name%22,%22order%22:%22asc%22}] [https://perma.cc/Y7PG-7CZ8]

[13] FRAC's location on the social media platform Twitter is likewise displayed as "Washington, D.C." *See* Def.'s Ex. 7, https://twitter.com/fracaction [https://perma.cc/5NYZ-TDTT?type=image].

In all likelihood, then, FRAC is operated primarily out of the District of Columbia, where its lobbying, advertising, and advocacy operations are located, and its purported Bismarck headquarters is used as a mailing address or secondary office. As FRAC has indicated through multiple disclosures to Congress and the public, the "place of actual direction, control, and coordination" of FRAC's primary lobbying, advertising, and advocacy operations lies in Washington, D.C., not Bismarck, North Dakota. *Hertz*, 559 U.S. at 97. At the very least, the Complaint's conclusory statement that FRAC's "headquarters" is in Bismarck, Compl. ¶ 25, cannot satisfy the *Hertz* test concerning where the FRAC's leaders "direct, control, and coordinate the [company's] activities" in light of the contradictory filings discussed above. *Hertz*, 559 U.S. at 92–93. *See also id.* at 97 (cautioning against finding a principal place of business that is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat."). Plaintiffs bear the burden of proof to demonstrate that venue is proper, *Martensen*, 942 F. Supp. 2d at 996; *Rare Breed Triggers*, 2022 WL 17175089, at *2, and the available evidence indicates that FRAC's principal place of business is not, as a factual matter, in the District of North Dakota. Venue is therefore not proper in this district.

As FRAC's CEO stated in an October 2022 interview with Recoil Magazine, "[t]he whole purpose of creating FRAC was to have a presence in Washington." Blake Stilwell, *Firearms Regulatory Accountability Coalition: Taking On The BATFE*, Recoil (Oct. 10, 2022), https://www.recoilweb.com/firearms-regulatory-accountability-coalition-taking-on-the-batfe-176754.html [https://perma.cc/S6FD-TF3P]. The Court should take FRAC's leaders at their word. To find venue proper in the District of North Dakota would be to permit FRAC to simultaneously tell Congress and the public that its principal place of business lies in the District of Columbia when a Washington, D.C., address is convenient for its lobbying efforts, while telling the judiciary that FRAC resides in Bismarck when a North Dakota address is convenient to secure a favorable venue for

litigation. Such forum-shopping disserves the interests of justice, and the Court should not condone FRAC's gamesmanship by allowing this action to proceed in the District of North Dakota.

Accordingly, the Court has two options: either it "[1] shall dismiss, or [2] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3). The Court has discretion as between those options. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *see also Fischer v. First Nat'l Bank of Omaha*, 466 F.2d 511, 511 (8th Cir. 1972) (dismissing an interlocutory appeal to a transfer order under § 1406). "[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged." 14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3827 (4th ed. 2022). Dismissal in this case would cause minimal prejudice because Plaintiffs could likely refile in another district where there is no venue problem. *See* Fed. R. Civ. P. 41(b).

In the alternative, the case should be transferred to a district in which venue is proper. At least two districts meet this criteria: the District of Nevada, where Franklin's principal place of business is likely located, and the District for the District of Columbia, where the Defendants reside.

### B. Transfer Is Appropriate Even if Venue Is Proper in This District

Even if the Court concludes that venue in this district is proper, the Court should nonetheless transfer the case under 28 U.S.C. § 1404(a). Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A transfer motion under § 1404(a) "requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997) (citation omitted). Courts are not limited to consideration of these "enumerated

factors" and must make a "case-by-case evaluation of the particular circumstances." *Id.* at 691 (citation omitted). *See, e.g., Boston Telecom. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (considering, *inter alia*, the degree of "local interest in the lawsuit" and "the costs of resolving a dispute unrelated to a particular forum[]" in the context of a *forum non conveniens* analysis) (citation omitted).

