UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

FIREARMS REGULATORY
ACCOUNTABILITY COALITION, INC., *and*
FRANKLIN ARMORY, INC.,

    Plaintiffs,

                                 Case No. 1:23-cv-00003-DLH

  v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United States, *et
al.*,

    Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(3)  OR,
<u>IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................................1

ARGUMENT.......................................................................................................................................2

I.     FRAC Lacks Associational Standing.........................................................................................2

       A.    Plaintiffs Cannot Evade *Hunt*'s Indicia-of-Membership Test, Under Which FRAC Does Not Qualify as a Membership Organization...................................2

       B.    The Interests Advanced by Plaintiffs Are Particularized to Franklin and Not Germane to FRAC's Organizational Purpose. ........................................................3

       C.    The Claims Asserted Require the Participation of FRAC's Individual Members...................................................................................................................5

            1.    The Merits of Plaintiffs' Claims Require Proof Individualized to Franklin. ...............................................................................................6

            2.    The Potential for Membership Conflict is Obvious. .............................7

II.    Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred.........................8

III.   Comparative Local Interest Warrants Transfer Even if Venue Is Proper in This District. .................................................................................................................................9

CONCLUSION...................................................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*AARP v. U.S. Equal Emp. Opportunity Comm'n,*
226 F. Supp. 3d 7 (D.D.C. 2016) ................................................................................ 2

*Am. Trucking Ass'ns, Inc. v. FMCSA,*
724 F.3d 243 (D.C. Cir. 2013) ................................................................................ 5

*Ark. Med. Soc'y v. Reynolds,*
6 F.3d 519 (8th Cir. 1993) ................................................................................ 5

*Associated Gen. Contractors of N.D. v. Otter Tail Power Co.,*
611 F.2d 684 (8th Cir. 1979) ................................................................................ 3, 4, 8

*Boston Telecom. Grp., Inc. v. Wood,*
588 F.3d 1201 (9th Cir. 2009) ................................................................................ 10

*Fla. Power & Light Co. v. Lorion,*
470 U.S. 729 (1985) ................................................................................ 7

*Food & Water Watch v. FERC,*
28 F.4th 277 (D.C. Cir. 2022) ................................................................................ 7

*Grp. Health Plan, Inc. v. Philip Morris, Inc.,*
86 F. Supp. 2d 912 (D. Minn. 2000) ................................................................................ 2

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) ................................................................................ 10

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ................................................................................ *passim*

*Md. Highways Contractors Ass'n, Inc. v. Maryland,*
933 F.2d 1246 (4th Cir. 1991) ................................................................................ 8

*Minn. Pub. Int. Rsch. Grp. v. Selective Serv. Sys.,*
557 F. Supp. 925 (D. Minn. 1983) ................................................................................ 3, 5

*Mo. Prot. & Advocacy Servs., Inc. v. Carnahan,*
499 F.3d 803 (8th Cir. 2007) ................................................................................ 2

*Nat'l Distillers & Chem. Corp. v. Dep't of Energy,*
487 F. Supp. 34 (D. Del. 1980) ................................................................................ 10

*Nat'l Org. of Veterans' Advocs. v. Sec'y of Veterans Affs.,*
981 F.3d 1360 (Fed. Cir. 2020) ................................................................................ 5

*Nat'l Wildlife Fed'n v. Harvey,*
437 F.Supp.2d 42 (D.D.C. 2006) ................................................................................ 10

*Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*,
 263 F. Supp. 2d 82 (D.D.C. 2003) ................................................................ 6

*Pharm. Rsch. & Mfrs. of Am. v. Williams*,
 2023 WL 2750822 (8th Cir. Apr. 3, 2023) ........................................... 3, 5

*Terre Du Lac Ass'n v. Terre Du Lac, Inc.*,
 772 F.2d 467 (8th Cir. 1985) ............................................................... 6, 7

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
 517 U.S. 544 (1996) ................................................................................ 4

## Statutes

2 U.S.C. § 1603 ............................................................................................. 9

28 U.S.C. § 1391 ........................................................................................... 9

28 U.S.C. § 1404 ......................................................................................... 10

## Regulations

27 C.F.R. § 478.92 ................................................................................. 4, 5, 8

## Other Authorities

Restatement (Third) of the Law Governing Lawyers 2 Intro. (2000). .......................................... 9

