<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

</div>

| | |
|---|---|
| **FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC.,** 2021 E. Main Avenue, Suite I Bismarck, ND 58501 <br><br> **FRANKLIN ARMORY, INC.,** 2246 Park Place, Suite B Minden, NV 89423 <br><br><div align="right">**Plaintiffs,**</div><br> v. <br><br> **MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY, as Attorney General of the United States,** 950 Pennsylvania Avenue, NW Washington, DC 20530 <br><br> **THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,** 99 New York Avenue, NE Washington, DC 20226 <br><br> **STEVEN DETTELBACH, IN HIS OFFICIAL CAPACITY, as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives**, 99 New York Avenue, NE Washington, DC 20226 <br><br><div align="right">**Defendants.**</div> | Civil Action No. 1:23-cv-00003-DLH-CRH <br><br> **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Firearms Regulatory Accountability Coalition, Inc. and Franklin Armory, Inc., by and through undersigned counsel, file this Complaint pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–06, alleging as follows:

**INTRODUCTION**

1.      Plaintiffs in this case challenge two erroneous classification decisions by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and seek mandamus to compel action unreasonably withheld by the agency.

2.      *First*, Plaintiffs challenge ATF's erroneous classification of the FAI-15 Antithesis as a "short-barreled rifle" under two statutes:  the Gun Control Act ("GCA") and the National Firearms Act ("NFA").

3.       Under both of these statutes, a weapon cannot be a rifle—or a short-barreled rifle[1]— unless it is "designed . . . and intended . . . to fire only a single projectile."  18 U.S.C. § 921(a)(7) (GCA); 26 U.S.C. § 5845(c) (NFA).

4.      The FAI-15 Antithesis is a new type of weapon that, in addition to firing a fixed cartridge with a single projectile, is designed and intended to fire cartridges that expel multiple projectiles.

5.      The FAI-15 Antithesis is thus designed and intended to fire multiple projectiles, not "only a single projectile."

6.      Accordingly, the plain text of the statute does not permit ATF to classify the FAI-15 Antithesis as a "short-barreled rifle."

7.      Nevertheless, ATF did just that.  Specifically, ATF found that the FAI-15 Antithesis was a "short-barreled rifle" designed and intended to fire only a single projectile.

8.      This conclusion is unsupported by record evidence, unwarranted by the facts, arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

9.      ATF's erroneous decision has subjected the FAI-15 Antithesis to onerous and

---

[1]  The NFA does not use the term "short-barreled rifle."  Under the NFA, "a rifle having a barrel or barrels of less than 16 inches in length" is termed a "firearm."  26 U.S.C. § 5845(a)(3).  For simplicity, Plaintiffs generally refer to such weapons as short-barreled rifles.

inapplicable requirements under the NFA and the GCA, in excess of ATF's statutory authority and contrary to congressional intent.

10.    *Second*, Plaintiffs challenge ATF's recent classification of the Reformation as a "short-barreled shotgun" under both the NFA and GCA.

11.    The Reformation is a new type of weapon developed in 2017 that is unique because it fires proprietary ammunition as well as traditional rifle cartridges through a barrel with straight cut lands and grooves.

12.    Under both the NFA and the GCA, a weapon cannot be a shotgun—or a short-barreled shotgun[2]—unless it has a "smooth bore."  18 U.S.C. § 921(a)(5); 26 U.S.C. § 5845(d).

13.    Because the Reformation's barrel has straight cut lands and grooves, it does not have a "smooth bore" and thus cannot be a short-barreled shotgun under either statute.

14.    In addition, under the NFA, a weapon cannot be a shotgun—or a short-barreled shotgun—unless it fires "a fixed shotgun shell."  26 U.S.C. § 5845(d).

15.    Because the Reformation fires cartridges—not fixed shotgun shells—it cannot be a short-barreled shotgun under the NFA.

16.    Despite these textual limitations, ATF nevertheless classified the Reformation as a short-barreled shotgun under the GCA in 2019 and as a firearm under the NFA in May 2023 in response to this litigation.

17.    ATF's classifications of the Reformation are contrary to the plain text of the statute, unsupported by record evidence, unwarranted by the facts, arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

---

[2] The NFA also does not use the term "short-barreled shotgun."  Under the NFA, "a shotgun having a barrel or barrels of less than 18 inches in length" is termed a "firearm."  26 U.S.C. § 5845(a)(1).  For simplicity, Plaintiffs generally refer to such weapons as short-barreled shotguns.

18.   ATF's erroneous decision subjects the Reformation to onerous and inapplicable requirements under the NFA and the GCA, in excess of ATF's statutory authority and contrary to congressional intent.

19.   *Third*, Plaintiffs also challenge ATF's failure to promulgate a statutorily required process—after expressly stating in a public letter that it would do so—for parties to seek authorization to sell, deliver, and transport across state lines weapons classified as short-barreled shotguns under the GCA.

20.   In 2019, 16 months after Franklin submitted the Reformation for classification, ATF classified it as a "short-barreled shotgun" under the GCA but ***not*** the NFA.

21.   Under the GCA, federal firearms licensees—such as Franklin—must receive authorization from ATF before they sell or deliver certain GCA weapons, including short-barreled shotguns, to non-licensees.  Non-licensees comprise the vast majority of customers.

22.   ATF's existing regulations do not provide a mechanism for seeking this required authorization.  Because a "short-barreled shotgun" under the GCA would typically also be a regulated "firearm" under the NFA, ATF's established process for seeking the required authorization is designed to encompass only weapons that are classified as short-barreled shotguns under ***both*** the GCA and the NFA.

23.   ATF has expressly identified this problem.  In 2019—shortly after ATF classified the Reformation—ATF represented to both Franklin, and to the public in an open letter, that the agency was creating new forms and procedures to close this regulatory gap and permit federal firearms licensees to seek the statutorily required authorization from ATF to sell a GCA-only short-barreled shotgun.  ATF verbally represented to Franklin that this process would take approximately six months.

24.    But now, *1,648 days* after initially classifying the Reformation, ATF still has not issued the form.  Instead, Plaintiffs were forced to file this lawsuit to compel ATF to do so.  And in response, rather than issuing the form, ATF issued its May 2023 Reformation classification letter affirming its initial GCA classification and claiming for the first time that the Reformation is also an NFA firearm despite having previously found to the contrary.   That is, ATF never issued any forms or procedures for GCA-only weapons, does not appear to have made any progress on its commitment to carry out the statutory duty it identified, and is trying to avoid its statutory obligations entirely by issuing an unsupported decision to classify the Reformation as an NFA weapon in response to this litigation.[3]

25.    ATF has offered no reason for its failure to issue forms or procedures for GCA-only weapons, which for years has caused significant financial harm to Plaintiffs and prevented the American public from purchasing a lawful firearm useful for hunting, home defense, and recreational shooting.

26.    ATF thus unlawfully withheld and unreasonably delayed performance of its statutory and regulatory obligation to promulgate forms and procedures that would have enabled the agency to receive authorization requests from federal firearms licensees.

27.    Furthermore, by denying federal firearms licensees any avenue for seeking the statutorily required authorization, ATF through its inaction has effectively banned the otherwise lawful sale of GCA-only short-barreled shotguns to the American public.

28.    This *de facto* policy is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

---

[3] By reclassifying the Reformation as a short-barreled shotgun under the NFA, federal firearms licensees can sell the weapon under the more onerous procedures of that statute using ATF Form 5320.4 and ATF Form 5320.20.

## PARTIES

29.  <u>Firearms Regulatory Accountability Coalition, Inc. ("FRAC")</u> is a non-profit association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies.  Ex. R ¶ 4 (Declaration of Travis White) ("White Decl.").  FRAC serves as the premiere national trade association representing U.S. firearms manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States.  *Id.* ¶ 5.

30.  FRAC was formed in 2020 upon the initiative of members of the firearms industry.  These members sought to create an organization that would advocate for their interests before the legislative, executive, and judicial branches of the federal government.  *Id.* ¶ 11.

31.  FRAC is committed to holding the federal government accountable for unlawful policies and practices and ensuring that the government's regulation of the industry is conducted in an open and transparent manner.  *Id.* ¶ 6.

32.  As part of its mission to aggressively advocate for and defend firearms, ammunition, and accessories manufacturers, retailers, and importers from government overreach, FRAC regularly files comments with firearms regulatory agencies and litigates firearms issues at all levels of the federal judicial system.  *Id.* ¶¶ 7, 37 & n.1; *see, e.g.*, Comments of FRAC et al., Docket Nos. ATF 2021R–05, ATF 2021R–08, AG Order Nos. 5051–2021, 5070–2021 (filed Aug. 19, 2021)[4]; Comments of FRAC et al., Docket No. ATF 2021R–08, AG Order No. 5070–2021 (filed Sept. 8, 2021)[5]; Amicus Brief of FRAC, et al., *Cargill v. Garland*, No. 20-51016 (5th Cir. Aug. 1, 2022).[6]

---

[4]  https://www.regulations.gov/comment/ATF-2021-0002-131836.

[5]  https://www.regulations.gov/comment/ATF-2021-0002-207706.

