# EXHIBIT D



**FRANKLIN ARMORY**
2246 Park Place Ste B
Minden NV 89423
Phone (775)783-4313
www.franklinarmory.com

May 7, 2020

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch
Bureau of Alcohol, Tobacco, Firearms and Explosives
244 Needy Road Suite 1600
Martinsburg, WV 25405

    Re:    Classification Letter on Franklin Armory Antithesis™
           907010: WJS 3311/10340

Chief Curtis,

On behalf of Franklin Armory, Inc. ("Franklin Armory") we re-request responses to the questions that were not answered by the January 7, 2020 (but dated in error as January 7, 2019) in matter 3311/310340 ("ATF January 2020 Antithesis Letter"). We also request re-consideration of the classification of the Antithesis™ as a "rifle" by the ATF January 2020 Antithesis Letter and make this final request for reconsideration and reclassification.

For your convenient reference, a copy of the ATF January 2020 Antithesis Letter is attached hereto.

The ATF January 2020 Antithesis Letter was issued in response to Franklin Armory's January 16, 2019, classification request letter Franklin Antithesis January 2019 Classification Request (and accompanying Antithesis™ sample product submission). For your convenient reference, a copy of the Franklin Antithesis January 2019 Classification Request is attached hereto. The Franklin Antithesis January 2019 Classification Request asked five specific questions relating to the firearm submitted (the unanswered questions, which are the subject of this follow-up request, are highlighted in bold):

1. Could you please classify this firearm pursuant to the National Firearms Act?
2. Could you please classify this firearm pursuant to the Gun Control Act?
3. **Could you please clarify whether this firearm, as imported or modified, would be classified "as identical to any rifle or shotgun" prohibited from importation under 18 U.S.C. § 925(d)(3) "as not being particularly suitable for or readily adaptable to sporting purposes? [This question has two parts, the first addressing the firearm as "imported" and the second addressing the firearm as "modified."]**
4. **Would the classification of the firearm change if it was newly manufactured by Franklin Armory?**
5. **Would the classification change if the firearm was under 26" in length?**

Background factual information and policy analysis relevant to these three remaining questions is presented below for your convenience and we respectfully re-request ATF's response to each of the three

**FRANKLIN ARMORY**
2246 Park Place Ste B
Minden NV 89423
Phone (775)783-4313
www.franklinarmory.com

questions. As these unanswered questions involve/request regulatory classification clarification regarding the Antithesis™, as per FATD classification/evaluation policy which requires a physical example for evaluation/testing by FATD, we have again included the sample firearm that was the subject of the ATF January 2020 Antithesis Letter.

I.   THE FIRST ANTITHESIS™ SUBMISSION TO FATD

### Original CVA Firearm and Importation Classification

The firearm submitted was "a 20-gauge Connecticut Valley Arms ("CVA") model "Hunter" Serial Number 61-03-004738-17, originally manufactured in Spain by DIKAR and imported into the United States by BP Firearms, LLC ("BPF") located in Lawrenceville, Georgia.

The ATF January 2020 Antithesis Letter found (see p. 4) that the submitted _weapon_ was originally manufactured in Spain and imported in the United States as a "shoulder-fired _weapon_, with a barrel length of approximately 24 inches. The ATF January 2020 Antithesis Letter also found that such a _firearm_ is importable as "sporting under" 18 U.S.C. § 925(d)(3) because it is a type that is generally recognized as particularly suitable for or readily adaptable to sporting purposes....[1,2]

We note that the CVA Hunter, as imported, has a rifled barrel yet was imported via the ATF Form 6 process (having met the 18 U.S.C. § 925(d) "sporting purposes test") as a shotgun. We further note the following: features of the Hunter at the time of import:

- Barrel has spiral lands and grooves
- Approximate bore diameter of .613".
- Approximate barrel length is 24".
- Firearm is equipped with a shoulder stock.
- Approximate overall length is 32".
- Firearm is chambered in 20-gauge.

### Franklin Armory Antithesis™

In preparation for the initial classification submission to FATD, Franklin Armory reduced the CVA Hunter's barrel from 24 inches to 12.71 inches.

---

[1] This statement addresses Franklin Armory's third question as to whether the firearm, as imported, would satisfy the "sporting purposes" requirement of 18 U.S.C. §925(d)(3).
[2] We question, in this portion of the ATF January 2020 Antithesis Letter, how FATD chose to use the terms "weapon" and "firearm" instead of "shotgun" as was indicated on the relevant Form 6. (We have confirmed with CVA that this particular firearm was imported into the United States via Form 6 as a "shotgun."



**FRANKLIN ARMORY**
2246 Park Place Ste B
Minden NV 89423
Phone (775)783-4313
www.franklinarmory.com

*Physical features at the time of Franklin Armory's Submission to ATF for Classification:*

- Barrel has spiral lands and grooves
- Approximate bore diameter of .613".
- Approximate barrel length of 12.71".
- Firearm is equipped with a shoulder stock.
- Approximate overall length is 27.13 in.
- Firearm is chambered in 20-gauge.

