# EXHIBIT Q



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enforcement Programs and Services*

*Washington, DC 20226*

www.atf.gov

907010
3311/320280

**May 4, 2023**

Mr. Jay Jacobson
Franklin Armory
2246 Park Place, Suite B
Minden, Nevada 89423
FFL #9-88-005-07-4L-06371

Dear Mr. Jacobson:

This letter serves as an amendment to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB) classification letter dated November 13, 2018, of the three Reformation firearms (pictured below). This letter incorporates by reference certain technical findings by FTISB in the classification letter dated November 13, 2018; however, the classification of the Reformation firearms is amended to classify each as a "shotgun" under both the GCA *and the NFA*.

**Franklin Armory, model HSC-15, .300 BLK caliber, serial number FA-3047 X**



- Firearm is equipped with a shoulder stock
- Barrel has straight lands and grooves
- Approximate barrel length with muzzle device removed is **7-5/8** inches

- 2 -

Mr. Jay Jacobson                                                                                                              320280

**Franklin Armory, model "Libertas," .300 BLK caliber, serial number R-11476**



- Firearm is equipped with a shoulder stock
- Barrel has straight lands and grooves
- Approximate barrel length with muzzle device removed is **16-5/16** inches

**Franklin Armory Model "Libertas," .300 BLK caliber, serial number R-11602**



- Firearm is equipped with a shoulder stock
- Barrel has straight lands and grooves
- Approximate barrel length with muzzle device removed is **16-5/16** inches

**Background**

In the November 13, 2018 letter, FTISB classified the Reformation firearms as "shotguns" under the Gun Control Act (GCA), 18 U.S.C. § 921(a)(5), but not as "shotguns" under the National Firearms Act (NFA), 26 U.S.C. § 5845(d). FTISB originally classified these firearms as GCA-only short-barreled shotguns based primarily on the slightly different definitions of "shotgun" in the NFA and GCA. The NFA, in relevant part, defines the term "shotgun" as "a weapon…designed or redesigned and made or remade to use the energy of the explosive *in a fixed shotgun shell* to fire through a smooth bore…" 26 U.S.C. § 5845(d). (Emphasis added.) The GCA, in relevant part, defines the term "shotgun" as "a weapon…designed or redesigned and made or remade to use *the energy of an explosive* to fire through a smooth bore…" 18 U.S.C. §

- 3 -

Mr. Jay Jacobson                                                                                                              320280

921(a)(5). (Emphasis added.) The Reformation firearms incorporate a smooth bore barrel and are chambered for .300 BLK, which is a traditional fixed metallic cartridge that FTISB did not consider a traditional "fixed shotgun shell." As explained in an open letter dated December 19, 2019, "because the Reformation is not chambered for shotgun shells, it is not a shotgun as defined in the NFA."

The result of the November 13, 2018, classification is that the Reformation firearms are not subject to the registration and transfer provisions of the NFA; but are subject to the interstate transportation restrictions under 18 U.S.C. § 922(a)(4) and the sale or delivery restrictions imposed on licensees under 18 U.S.C. § 922(b)(4) of the GCA. Pursuant to 18 U.S.C. § 922(a)(4), it is unlawful for a non-licensee to transport in interstate or foreign commerce any destructive device, machinegun …, short-barreled shotgun, or short-barreled rifle, except as authorized by the Attorney General consistent with public safety and necessity.  Pursuant to 18 U.S.C. § 922(b)(4) it is unlawful for a licensee to sell or deliver such firearms to any person except as specifically authorized by the Attorney General consistent with public safety and necessity. In short, these sections require Attorney General[1] approval before an unlicensed person may transport a "short-barreled shotgun" across state lines and before a licensee may sell or deliver a "short-barreled shotgun" to any person. There is currently no ATF process to request approval to transport a GCA-only short-barreled shotgun across state lines nor is there a process for a licensee to request approval to sell or deliver a GCA-only short-barreled shotgun.