Here, the totality of the circumstances favors transfer to either the District of Nevada or the District for the District of Columbia. Either district would be more convenient for the parties. The classification of Franklin's firearms was handled by the ATF in the District of Columbia and West Virginia. And whether or not FRAC actually conducts its business in the District of Columbia, it is indisputable that Plaintiffs' counsel are based in Washington, D.C., so any in-person hearing would be more convenient for the parties in the District for the District of Columbia. Similarly, to the extent witnesses will be needed at any point in these proceedings,[14] the District for the District of Columbia or the District of Nevada would be a more convenient forum. Franklin's President, Jay Jacobson, who has submitted a declaration supporting Plaintiffs' Complaint, appears to be based in Nevada, see Pl.'s Ex. E at 1; Ex. J at 1; Ex. L at 1, and Ex. N at 1, and the Complaint provides no indication that any individual connected with the design or classification of the Antithesis and Reformation is in North Dakota. And courts balancing the convenience of the parties may consider "the location where the conduct complained of occurred[.]" *Terra Int'l*, 119 F.3d at 696. Most of the complained-of events took place at ATF's Headquarters in the District of Columbia, *see supra* Part I(A), making that forum the most convenient.

The interests of justice also favor transfer. In evaluating this factor, courts consider, *inter alia*,

[14] Even if this Court or a transferee court denies a motion to dismiss, it is unlikely that resolution of this case will require witnesses or a trial. Because this action is brought pursuant to the APA, judicial review is limited to the administrative record presented by the agency, and discovery is generally not appropriate. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *see also Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1245 (E.D. Cal. 2013) ("Normally, APA cases are resolved on cross-motions for summary judgment . . . ."); *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 21 n.16 (D.D.C. 2011) ("[M]ost APA cases, [are resolved] through the consideration of cross motions for summary judgment . . . ."), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012).

"judicial economy" and "the plaintiff's choice of forum[.]" *Terra Int'l,* 119 F.3d at 696. Here, the Court should transfer this case to discourage the sort of forum-shopping that Plaintiffs have engaged in. *See Uviado*, 755 F. Supp. 2d at 786–87 (considering forum-shopping in evaluation of a transfer motion); *Gage v. Somerset Cnty.*, 322 F. Supp. 3d 53, 57-58 (D.D.C. 2018) (same). As a Nevada corporation, Franklin is generally subject to federal law as it is interpreted in and by the Ninth Circuit, and justice favors uniform application of precedent to its conduct and business operations. *Cf. Lab'y Corp. of Am. Holdings v. N.L.R.B.*, 942 F. Supp. 2d 1, 5 (D.D.C. 2013) ("It is not 'in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents.'") (quoting *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986)). In enacting § 1391(e), "Congress did not intend to give plaintiffs the right to bring such suits in any district they might choose. Instead, Congress gave plaintiffs the right to cho[o]se between one of several specifically listed potential districts. That statutory scheme would be effectively destroyed if the Court were to allow a plaintiff to manufacture or create venue in any district it might choose by means of a collusive joinder of a party." *Nat'l Distillers & Chem. Corp. v. Dep't of Energy*, 487 F. Supp. 34, 36-37 (D. Del. 1980) (dismissing where venue was technically proper under the venue statute because plaintiffs appeared to have improperly joined parties for purposes of manufacturing venue) (internal citations omitted). While deference should be given to a plaintiff's choice of forum, Plaintiffs should not be allowed to manufacture venue through contradictory statements of residency and inadequate assertions of associational standing.

## II. Plaintiffs' Complaint Should Be Dismissed for Lack of Venue Because FRAC Lacks Associational Standing

Dismissal is also warranted where the Complaint facially fails to establish that FRAC has standing to invoke this Court's jurisdiction either on behalf of its alleged members or on behalf of itself, and where Plaintiffs rely on FRAC to secure venue in the District of North Dakota. "No principle is more fundamental to the judiciary's proper role in our system of government than the

constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

An organization like FRAC has standing either (1) by "its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," *Warth v. Seldin*, 422 U.S. 490, 511 (1975), or (2) as the representative of its members who have been harmed. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). Here, the Complaint includes no allegations of direct harm to FRAC. Instead, Plaintiffs allege that "FRAC has associational standing to bring suit on behalf of its members" under the *Hunt* framework. Compl. ¶ 44. When a plaintiff is suing in a representational capacity under *Hunt*, it must show that it is a traditional voluntary membership organization or the functional equivalent of one, 432 U.S. at 344, and that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of N.D. v. Otter Tail Power Co.*, 611 F.2d 684, 690 (8th Cir. 1979) (quoting *Hunt*, 432 U.S. at 343). These requirements are "strictly" construed, and each must be met to secure associational standing. *See Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*, 557 F. Supp. 925, 934 (D. Minn. 1983) ("[t]he Eighth Circuit has construed *Hunt* quite strictly.").[15] On the face of the Complaint, FRAC fails *Hunt*'s test.