Travis R. White, *Brace Litigation Filed in North Dakota Federal Court*, Firearms Regulatory
Accountability Coalition, Inc. (Feb. 9, 2023),
 https://www.fracaction.org/post/brace-litigation-filed-in-north-dakota-federal-court
 [https://perma.cc/JJ3K-TKZE?type=image] ................................................ 3

United States House of Representatives, Lobbying Disclosures,
 https://disclosurespreview.house.gov/?index=%22lobbying-
 disclosures%22&size=10&keyword=%22\%22firearms%20regulatory%20accountability%20coa
 lition\%22%22&sort=[{%22_score%22:true},{%22field%22:%22registrant.name%22,%22order
 %22:%22asc%22}] [https://perma.cc/Y7PG-7CZ8] ............................................ 10

# INTRODUCTION

This action against the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") involves two weapons manufactured by Plaintiff Franklin Armory, Inc. ("Franklin"), which produces the FAI-15 Antithesis short-barreled rifle ("Antithesis"), and the Reformation short-barreled shotgun ("Reformation") and is located in Nevada.   Franklin and its co-plaintiff Firearms Regulatory Accountability Coalition ("FRAC") (1) challenge ATF's classification of the Antithesis, and (2) contend that ATF has unreasonably and arbitrarily delayed formulating a process that would allow Franklin to request authorization for the sale, delivery, and interstate transportation of the Reformation.   Defendants' motion to dismiss demonstrates that FRAC lacks standing and that this district is not a proper venue for Plaintiffs' Nevada-centered claims.

Plaintiffs' combined opposition and motion for summary judgment[1] only confirms that dismissal or transfer is warranted.   In the main, Plaintiffs largely fail to engage with the relevant jurisdictional issues.   Instead, Plaintiffs contend that Defendants' motion was offered for purposes of delay.   This contention is false.   Defendants' motion addresses significant threshold issues of jurisdiction and venue and was filed to expedite consideration of these issues while, on a parallel track, ATF considers the relief requested regarding the Reformation.   Rather than moving to stay or withholding jurisdictional arguments until ATF's consideration was complete, Defendants raised these threshold issues at the outset of the case to permit the Court to assess necessary jurisdictional issues while ATF continues to assess the Reformation.   ATF respectfully requested that the Court consider expediting its review of this motion.   *See* Defs.' Mot. Dismiss or Transfer at 3 n.1, ECF No. 9.   In any event, this Court lacks jurisdiction over FRAC's claims because FRAC lacks standing and venue is improper here.   And even if venue were proper, the Court should transfer this case.

---

[1] In accordance with Local Rule 7.1(A)(1), Defendants plan to respond to Plaintiffs' April 14, 2023 motion for summary judgment by May 5, 2023.

## ARGUMENT

**I.   FRAC Lacks Associational Standing.**

FRAC lacks standing, as Defendants' opening motion shows.  Plaintiffs' arguments to the contrary are misplaced.  Plaintiffs try to avoid application of the appropriate test and seek to clarify various aspects of their organizational structure, but cannot manufacture standing to establish FRAC's status as a Plaintiff alongside Franklin.

### A.   Plaintiffs Cannot Evade *Hunt*'s Indicia-of-Membership Test, Under Which FRAC Does Not Qualify as a Membership Organization.

In their opening motion, Defendants argued that because FRAC did not possess any of the required indicia of membership, it was not the sort of membership organization that could obtain associational standing.  In response, Plaintiffs argue that FRAC is a traditional membership organization to which the indicia-of-membership test articulated in *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977), should not apply.  This argument lacks merit.  Although Plaintiffs selectively quote *AARP v. U.S. Equal Emp. Opportunity Comm'n* for the proposition that "[m]ost cases skip over the indicia of membership inquiry where 'membership' is asserted," they omit the Court's cautions that "it is equally clear that a mere assertion that an individual is a 'member' of an organization is not sufficient to establish membership[,]" and that "[t]here appears to be a gap in the associational standing case law about when or how the indicia of membership inquiry should be applied."  226 F. Supp. 3d 7, 16 (D.D.C. 2016).  *See* Pls.' Opp'n & Mot. Summ. J. ("Opp'n") at 11-12, ECF No 11. Contrary to Plaintiffs suggestion, *Hunt* is controlling law on the required proof for associational standing and provides the correct test for membership.  *See, e.g.*, *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007) (applying *Hunt*'s indicia of membership); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000) (same).[2]