[6]  https://www.fracaction.org/post/frac-files-joint-amicus-brief-in-cargill-v-garland-asks-court-to-rein-in-atf.

33.     These efforts aim to hold the federal government accountable for arbitrary and capricious actions and to ensure that the government's regulation of the industry is conducted in an open and transparent manner.  *Id.* ¶ 8.

34.     FRAC believes that it is important to hold accountable firearms regulatory agencies when they engage in unlawful action because allowing those agencies to flout the law will only embolden the agency to cut corners in the future.  *Id.* ¶ 9.

35.     A core component of FRAC's mission is advancing its members' interests and defending its members from government overreach.  *Id.* ¶ 10.

36.     <u>Franklin Armory, Inc. ("Franklin")</u> is a corporation that specializes in manufacturing quality firearms for sporting and law enforcement applications.

37.     Franklin is a federal firearms licensee under the Gun Control Act.[7]  *See* 18 U.S.C. § 923.

38.     Franklin is a member of FRAC.

39.     <u>Merrick B. Garland ("the Attorney General")</u> is the Attorney General of the United States.  He leads the Department of Justice ("DOJ"), an executive department of the United States. 28 U.S.C. §§ 501, 503.  He is vested with authority to enforce the Gun Control Act, *see* 18 U.S.C. §§ 922, 926, and provisions of the National Firearms Act at issue in this case, 26 U.S.C. § 7801(a)(2).

40.     <u>The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")</u> is a Bureau within DOJ.  28 U.S.C. § 599A(a)(1).

41.     <u>Steven M. Dettelbach ("the Director")</u> is the Director of ATF.  The Attorney General has delegated to the Director authority to enforce the Gun Control Act and the provisions of the National Firearms Act at issue in this case.  *See* 28 C.F.R. § 0.130(a)(1)–(3); *accord* 28 U.S.C.

---

[7] https://fflezcheck.atf.gov/FFLEzCheck/ (search license number 988-XXX-XX-XX-04841).

§ 510.

42.     This Complaint refers to all Defendants collectively as ATF.

## JURISDICTION AND VENUE

43.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361 because this civil action arises under the laws of the United States and challenges both final agency action and agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. §§ 701–06; *see also* 28 U.S.C. § 1651.

44.     Plaintiffs cannot seek another adequate remedy in a court.  *Id.* § 704.

45.     Venue is proper in this Court because defendants are officers and agencies of the United States, no real property is involved in this action, and Plaintiff FRAC resides in this judicial district. 28 U.S.C. § 1391(e)(1).

46.     FRAC maintains its headquarters at 2021 East Main Avenue, Suite I, Bismarck, North Dakota 58501.  White Decl. ¶ 27.

47.     FRAC does not maintain an office at any other location.  *Id.* ¶ 28.

48.     FRAC's Board of Directors appointed Travis White as the organization's President and Chief Executive Officer in 2020, and he assumed that office effective January 1, 2021.  *Id.* ¶ 14. White is FRAC's only full-time paid officer.  *Id.* ¶ 26.

49.     White executed a lease for FRAC's corporate headquarters in Bismarck, North Dakota effective January 21, 2021.  *Id.* ¶ 15.

50.     White moved to Bismarck, North Dakota in the first quarter of 2021 and has continuously maintained his residence in Bismarck since that time.  *Id.* ¶ 17.

51.     From FRAC's corporate headquarters in Bismarck, North Dakota, White directs, controls, and coordinates all FRAC's activities, considering input from FRAC members and FRAC's Board of Directors.  *Id.* ¶ 18.

52.   White was also appointed by FRAC's Board of Directors to serve concurrently as the Secretary of FRAC.  *Id.* ¶ 25.  In his role as Secretary, White is responsible for the keeping of an accurate record of the proceedings of all meetings of the Board of Directors, giving or causing to be given all notices in accordance with FRAC's Bylaws or as required by law, and performing all duties customary to the office of Secretary.  *Id.*

53.   FRAC registered with the North Dakota Secretary of State as a nonprofit corporation in February 2021.  *Id.* ¶ 16.

## STANDING

### INJURY TO FRANKLIN FROM THE FAI-15 ANTITHESIS CLASSIFICATION

54.   Franklin is financially injured by ATF's misclassification of the FAI-15 Antithesis.  Ex. A ¶¶ 14–17 (Declaration of Jay Jacobson) ("Jacobson Decl.").

55.   By classifying the FAI-15 Antithesis as a short-barreled rifle subject to the National Firearms Act ("NFA") and the Gun Control Act ("GCA"), ATF has saddled the weapon with unlawful conditions that make it significantly more burdensome for Franklin to sell it to the public. *Id.*

56.   This injury is directly caused by ATF's erroneous classification of the FAI-15 Antithesis. *Id.*

57.   This injury would be redressed by an order of this Court setting aside ATF's erroneous classification of the FAI-15 Antithesis.  *Id.* ¶ 17.

### INJURY TO FRANKLIN FROM THE REFORMATION CLASSIFICATION

58.   Franklin is financially injured by ATF's misclassification of the Reformation.  *Id.* ¶¶ 39–44.

59.   By classifying the Reformation as a short-barreled shotgun subject to the NFA and the GCA, ATF has saddled the weapon with unlawful conditions that make it significantly more

burdensome for Franklin to sell it to the public.  *Id.*

60.    This injury is directly caused by ATF's erroneous classification of the Reformation.  *Id.*

61.    This injury would be redressed by an order of this Court setting aside ATF's erroneous classification of the Reformation.  *Id.* ¶ 44.

### INJURY TO FRANKLIN FROM THE REFORMATION DELAY

62.    Franklin has been financially injured by ATF's failure to create a mechanism for obtaining authorization to transfer weapons classified as short-barreled shotguns under the GCA (but not the NFA) because Franklin has been unable to sell its Reformation weapon to customers that do not hold federal firearms licenses.  *Id.* ¶¶ 45–56.

63.    The inability to sell the Reformation to unlicensed customers has caused Franklin to lose millions of dollars in revenue.  *Id.*

64.    This injury has been directly caused by ATF's failure to issue the required regulations. *Id.*

65.    This injury would be redressed by an order from this Court requiring ATF to issue the required procedures.  *Id.*

### FRAC'S ASSOCIATIONAL STANDING

66.    FRAC is a traditional voluntary membership association.  White Decl. ¶ 19.

67.    FRAC currently represents fifteen member companies.  *Id.* ¶ 20.  FRAC's members provide the vast majority of the organization's funding.  *Id.*

68.    FRAC's members choose the Directors to serve on its Board.  *Id.* ¶ 22.  FRAC currently has nine Directors on its Board.  *Id.*  FRAC's Board chooses FRAC's officers.  *Id.* ¶ 23.

69.    FRAC has associational standing to bring suit on behalf of its members because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

70.     *First*, at least one of FRAC's members—Franklin—has standing to sue in its own right. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (to establish standing, an "association must allege that its members, or any one of them, are suffering immediate or threatened injury").

71.     *Second*, bringing an end to ATF's regulatory gamesmanship is germane to FRAC's organizational purpose of protecting the firearms industry from government abuse.  White Decl. ¶¶ 4–10, 31–37; *see Our Mission*, FRAC (last visited May 18, 2023) ("FRAC's sole mission is to aggressively advocate for and defend firearms, ammunition, and accessories manufacturers and importers from government overreach. This includes holding the government accountable for arbitrary and capricious policies and rulings and ensuring that the government's regulation of the industry is conducted in an open and transparent manner.").[8]

72.     FRAC's Board and officers concluded that challenging ATF's unlawful actions with respect to the FAI-15 Antithesis and Reformation would be germane to the firearms industry, FRAC and its purpose, and the members of FRAC.  White Decl. ¶ 33.

73.     By remedying ATF's unlawful classifications of the FAI-15 Antithesis and Reformation, this litigation will prevent ATF from relying on arbitrary and capricious rationales to make future regulations and/or classification decisions that harm members of the regulated firearms industry who wish to license these products or develop similar products. *Id.* ¶¶ 34–35.

74.     By compelling ATF to issue procedures for the sale, transfer, and delivery of products classified as short-barreled shotguns under only the GCA, this lawsuit will facilitate a better functioning market for an entire class of lawful weapons. *Id.* ¶ 36.

---

[8] https://www.fracaction.org/mission.

75.    This lawsuit will also deter the ATF from flouting the requirements of the Administrative Procedure Act in the future.  As FRAC has repeatedly explained in comments filed with the Department of Justice, ATF frequently abuses its letter classification process to the detriment of all members of the firearms industry, including through tactics similar to those it employed in this proceeding—*i.e.*, delaying firearm classifications, arbitrarily reversing course with respect to classifications, using the classifications as precedent with respect to other firearms, and failing in any way to justify or support classification decisions.  Obtaining judicial review of ATF's unlawful actions will therefore advance the long-term interests of all FRAC members.  *Id.* ¶ 37 & n.1.

76.    The requested relief will benefit the entire firearms industry.

77.    *Third*, neither the claims asserted nor the relief requested require the participation of individual members because Plaintiffs "seek[] only declaratory and prospective injunctive relief." *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 533 (8th Cir. 2005).