In short, Franklin Armory modified three aspects of the firearm: 1) The barrel length, 2) the overall length, and 3) placement of the GCA required markings. All other aspects of the firearm remained unchanged.

## 2. RIFLE CLASSIFICATION

Instead of classifying the firearm as being the type under which it was imported (shotgun), the ATF January 2020 Antithesis Letter found (see p. 7) that the subject firearm was (among other things) a rifle under the GCA. As per question 4 for which we re-request ATF's policy position, we believe this "rifle" classification is improper and note the following chart which breaks down the GCA's 18 U.S.C. § 921(a)(7) rifle definition, element by element, and identifies all 16 possible combinations of elements of the definition:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
|  | BELOW IS A LIST OF ALL 16 POSSIBLE COMBINATIONS OF THE REQUISITE ELEMENTS NECESSARY FOR A DEVICE TO BE DEEMED A "RIFLE" UNDER 18 U.S.C. § 921(a)(7) (EACH ROW REPRESENTS A CONFIGURATION THAT WOULD BE DEEMED A RIFLE AND EACH COLUMN CONTAINS A REQUISITE ELEMENT FOR EACH SPECIFIC CONFIGURATON) |
| 1 | A Weapon | designed | & made | & Intended to be fired from the shoulder | & designed | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 2 | A Weapon | designed | & made | & Intended to be fired from the shoulder | & designed | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 3 | A Weapon | designed | & made | & Intended to be fired from the shoulder | & redesigned | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 4 | A Weapon | designed | & made | & Intended to be fired from the shoulder | & redesigned | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 5 | A Weapon | designed | & remade | & Intended to be fired from the shoulder | & designed | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 6 | A Weapon | designed | & remade | & Intended to be fired from the shoulder | & designed | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 7 | A Weapon | designed | & remade | & Intended to be fired from the shoulder | & redesigned | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 8 | A Weapon | designed | & remade | & Intended to be fired from the shoulder | & redesigned | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 9 | A Weapon | redesigned | & made | & Intended to be fired from the shoulder | & designed | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 10 | A Weapon | redesigned | & made | & Intended to be fired from the shoulder | & designed | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |



2246 Park Place Ste B
Minden NV 89423
Phone (775)783-4313
www.franklinarmory.com

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11 | A Weapon | redesigned | & made | & Intended to be fired from the shoulder | & redesigned | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 12 | A Weapon | redesigned | & made | & Intended to be fired from the shoulder | & redesigned | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 13 | A Weapon | redesigned | & remade | & Intended to be fired from the shoulder | & designed | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 14 | A Weapon | redesigned | & remade | & Intended to be fired from the shoulder | & designed | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 15 | A Weapon | redesigned | & remade | & Intended to be fired from the shoulder | & redesigned | & made | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |
| 16 | A Weapon | redesigned | & remade | & Intended to be fired from the shoulder | & redesigned | & remade | to use the energy of an explosive to fire | only a single projectile | through a rifled bore | for each single pull of the trigger. |

Reviewing these combinations, we note that there are certain elements that are universal to every "rifle" under the GCA's rifle definition. One such element particularly relevant to the present case is that the firearm shoot "*only* a single projectile."

The submitted firearm being a 20-gauge, which, like other standard shotgun gauges, commonly fires both single projectiles (slugs), as well as multiple projectiles (shot). By design, rifled 20-gauge firearms serve two roles, firing multi-projectile shells (e.g. shot and sabot rounds) and firing single projectiles (slugs).

With regard to the utility of using a rifled bore with "bird shot", we note that rifling's effect of rapidly increasing the spread of the resulting pattern is desirable in certain hunting situations such as unexpected close range turkey hunting shots and close shots in thick cover at fast fleeting gamebirds. Browning's rifled Spreader Choke is one readily available commercial example of this concept being used by bird hunters.

Franklin Armory™ redesigned and remade the Antithesis™ with the intent that Antithesis™ be able to shoot both shot and single projectiles and the design objectively functions as a firearm that shoots shot loads and single projectile loads.

II.   JUDICIAL DEFERENCE TO ATF IN CLASSIFICATIONS

When agency decisions are reviewed by the courts, unbridled deference to agency decision making is not the standard – even with the ATF.[3] Rather, deference to the agency by a reviewing court is limited, and we note that the Supreme Court has held:

---

[3] While the ATF has traditionally been given great deference in these highly technical matters, such deference is not absolute and is, apparently, waning as conflicting and arbitrary classifications are being scrutinized and denied by the Courts. For ex00ample, in to *Guedes, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.* 589 U.S. ____, ____ (2020) (slip op. at 3), Supreme Court Justice Gorsich, addressing the ATF's positions on bump stocks held:

> [t]he agency used to tell everyone that bump stocks don't qualify as "machineguns.": Now it says the opposite. The law hasn't changed, only an



2246 Park Place Ste B
Minden NV 89423
Phone (775)783-4313
www.franklinarmory.com

> If Congress has explicitly left *a gap* for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

(*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).)