Shortly after receiving the November 13, 2018, classification letter, Franklin Armory requested ATF develop a process whereby licensees and non-licensees may request the statutorily required approval under §§ 922(a)(4) and (b)(4). ATF has determined that effectuating the approval process would require the establishment of a searchable database that maintains records of any approval granted pursuant to §§ 922(a)(4) and (b)(4). Retention of these records would be necessary to verify that the interstate transportation or transfer was approved as "reasonably necessary" and "consistent with public safety."  On the other hand, ATF remains conscious of expressions of Congressional concern when it comes to maintaining such a system of records outside the structure of the NFA.  *See generally,* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 609 (November 18, 2011)

Possessors of firearms subject to both the GCA and NFA satisfy §§ 922(a)(4) and (b)(4) under the procedures in the NFA. However, as explained in the open letter of December 19, 2019, because firearms classified as "short-barreled shotguns" pursuant to only the GCA "have not previously been available in the marketplace, existing federal firearm regulations do not provide a mechanism to process or approve requests from FFLs for approval to transfer" of such firearms to a non-licensee pursuant to § 922(b)(4) or "requests from non-licensees to transport" such firearm pursuant to § 922(a)(4).  The lack of a viable GCA procedure, and concerns about the new collection of firearm owner information under the GCA not associated with a tax filing under the NFA, *see generally* 18 U.S.C. § 926, raises the issue of whether Congress intended there to be "short-barreled shotguns" regulated solely under the GCA, and not subject to the registration and transfer requirements of the NFA.

---

[1] The Attorney General has delegated the authority of enforcing the provisions of the GCA and NFA to ATF.

- 4 -

Mr. Jay Jacobson                                                                                                                              320280

Given this contradiction, ATF has revisited the relevant definitions and the Congressional intent of the above-referenced provisions of the GCA and NFA and concluded that the difference in definitions between these Acts does not reflect an intent by Congress to create a distinct category of GCA-only short-barreled shotguns requiring a separate approval and documentation process. Consequently, ATF hereby amends the classification of the Franklin Armory Reformation firearms to be "shotguns" under both the GCA *and the NFA*. Further, because the Reformation firearms incorporate smooth bore barrels that are less than 18 inches in length, they are also classified as a "firearm" under the NFA subject to all NFA provisions.

### Analysis

While the NFA definitions for the terms "shotgun," "rifle," and "antique firearm" all mention the ammunition fired through each respective weapon type, Congress clearly did not intend for a firearm classification under these definitions to be driven by the classification of the type of *ammunition* the weapon is capable of firing, as opposed to the objective design features and capabilities of the *weapon itself*.

The term "shotgun" is defined in the NFA, 26 U.S.C. § 5845(d) to mean:

> "*a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a **fixed shotgun shell** to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell. .*" (Emphasis added.)

The term "rifle" is defined in the NFA, 26 U.S.C. § 5845(c) to mean:

> "*a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to the energy of the explosive in a **fixed cartridge** to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.*" (Emphasis added.)

The term "antique firearm" is defined in the NFA, 26 U.S.C. § 5845(g) to mean:

> "*any firearm not designed or redesigned for using rim fire or conventional center fire ignition with **fixed ammunition**…*" (Emphasis added.)

The definition of "shotgun" is critical to the classifications, as there must be a "shotgun" pursuant to § 5845(d) for a firearm to be a "*shotgun having a barrel or barrels of less than 18 inches in length*" pursuant to § 5845(a)(1).

No definition of *"fixed shotgun shell"* exists in the GCA, NFA, or their implementing regulations, although the term "fixed ammunition" is defined in 27 C.F.R. § 479.11 to mean *"that self-contained unit consisting of the case, primer, propellant charge, and projectile or*

- 5 -

Mr. Jay Jacobson                                                                                                               320280

*projectiles,"* and the term "ammunition" is defined in 18 U.S.C. § 921(a)(17)(A) to include *"ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."* The definition of "ammunition" in 27 C.F.R. § 478.11 excludes *"ammunition, cartridge cases, primers, bullets, or propellant powder designed for use in antique firearms, as well as (a) any shotgun shot or pellet not designed for use as the single, complete projectile load for one shotgun hull or casing, and (b) any unloaded, non-metallic shotgun hull or casing not having a primer."*

Congress opted not to define the term "fixed shotgun shell" (or "fixed cartridge") in the NFA. Therefore, ATF gives undefined terms in a statute their ordinary meaning. *Richards v. United States*, 369 U.S. 1 (1962).