FRAC brings its claims for the benefit of a single purported member, Franklin, who is already a party to this suit. *See* Compl. ¶¶ 28, 44-45. But FRAC lacks associational standing to sue on

[15] Although the standing issue was eventually held to be moot in light of a Supreme Court ruling on the merits referred to in *Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*, 747 F.2d 1204 (8th Cir. 1984), the *MPIRG* trial court initially denied standing under the *Hunt* framework.

Franklin's behalf because: (1) FRAC has failed to allege facts demonstrating that it is either a traditional membership organization or the functional equivalent of one; (2) the narrow business interests of Franklin that Plaintiffs seek to protect through this action are not germane to FRAC's alleged organizational purpose; and (3) the claims asserted require the participation of FRAC's individual members in the lawsuit. Because FRAC fails to allege facts demonstrating that it has standing to sue on behalf of its purported members or itself, this Court lacks subject matter jurisdiction to hear its claims. FRAC should therefore be dismissed as a Plaintiff, and accordingly, this case should be dismissed because Plaintiffs rely upon FRAC to allege venue in the District of North Dakota.

### A. FRAC is Neither a Traditional Voluntary Membership Organization, Nor the Functional Equivalent of One

To assert associational standing on behalf of its members, *Hunt* first requires that a plaintiff be a traditional voluntary membership organization or the functional equivalent of one. *See* 432 U.S. at 344. Based on the facts asserted in the Complaint, the Court should conclude that FRAC is neither.

If a plaintiff claims to be the functional equivalent of a membership organization, then it has associational standing where it possesses the requisite "indicia of membership." *Id.* In *Hunt*, the Supreme Court held that an organizational plaintiff's purported members "possess *all* of the indicia of membership in an organization" where members participated in: (a) electing the entity's leadership, (b) serving in the entity's leadership or influencing its direction, and (c) financing the entity's activities, including the costs of the lawsuit. *Id.* at 344-45 (emphasis added).

Here, the Complaint provides no indication that FRAC's purported members elect any of its organizational leaders, serve as its leaders, influence its direction, or finance its activities and lawsuits. The only principal officer currently recorded on FRAC's website is Travis R. White, "President & CEO,"[16] who appears to bear no formal affiliation with Franklin—the only member of FRAC

[16] The Court may take judicial notice that Mr. White is listed as FRAC's President and CEO because it is "not subject to reasonable dispute[,]" both because it is a matter of public record and because it

identified in the Complaint. *See* Travis R. White, *Brace Litigation Filed in North Dakota Federal Court*, Firearms Regulatory Accountability Coalition, Inc. (Feb. 9, 2023), https://www.fracaction.org/post/brace-litigation-filed-in-north-dakota-federal-court [https://perma.cc/JJ3K-TKZE?type=image].[17] Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Osborn*, 918 F.2d at 730. FRAC has failed to allege facts demonstrating that its purported members possess *any* of *Hunt*'s three indicia of membership. Accordingly, FRAC does not have associational standing to represent Franklin as the functional equivalent of a membership organization. *See Mo. Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 809-10 (8th Cir. 2007) (lack of members under the *Hunt* indicia-of-membership framework dooms associational standing); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.* ("*ARC of Dallas*"), 19 F.3d 241, 244 (5th Cir. 1994) (federally funded advocacy organization for disabled individuals lacked associational standing where the organization "bears no relationship to traditional membership groups because most of its 'clients' . . . are unable to participate in and guide the organization's efforts.").