---

[2] Plaintiffs also cite a new decision, *Pharm. Rsch. & Mfrs. of Am. v. Williams*, 2023 WL 2750822, at *11 (8th Cir. Apr. 3, 2023), in support of their argument that the indicia-of-membership test should not

Under the applicable test, FRAC does not qualify as a membership organization for purposes of associational standing. While the declaration attached to Plaintiffs' opposition speaks to two of the required indicia of membership, *see Hunt*, 432 U.S. at 344-45 (considering whether purported members participated in (a) electing the entity's leadership and (b) serving in the entity's leadership or influencing its direction), that declaration fails to say anything about whether FRAC's members finance the costs of this lawsuit as considered by the *Hunt* court. *Compare id.* (finding associational standing where "[members] *alone* finance [the organization's] activities, *including the costs of this lawsuit*) (emphasis added), *with* White Decl. ¶ 20, ECF No. 11-2.[3] *Cf. Minn. Pub. Int. Rsch. Grp. ("MPIRG") v. Selective Serv. Sys.*, 557 F. Supp. 925, 933 (D. Minn. 1983) (rejecting associational standing under *Hunt*'s second prong even where organization claiming to advocate on behalf of students was "primarily but not wholly funded by students."). Lacking such a showing, FRAC cannot be deemed a membership association under *Hunt* and therefore cannot have associational standing in the first instance.

**B.     The Interests Advanced by Plaintiffs Are Particularized to Franklin and Not Germane to FRAC's Organizational Purpose.**

Even if FRAC qualifies as a membership organization, it lacks standing. While FRAC need not show that each of its members must have been directly injured by a challenged action, Pls.' Opp'n at 17, associational standing requires that "(b) the interests [plaintiff] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of N.D. v. Otter Tail Power Co.*, 611 F.2d 684, 690-91 (8th Cir. 1979) (quoting *Hunt*, 432 U.S. at 343) (noting that "each of the

---

apply to FRAC. *See* Pls.' Opp'n at 12. But the defendants in *Williams* challenged standing under the "third prong" of *Hunt* alone, not under the indicia framework. *See* 2023 WL 2750822, at *11.

[3] Indeed, FRAC's webpage includes a call for readers to "consider donating through our website to help us in our mission," demonstrating that FRAC's activities and lawsuits are not entirely funded by its members (*i.e.*, corporate entities like Franklin), but rather by donations from the unaffiliated general public. *See* Travis R. White, *Brace Litigation Filed in North Dakota Federal Court*, Firearms Regulatory Accountability Coalition, Inc. (Feb. 9, 2023), https://perma.cc/JJ3K-TKZE?type=image.

three requirements must be met"). These latter two prongs are where FRAC's claim to standing ultimately fails, because Franklin, not FRAC, is Defendants' only "natural adversary" for these claims. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555-56 (1996).

As to germaneness, Plaintiffs first assert that FRAC exists "to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies," Compl. ¶ 23, and argue that this action will further FRAC's goal simply because it is brought under the Administrative Procedure Act ("APA"). *See* Pls.' Opp'n at 15. But Plaintiffs' attenuated argument is refuted by the contents of their own Complaint, which includes a prayer for relief that would run solely to Franklin. *See* Compl. Prayer for Relief ¶¶ A-E (requesting relief running to Franklin's products, which Plaintiffs claim are "unique" within the industry (*See, e.g., id.* ¶¶ 4, 11-12, 129)). Even if Plaintiffs prevail on the merits and obtain the relief requested, that relief will not ensure consistent treatment across the industry as articulated by FRAC's mission because Plaintiffs are wrong on the law governing ATF classifications. Under 27 C.F.R. § 478.92, ATF classifications apply only to the firearm configuration submitted to ATF for testing. *See* 27 C.F.R. § 478.92(c) ("each classification is limited to the firearm in the configuration submitted.").