78.    The participation of individual members is not needed for this Court to declare unlawful and set aside ATF's classification of the Antithesis.

79.    The participation of individual members is not needed for this Court to declare unlawful and set aside ATF's classification of the Reformation.

80.    The participation of individual members is not needed for this Court to compel ATF to issue the required forms and procedures for GCA-only short-barreled shotguns.

81.    No claim requires any individualized proof from individual members because the claims can be decided on the administrative record without further factual development.

82.    FRAC's Board unanimously approved the organization's initiation of this lawsuit because they found it to be in their collective interest.  White Decl. ¶ 31.

83.    FRAC's Board likewise unanimously agreed to challenge the unlawful classification of

the Reformation following ATF's reclassification of that product on May 4, 2023.  *Id.* ¶ 32.

## BACKGROUND

### THE NATIONAL FIREARMS ACT AND THE GUN CONTROL ACT

84.   Congress has devised a comprehensive scheme of firearm regulation in the United States through two statutes:  the National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, and the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* ("GCA").

85.   Under this scheme, Congress chose to regulate weapons through discrete categories that sometimes overlap.

86.   Relevant to this case are two of these categories:  (1) short-barreled rifles, the category under which ATF classified the FAI-15 Antithesis; and (2) short-barreled shotguns, the category under which ATF classified the Reformation.

### *Short-Barreled Rifles*

87.   Both the GCA and the NFA impose heightened regulations on short-barreled rifles, which are rifles with "one or more barrels less than sixteen inches in length" or "an overall length of less than twenty-six inches."  18 U.S.C. § 921(a)(8) (GCA); 26 U.S.C. § 5845(a)(3), (4) (similar definition in NFA).

88.   Weapons are "rifles" under the GCA and the NFA if they are designed and intended "to be fired from the shoulder and . . . to use the energy of an explosive to fire *only a single projectile* through a rifled bore for each single pull of the trigger."  18 U.S.C. § 921(a)(7) (GCA) (emphasis added); 26 U.S.C. § 5845(c) (similar definition in NFA).

89.   As explained in more detail below, ATF classified the FAI-15 Antithesis as a short-barreled rifle under both the GCA and the NFA.

### *Short-Barreled Shotguns*

90.   Both the GCA and the NFA impose heightened regulations on short-barreled shotguns,

which are shotguns with "one or more barrels less than eighteen inches in length" or "an overall length of less than twenty-six inches."  18 U.S.C. § 921(a)(6) (GCA); 26 U.S.C. § 5845(a)(1), (2) (similar definition in NFA).

91.    Weapons are "shotguns" under the GCA if they are designed and intended "to be fired from the shoulder and . . . to use the energy of an explosive to fire through *a smooth bore* either a number of ball shot or a single projectile for each single pull of the trigger."  18 U.S.C. § 921(a)(5) (emphasis added).

92.    Weapons are "shotguns" under the NFA if they qualify as GCA shotguns and are also designed and intended to "use the energy of the explosive *in a fixed shotgun shell*."  26 U.S.C. § 5845(d) (emphasis added).

93.    As explained in more detail below, ATF classified the Reformation as a short-barreled shotgun under both the GCA and the NFA.

*ATF Classifies Weapons Through Private Letters*

94.    Entities may voluntarily submit weapons to ATF for classification.  *See* 27 C.F.R. § 478.92(c); *accord* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,709–10 (Apr. 26, 2022) (Final Rule).

95.    Upon receipt, "[t]he Director may issue a determination (classification)," 27 C.F.R. § 478.92(c), typically through a "private letter ruling."  87 Fed. Reg. at 24,710.

96.    ATF's classifications are "authoritative" as to the submitted sample.  27 C.F.R § 478.92(c); *accord* 87 Fed. Reg. at 24,710 (explaining that classification letters "have the force of law").

97.    While ATF formally codified its classification process last year, the agency employed it "[f]or many years" prior to codification.  Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720, 27,733 (May 21, 2021) (Proposed Rule).

*A Weapon's Classification Determines Its Corresponding Regulatory Burden*

98.  A weapon is subject to varying restrictions and burdens based on its classification.

99.  <u>The NFA.</u>  A weapon classified as a "firearm" under the NFA—a term that includes short-barreled shotguns and short-barreled rifles—is subject to the most burdensome requirements.

100.  Anyone who makes an NFA firearm must submit an application to ATF with identifying information—including his fingerprints—and must pay a $200 tax.  26 U.S.C. § 5822; 27 C.F.R. §§ 479.61, 479.62.

101.  Anyone who transfers an NFA firearm must also submit an application to ATF with identifying information and must pay an additional $200 tax.  26 U.S.C. § 5812; 27 C.F.R. §§ 479.66, 479.84.

102.  Anyone who receives an NFA firearm must provide ATF with his fingerprints and notify his local police department of the transfer.  26 U.S.C. § 5812; 27 C.F.R. §§ 479.85, 479.84(c).

103.  Anyone possessing an NFA firearm must register himself and his NFA firearm in a federal database.  26 U.S.C. § 5841; 28 C.F.R. § 0.131(d); 27 C.F.R. §§ 479.101, 479.102.

104.  Anyone who violates the NFA may be imprisoned for up to ten years and fined up to $10,000.  26 U.S.C. § 5871.

105.  <u>The GCA.</u>  A weapon classified as a short-barreled shotgun or short-barreled rifle under the GCA is subject to less onerous statutory rules governing the sale, delivery, and interstate transportation of such weapons.

106.  The GCA's rules often turn on whether the relevant actor holds a federal firearms license ("FFL")—*i.e.*, a license issued by the Attorney General "to transport, ship, and receive firearms and ammunition covered by such license in interstate or foreign commerce during the period stated in the license."  18 U.S.C. § 923(c); *accord* 27 C.F.R. § 478.41.

107. Individuals may "engage in the business of importing, manufacturing, or dealing in

firearms" only if they hold an FFL.  18 U.S.C. § 922(a)(1)(A).

108.  FFL holders may "sell or deliver" GCA short-barreled weapons to unlicensed persons only "as specifically authorized by the Attorney General consistent with public safety and necessity."  18 U.S.C. § 922(b)(4); *accord* 27 C.F.R. § 478.98.

109.  FFL holders may "transport" short-barreled weapons "in interstate or foreign commerce" without statutory restrictions.  18 U.S.C. § 922(a)(4).

110.  Unlicensed individuals may "transport" short-barreled weapons "in interstate or foreign commerce" only "as specifically authorized by the Attorney General consistent with public safety and necessity."[9]  18 U.S.C. § 922(a)(4); *see also* 27 C.F.R. § 478.28.

111.  Entities or individuals who sell, deliver, or transport short-barreled weapons without a required authorization from the Attorney General may be imprisoned for up to five years and fined up to $500,000.  18 U.S.C. §§ 924(a)(1)(B), (D); 3571(c)(3); 3559(a)(5).

112.  The GCA thus contemplates a comprehensive regulatory scheme through which the Attorney General will consider the public safety and necessity of transferring and transporting short-barreled weapons.

113.  The Attorney General has delegated to ATF his authority under the GCA to authorize transferring and transporting short-barreled weapons.  28 C.F.R. § 0.130(a)(1).

---

[9] "Interstate or foreign commerce" is a defined term meaning: "commerce between any place in a State and any place outside of that State, or within any possession of the United States (not including the Canal Zone) or the District of Columbia, but such term does not include commerce between places within the same State but through any place outside of that State.  The term 'State' includes the District of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States (not including the Canal Zone)."  18 U.S.C. § 921(a)(2).

**FRANKLIN'S FAI-15 ANTITHESIS FIREARM**

*Franklin Submits The FAI-15 Antithesis To ATF*

114.  On March 9, 2020, Franklin requested voluntary classification of an FAI-15 equipped with a novel barrel called the Antithesis.  Ex. B at 2–3 (Letter from Jay Jacobson (Mar. 9, 2020)) ("FAI-15 Antithesis Submission").

115.  The Antithesis is a rifled barrel that "is chambered in, and designed to accept, both .410 bore shotshells and 45 Long Colt cartridges."  *Id.* at 3.

116.  In other words, the Antithesis can fire both shotgun shells with multiple projectiles and fixed cartridges with a single projectile.

117.  Franklin inscribed ".410/.45LC" on the FAI-15 Antithesis to indicate that the weapon accepts both types of ammunition.  *Id.*

118.  Franklin explained that it had successfully tested "Remington 'Premier® Nitro Sporting Clays'" .410 bore shotshells and "Grizzly 'Big Bore Ammunition'" "45 Long Colt +P" cartridges with the FAI-15 Antithesis.  *Id.*

119.  Franklin explained that the FAI-15 Antithesis "had great results cycling the action using [those two] loads."  *Id.*

120.  Franklin explained in a separate filing with ATF that a firearm equipped with the Antithesis is not a "rifle" under the GCA or the NFA because it is not designed and intended "to fire only a single projectile."  Ex. C at 1–2 (Letter from Jay Jacobson (Nov. 19, 2019)) ("Antithesis 2019 Explanation Letter") (quoting 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7)) (emphasis omitted).[10]

---

[10] This November 2019 filing was in reference to an Antithesis-equipped Connecticut Valley Arms ("CVA") Hunter firearm submitted for voluntary classification on January 16, 2019.  *See infra* Jan. 2019 Clarification Letter at 2; Antithesis 2019 Explanation Letter at 1–2.  ATF classified the CVA Hunter firearm as a short-barreled rifle under both the GCA and the NFA on January 7, 2020.  *See*

121. Rather, an Antithesis-equipped firearm is "designed and intended to fire shot," which consists of multiple projectiles. *See id.* at 2.