As applied to Antithesis™, there is no gap. The language of the GCA's rifle definition is clear – there are 16 possible combinations that can be deemed "rifles" and all of them mandate that the firearm expel "only" a single projectile through the barrel. Deference to agency interpretation in a situation where the regulation is unambiguous would "permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." (*Kisor v. Wilkie, U.S.*, 139 S.Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019) quoting *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000)).) The same can be said where an interpretation is "plainly...inconsistent with the regulation." (*Decker v. Northwest Environmental Defense Center*, 568 U.S. 597, 613, 133 S. Ct. 1326, 185 L. Ed. 2d 447 (2013).)

Accordingly, we respectfully submit that the ATF January 2020 Antithesis Letter incorrectly claims that focusing on the required element that a rifle fire "only a single projectile" leads to "absurd" results:

> For example, a manufacturer would argue that any traditional rifle may lose that classification merely because of the existence of ammunition in that caliber that includes two or more projectiles.

We respectfully contend that this argument is contrary to the statute as it ignores the actual definition provided by the United States' Legislature in favor of policy reasons beyond the authority of the ATF, since Congress established each element within the definition, as opposed to addressing the classification. In fact, Supreme Court Justice Gorsuch wrote in his to *Guedes, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.* 589 U.S. ____, ____ (2020) (slip op. at 3) that:

> agency interpretation of it. And these days it sometimes seems agencies change their statutory interpretations almost as often as elections change administrations. How, in all this, can ordinary citizens be ex00pected to keep up – require not only to conform their conduct to the fairest reading of the law they might expect from a neutral judge, but forced to guess whether the statute will be declared ambiguous; to guess again whether the agency's initial interpretation of the law will be declared "reasonable"; and to guess again whether a later and opposing agency interpretation will also be held "reasonable":? And why should courts, charged with the independent and neutral interpretations of the laws Congress has enacted, defer to such bureaucratic pirouetting?"



**FRANKLIN ARMORY**
2246 Park Place Ste B
Minden NV 89423
Phone (775)783-4313
www.franklinarmory.com

Under our Constitution, "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States v. Davis*, 588 U.S. ___, ___ (2019) (slip op. at 5) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)).

Moreover, directly addressing the allegation that "absurd" results would arise from proper statutory construction, by examining the definition of "rifle" found in 18 U.S.C. § 921(a)(7) once more, we note that the intent elements are *fixed in time* to the point of being "designed" or "redesigned" and "made" or "remade" – thus the addition of new ammunition would have no bearing on a firearm's classification after it had been classified.

For the foregoing reasons, we respectfully contest the prior classification of the Antithesis™ as a "rifle" and make this final request for reconsideration and reclassification.

FATD also concluded that the Antithesis™ is a short-barreled rifle under the GCA and a "firearm" under the NFA, 18 U.S.C. § 921(a)(8) and 26 U.S.C. § 5845(a)(3). While this classification permits Franklin Armory™ (as well as any other firearm manufacturer who desires to produce a similar product to the Antithesis™) with a barrel of only 16 inches in length (a reduction of 2 inches from its imported classification as a "shotgun"), we contend that it too is an improper classification.

The GCA, 18 U.S.C. § 921(a)(8) defines "short barreled rifle" as "a *rifle* having one or more barrels less than sixteen inches in length and any weapon made from a *rifle* (weather by alteration or modification, or otherwise) if such weapon, as modified has an overall length of less than twenty-six inches." And, the NFA, 26 U.S.C. § 5854(a) defines "firearm" to include, in relevant part, "a shotgun having a barrel or barrels of less than 18 inches in length," and "a *rifle* having a barrel or barrels of less than 16 inches in length."

Thus, in order to be a "short barreled rifle" under the GCA or a "rifle" under the NFA, a necessary element is that the device be either a "rifle" or a weapon made from a "rifle." Because, as discussed above, the Antithesis™ was misclassified as a "rifle" under the GCA, the same arguments in opposition to that classification apply to the classification of the Antithesis™ as "short-barreled" rifle under the GCA as well as its classification as a "firearm" under the NFA, 18 U.S.C. § 921(a)(8) and 26 U.S.C. § 5845(a)(3), respectively.

For these reasons, we re-request responses to the questions that were not answered by the January 7, 2020 (but dated in error as January 7, 2019) in matter 3311/310340 ("ATF January 2020 Antithesis Letter"). We also request re-consideration of the classification of the Antithesis™ as a "rifle" by the ATF January 2020 Antithesis Letter and make this final request for reconsideration and reclassification.

Sincerely,

Jason Davis
Counsel for Franklin Armory, Inc.

Page | 6