Industry reference materials contemporaneous to the enactment of the GCA and amendment of the NFA shed some light on the ordinary meaning of these terms. The term "cartridge" is a general term originally meaning "a packaged round of propellant and ball [projectile] referring to a measured amount of propellant for use in muzzle loading rifles in the 16th and 17th centuries." Bill West, *Browning Arms and History*, 1-23 (1st Ed. 1972). However, the Shooter's Bible Small Arms Lexicon and Concise Encyclopedia, a source published in 1968, defines "cartridge" to "refer to such rounds used in small arms other than shotguns." Chester Mueller and John Olson, *Small Arms Lexicon and Concise Encyclopedia*, 44 (1st Ed. 1968). That same source defined "shotgun shell" as a "fixed round of ammunition designed for use in a shotgun. It consists of a paper or plastic body, a thin brass head at one end, a battery cup primer, base wad, powder charge…and folded crimp." Such description matches the type of ammunition generally understood today to be a "shotgun shell" fired through smooth bore .410 caliber as well 10-, 12-, and 20-guage firearms. This definition of "shotgun shell," however, is not definitive; because it does not extend to those shotgun shells made from a metallic case, the definition does not encompass all "shotgun shells." These metallic cartridge "shotgun shells" fired by shotguns existed[2] at the time Congress passed the GCA as evidenced by the GCA's implementing regulation's exclusion of only "<u>non-metallic</u> shotgun hull or casing" from the GCA definition of the term "ammunition."

There is nothing in the statutory structure that suggests Congress intended to or did completely exempt from regulation under the NFA a weapon with a smooth bore, fired from the shoulder, with a barrel less than 18 inches in length, firing a single projectile, simply because that projectile was ejected from a "cartridge" rather than a "shell." To the contrary, those terms seem readily interchangeable. The NRA-ILA Glossary of Terms' definition of "*shotshell*" is:

> *"The **cartridge** for a shotgun. It is also called a "shell," and its body mass may be of metal or plastic or of plastic or paper with a metal head. Small shotshells are also made for rifles and handguns and are often used in vermin control. (Emphasis added)."*

---

[2] Further, there are 9mm shotshells and .22 caliber shotshells that are typically loaded in a metallic case. These calibers are more commonly loaded with a single projectile designed to be fired through a rifled bore, however, the shotshell versions are typically fired through a smooth bore (*e.g.*, the Winchester Model 36 9mm "snake shot" shotgun designed for pest control).

- 6 -

Mr. Jay Jacobson                                                                                                          320280

Further cautioning against an isolated reading of a single clause or word was Congress' decision elsewhere to define "rifle" under the NFA to fire a "fixed cartridge" instead of a "fixed metallic cartridge." The 1968 GCA definition of the term "rifle" included "fixed metallic cartridge" whereas the NFA definition removed "metallic" from the definition and simply used "fixed cartridge."  Accordingly, a "fixed cartridge" fired using a "rifle" as defined under the NFA and a "shotgun shell" fired using a "shotgun" as defined under the NFA may be made of either a plastic or metallic case or cartridge and be loaded with either a single projectile or multiple projectiles that are expelled by the explosion of propellant powder.

As there is no readily discernable statutory definition of a *"fixed shotgun shell,"* nor practical discernable difference between the components of a "cartridge" and "shotgun shell," it appears that Congress used the term *"fixed shotgun shell"* merely as shorthand for the expulsion of projectiles (whether in the form of multiple metallic shot or a single projectile) from a smooth bore weapon.  In other words, the term *"fixed shotgun shell"* is best interpreted to mean any cartridge suitable for use in a shotgun.  Such an interpretation is consistent with the focus of the statutory structure on the design and capability of the firearm, rather than the qualities of the projectile that firearm expels.