FRAC's failure to demonstrate that its purported members possess *any* indicia of membership is sufficient to defeat its claim to associational standing. But to the extent that FRAC may argue that it is a traditional voluntary membership organization, Courts have consistently held that the mere assertion of membership by a purported member is insufficient to establish general membership where the *Hunt* indicia are lacking. *See Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000); *AARP v. U.S. Equal Emp. Opportunity Comm'n.*, 226 F. Supp. 3d 7, 16 (D.D.C. 2016) (It is "clear that a mere assertion that an individual is a 'member' of an organization is not sufficient to

---

is a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[17] FRAC's webpage also includes a call for readers to "consider donating through our website to help us in our mission," further demonstrating that FRAC's activities and lawsuits are not entirely funded by its members (*i.e.*, corporate entities like Franklin), but rather by donations from the unaffiliated general public. *See* Travis R. White, *Brace Litigation Filed in North Dakota Federal Court*, Firearms Regulatory Accountability Coalition, Inc. (Feb. 9, 2023) [https://perma.cc/JJ3K-TKZE?type=image].

establish membership."); *Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 210 (D.D.C. 2007) (rejecting the assertion that if "individuals view themselves as members of the organization and . . . are viewed by the organization as members," then it establishes general membership (citation omitted)); *Heap v. Carter*, 112 F. Supp. 3d 402, 418 (E.D. Va. 2015) (holding that an organization's statement that "it maintains an active membership, including members who are enlisted in the United States Navy" with no additional detail is insufficient to determine whether they are a voluntary membership organization or the functional equivalent (citation omitted)). And that is all FRAC supplies here: a mere *ipse dixit* assertion that "FRAC serves as the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States" and that "Franklin is a member of FRAC". Compl. ¶¶ 23, 28. Simply calling a business a "member" is not enough.

The Complaint fails to demonstrate that FRAC possesses *any* indicia of membership; as a result, FRAC lacks associational standing to represent Franklin as a traditional voluntary membership organization or the functional equivalent of one.

### B. The Interests FRAC Seeks to Protect Are Not Germane to its Organizational Purpose

*Hunt*'s second prong requires that "the interests it seeks to protect are germane to the organization's purpose[.]" *Associated Gen. Contractors*, 611 F.2d at 690 (quoting *Hunt*, 432 U.S. at 343). In *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* the Supreme Court explained that *Hunt*'s "demand that an association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." 517 U.S. 544, 555-56 (1996). This action pertains to Franklin and its specific firearms alone—all FRAC contributes to this case is its allegation of North Dakota residency. Where Plaintiffs' Complaint seeks to protect Franklin's narrow business interests through individualized reclassification of its specific firearms rather than any broader interest germane to FRAC's industry-wide organizational

purpose, it is undeniable that Franklin—not FRAC—is Defendants' "natural adversary" for these claims. *Id.* The Court should accordingly dismiss FRAC for lack of associational standing and allow Franklin's claims to proceed in a proper venue.

In the Complaint, FRAC states that it "is a non-profit association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies," Compl. ¶ 23. FRAC further asserts that its "organizational purpose" is to "protect[] the firearms industry from government abuse," and quotes the mission statement found on its website, stating that:

> FRAC's sole mission is to aggressively advocate for and defend firearms, ammunition, and accessories manufacturers and importers from government overreach. This includes holding the government accountable for arbitrary and capricious policies and rulings and ensuring that the government's regulation of the industry is conducted in an open and transparent manner.

*Id.* ¶ 46 (citation omitted). But FRAC's "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to [confer standing]." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Instead, *Hunt*'s second prong provides that an organizational plaintiff like FRAC only has standing to sue on behalf of its members when its purpose aligns with the interest it seeks to advance in the litigation. *See* 432 U.S. at 343.

In this case, however, FRAC is not challenging ATF's practice of firearms classification and regulation as applied to the "firearms industry" as a whole. Nor does this action seek "consistent treatment" for the broad spectrum of manufacturers and importers that FRAC claims to represent. Quite the opposite. By their own admission, Plaintiffs seek *special* treatment for a single manufacturer—Franklin—who makes the Antithesis and Reformation firearms: "a new type of weapon" that is allegedly "unique" in its design. *See, e.g.,* Compl. ¶¶ 4, 11-12, 129. Franklin alone stands to benefit from Plaintiffs' requested relief in this suit. Obtaining a competitive business advantage for Franklin through selective reclassification and deregulation of the Antithesis and