Next, Plaintiffs assert that because Franklin is part of the firearms industry, this case is germane to "FRAC's purpose [of] 'protecting the firearms industry from government abuse.'" Pls.' Opp'n at 17 (quoting Compl. ¶ 46). Again, this argument fails because it would impermissibly collapse the first prong of *Hunt*—that at least one member have standing—into the second. *See Associated Gen. Contractors*, 611 F.2d at 690-91 (considering each prong of the *Hunt* test independently). The mere fact that the interests advanced in this lawsuit involve a member of industry is not enough; the Eighth Circuit requires a closer connection between organizational purpose and litigation interests. In *Associated Gen. Contractors*, for example, a trade association whose purpose concerned "improv[ing] labor conditions, eliminat[ing] unfair or unethical practices [and] promot[ing] fair competition" could

not invoke its members' work on a project covered by a labor agreement to connect the association's purpose to the interests implicated by the litigation. *See* 611 F.2d at 690-91. *See also MPIRG*, 557 F. Supp. at 932-34 ("interest in availability of financial aid without allegedly unconstitutional restrictions" not germane to purpose even though the organization was student-directed, "many of the issues [it] has been involved with relate to student concerns and [] it is an organization primarily but not wholly funded by students.").

Here, the connection between the individualized claims advanced in this lawsuit and FRAC's purpose of protecting the firearms industry relies on Plaintiffs' assertion that classification of Franklin's weapons "adversely impacts the industry writ large." Pls.' Opp'n at 15-16; White Decl. ¶ 33. But this connection fails because ATF's classifications are non-precedential and apply solely to the particular firearm for which classification is sought, as noted above. *See* 27 C.F.R. § 478.92. This distinguishes the claims asserted here from the cases cited by Plaintiffs, where organizational plaintiffs challenged agency rules or statutes of general applicability, as opposed to the type of non-precedential actions particularized to the level of a single firearm at issue here.[4] Here, by contrast, Plaintiffs only challenge ATF's classification of Franklin's unique firearm (and seek to expedite the decision on another), rather than the federal firearms laws or the classification process writ large. A victory for Plaintiffs in this case would necessarily accrue to Franklin, rather than furthering FRAC's alleged broader organizational purposes.

### C. The Claims Asserted Require the Participation of FRAC's Individual Members.

FRAC's associational standing should also be rejected because the claims asserted by Plaintiffs require the participation of FRAC's individual members, both because individualized proof would be

---

[4] *Cf. Ark. Med. Soc'y v. Reynolds*, 6 F.3d 519 (8th Cir. 1993) (challenging rule cutting reimbursement to noninstitutional Medicaid providers statewide); *Williams*, 2023 WL 2750822 (challenging constitutionality of state statute); *Nat'l Org. of Veterans' Advocs. v. Sec'y of Veterans Affs.*, 981 F.3d 1360 (Fed. Cir. 2020) (challenging interpretive rule for disability claims); *Am. Trucking Ass'ns, Inc. v. FMCSA*, 724 F.3d 243 (D.C. Cir. 2013) (challenging legislative rule setting daily driving limits across industry).

required to grant Plaintiffs' motion for summary judgment as currently presented, and because the claims raise obvious potential conflicts which make this case ill-suited to associational representation.

First, and contrary to Plaintiffs' suggestion, there is no *per se* exception to the third prong of the *Hunt* test simply because declaratory and injunctive relief is sought; the Court must consider both the relief requested *and* the nature of the claims asserted to determine whether either would be ill-suited to group representation.  *See* Defs.' Mot. Dismiss or Transfer at 23-24; *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 263 F. Supp. 2d 82, 124 (D.D.C. 2003), *aff'd*, 366 F.3d 930 (D.C. Cir. 2004) (Rejecting associational standing in an APA action for declaratory and injunctive relief where "the presence of [members] in this action is required to both assert and protect their interests.").  Even the portion of *Hunt* quoted by Plaintiffs in support of their argument simply provides that a case may be "properly resolved in a group context" when neither the relief requested *nor the claim asserted* "requires individualized proof." *Hunt*, 432 U.S.at 344.  A request for equitable relief, standing alone, is not dispositive of whether participation of an association's individual members is required.