122. Franklin explained that the "rifling's effect of rapidly increasing the spread of the resulting [shot] pattern is desirable in certain hunting situations such as unexpected close range turkey hunting shots and close shots in thick cover at fast fleeting gamebirds." Ex. D at 4 (Letter from Jay Jacobson (May 7, 2020)) ("Antithesis 2020 Explanation Letter").

123. Franklin noted that such designs—including "Browning's rifled Spreader Choke"—were already commercially available and "being used by bird hunters." *Id.*

124. Franklin also explained that "projectile stabilization is not a necessary attribute" in "comparatively short-range engagements." FAI-15 Antithesis Submission at 2.

125. As evidence, Franklin noted that three commercially successful handguns—the Bond Arms Ranger II, the Taurus Judge Revolver, and the Thompson/Center Arms Contender—utilized designs that "fire[d] singular projectiles as well as ball shot through a rifled bore." *Id.*

126. Finally, Franklin explained that an Antithesis-equipped firearm is not a "shotgun" under the GCA or the NFA because it utilizes a "rifled bore." Antithesis 2019 Explanation Letter at 1–2.

*ATF Misclassifies The FAI-15 Antithesis As A Short-Barreled Rifle*

127. On December 23, 2021, ATF erroneously classified the FAI-15 Antithesis as a short-barreled rifle. *See* Ex. F (FTISB Letter 313628) ("FAI-15 Antithesis Classification Letter").

128. ATF found that the FAI-15 Antithesis's "barrel extension and the barrel breech are fit and chambered to accept the .45 Colt and .410 Bore cartridges." *Id.* at 3.

---

Ex. E (FTISB Letter 310340) (incorrectly dated January 7, 2019). This filing is part of the administrative record informing ATF's classification of the Antithesis-equipped FAI-15 at issue in this case.

129.  ATF acknowledged that Franklin "state[d] [that] the firearm is designed and intended to fire shot and slugs from .410 bore shotshells and singular projectiles from .45 Long Colt."  *Id.* at 4 (emphasis omitted) (internal quotations omitted).

130.  ATF did not dispute that the FAI-15 Antithesis in fact fires shot using .410 shotshells.  *See id.*

131.  Nevertheless, ATF found that the FAI-15 Antithesis was not designed and intended to fire shotshells.  *See id.*

132.  To reach this counterintuitive result, ATF declared that "a rifled bore is an objective design feature designed and made to fire only a single projectile."  *Id.*

133.  ATF apparently based this conclusion on its opinion that a "rifled bore is disadvantageous as an objective design feature when using shot ammunition, as the twist of the shot column traveling down the bore will spread the shot pattern."  *Id.*

134.  ATF thus reasoned that even though the FAI-15 Antithesis fires .410 shotshells, it necessarily designed and intended to fire only a single projectile because it utilizes a rifled bore.  *See id.*

*ATF's Classification Analysis Was Riddled With Errors*

135.  ATF failed to consider at least seven important factors relevant to its classification of the FAI-15 Antithesis.

136.  These factors indicated that the FAI-15 Antithesis was designed and intended to fire shot ammunition.

137.  *First*, ATF did not acknowledge or discuss the fact that projectile stabilization is not necessary in "comparatively short-range engagements."  FAI-15 Antithesis Submission at 2.

138.  *Second*, ATF did not acknowledge or discuss the fact that rapidly spreading the shot pattern in fact *enhances* the weapon's utility in some contexts, such as close-range shots at

gamebirds.  *See* Antithesis 2020 Explanation Letter at 4.

139.  These use cases are plainly relevant to the FAI-15 Antithesis's design and Franklin's intent.

140.  Specifically, these use cases show that "a rifled bore" is *not* "disadvantageous as an objective design feature when using shot ammunition."  *Contra* FAI-15 Antithesis Classification Letter at 4.

141.  *Third*, ATF did not discuss its results firing shot from the FAI-15 Antithesis, despite having "test[ed]" the weapon.  *See id.* at 1.

142.  *Fourth*, ATF did not acknowledge or discuss Franklin's "great results" when it fired shot from the FAI-15 Antithesis.  *See* FAI-15 Antithesis Submission at 3.

143.  The FAI-15 Antithesis's ability to fire shot is plainly relevant to its design and Franklin's intent.

144.  Specifically, "the uses of which a [weapon] is capable" is a key "part of the inquiry into whether a [weapon] is intended to be used" for a given purpose.  *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 601 (1st Cir. 2016).

145.  The FAI-15 Antithesis's capability to fire shot—undisputed by ATF as a result of its testing or otherwise—is thus strong evidence that the weapon was designed and intended to fire shot.

146.  *Fifth*, ATF acknowledged that Franklin's stated intent was that the FAI-15 Antithesis was designed to fire .410 bore shotshells, but it did not explain how that stated intent factored into its analysis.  FAI-15 Antithesis Classification Letter at 4.

147.  However, as ATF itself acknowledged, Franklin's "purported use of the item" is relevant "in determining whether a weapon is 'designed, made and intended' for a particular purpose."  *Id.*

148.  Specifically, Franklin's stated intent that the FAI-15 Antithesis was designed to fire .410 shotshells is evidence that this undisputed capability was in fact intended.

149.  *Sixth*, ATF did not discuss the inscription of ".410/.45LC" on the weapon.  *See* FAI-15 Antithesis Submission at 3.

150.  This inscription is plainly relevant to the FAI-15 Antithesis's design and Franklin's intent.

151.  Specifically, it indicates that Franklin intended that the FAI-15 Antithesis would be used to fire .410 shotshells.

152.  *Seventh*, ATF "d[id] not dispute the marketability of firearms chambered for dual cartridges."  To the contrary, ATF found that "a weapon with a rifled bore that also fires shotshells may provide a commercial advantage."  Nevertheless, ATF concluded that enhanced marketability "does not indicate that the weapon was 'designed, made and intended' to fire other than a single projectile."  *See* FAI-15 Antithesis Classification Letter at 4.

153.  ATF is wrong:  a commercial advantage provides an indication of the design and intent of the FAI-15 Antithesis.

154.  Specifically, it demonstrates that gun owners value the ability to fire shot from a rifled bore in some circumstances.

155.  This consumer preference is strong evidence that the FAI-15's ability to fire shot from a rifled bore is an intentional design choice implemented by the designer to meet consumer demand.

156.  This consumer preference also confirms that firing shot from a rifled bore is advantageous in some use cases.

157.  ATF's rules confirm that marketability is relevant to classification decisions by requiring submission of "marketing materials" with certain classification requests.  27 C.F.R. § 478.92(c).

According to ATF, this requirement helps "ensure that a proper classification can be made." 87 Fed. Reg. at 24,673.

158.  Had ATF properly analyzed the record evidence, it would not have come to the erroneous conclusion that the FAI-15 Antithesis was designed and intended to fire only a single projectile.

*ATF's Misclassification Is Causing Significant Harm*

159.  ATF's erroneous classification has burdened the FAI-15 Antithesis with inapplicable restrictions and requirements from both the NFA and the GCA.

160.  Under the NFA, owners of the FAI-15 Antithesis must register the firearm and submit their fingerprints to the federal government.

161.  Under the NFA, anyone wishing to obtain the FAI-15 Antithesis must first notify local law enforcement officials of the acquisition.

162.  Under the GCA, FFL holders must receive specific authorization from ATF before they sell or deliver the FAI-15 Antithesis to unlicensed customers.

163.  Under the GCA, unlicensed individuals must receive specific authorization from ATF before they transfer across state lines the FAI-15 Antithesis.

164.  These processes are often slow.  For example, ATF's own statistics indicate that the average wait time to transfer an NFA firearm is nearly eight months for electronic applications and nearly a year for paper applications.  *See Current Processing Times*, ATF (updated May 1, 2023).[11]

**FRANKLIN ARMORY'S REFORMATION FIREARM**

*Franklin Submits The Reformation Firearm To ATF*

165.  On July 7, 2017, Franklin asked ATF to classify a new barrel design called the "NRS" barrel—short for "Not a Rifle or Shotgun"—that Franklin would use on its forthcoming

---

[11] https://www.atf.gov/resource-center/current-processing-times.

"Reformation" line of firearms.  *See* Ex. G (Letter from Jay Jacobson (July 7, 2017)) ("NRS Letter").

166.  Franklin explained that the NRS barrel would "feature straight cut lands and grooves" "from the leade ahead of the chamber all the way to the muzzle." *Id.* at 1 (emphasis omitted).