### The Statutory Regime Does Not Exclude from NFA Regulation Shoulder-Fired Smooth Bore Firearms with Barrels Less Than 18 Inches in Length That Expel Projectiles by an Explosive

As enacted by Congress in 1968, the definition of the term "shotgun" in § 921(a)(5) was substantially similar to the NFA definition:

> *"a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger. (Emphasis added)."*

The Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Public Law 105-277, amended the GCA definition of "shotgun" to replace the words "the explosive in a fixed shotgun shell" with "an explosive."  The Act also amended the definition of "rifle" to replace the words "the explosive in a fixed metallic cartridge" with "an explosive." These amendments were required because Congress also amended the GCA's "antique firearm" definition so that "antique firearm means…any muzzle loading **rifle**, muzzle loading **shotgun**, or muzzle loading pistol, which is designed to use black powder, or a black powder substitute, and which cannot use fixed ammunition…" (emphasis added). Without amending the "shotgun" and "rifle" definitions, the new antique provision would have required a weapon to satisfy contradictory requirements to qualify as an antique. That is, it would have applied only to muzzle loaded rifles (firing a "fixed metallic cartridge") and muzzle loaded shotguns (firing a "fixed shotgun shell") which cannot use fixed ammunition.

Moreover, while Congress amended the GCA to eliminate the reference to a *"fixed shotgun shell"* in the definition of "shotgun," there is no language in the statute that is indicative of any intent by Congress to create an entirely new subset of GCA-only firearms subject to GCA

- 7 -

Mr. Jay Jacobson                                                                                                              320280

provisions that historically have only been applicable to "firearms" under the NFA. Instead, these amendments to the definitions of "shotgun" and "rifle" in the GCA reflect the unremarkable proposition that Congress recognized the type of projectile expelled from such weapons are interchangeable, and therefore, inclusion of the terms *"fixed shotgun shell"* and *"fixed metallic cartridge"* were intended to be synonymous.[3]

More importantly, reading a single, isolated provision of the NFA in such a narrow manner undermines the overall structure of the NFA.  Congress found the firearms regulated under the NFA, including shotguns with barrel(s) of less than 18 inches in length, to pose a significant crime problem because of their frequent use in crime, particularly the gangland crimes of that era such as the St. Valentine's Day Massacre.[4]  Allowing an individual to make, transfer, and possess a shoulder-fired weapon with a smooth bore and a barrel of less than 18 inches in length without registration and payment of tax because the firearm expels a single projectile using a metal casing, rather than a paper or plastic casing, is inconsistent with the structure, purpose and intent of the statute.

Further, eliminating from regulation under the NFA any smooth bore shoulder-fired firearm with a barrel or barrels of less than 18 inches utilizing a non-traditional shotgun shell would be inconsistent with   the NFA's statutory scheme, because doing so would focus not on the design of the firearm itself, but the design of the projectile used therein.  ATF would then be placed in the position of having to "classify" ammunition as a *"fixed shotgun shell"* or *"fixed cartridge"* (for purposes of an NFA "rifle") without any regulatory or published criteria as to how ATF interprets or applies those terms, as distinguished from mere *"projectiles"* expelled from GCA shotguns and rifles.

### Congress Evidenced No Intent to Create a Category of Non-NFA Shoulder-Fired Short-Barreled Firearms Subject Only to GCA Regulation

As enacted in 1934, the NFA defined the term "firearm" to mean *"a shotgun or rifle having a barrel of less than eighteen inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition."*  Although the term "machine gun" was defined, the Act did not define the term "shotgun" or "rifle."  Title II of the Gun Control Act of 1968 amended the definition of "firearm" in the NFA to the current definition in 26 U.S.C. § 5845(a).  The terms "shotgun" and "rifle" were also defined in 1968, the definition of "shotgun" being essentially the same for purposes of Title 18, Chapter 44, and Title 26, Chapter 53, the only difference being § 921(a)(5) referred to a *"number of ball shot"* while the NFA referred to a

---

[3] In May 2016, ATF initiated the process to amend the definition of "shotgun" in 27 C.F.R. § 478.11 to reflect the definitions set forth in the Act, *see* 81 Fed. Reg. 33448 (May 26, 2016).  The regulation, however, was not yet amended at the time ATF issued the November 2018 classification letter to Franklin. The definition of "shotgun" in § 478.11 was amended January 4, 2022, to remove the words *"the explosive in a fixed shotgun shell"* and replace them with *"an explosive,"* consistent with the amendment of the term in the GCA.  *See* 87 Fed. Reg. 182.