Reformation is not germane to FRAC's stated mission of "consistent treatment" across the entire industry of manufacturers and importers. Accordingly, where the interests FRAC seeks to protect in this case are not germane to its stated purpose, FRAC lacks associational standing to sue on Franklin's behalf. *Cf. Associated Gen. Contractors*, 611 F.2d at 690-91 (Applying *Hunt* and finding that the right "to work on [a] project . . . without having to sign a collective bargaining agreement . . . and without having to pay wages and fringe benefits equal to minimum standards" was not germane to the organizational purpose of "improv[ing] labor conditions, eliminat[ing] unfair or unethical practices or promot[ing] fair competition."). *See also MPIRG*, 557 F. Supp. at 932-34 (interests protected not germane to organizational purpose); *Ass'n of Indep. Gas Station Owners v. QuikTrip Corp.*, No. 4:11-CV-2083-JCH, 2012 WL 2994079, at *3 (E.D. Mo. July 20, 2012) (same).

FRAC cannot evade the Eighth Circuit's strict requirements for associational standing by asserting a limitless organizational purpose of preventing all "government abuse" and "overreach." Compl. ¶ 46 (citation omitted). *See MPIRG*, 557 F. Supp. at 934 (observing that "[t]he Eighth Circuit has construed *Hunt* quite strictly."). The Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law . . . . Such claims amount to little more than attempts to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government." *Id.* at 934 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982)). Where Plaintiffs expressly allege that Franklin's firearms are "new" and "unique," *see* Compl. ¶¶ 4, 11, a victory for Plaintiffs in this case would necessarily accrue to Franklin alone, rather than any broader organizational purpose FRAC claims to represent. This conclusion does not prevent Franklin from suing its own right to advance its narrow business interests through reclassification—indeed, Franklin has already done so by filing this case. It merely requires dismissal of FRAC for lack of associational standing, and thus, dismissal or transfer of this action to a district where venue is proper for Franklin's self-interested claims.

**C. The Claims Asserted Require the Participation of FRAC's Individual Members**

Assuming, *arguendo*, that FRAC qualifies as a traditional voluntary membership organization or the functional equivalent of one, dismissal is also nevertheless warranted because participation of FRAC's individual members would be required to sustain Plaintiffs' claims. An association "has standing to bring suit on behalf of its members when . . . neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. This requirement for individual representation can arise in two ways: (1) where the need for "individualized proof" pervades plaintiffs' claims, as in *Terre Du Lac Ass'n v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir. 1985), and (2) where the status and interests of an association's members "are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." *Associated Gen. Contractors*, 611 F.2d at 691 (rejecting associational standing due to "actual and potential conflicts" among members' interests in the litigation). Both are true here, and FRAC should therefore be dismissed for lack of associational standing.

1. Participation of FRAC's Individual Members is Required Because Individualized Proof is Necessary to Sustain Plaintiffs' Claims

The Eighth Circuit has long "construed *Hunt* quite strictly," finding that plaintiffs lack associational standing when the nature of the claims at issue involves individualized proof, or when the association is not in a position to speak for its members due their diverse or conflicting interests with respect to the claims asserted. *See MPIRG*, 557 F. Supp. at 934-35. In *Terre Du Lac Ass'n*, plaintiffs urged the court to read *Hunt* narrowly, and to adopt the proposition that the rule against granting associational standing where the "participation of individual members" is required refers solely to participation in the form of in-court testimony. The Eighth Circuit expressly rejected this approach, holding that "[s]uch a narrow reading of *Hunt* is unfounded," and that "[a]ssociational standing is properly denied where . . . the need for 'individualized proof' so pervades the claims asserted that the furtherance of the members' interests requires individual representation." *Terre Du Lac Ass'n*, 772 F.2d at 471 (quoting *Hunt*, 432 U.S. at 344). Here too, FRAC lacks standing because

Plaintiffs' claims require individualized examination of facts that are particularized to Franklin and Franklin alone. "Associational standing is *inappropriate* if whatever injury may have been suffered is peculiar to the individual members concerned, and both the fact and extent of injury would require individualized proof." *Northland Parent Ass'n v. Excelsior Springs Sch. Dist. #40*, 571 F. Supp. 3d 1104, 1114 (W.D. Mo. 2021) (quoting *Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 977 (7th Cir. 2019)).