   1.  The Merits of Plaintiffs' Claims Require Proof Individualized to Franklin.

Plaintiffs again attempt to manufacture a *per se* rule where none exists on the issue of individualized proof, arguing that because they have brought an APA action, individualized proof is unnecessary for their claims.  *See* Pls.' Opp'n at 18-19.  *But see Nat'l Wrestling Coaches Ass'n*, 263 F. Supp. 2d at 124 (rejecting associational standing in APA case due to need for member participation); *Terre Du Lac Ass'n v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir. 1985) (rejecting "narrow reading" of *Hunt*'s individualized proof element).  Moreover, Plaintiffs' argument is contradicted by their own motion for summary judgment, which asks the court to rely on individualized proof in the form of the representations of Plaintiffs' counsel—rather than an administrative record yet to be compiled by ATF—to resolve the merits of case.  *See* Pls.' Opp'n & Mot. Summ. J. at 28-40, ECF Nos 12 and 13.

Plaintiffs are correct that judicial review in an APA action is properly "limited to the

administrative record presented by the agency," and that the Court's review should be so limited here. *Id.* at 19; *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (the APA provides for review "based on the record *the agency* presents to the reviewing court" (emphasis added) (citation omitted)).   But because Plaintiffs have prematurely moved for summary judgment without an administrative record, they have necessarily asked the Court to resolve their claims by resorting to individualized proof alone. Plaintiffs' effort to escape the requirements of associational standing by pointing to the fact that APA review is limited to an administrative record, while simultaneously urging the Court to resolve this case *without* such an administrative record, is inherently contradictory.

In any event, the need for individualized proof pervades the merits of Plaintiffs' claims because the administrative record will be highly individualized to Franklin's weapons.   Plaintiffs cite to a single out-of-circuit decision stating, without analysis, that "the relief sought under the [APA] does not require the participation of individual members."   Pls. Opp'n at 19 (quoting *Food & Water Watch v. FERC*, 28 F.4th 277, 283 (D.C. Cir. 2022)).   But Plaintiffs do not address that Eighth Circuit has squarely rejected such a "narrow reading" of *Hunt* and repudiated plaintiffs' theory that "participation of individual members" refers solely to participation in the form of witness testimony.   *Terre Du Lac Ass'n*, 772 F.2d at 471 (quoting *Hunt*, 432 U.S. at 344).   Under *Terre Du Lac Ass'n*, the individualized *substance* of the proof is what matters—not its form.   And individualized proof pervades the substance of this action because the decisions Plaintiffs' challenge were based on extensive analysis of the specific objective design features, method of operation, and intended use of the individual firearms provided by Franklin to ATF for testing.   *See, e.g.,* Compl. Ex. F at 2-5.   This is precisely the kind of "individualized proof" that precludes associational standing.

## 2.   The Potential for Membership Conflict is Obvious.

Plaintiffs attempt to minimize the potential for conflicts of interests between FRAC's members in two ways: first, by pointing to a vote of FRAC's board wherein "seven of FRAC's eight

directors voted in favor of the lawsuit, and the eighth (Franklin's representative) abstained," and second, by arguing the conflicting economic interests implicated by Plaintiffs' claims are not the sort that courts consider when deciding associational standing. Pls.' Opp'n at 21, n.8. Neither argument should persuade. Although Courts often treat a unanimous membership vote as some evidence that the association spoke for its members when initiating the suit, ultimately "[i]t is for the court, not the members of the association, to determine whether their interests require individual representation." *Associated Gen. Contractors*, 611 F.2d at 691. And here, the vote's demonstrative value is diluted by the fact that it included only FRAC's directors, rather than its members, *see* White Decl. ¶ 31.

As to the nature of the potential conflicts at issue, Plaintiffs argue that "a win in this suit would advance [members'] interests by forcing their governing regulatory agency to comply with the law and by allowing them the same regulatory landscape Franklin seeks to gain." Pls.' Opp'n at 21. But again, ATF classifications are non-precedential, and as such, the relief requested in this case would run to Franklin alone. *See* 27 C.F.R. § 478.92; *supra* part I.B. And as the cases cited in Defendants' motion demonstrate, Courts routinely consider members' potential economic conflicts when deciding whether a case is appropriate for associational standing. Here, the economic interests of the industry are central to FRAC's purpose. *See* Compl. ¶ 23 (FRAC exists "to improve business conditions for the firearms industry"). Excluding economic conflicts would effectively exempt trade associations like FRAC from this prong of the *Hunt* test entirely, contrary to precedent. *See Associated Gen. Contractors*, 611 F.2d at 691 (considering conflicting economic interests of trade association members); *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1253 (4th Cir. 1991) (same).