167.  Franklin reasoned that the NRS barrel would not qualify as a rifle under the NFA or the GCA because a weapon is a rifle under those statutes only if it has "a rifled bore," 18 U.S.C. § 921(a)(7); 26 U.S.C. § 5845(c), but the NRS barrel would not utilize a "rifled bore" because it would "not include helical cuts through the bore" and would thus not "impart spin to a projectile," NRS Letter at 1–2.

168.  Franklin further reasoned that the NRS barrel would not qualify as a shotgun under the NFA or the GCA because a weapon is a shotgun under those statues only if it has a "smooth bore," 18 U.S.C. § 921(a)(5); 26 U.S.C. § 5845(d), but the bore of the NRS barrel would have "ridges caused by the lands and grooves," and would thus not be "smooth," NRS Letter at 3–4.

169.  On July 10, 2017, ATF responded to Franklin's letter, telling Franklin via email that ATF would not classify the NRS unless Franklin submitted "a physical sample." *See* Ex. H (Email from ATF (July 10, 2017)).

170.  On August 23, 2017, Franklin submitted a .308 Winchester chambered NRS barrel to ATF for classification. *See* Ex. I (Letter from Jay Jacobson (Aug. 23, 2017)).

171.  On March 8, 2018—nearly seven months later—ATF told Franklin it would not classify the NRS barrel unless it was installed on a "complete firearm." *See* Ex. J (FTISB Letter 307464).

172.  On March 13, 2018, Franklin resubmitted the NRS barrel for classification—this time affixed to four different weapons. *See* Ex. K (Letter from Jay Jacobson (Mar. 13, 2018)).

173.  These four NRS-equipped weapons were part of Franklin's "Reformation" series,

hereinafter referred to as the "Reformation."

*ATF Classifies The Reformation As A GCA-Only Short-Barreled Shotgun*

174.  On November 13, 2018—eight months after Franklin resubmitted the NRS barrel, and more than 16 months after Franklin's original submission—ATF's Firearms Technology Industry Services Branch ("FTISB") classified the Reformation as a short-barreled shotgun under the GCA. *See* Ex. L (FTISB Letter 308531) ("First Reformation Classification").[12]

175.  ATF first agreed that the Reformation was not a rifle because the "straight cut lands and grooves" in the NRS barrel "ha[d] insufficient rate of twist to spin and stabilize traditional .308 caliber ammunition" and could thus not "be considered 'rifling' under Federal law." *Id.* at 4.

176.  However, ATF found that the Reformation was a shotgun under the GCA because the NRS barrel had a "smooth bore"—a term it erroneously interpreted as covering all barrels that lacked rifling. *See id.* at 4–5.

177.  ATF further found that the Reformation was a short-barreled shotgun under the GCA because it incorporated a barrel less than 18 inches in length. *See id.* at 6–8.

178.  ATF did not issue a finding as to the Reformation's status under the NFA. *See id.*

179.  On January 16, 2019, Franklin asked ATF to confirm that the Reformation was not a short-barreled shotgun under the NFA. *See* Ex. M (Letter from Jay Jacobson (Jan. 16, 2019)) ("Jan. 2019 Clarification Letter").

180.  ATF never responded to this letter.

181.  But on November 8, 2019, ATF's Firearms Industry Programs Branch ("FIPB") sent

---

[12] ATF classified one of the four Reformation submissions as an "Any Other Weapon" under the NFA.  First Reformation Classification at 9; *accord* 26 U.S.C. § 5845(e).  Franklin does not challenge that classification, and all further references to the Reformation do not include that submission.

Franklin a letter opining that information "on [Franklin's] website regarding the transfer and interstate transport of [its] Reformation firearm d[id] not accurately reflect the provisions required for the transfer and interstate transport of a short barreled shotgun as required under [the GCA]." Ex. N at 1 (FIPB Letter 819794) ("Reformation Private Letter").

182. In this letter, ATF informed Franklin that it classified the Reformation as a "short barreled shotgun (SBS) as defined by the Gun Control Act (GCA) but [did] not [find the Reformation] to be a firearm regulated under the National Firearms Act (NFA)." *Id.*

183. ATF opined that its regulations governing the transfer and interstate transport of short-barreled shotguns were "limited to NFA firearms" and thus did not govern GCA-only short-barreled shotguns. *Id.* at 1–2.

184. Acknowledging that its position created a "gap in the federal firearm regulations," ATF represented that it was "currently developing the procedures and forms" to "provide the mechanism necessary for FFL holders and owners of [GCA-only short-barreled shotguns] to request the statutorily required approvals." *Id.* at 2.

185. In the meantime, ATF took the position that FFL holders such as Franklin "may not lawfully transfer the Reformation to a non-licensee" and that "the owner of a [GCA-only short-barreled shotgun], such as the Reformation, may not lawfully transport the firearm across state lines." *Id.*

186. On December 19, 2019, ATF issued an open letter to the public taking the same position: Franklin was not allowed to sell the Reformation to customers without FFLs, and unlicensed individuals who owned the Reformation could "not lawfully transport the firearm across state lines." Ex. O at 2 (Open Letter regarding the Franklin Armory Reformation Firearm) ("Reformation Open Letter").

187. The open letter also offered ATF's position regarding the classification of the Reformation under the NFA:  ATF explained that the Reformation was "not a shotgun as defined in the NFA" "because the Reformation is not chambered for shotgun shells."  *Id.* at 1.

188. In NFA terms, the Reformation does not "use the energy of the explosive *in a fixed shotgun shell*," 26 U.S.C. § 5845(d) (emphasis added), because it does not fire shotgun shells.

189. The open letter again represented that "ATF is currently developing the procedures and forms" to "provide the mechanism necessary for FFL holders and owners of [GCA-only] firearms to request the statutorily required approvals."  Reformation Open Letter at 2.

190. But despite that representation, ATF never developed any procedures and forms to transfer GCA-only short-barreled shotguns.

191. To remedy this unlawful delay, Plaintiffs petitioned this Court for mandamus on January 4, 2023. *See* Compl., ECF No. 1.

192. Faced with the prospect of an adverse decision from this Court forcing ATF's hand, the agency refocused its efforts on undermining Plaintiffs' ability to secure judicial relief.

193. On March 8, 2023, ATF requested that Plaintiffs allow the agency additional time to respond to the Complaint, representing that "ATF is considering the relief plaintiffs requested regarding the Reformation firearm, and that may have bearing on the litigation."  Plaintiffs agreed to the extension, encouraged by the agency's suggestion that it was finally considering remedying the gap in the federal firearm regulations that prevented Franklin from selling the Reformation.

194. At the expiration of ATF's extension, however, rather than approving procedures and issuing forms for transferring the Reformation, ATF filed a motion to dismiss contending that venue was improper and that FRAC lacked standing to represent its members.  In that motion, ATF for the first time purported to need an additional 60 days to address the form issue, and asked

this Court to rule on its motion to dismiss in the meantime, apparently (but incorrectly) hoping to moot the issue and avoid having to make any decision.

195.  However, the motion, designed to delay resolution of Plaintiffs' litigation, relied almost exclusively on objectively incorrect information.  For example, ATF speculated that FRAC's headquarters was not located in Bismarck—something Plaintiffs easily disproved in their response to ATF's motion.

196.  Rather than merely responding to ATF's motion to dismiss, Plaintiffs additionally filed a motion for summary judgment seeking a decision on the merits.  Faced with the prospect of finally having to defend its years-long *de facto* prohibition of the Reformation, ATF was forced, once again, to change course.

*ATF Reclassifies The Reformation In Response To This Litigation*

197.  On May 4, 2023—four months after Plaintiffs initiated this suit and four-and-a-half years after initially classifying the Reformation—ATF reclassified the Reformation "as a 'shotgun' under both the GCA *and the NFA*."  Ex. Q at 1 (FTISB Letter 320280) (emphasis in original) ("Second Reformation Classification").

198.  ATF acknowledged that it previously classified "the Reformation firearms as 'shotguns' under the [GCA], but not as 'shotguns' under the [NFA]."  *Id.* at 2.

199.  ATF explained that it made its prior classification because the Reformation is "chambered for .300 BLK, which is a traditional fixed metallic cartridge that FTISB did not consider a traditional 'fixed shotgun shell.'"  *Id.* at 3.

200.  But then ATF realized that it did not like the consequences of its straightforward reading of the statutory text.

201.  In particular, ATF wanted to create a "searchable database that maintains records of any [GCA] approval" for the sale, delivery, or interstate transfer of GCA-only short-barreled shotguns,

and it questioned its authority to "maintain[] such a system of records outside the structure of the NFA." *Id.*

202.  However, the GCA does not require the agency to create a searchable database that maintains records of GCA-only short-barreled shotguns and instead requires only that the Attorney General "specifically authorize[]" the sale, delivery, or interstate transfer of such weapons.  18 U.S.C. § 922(a)(4), (b)(4).  In fact, Congress has indicated that ATF ***should not*** maintain such database for GCA-only weapons.  *See, e.g.*, *id.* § 926(a).  Franklin previously raised this issue in meetings with the agency.