[4] https://www.atf.gov/firearms/docs/atf-national-firearms-act-handbook-introduction/download.

- 8 -

Mr. Jay Jacobson                                                                                                                            320280

*"number of projectiles (ball shot)"* and the inclusion in the NFA definition of any weapon which may be restored to fire a fixed shotgun shell.

Because the definition of "firearm" in § 921(a)(3)(A) includes any weapon which may readily be converted to expel a projectile by the action of an explosive, the GCA restrictions imposed by § 922(a)(4) and (b)(4) on "short-barreled shotguns" overlap the NFA's provisions requiring transfers of such firearms be approved by the Secretary. While the restrictions contained in § 922(a)(4) and (b)(4) apply only to a subset of NFA firearms (*i.e.,* destructive devices, machineguns, and short-barreled shotguns and rifles), Congress may have deemed that subset of NFA firearms most likely to be misused, hence, placing additional restrictions in the GCA for specific authorization by the Attorney General consistent with public safety and necessity as to their sale, delivery, and interstate transportation, not necessary for other NFA firearms ("firearm silencers" and "any other weapons").

The classification of the three Franklin Armory "Reformation" firearms as "shotguns" and "short-barreled shotguns" under the GCA, but not "shotguns" with short barrels under the NFA, would suggest Congress intended in 1999 to create a previously non-existent distinction between "short-barreled *shotguns*" in the GCA and "*shotguns* having a barrel or barrels less than 18 inches in length" in the NFA based on the imprecise characteristics of the ammunition used in the weapon. While the NFA and GCA are clearly separate statutory schemes, they do not act in isolation. For example, given the continued reference in §§ 922(a)(4) and (b)(4) to the NFA definition of "machinegun," despite the addition of a definition of "machinegun" in § 921(a)(23) in 1986, as well as the requirement for "specific authorization" by the Attorney General to sell, deliver, or transport interstate a "short-barreled shotgun," a process not applicable to any other GCA firearm, it is highly unlikely Congress intended to create a subset of shoulder-fired smooth bore weapons with short barrels regulated *only* by the GCA, but not the NFA. It is Congress' description of the nature of the weapon itself that renders shoulder-fired firearms with short barrels "dangerous weapons."[5] A firearm with a smooth bore and short barrel loaded with commercial .300 BLK caliber ammunition presents the same configuration considered by Congress in 1934 as one loaded with a traditional shotgun shell.[6]

**Conclusion**:

For the reasons stated above, ATF has reconsidered its classification of the three smooth bore, shoulder-fired firearms submitted by Franklin Armory and concluded that the HSC-15 and the two Libertas models are better classified as "shotguns" for purposes of § 5845(d), and "*shotguns with a barrel or barrels of less than 18 inches in length*" for purposes of § 5845(a)(1). The previous evaluation of the three shoulder-fired "Reformation" firearms (FTISB letter #308531, dated November 13, 2018), is hereby amended to classify each firearm as a "shotgun" under both

---

[5] *See* Senate Report on 73 HR 9741, June 1934.

[6] Likewise, the inability to craft a process that would satisfy all provisions of the GCA when the term "short-barreled shotgun" is applied to a firearm under the GCA, which is not regulated by the NFA, suggests Congress did not intend to create a category of shoulder-fired short-barreled firearms not subject to the NFA.

- 9 -

Mr. Jay Jacobson                                                                                                          320280

the GCA and NFA. As the three firearms each possess barrels of less than 18 inches, they are each a "short-barreled shotgun" as defined in 18 U.S.C. § 921(a)(6) and an NFA "firearm" as defined in 26 U.S.C. § 5845(a)(1) and are subject to all controls and provisions of the NFA.

ATF trusts that the foregoing has been responsive to your request for a review of the previous evaluation. If we can be of any further assistance, please contact us.

Sincerely yours,

MATTHEW VARISCO

Digitally signed by MATTHEW VARISCO
Date: 2023.05.04 21:00:22 -04'00'

Matthew Varisco
Assistant Director, Enforcement Programs and Services