Specifically, the need for individualized proof inescapabilty pervades Plaintiffs' challenge to ATF's classification of the Antithesis firearm—a classification based on extensive analysis of the specific design features, method of operation, and intended use of the firearm provided by Franklin to ATF for testing. *See, e.g.,* Pl.'s Ex. F, at 2-5. To resolve Plaintiffs' classification claim, the Court must inevitably look to the individualized facts considered by ATF in making its classification decision for Franklin's firearm *See* Compl. ¶ 211 (articulating several specific features of the Antithesis that, Plaintiffs contend, warrant reclassification); *id.* ¶¶ 4, 78; Pl.'s Ex. A ¶ 10, ECF No. 1-1 (allegations concerning Antithesis as a "new type of weapon" equipped with a "novel barrel"). This is precisely the kind of "individualized proof" that the Eighth Circuit has found dooms claims of associational standing. *See Terre Du Lac Ass'n*, 772 F.2d at 471 (Rejecting associational standing where, "[i]n order to determine whether a specific performance remedy is appropriate, the court would have to receive substantial evidence relating to the individual claims and damages of members of the Association in order for it to determine whether specific performance, as opposed to a damages remedy, would be 'fair, just, and equitable.'" (citation omitted)).

Plaintiffs allege that participation of individual members is not required because they seek declaratory and injunctive relief. *See* Compl. ¶ 47. This is incorrect. "[S]eeking equitable [declaratory and injunctive] relief does not *per se* overcome the prudential prong of associational standing . . . [as] associational standing is only proper if neither *the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit." *Leaming v. Jackson Cnty.*, No. 03-00940-CV-W-

SWH, 2006 WL 1046906, at *22 (W.D. Mo. Apr. 19, 2006) (quoting *Comm. for Reasonable Regul. of Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 365 F. Supp. 2d 1146, 1163 (D. Nev. 2005)) (finding that the participation of individual members was required in an action for declaratory and injunctive relief, defeating the association's standing). *See also Cmty. Stabilization Project v. Cuomo*, 199 F.R.D. 327, 333 (D. Minn. 2001) (No associational standing in action for declaratory and injunctive relief where examination of individual members' circumstances was required) (citing *Terre Du Lac Ass'n*, 772 F.2d at 471); *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 263 F. Supp. 2d 82, 124 (D.D.C. 2003), *aff'd*, 366 F.3d 930 (D.C. Cir. 2004) (Rejecting associational standing in an APA action for declaratory and injunctive relief seeking to vacate agency action where "the presence of [members] in this action is required to both assert and protect their interests."). Here, as in *Warth*, "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515-16. Because Plaintiffs' claims require individualized proof, participation FRAC's individual members is required, and FRAC should accordingly be dismissed for lack of associational standing.

2. The Interests of FRAC's Members are Too Diverse and the Possibilities of Conflict Too Obvious to Make FRAC an Appropriate Vehicle to Litigate These Claims

Associational standing likewise is inappropriate when the "status and interests" of an organization's members "are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." *Associated Gen. Contractors*, 611 F.2d at 691. *See also MPIRG*, 557 F. Supp. at 934-35 (Finding associational plaintiff lacked standing where it was "clearly not in a position to speak for its members on this issue."). Given the nature of Plaintiffs' claims, dismissal is therefore also warranted where the relief Plaintiffs seek stands to benefit one manufacturer—Franklin—at the expense of FRAC's other purported members across the firearms industry. At a minimum, the interests of FRAC's members are too diverse to make it an appropriate vehicle to litigate these claims.

In *Associated General Contractors*, a non-profit trade association composed of 138 general contractors alleged that a stabilization agreement negotiated between the defendants and several labor unions covering all construction work on a power plant project violated state labor laws and federal antitrust laws. *See* 611 F.2d at 686-87. Observing that "[s]ome members [of the association] are not qualified and others are not willing to work on the project; some stand to benefit from working on the project under the Agreement and still others will be hurt by not being able to do so," the Eighth Circuit held that the trade association failed to meet the third prong of the *Hunt* test because the "status and interests" of its members were "too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." *Id.* at 691. The court considered both "actual and potential conflicts" among members' interests and rejected the association's arguments for standing even though "the association voted unanimously to bring the lawsuit," holding that "[i]t is for the court, not the members of the association, to determine whether their interests require individual representation." *Id.* *See also Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1253 (4th Cir. 1991) (organization could not challenge constitutionality of affirmative action plan where some organization members benefitted from the plan while others would benefit from its demise).