## II.    Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred.

Because FRAC lacks associational standing and must be dismissed as a Plaintiff, this case must be dismissed or transferred for lack of venue. *See* Compl. ¶ 35 (alleging venue based on FRAC's

residency alone).  But dismissal or transfer is also independently warranted because Plaintiffs fail to carry their burden of proving venue under 28 U.S.C. § 1391(e)(1)(C).

Plaintiffs admit that through its agents, FRAC declared its principal place of business to lie outside of this district in disclosures filed with a coordinate branch of government as required by federal law.  *See* Defs.' Exs. 2 and 3, ECF Nos. 9-2 and 9-3; 2 U.S.C. § 1603(b)(2) (requiring such reports to "contain[,]" *inter alia*, the "principal place of business of the registrant's client."); Pls.' Opp'n at 24.  Plaintiffs now attempt to minimize these disclosures by characterizing them as "outdated" and "not filed by FRAC itself," and by equating these mandatory reports to a mere listing on a state website.  *Id.* at 24-25.  The fact that these disclosures "were not filed by FRAC itself" but rather by counsel, *id.* at 24, is immaterial.  Restatement (Third) of the Law Governing Lawyers 2 Intro. (2000) ("A lawyer is an agent, to whom clients entrust matters, property, and information…."); *id.* § 26 Com. B ("Attributing the acts of lawyers to their clients is warranted by the fact that, in an important sense, they really are acts authorized by the principal.").  And unlike a listing on a state website, the fact that FRAC appears to have been represented by counsel in connection with its disclosures implies that the decision to list an address outside of North Dakota was purposeful.  As for Plaintiff's characterization that the filings were "outdated," FRAC's Washington location was reaffirmed by FRAC's representatives as recently as January 20, 2023—*after* this suit was filed—in a series of fifteen additional filings, none of which corrected FRAC's "outdated" place of business.  *See* U.S House of Representatives, Lobbying Disclosures, https://perma.cc/Y7PG-7CZ8.  Only now, over two years after purportedly transitioning its office to North Dakota and after venue was challenged, has FRAC altered its disclosures to provide any indication of North Dakota residency.  *See* Pls.' Opp'n Ex. 6.

## III.   Comparative Local Interest Warrants Transfer Even if Venue Is Proper in This District.

Even if the Court were to find venue proper in this district, it should still transfer this case in the interests of justice under 28 U.S.C. § 1404.  *See Nat'l Distillers & Chem. Corp. v. Dep't of Energy*, 487

F. Supp. 34, 36-37 (D. Del. 1980) (dismissing where venue was technically proper because plaintiffs appeared to have improperly joined parties for purpose of manufacturing venue). Plaintiffs' claim to venue in this action rests entirely on the residence of a single individual, Travis White—CEO of an organization which had not even been founded at the time Franklin submitted the firearms at issue to ATF for classification. *Compare* White Decl. ¶ 14, *with* Compl. ¶ 78, 138. Although Plaintiffs claim that convenience of witnesses should be irrelevant to this Court's transfer decision because review is confined to an administrative record, *see* Pls.' Opp'n at 27, this argument is again undermined because Plaintiffs have moved for consideration of the merits *without* any administrative record. *See supra* part I.C.1. Finally, transfer is further warranted due to the importance of the "local interest in having localized controversies at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). *See, e.g., Boston Telecom. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (considering, *inter alia*, the degree of "local interest in the lawsuit" and "the costs of resolving a dispute unrelated to a particular forum" (citation omitted)). This case concerns the firearms of a Nevada gunmaker, regulated by a federal agency in Washington, D.C. The challenged decisions were all made outside of this district, the impacts of a decision in this case will be felt in the district where Franklin resides, and Plaintiffs identify no local interest favoring venue in North Dakota. *Cf. Nat'l Wildlife Fed'n v. Harvey*, 437 F.Supp.2d 42, 49-50 (D.D.C. 2006) (transfer appropriate where, *inter alia*, agency action had direct impact on transferee district, and the disputed decisions were not made in transferor district).

## CONCLUSION

The Court should dismiss the Complaint, or, in the alternative, transfer to a proper venue.

Dated: April 28, 2023                                    Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ *Andrew J. Rising*
ANDREW J. RISING
D.C. Bar No. 1780432
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Washington, D.C. 20005
Phone: (202) 514-0265
E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*

11