203.  In other words, ATF decided that the Reformation is now an NFA weapon not because it is covered by the statute, but because ATF wants to use the NFA's monitoring authority to cover GCA-only weapons as well.  That is, instead of abiding by the consequences of Congress's policy choices, ATF decided to "revisit[] the relevant definitions" and come to a different conclusion that allowed it to accomplish its own policy objectives.  Second Reformation Classification at 3–4.

204.  According to ATF's new interpretation, when Congress defined "shotguns" in the NFA as weapons that "use the energy of the explosive in ***a fixed shotgun shell*** to fire through a smooth bore," 26 U.S.C. § 5845(c) (emphasis added), it in fact meant weapons that use the energy of ***any projectile*** to fire through a smooth bore.  *Id.* at 4–6.

205.  ATF thus erroneously concluded that "the term '*fixed shotgun shell*' is best interpreted to mean any cartridge suitable for use in a shotgun."  *Id.* at 6.  But ATF's NFA classification decision rests on a tautology:  Under ATF's interpretation, a firearm is a shotgun when it uses a "fixed shotgun shell," and ammunition is a "fixed shotgun shell" when it is inserted into a shotgun.  Virtually every GCA shotgun, therefore, is necessarily an NFA shotgun—even though the NFA includes an additional condition in the shotgun definition.  ATF thus rendered the NFA phrase

"fixed shotgun shell," effectively meaningless.

206.  Applying its novel interpretation, ATF amended its 2018 classification letter "to classify [the Reformation] as a 'shotgun' under both the GCA and NFA."  *Id.* at 8–9.  That ATF reached this decision only now—after Plaintiffs filed this suit and five years after ATF itself concluded the opposite—reflects ATF's overarching objective of delaying Franklin's ability to make an undisputedly lawful weapon available to the American public.

*ATF's Classifications Of The Reformation Are Unlawful*

207.  ATF's classifications of the Reformation under both the NFA and the GCA are unlawful.

208.  *First*, the Reformation is not a short-barreled shotgun under either the NFA or the GCA because it does not have a "smooth bore."  26 U.S.C. § 5845(d) (NFA); 18 U.S.C. § 921(a)(5) (GCA).

209.  ATF conceded that the Reformation "[b]arrel has straight lands and grooves."  First Reformation Classification at 6.

210.  A barrel with "lands and grooves" is plainly not "smooth."  *See, e.g.*, *United States v. Spinner*, 152 F.3d 950, 958 (D.C. Cir. 1998) (explaining that Government represented that "jury simply could have looked down the barrel of the weapon . . . and determined on its own whether the bore was smooth or rifled").

211.  ATF's assertion that "'smooth' means only 'unrifled,'" First Reformation Classification at 5, is, at bottom, an attempt to rewrite the statutory language.

212.  *Second*, at the very least, the Reformation is not a short-barreled shotgun under the NFA because it does not "use the energy of the explosive in a fixed shotgun shell to fire."  26 U.S.C. § 5845(d).

213.  Rather, the Reformation is "chambered for .300 BLK, which is a traditional fixed metallic *cartridge*."  Second Reformation Classification at 3 (emphasis added).

214. A "cartridge" is a different type of ammunition than a "shotgun shell." *See id.* at 5 (discussing distinct definitions of these terms in "[i]ndustry reference materials contemporaneous to the enactment of the GCA and amendment of the NFA").

215. Indeed, the NFA defines "rifle" as a weapon that, *inter alia,* "use[s] the energy of the explosive in a *fixed cartridge* to fire."  26 U.S.C. § 5845(c).

216. And Congress was clear when it wanted to sweep in both "fixed cartridges" and "fixed shotgun shells" because it used the broader term "fixed ammunition" in other definitions in the same section of the NFA.  *Id.* § 5845(e) (defining "Any other weapon"); (g) (defining "Antique firearm").

217. Were there any doubt that Congress intended the terms to be distinct, one of those definitions uses both "fixed shotgun shell" and "fixed ammunition" in the same provision.  *Id.* § 5845(e).

218. Reading these terms to be "interchangeable," Second Reformation Classification at 7, violates the presumption that when a legal text "use[s] one term in one place, and a materially different term in another," "the different term denotes a different idea."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012); *see also* William N. Eskridge Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 109–10 (2016) (same); *id.* at 110 n.58 (collecting Supreme Court cases).

219. It likewise violates the rule to "give effect, if possible, to every clause and word of a statute." *United States v. Pulsifer*, 39 F.4th 1018, 1021 (8th Cir. 2022) (citations and quotations omitted).

220. What is more, Congress knows how to write a statute that does not differentiate between shotguns and rifles by their respective ammunition:  the GCA defines both "shotgun" and "rifle"

as weapons that "use the energy of an explosive to fire"—without any reference to the type of ammunition facilitating the firing.  *See* 18 U.S.C. § 921(a)(5), (7).

221.  In fact, Congress added the ammunition distinctions in the NFA definitions of "shotgun" and "rifle" in the same statute in which it adopted the definitions in the GCA, *see* Pub. L. No. 90-618, §§ 102, 201, 82 Stat. 1213, 1215, 1231 (1968), but subsequently removed the ammunition distinctions from **only** the GCA, *see* Pub. L. No. 105-277, § 115, 112 Stat. 2681, 2681–490 (1998).

222.  "When Congress amends one statutory provision but not another, it is presumed to have acted intentionally." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) (citation omitted).

223.  Thus, under the correct reading of the NFA, the Reformation is neither a "shotgun" nor a "short-barreled shotgun."

224.  And to the extent there was any ambiguity in this reading—though there is not—the rule of lenity requires construing the NFA to not encompass the Reformation.  *See, e.g.*, *Cargill v. Garland*, 57 F.4th 447, 470 (5th Cir. 2023).

*ATF's Delay In Creating Rules To Transfer GCA-Only Short-Barreled Shotguns is Unlawful*

225.  The Reformation is not a "shotgun" under the NFA or the GCA.

226.  Prior to this litigation, ATF classified the Reformation as a shotgun under the GCA but not the NFA but refused to promulgate the necessary forms and procedures to sell, deliver, and transfer interstate GCA-only shotguns.

227.  Indeed, despite ATF's assurances since 2019 that the agency was creating "procedures and forms to address this gap in the federal firearm regulations," Reformation Private Letter at 2, the procedures and forms have never materialized.

228.  **1,648** days have elapsed from the time ATF classified the Reformation as a GCA-only short-barreled shotgun.

229.  During this time, ATF refused to determine whether any transfers of GCA-only short-

barreled shotguns are consistent with public safety and necessity.

230.  The end result has been a *de facto* ban on sales of all GCA-only short-barreled shotguns (including the Reformation) in the United States for over **four years**.

231.  ATF's delay harmed sales of the Reformation and discouraged other manufacturers from creating similar firearms that would be subject to the same ATF classification.

232.  That course is not the one charted by Congress.  Instead, Congress requires the Attorney General—or his delegate—to "specifically authorize[]" the sale, delivery, or interstate transportation of short-barreled shotguns where such actions are "consistent with public safety and necessity."  18 U.S.C. § 922(a)(4), (b)(4).

233.  By conditioning the sale, delivery, and interstate transportation of short-barreled weapons on a "specific[] authoriz[ation]" by the Attorney General, Congress necessarily contemplated a mechanism for a party to seek such authorization.  *See* Scalia & Garner, *Reading Law* at 192 ("Authorization of an act also authorizes a necessary predicate act.").

234.  Indeed, if ATF had unfettered discretion to ignore such requests, Congress's prescribed standards for considering such authorizations—"public safety and necessity"—would be meaningless, violating the maxim to "give effect, if possible, to every clause and word of a statute." *Pulsifer*, 39 F.4th at 1021 (citations and quotations omitted).

235.  ATF agrees that the GCA requires it to provide a process for submitting authorization requests for GCA-only short-barreled shotguns.

236.  In the aforementioned open letter, ATF explained that the "mechanism" "for FFL holders and owners of [GCA-only short-barreled shotguns] to request the statutorily required approvals" was "*necessary*."  Reformation Open Letter at 2 (emphasis added).

237.  ATF further represented that it was "currently developing the procedures and forms to

32

address this new type of firearm." *Id.*

238.  Noting that these procedures and forms would be "promulgated," the open letter gave the public guidance on how to proceed "[u]ntil such time." *Id.*

239.  Pursuant to the GCA and ATF's own statements, the agency has a duty to determine whether requests to sell, deliver, or transfer short-barreled shotguns should be "specifically authorized," "consistent with public safety and necessity." 18 U.S.C. § 922(a)(4), (b)(4).

240.  ATF's abdication of this duty for more than four years flouts Congress's carefully defined firearm regulatory scheme and ATF's commitment in the open letter to issue the necessary forms and procedures.

*ATF's Delay Has Caused Significant Harm*

241.  In the years since ATF took the position that FFL holders "may not lawfully transfer the Reformation to a non-licensee," Franklin has not been able to sell the Reformation. Jacobson Decl. ¶¶ 45–46.