Here too, the diversity of interests and potential for conflict among FRAC's purported members demands individual representation. Franklin's interest in this action is clear: it designed and manufactured the Antithesis and Reformation firearms at issue, and now seeks to compel agency action to enable it to profit from the deregulated sale of those weapons. *See* Compl. ¶¶ 37, 40-41 (alleging that "inability to sell the Reformation to unlicensed customers is causing Franklin to lose millions of dollars in revenue."). But the interests of FRAC's other purported members—Franklin's competitors—are far from aligned. *See id.* ¶ 23 (alleging that FRAC represents other "U.S. firearms manufacturers, retailers, importers, and innovators," in addition to Franklin). FRAC's other members

have presumably complied with ATF-enforced federal firearms regulations and remain subject to the complained-of restrictions on the sale or transfer of short-barreled rifles and shotguns. *See United States v. Ahrens*, 530 F.2d 781, 785 (8th Cir. 1976) (noting that courts accord a "presumption of regularity" to the official acts of government agencies, "and, in the absence of clear evidence to the contrary . . . presume that they have properly discharged their official duties." (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926))). Therefore, the relief requested by Plaintiffs would amount to a special advantage for Franklin's products—the only firearms at issue in this case—by exempting the Antithesis and Reformation from the regulatory restrictions faced by FRAC's other members. Although Franklin would surely benefit from the competitive advantage over rival manufacturers conferred by selective reclassification of its firearms and its firearms alone, such a judicially imposed advantage over FRAC's other members creates an obvious possibility of conflicting economic interests among members who are competitors in the firearms market, making FRAC a poor vehicle to litigate these claims. *See Associated Gen. Contractors*, 611 F.2d at 691; *Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Plan. Ass'n*, 830 F.2d 1374, 1380-81 (7th Cir. 1987) (plaintiffs' "interests demand individual, not associational, representation" where the remedy sought would adversely affect some of the organization's members while benefiting others); *Md. Highways Contractors Ass'n*, 933 F.2d at 1253 (same).

When faced with an obvious potential for conflict among members due to a diversity of status and interests, a plaintiff seeking associational standing might ordinarily allege facts showing widespread support for the litigation through unanimous vote or other demonstration of universal membership support for the action. *But cf. Associated Gen. Contractors*, 611 F.2d at 691 (rejecting associational standing despite unanimous vote). Perhaps unsurprisingly—given that FRAC is neither a traditional voluntary membership organization nor the functional equivalent of one—Plaintiffs provide no allegation of broad membership support for their individualized claims. *See* Compl. ¶ 47.

Given the obvious potential for membership conflict and lack of any allegation to the contrary, FRAC lacks associational standing because the claims asserted and relief requested "require[] the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.

If Franklin wishes to challenge ATF's regulation of the Antithesis and Reformation, it may do so in a district where it or the Defendants reside, or where a substantial part of the events or omissions giving rise to its claims occurred. *See* 28 U.S.C. § 1391(e)(1). And when Franklin presents its claims to a court with jurisdiction, the Government will defend them. But the Eighth Circuit's strict requirements for associational standing prevent FRAC from joining this case simply to secure a more favorable venue on Franklin's behalf. Because FRAC fails to satisfy *Hunt*'s requirements for associational standing, the Court should dismiss FRAC from this case and, since FRAC is the only party claiming North Dakota residency, dismiss Franklin's remaining claims for lack of venue.

## CONCLUSION

For the reasons stated above, Plaintiffs' Complaint should be dismissed, or in the alternative, transferred to a proper venue.

Dated: March 24, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ *Andrew J. Rising*
ANDREW J. RISING
D.C. Bar No. 1780432
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 11406
Washington, D.C. 20005
Phone: (202) 514-0265
E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*