242.  Because the vast majority of customers do not hold FFLs—and those that hold FFLs are generally dealers themselves—there has been simply no market for the Reformation without the necessary forms and procedures to transfer GCA-only short-barreled weapons to non-licensees. *Id.* ¶ 46.

243.  After ATF promulgates the necessary forms and procedures to transfer GCA-only short-barreled weapons to non-licensees, Franklin would be able to market and sell any firearms that ATF classifies as GCA-only short-barreled shotguns. *Id.* ¶ 44.

244.  But the absence of such forms and procedures has resulted in significant financial loss for Franklin. *Id.* ¶¶ 45–56.

245. For one, Franklin produced 1,195 NRS barrels—designed to be affixed to the Reformation—that it was unable to sell. *Id.* ¶ 47.

246.  If ATF's delay had not prohibited Franklin from selling the NRS barrels on Reformation firearms, the firearms would collectively have been worth more than a million dollars.  *Id.* ¶ 48.

247.  Because ATF did not promulgate the necessary mechanism to obtain authorization to transfer GCA-only short-barreled shotguns, however, Franklin has not been able sell NRS barrels affixed to Reformation firearms.  *Id.* ¶¶ 46–47.

248.  The Reformation would have sold well over the past five years if ATF had provided a mechanism for Franklin to market and sell the weapon.

249.  Indeed, the National Association of Sporting Goods Wholesalers and the Professional Outdoor Media Association named the Reformation the "Best New Shotgun" of 2019.  *See* Press Release, National Association of Sporting Goods Wholesalers & Professional Outdoor Media Association, NASGW Announces Award Winners at the 2019 NASGW Expo (Oct. 24, 2019).[13]

250.  The National Association of Sporting Goods Wholesalers is an influential trade association comprised of the largest firearms distributors in the United States.  *See Our Association*, National Association of Sporting Goods Wholesalers (last visited May 18, 2023).[14]

251.  The Professional Outdoor Media Association is an influential outdoor sporting association.  *See Why Join POMA?*, Professional Outdoor Media Association (last visited May 18, 2023).[15]

252.  Recognition from these groups evinces the enthusiasm for the Reformation from both the firearms industry and the public.

253.  Franklin estimated that it would bring in $8 million in firearm sales after the first year of

---

[13] https://news.nasgw.org/news/nasgw-announces-award-winners-at-the-2019-nasgw-expo.

[14] https://nasgw.org/about/nasgw.

[15] https://professionaloutdoormedia.org/why-join-poma/.

producing the Reformation.  *See* Jacobson Decl. ¶¶ 51, 56; Ex. P at 15 (Franklin Presentation to ATF (Aug. 1, 2018)) ("Franklin Reformation Presentation").

254.  Franklin estimated that it would bring in $25 million in firearms sales per year after the first five years of producing the Reformation.  *See* Jacobson Decl. ¶¶ 52, 56; Franklin Reformation Presentation at 15.

255.  Franklin estimated that it would sell one million rounds of ammunition for the Reformation in the first year of production.  *See* Jacobson Decl. ¶¶ 53, 56; Franklin Reformation Presentation at 15.

256.  Franklin estimated that it would sell ten million rounds of ammunition for the Reformation per year after the first five years of production.  *See* Jacobson Decl. ¶¶ 54, 56; Franklin Reformation Presentation at 15.

257.  In addition, Franklin's patent for the exclusive right to utilize the Reformation's straight lands and grooves design (Patent No. 10,295,290) is time-limited.[16]  *See* 35 U.S.C. § 154(a)(2).

258.  Every day of ATF delay has cut into Franklin's patent-protected period to market the Reformation.

259.  Franklin has suffered and may continue to suffer substantial financial harm from ATF's unexplained delay.

260.  The American public also has suffered as a result of ATF's delay.

261.  By instituting a *de facto* ban on GCA-only short-barreled shotguns for unlicensed individuals, the vast majority of Americans have been deprived of the ability to buy—and transport across state lines—a whole class of weapons useful for hunting, home defense, and recreational

---

[16] This patent is held by Franklin's parent company—Franklin Armory Holdings, Inc.—and licensed to Franklin.

shooting.  *See* Jacobson Decl. ¶ 46; Franklin Reformation Presentation at 14.

262.  Moreover, ATF's continued refusal to approve procedures and issue forms to allow the transfer of GCA-only short-barreled shotguns dissuades Franklin and other firearms manufacturers (including FRAC members) from developing novel weapons like the Reformation.

<div align="center">*ATF's Delay Was Pretextual*</div>

263.  ATF has not offered any reason for its years-long delay.

264.  To the contrary, it expressly recognized the need to fix the "gap in the federal firearm regulations" that it created.  Reformation Private Letter at 2.

265.  But despite that recognition, ATF did not appear to make any progress.

266.  Creating "procedures and forms" to allow for the transfer and sale of the Reformation should not have been a difficult process for the agency.

267.  Indeed, ATF would have had to do little more than publish a new form duplicating those already in existence for other GCA and/or NFA firearms.

268.  And contrary to ATF's new claims, there is no requirement for ATF to create a "searchable database that maintains records" of GCA approvals.  *Contra* Second Reformation Classification at 3.

269.  ATF should have been capable of completing such a task in a matter of days or weeks—not years.

270.  Consider the time it took for ATF to tackle a significantly more ambitious policy initiative:  designing rules to regulate so-called "ghost guns."

271.  On April 8, 2021, the Attorney General instructed ATF to "close a regulatory loophole that has contributed to the proliferation of the so-called ghost guns."  Merrick B. Garland, Attorney

General, Remarks on Gun Violence Prevention at the White House Rose Garden (Apr. 8, 2021).[17]

272.  On April 26, 2022, ATF issued its final rule promulgating regulations for so-called ghost guns.  *See* 87 Fed. Reg. 24,652.

273.  Thus, it took ATF approximately one year—383 days—to close a perceived regulatory gap through a complex rule that amended more than a dozen federal regulations.

274.  ATF's delay here—*1,648* days to issue a single form—is inexplicable and unjustifiable by comparison.

275.  And its decision to reclassify the Reformation as an NFA weapon in response to this litigation such that Plaintiffs must amend their complaint and delay the litigation even more shows the lengths at which ATF will go to abdicate its regulatory responsibilities, including wasting this Court's resources.

276.  Indeed, ATF's years-old claim that it "is currently developing the procedures and forms" appears to have been false.

277.  The effect—and apparent intent—of ATF's delay has been to surreptitiously prohibit the sale or transfer of the Reformation without incurring the political costs of doing so expressly.

278.  That this was, in fact, ATF's goal all along is evident from ATF's new decision to misclassify the Reformation with the express aim of avoiding having to promulgate the "GCA procedure" it promised to provide years ago.  Second Reformation Classification at 3.

279.  Now that ATF has classified the Reformation as both and NFA and GCA short-barreled rifle, the firearm may be sold and transferred using ATF Form 5320.4 and ATF Form 5320.20. However,  the  burdens  impose  on  NFA  short-barreled  rifles  have  made  the  Reformation

---

[17] https://www.justice.gov/opa/speech/attorney-general-garland-s-full-remarks-gun-violence-prevention-white-house-rose-garden.

unattractive to Franklin's potential customers.

280.  ATF's surreptitious policy of unlawfully withholding a mechanism to authorize the sale, delivery, or interstate transfer of GCA-only short-barreled shotguns makes no sense.

281.  ATF already has a mechanism through which it authorizes the sale, delivery, and interstate transfer of weapons classified as short-barreled shotguns under ***both*** the GCA ***and*** the NFA.  *See* 27 C.F.R. §§ 478.28, 478.98, 479.84.

282.  But, by definition, Congress chose to subject weapons classified as regulated by both the GCA and the NFA to more requirements than weapons classified as regulated by only the GCA.

283.  There is no rational reason to authorize the sale, delivery, and interstate transfer of weapons subject to both the GCA and the NFA, while at the same time instituting a *de facto* ban on the sale, delivery, and interstate transfer of weapons subject to only the GCA, as ATF has done the last four-and-a-half years by unreasonably delaying and unlawfully withholding the legally required form.

284.  The Court should compel ATF to issue the forms and procedures so that all GCA-only weapons may be legally sold, delivered, and transferred interstate.  If this Court holds that the Reformation is a GCA-only firearm (as ATF has maintained for the last four-and-a-half years), the need for such relief will become even more acute.

### FIRST CLAIM FOR RELIEF
### (Arbitrary-and-Capricious Classification – FAI-15 Antithesis)

285.  Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

286.  The APA authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

287.  ATF's classification of the FAI-15 Antithesis is arbitrary, capricious, and contrary to law.

288.  ATF's classification of the FAI-15 Antithesis is arbitrary and capricious because it "entirely failed to consider" many "important aspect[s] of the problem."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

289.  In particular, ATF failed to consider (1) that rifling is not disadvantageous for shooting shotshells in short-range engagements, (2) that rifling can enhance the firing of shotshells in some circumstances, (3) the agency's own results testing the FAI-15 Antithesis, (4) Franklin's testing showing that the FAI-15 Antithesis successfully fires shot, (5) Franklin's stated intent, (6) the inscription of ".410/.45LC" on the FAI-15 Antithesis, and (7) the fact that consumers value the ability to fire shot through a rifled bore.

290.  ATF's classification of the FAI-15 Antithesis is arbitrary and capricious because it "offer[s] an explanation for its decision that runs counter to the evidence before the agency."  *State Farm*, 463 U.S. at 43.

291.  In particular, each of the seven pieces of evidence ATF selectively failed to consider counseled against the agency's classification of the FAI-15 Antithesis.

292.  ATF's classification of the FAI-15 Antithesis is arbitrary and capricious because it failed to "supply a reasoned basis for [its] action."  *State Farm*, 463 U.S. at 43 (citation and quotations omitted).

293.  In particular, ATF's stated premise—that "the twist of the shot column traveling down the [rifled] bore will spread the shot pattern"—did not support its conclusion that "rifled bore is disadvantageous as an objective design feature when using shot ammunition."  FAI-15 Antithesis Classification Letter at 4.

294.  ATF also erroneously claimed that the enhanced marketability for a weapon capable of

firing multiple projectiles "does not indicate that the weapon was 'designed, made and intended' to fire other than a single projectile."  *Id.*

## SECOND CLAIM FOR RELIEF
### (Arbitrary-and-Capricious Classification – Reformation Firearm)

295.  Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

296.  The APA authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

297.  ATF's classification of the Reformation is arbitrary, capricious, and contrary to law.

298.  ATF's determination that the Reformation has a "smooth bore" for purposes of the NFA and GCA is arbitrary, capricious, and contrary to law.

299.  ATF's determination that the Reformation fires a "fixed shotgun shell" for purposes of the NFA is arbitrary, capricious, and contrary to law.

## THIRD CLAIM FOR RELIEF
### (Failure to Promulgate Legally Required Form in Violation of the APA and the Mandamus Act – Reformation Firearm)

300.  Plaintiffs incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

301.  ATF unlawfully withheld and unreasonably delayed the issuance of procedures required by law.  5 U.S.C. § 706(1); *see Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

302.  ATF failed to provide a means for parties to seek "specific[] authoriz[ation]" to sell, deliver, or transport across state lines weapons classified as short-barreled shotguns under the GCA but not the NFA.  *See* 18 U.S.C. § 922(a)(4), (b)(4).

303.  This failure contravenes Congress's clear statutory command.

304.  As ATF itself recognized, the lack of such a mechanism created a "gap in the federal firearm regulations."  Reformation Private Letter at 2.

305.  Through its open letter, ATF also committed to promulgating such a mechanism when it told the public:  "ATF is currently developing the procedures and forms to address this new type of firearm.  Once promulgated, these new procedures and forms will provide the mechanism necessary for FFL holders and owners of [GCA-only short-barreled shotguns] to request the statutorily required approvals."  *See* Reformation Open Letter at 2.

306.  ATF's commitment to promulgating this mechanism "is binding" because it "speaks of what 'is' done or 'will' be done."  *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1027–30, 1033 (8th Cir. 2003) (requiring agency to comply with its policy statement); *see CropLife Am. v. EPA*, 329 F.3d 876, 881 (D.C. Cir. 2003) (finding agency press release was binding where it used "clear and unequivocal language, which reflect[ed] an obvious change in established agency practice").

307.  ATF's decision to withhold the required mechanism is unlawful.  "[T]he plain meaning of [APA] § 706(1) . . . unequivocally mandates that courts 'shall' compel unlawfully withheld agency action."  *South Carolina v. United States*, 907 F.3d 742, 758 (4th Cir. 2018) (quoting 5 U.S.C. § 706(1)); *see United States v. Smith*, 756 F.3d 1070, 1073 (8th Cir. 2014) (explaining statutory interpretation generally requires "giving words their 'ordinary, contemporary, common meaning'" (brackets removed)).

308.  In addition, ATF's delay in creating this required mechanism is unreasonable.

309.  The Eighth Circuit "evaluate[s] the reasonableness of delay" by "[a]pplying th[e] approach" "of the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)."  *Irshad v. Johnson*, 754 F.3d 604, 607 (8th Cir. 2014).

310.  Under that approach, "[t]ime is the first and most important factor."  *In re Pub. Emps.*

*for Env't Resp.*, 957 F.3d 267, 273–74 (D.C. Cir. 2020) (citations, quotations, and alterations omitted).  "Although there is no per se rule as to how long is too long, a reasonable time for agency action is typically counted in weeks or months, not years." *Id.* at 274 (citations, quotations, and alterations omitted).

311.   ATF failed to act for over ***four years***.

312.   Thus, the length of the delay—the first and most important factor—strongly suggests that ATF's delay is unreasonable.

313.   "[T]he court should also take into account the nature and extent of the interests prejudiced by delay," recognizing that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80 (citations omitted).

314.   Here, the firearms industry and the gun-owning public were prejudiced by ATF's failure to authorize the sale, delivery, and interstate transportation of GCA-only short-barreled shotguns.

315.   The firearms industry suffered financial harm because it was unable to sell and deliver to unlicensed individuals—the vast majority of customers—a class of firearms that otherwise would be popular.

316.   And the delay has harmed the American public's welfare by depriving it of the ability to buy, receive, and transport firearms that are useful for useful for hunting, home defense, and recreational shooting.

317.   There is no countervailing interest in delay.  Rather, by definition, creating a mechanism to authorize the sale, delivery, and interstate transfer of GCA-only short-barreled weapons would be "consistent with public safety and necessity."  18 U.S.C. § 922(a)(4), (b)(4).

318.   ATF's delay is also unreasonable because the agency has not offered any explanation for

its delay or suggested that the delay is due to "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

319.  To the contrary, the action ATF is required to take—issuing a form on which individuals can explain why the transaction in question is consistent with necessity and public safety—would not require significant time or resources.

320.  Indeed, ATF has undertaken significantly more burdensome actions in a fraction of the time it has delayed here.

321.  Finally, this court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* (citations and quotations omitted).

322.  Here, however, there is a form of impropriety lurking behind the agency's lassitude: ATF's delay effectively prevents all sales, deliveries, and interstate transfers of GCA-only weapons, contrary to the expressed will of Congress.

323.  This Court should order ATF to issue the required form to plug the regulatory gap identified by the agency in its 2019 open letter and enable the industry sell, deliver, and transfer interstate GCA-only short-barreled rifles.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**(Arbitrary and Capricious Enforcement Policy – Reformation Firearm)**

</div>

324.  Plaintiffs incorporate by reference all prior paragraphs of this Complaint as though set forth fully herein.

325.  The APA authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

326.  ATF's delay in promulgating a mechanism for GCA-only weapons effected a general enforcement policy in which these weapons were effectively prohibited because the agency offered

a mechanism to sell, deliver, and transfer weapons classified as short-barreled shotguns under the GCA *and* the NFA, but did not offer such a mechanism to transfer weapons classified as short-barreled shotguns under only the GCA.

327.   ATF's policy of not allowing authorization requests for GCA-only weapons—while facilitating such requests for more heavily regulated weapons covered by both the GCA and the NFA—"is arbitrary and capricious" because the policy choices are "internally inconsistent." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. Cir. 2018).

328. ATF's policy is also arbitrary and capricious because the agency has also not "articulate[d] a satisfactory explanation for its [enforcement policy] including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (citations and quotations omitted).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants, as follows:

A. Declare unlawful and set aside ATF's classification of the FAI-15 Antithesis.

B. Enter an order compelling ATF to—within thirty days—classify the FAI-15 Antithesis consistent with statutory requirements and the evidence before the agency.

C. Declare unlawful and set aside ATF's classification of the Reformation.

D. Enter an order compelling ATF to—within thirty days—classify the Reformation consistent with statutory requirements and the evidence before the agency.

E. Declare that ATF has unreasonably delayed in promulgating procedures to authorize the sale, delivery, and interstate transportation of weapons classified as short-barreled shotguns under only the GCA.

F.   Enter an order compelling ATF to—within thirty days—issue procedures authorizing the sale, delivery, and interstate transportation of weapons classified as short-barreled shotguns under only the GCA.

G.   Grant such further and additional relief as this Court deems just and proper.

May 19, 2023                    By:        /s/ Stephen J. Obermeier
                                           Stephen J. Obermeier
                                           Jeremy J. Broggi
                                           William K. Lane III
                                           Michael J. Showalter
                                           Boyd Garriott
                                           **WILEY REIN LLP**
                                           2050 M Street NW
                                           Washington, DC 20036
                                           Tel: 202.719.7000
                                           Fax: 202.719.7049
                                           SObermeier@wiley.law
                                           JBroggi@wiley.law
                                           WLane@wiley.law
                                           MShowalter@wiley.law
                                           BGarriott@wiley.law

                                           Benjamin J. Sand (ND ID #07981)
                                           **CROWLEY FLECK PLLP**
                                           100 W Broadway Ave
                                           Bismarck, ND 58501
                                           Tel: 701.223.6585
                                           Fax: 701.222.4853
                                           bsand@crowleyfleck.com

                                           *Counsel for Plaintiffs*