# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

FIREARMS REGULATORY
ACCOUNTABILITY COALITION, INC., *and*
FRANKLIN ARMORY, INC.,

      Plaintiffs,

                                     Case No. 1:23-cv-00003-DLH

      v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United States,
*et al.*,

      Defendants.

_____/

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT OR, <u>IN THE ALTERNATIVE, TO TRANSFER VENUE</u>

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................2

    I.    Statutory and Regulatory Framework ...........................................................................2

    II.   Franklin Armory and the Claims Giving Rise to this Action ........................................3

    III.  FRAC ..............................................................................................................................6

LEGAL STANDARDS ................................................................................................................7

ARGUMENT ...............................................................................................................................8

    I.    Plaintiffs' Amended Complaint Should Be Dismissed for Lack of Venue Because
        FRAC Lacks Associational Standing............................................................................8

        A.   FRAC is Neither a Traditional Voluntary Membership Organization Nor the
              Functional Equivalent of One for Purposes of Associational Standing .................10

        B.   The Interests Advanced by Plaintiffs Are Particularized to Franklin and Not
              Germane to FRAC's Organizational Purpose .......................................................12

        C.   The Claims Asserted Require the Participation of FRAC's Individual
              Members ...............................................................................................................15

            1.   The Merits of Plaintiffs' Claims Require Proof of Individualized to
                  Franklin Alone..............................................................................................15

            2.   The Interests of FRAC's Members are Too Diverse and the Possibilities
                  of Conflict Too Obvious to Make FRAC an Appropriate Vehicle to
                  Litigate These Claims ..................................................................................18

    II.   Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred to a
        Proper Venue................................................................................................................21

        A.   Venue Is Not Proper in This District..................................................................21

            1.   28 U.S.C. §§ 1391(e)(1)(A)-(B).................................................................21

            2.   28 U.S.C. § 1391(e)(1)(C)...........................................................................22

        B.   Transfer Is Appropriate Even if Venue Is Proper in This District.............................26

    III.  Counts 3 and 4 of the Amended Complaint Should Be Dismissed ........................................28

A.     Plaintiffs' GCA-Only Reformation Claims Are Moot Because ATF Has Reclassified the Reformation, Thereby Providing Access to the Authorization Procedures Plaintiffs Seek ................................................................................29

B.     Plaintiffs Are No Longer Injured by the Alleged Lack of An Authorization Process for GCA-Only Short-Barreled Shotguns ...........................................31

CONCLUSION ........................................................................................................................32

## TABLE OF AUTHORITIES

### CASES

*AARP v. U.S. Equal Emp. Opportunity Comm'n,*
  226 F. Supp. 3d 7 (D.D.C. 2016) ....................................................................................10

*Abels v. Farmers Commodities Corp.,*
  259 F.3d 910 (8th Cir. 2001) ............................................................................................3

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ..........................................................................................................29

*Amawi v. Paxton,*
  956 F.3d 816 (5th Cir. 2020) ...........................................................................................30

*Ariz. Yage Assembly v. Barr,*
  No. 3:20-cv-03098-WHO, 2020 WL 5629833 (N.D. Cal. Sept. 21, 2020) .....................22

*Arizonans for Off. English v. Arizona,*
  520 U.S. 43 (1997) ..........................................................................................................29

*Ass'n of Indep. Gas Station Owners v. QuikTrip Corp.,*
  No. 4:11-CV-2083-JCH, 2012 WL 2994079 (E.D. Mo. July 20, 2012) .........................13

*Associated Gen. Contractors of N.D. v. Otter Tail Power Co.,*
  611 F.2d 684 (8th Cir. 1979) ....................................................................................*passim*

*Boston Telecom. Grp., Inc. v. Wood,*
  588 F.3d 1201 (9th Cir. 2009) .........................................................................................26

*Carney v. Adams,*
  141 S. Ct. 493 (2020) ......................................................................................................15

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992) ............................................................................................................29

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...................................................................................................31, 32

*Clarke v. United States,*
  915 F.2d 699 (D.C. Cir. 1990) ........................................................................................30

*Cmty. Stabilization Project v. Cuomo,*
  199 F.R.D. 327 (D. Minn. 2001) .....................................................................................18

*Comm. for Reasonable Regul. of Lake Tahoe v. Tahoe Reg'l Plan. Agency,*
  365 F. Supp. 2d 1146 (D. Nev. 2005) ..............................................................................17

*Ctr. for Biological Diversity v. Kempthorne,*
    498 F. Supp. 2d 293 (D.D.C. 2007) ................................................................29

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .........................................................................................31

*Daughetee v. CHR Hansen, Inc.,*
    No. C09-4100, 2011 WL 1113868 (N.D. Iowa Mar. 25, 2011) ........................3, 8

*Duncan Place Owners Ass'n v. Danze, Inc.,*
    927 F.3d 970 (7th Cir. 2019) ...........................................................................16

*E.W. Wylie Corp. v. Transp. Tech. Servs., Inc.,*
    No. 3:11-cv-47, 2011 WL 13111712 (D.N.D. Oct. 24, 2011) ...........................7

*Fischer v. First Nat'l Bank of Omaha,*
    466 F.2d 511 (8th Cir. 1972) ...........................................................................25

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) .........................................................................................26

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ................................................................................... 14, 15

*Gage v. Somerset Cnty.,*
    322 F. Supp. 3d 53 (D.D.C. 2018) ...................................................................27

*Grp. Health Plan, Inc. v. Philip Morris, Inc.,*
    86 F. Supp. 2d 912 (D. Minn. 2000) ................................................................11

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005) ...............................................................................8

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) .........................................................................................27

*Haaland v. Brackeen,*
    No. 21-376, 2023 WL 4002951 (U.S. June 15, 2023) ......................................14

*Heap v. Carter,*
    112 F. Supp. 3d 402 (E.D. Va. 2015) ..............................................................10

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010) .................................................................................... 22, 24

*Honig v. Doe,*
    484 U.S. 305 (1988) .........................................................................................29

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ................................................................................................*passim*

*King v. Russell*,
  963 F.2d 1301 (9th Cir. 1992) ...........................................................................................25

*Lab'y Corp. of Am. Holdings v. N.L.R.B.*,
  942 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................................27

*Leaming v. Jackson Cnty.*,
  No. 03-00940-CV-W-SWH, 2006 WL 1046906 (W.D. Mo. Apr. 19, 2006) .....................17

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 9, 31

*Martensen v. Koch*,
  942 F. Supp. 2d 983 (N.D. Cal. 2013) ......................................................................7, 8, 24

*Md. Highways Contractors Ass'n, Inc. v. Maryland*,
  933 F.2d 1246 (4th Cir. 1991) .................................................................................... 19, 20

*Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective* Serv. Sys.,
  557 F. Supp. 925 (D. Minn. 1983) ..................................................................................*passim*

*Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*,
  747 F.2d 1204 (8th Cir. 1984) ..............................................................................................9

*Missouri ex rel. Nixon v. Craig*,
  163 F.3d 482 (8th Cir. 1998) ..................................................................................... 29, 30

*Missouri v. W. Sur. Co.*,
  51 F.3d 170 (8th Cir. 1995) .................................................................................................8

*Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*,
  499 F.3d 803 (8th Cir. 2007) .............................................................................................11

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977) ...............................................................................................8

*Morton v. Becker*,
  793 F.2d 185 (8th Cir. 1986) ...............................................................................................3

*Murphy v. Hunt*,
  455 U.S. 478 (1982) ...........................................................................................................29

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*,
  140 S. Ct. 1525 (2020) .......................................................................................................30

*Nat'l Distillers & Chem. Corp. v. Dep't of Energy,*
    487 F. Supp. 34 (D. Del. 1980) ................................................................ 26, 28

*Nat'l Wildlife Fed'n v. Harvey,*
    437 F.Supp.2d 42 (D.D.C. 2006) ................................................................ 28

*Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.,*
    263 F. Supp. 2d 82 (D.D.C. 2003),
    *aff'd,* 366 F.3d 930 (D.C. Cir. 2004) ......................................................... 18

*Northland Parent Ass'n v. Excelsior Springs Sch. Dist. #40,*
    571 F. Supp. 3d 1104 (W.D. Mo. 2021) ..................................................... 16

*Osborn v. United States,*
    918 F.2d 724 (8th Cir. 1990) ................................................................. 8, 11

*Public Citizen v. U.S. Trade Representative,*
    5 F.3d 549 (D.C. Cir. 1993) ...................................................................... 30

*Raines v. Byrd,*
    521 U.S. 811 (1997) ................................................................................... 9

*Rare Breed Triggers, LLC v. Garland,*
    No. 3:22-CV-85, 2022 WL 17175089 (D.N.D. Nov. 4, 2022) ................... *passim*

*Rogers v. Civil Air Patrol,*
    129 F. Supp. 2d 1334 (M.D. Ala. 2001) ..................................................... 21

*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,*
    654 F. Supp. 734 (D.D.C. 1986) ................................................................ 27

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ............................................................................ 13, 31

*Sig Sauer, Inc. v. Brandon,*
    826 F.3d 598 (1st Cir. 2016) ................................................................. 3, 14

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ..................................................................................... 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) .................................................................................... 8

*Smirnov v. Clinton,*
    806 F. Supp. 2d 1 (D.D.C. 2011),
    *aff'd,* 487 F. App'x 582 (D.C. Cir. 2012) .................................................... 27

*Smith v. Dalton,*
    927 F. Supp. 1 (D.D.C. 1996) ................................................................... 21

*South Dakota v. Hazen,*
    914 F.2d 147 (8th Cir.1990) ............................................................................. 29, 30

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ......................................................................................... 31, 32

*Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Plan. Ass'n,*
    830 F.2d 1374 (7th Cir. 1987) ................................................................................20

*Terra Int'l, Inc. v. Miss. Chem. Corp.,*
    119 F.3d 688 (8th Cir. 1997) ............................................................................ 26, 27

*Terre Du Lac Ass'n v. Terre Du Lac, Inc.,*
    772 F.2d 467 (8th Cir. 1985) ................................................................ 15, 16, 17, 18

*Town of Chester v. Laroe Estates, Inc.,*
    581 U.S. 433 (2017) ................................................................................................31

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,*
    517 U.S. 544 (1996) ................................................................................................12

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
    513 U.S. 18 (1994) ..................................................................................................29

*Uviado, LLC ex rel. Khan v. U.S. ex rel. IRS,*
    755 F. Supp. 2d 767 (S.D. Tex. 2010) ........................................................... 7, 8, 27

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) ................................................................................................14

*Warth v. Seldin,*
    422 U.S. 490 (1975) ....................................................................................... 9, 18, 31

*Wash. Legal Found. v. Leavitt,*
    477 F. Supp. 2d 202 (D.D.C. 2007) ......................................................................10

*Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc.,*
    424 F.3d 840 (8th Cir. 2005) ...................................................................................8

## STATUTES

2 U.S.C. § 1603 ...............................................................................................................24

2 U.S.C. § 1603(a)(1) ................................................................................................. 6, 23

2 U.S.C. § 1603(b)(2) ............................................................................................. 6, 7, 23

5 U.S.C. § 706(2) ...........................................................................................................30

18 U.S.C. § 921 ................................................................................................................2

18 U.S.C. § 922(a)(4) ............................................................................................................ 5, 14, 29

18 U.S.C. § 92l(a)(5) ..................................................................................................................... 2, 3

18 U.S.C. § 921(a)(7) ........................................................................................................................ 2

18 U.S.C. § 922(b)(4) ........................................................................................................... 5, 14, 29

26 U.S.C. § 5801 ............................................................................................................................... 2

26 U.S.C. § 5845(a)(1) ..................................................................................................................... 2

26 U.S.C. § 5845(a)(3) ..................................................................................................................... 2

26 U.S.C. § 5845(c) .......................................................................................................................... 3

28 U.S.C. § 510 ................................................................................................................................ 3

28 U.S.C. § 1391(c)(2) .................................................................................................................... 22

28 U.S.C. § 1391(e)(1) .............................................................................................................. 20, 21

28 U.S.C. § 1391(e)(1)(C) .............................................................................................................. 22

28 U.S.C. § 1404 ............................................................................................................................... 1

28 U.S.C. § 1404(a) ................................................................................................................... 25, 26

28 U.S.C. § 1406(a) ................................................................................................................... 8, 25

## RULES

Fed. R. Civ. P. 12(b)(1) .................................................................................................................... 8

Fed. R. Civ. P. 12(b)(3) .............................................................................................................. 7, 25

Fed. R. Civ. P. 41(b) ..................................................................................................................... 25

## REGULATIONS

27 C.F.R. § 478.92 .................................................................................................................... 15, 20

27 C.F.R. § 478.92(c) ................................................................................................................... 3, 15

28 C.F.R. § 0.130(a)(1) .................................................................................................................... 3

## OTHER AUTHORITIES

14D Arthur R. Miller, et al., Federal Practice and Procedure § 3815 (4th ed. 2013) ............................ 21

14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3827 (4th ed. 2022) ....................................................25

## INTRODUCTION

By this action, a Nevada gunmaker and a trade association dedicated to lobbying the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in Washington, D.C., attempt to manufacture venue in the District of North Dakota to facilitate their challenge to ATF's classification of two firearms made by the gunmaker, Franklin Armory, Inc. ("Franklin"): the FAI-15 Antithesis short-barreled rifle ("Antithesis"), and the Reformation short-barreled shotgun ("Reformation"). Plaintiffs' claims do not arise from any events occurring in this district. No Defendant resides in this district. And for the reasons stated below, neither Franklin nor Firearms Regulatory Accountability Coalition, Inc. ("FRAC") reside in this district for purposes of venue. Their Amended Complaint should be dismissed for lack of venue or, in the alternative, transferred under 28 U.S.C. § 1404. At the very least, the Court must dismiss several of Plaintiffs' claims involving the Reformation because they are now moot, and because Plaintiffs lack standing to pursue them.

First, dismissal is warranted because FRAC lacks associational standing to challenge ATF's classification of Franklin's firearms. FRAC is neither a traditional voluntary membership organization nor the equivalent of one for standing purposes, the narrow business interests that it seeks to protect in this case are not germane to its organizational purpose, and the claims asserted require the participation of FRAC's members. Accordingly, FRAC must be dismissed for lack of standing. And because Franklin relies on FRAC to secure venue, FRAC's dismissal also requires dismissal.

Second, dismissal or transfer is independently warranted because venue in the District of North Dakota is not proper. Franklin, the primary stakeholder in the claims regarding weapons it manufactures, is in Nevada. And until April 5, 2023, FRAC declared its principal place of business to lie outside of this District in disclosures filed with a coordinate branch of government as required by federal law. Only after Defendants moved to dismiss or transfer this case (and over two years after purportedly transitioning its office to North Dakota) did FRAC seek to amend these filings in an

1

apparent belated attempt to secure venue for this litigation. Absent the residence of any party, and lacking any factual connection to this district, the Court should dismiss this case for lack of venue. And even if venue were proper, the relevant factors warrant transfer of this action either to Nevada or to the District of Columbia. Because the parties and underlying facts have no connection to this District, and because permitting Plaintiffs' forum-shopping disserves the interests of justice by preventing courts with a closer connection to this action from hearing these claims, the Court should transfer this case if it does not dismiss it for improper venue.

Finally, if the Court declines to dismiss or transfer this case for lack of venue, it must at the very least dismiss Plaintiffs' stale claims relating to the lack of authorization processes which no longer apply to them. Following ATF's reclassification of the Reformation, no manufacturer produces a weapon subject to the authorization process Plaintiffs seek, and Plaintiffs lack standing to pursue a remedy which will not affect them. In any event, Plaintiffs claims are also moot because ATF has provided the relief sought for these claims—namely, a process allowing Franklin to seek authorization to sell or transfer the Reformation firearm.

## BACKGROUND

### I.    Statutory and Regulatory Framework

The Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, requires anyone who deals in GCA-covered firearms to obtain a federal firearms license before "importing, manufacturing, or dealing in firearms," and establishes rules that licensees must follow. *See* §§ 922, 923. The National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, subjects defined "firearms" to various taxes and regulatory requirements, including that firearms covered by the NFA be registered in the National Firearm Registration and Transfer Record. §§ 5811, 5821, 5822, 5841, 5842. "Firearms" subject to both the GCA and NFA include short-barreled rifles like the Antithesis, *see* 18 U.S.C. §§ 921(a)(7)-(8) (GCA); 26 U.S.C. §§ 5845(a)(3)-(4), 5845(c) (NFA), and short-barreled shotguns like the Reformation,

*see* 18 U.S.C. §§ 921(a)(5)-(6) (GCA); 26 U.S.C. §§ 5845(a)(1)-(2), 5845(d) (NFA).  However, the definitions of "rifle" and "shotgun" differ slightly between the statutes.  *Compare* 18 U.S.C. §§ 921(a)(5), (7) (GCA) *with* 26 U.S.C. §§ 5845(c), (d) (NFA).

Under 28 C.F.R. §§ 0.130(a)(1)-(3) and 28 U.S.C. § 510, the Director of ATF is authorized to enforce the provisions of the GCA and NFA at issue in this case.  Pursuant to that authority, ATF permits—but does not require—gun makers to seek classification letters from ATF prior to manufacturing a gun, by submitting a firearm sample for evaluation by the agency's Firearms Technology Industry Services Branch (FTISB), in accordance with procedures codified at 27 C.F.R. § 478.92(c).  *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016) (describing the classification process).  *See also* National Firearms Act Handbook, § 7.2.4 (revised 2009), https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-7/download [https://perma.cc/DE74-3YZF] ("[A] firearms manufacturer is well advised to seek an ATF classification before going to the trouble and expense of producing [a device].").  A classification letter issued by ATF pursuant to 27 C.F.R. § 478.92(c) sets forth "the agency's official position concerning the status of the firearms under Federal firearms laws" including the NFA and GCA.  *Id.* § 7.2.4.1.  "Nevertheless, classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations."  *Id.*

## II.   Franklin Armory and the Claims Giving Rise to this Action

On or about March 13, 2018, Franklin, a Nevada corporation, submitted the Reformation to ATF for initial classification.  *See* Am. Compl. ¶ 172, ECF No. 22; Pl.'s Ex. K at 1, ECF No. 22-11.[1]

---

[1] The Court properly may consider Plaintiffs' exhibits to the Amended Complaint without converting Defendants' motion to dismiss to one for summary judgment. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). Additionally, "[i]n deciding whether venue is proper, a court may rely on matters outside the pleadings." *Rare Breed Triggers, LLC v. Garland*, No. 3:22-CV-85, 2022 WL 17175089, at *3 (D.N.D.

ATF's first classification decision, issued via letter addressed to Franklin President Jay Jacobson on November 13, 2018, explained that the Reformation was initially determined to have constituted "a 'firearm' under the [Gun Control Act], 18 U.S.C. § 92l(a)(3), a 'shotgun' under 18 U.S.C. § 92l(a)(5), and a 'short barreled shotgun' under 18 U.S.C. § 92l(a)(6)."  Pl.'s Ex. L at 6-8, ECF No. 22-12.  ATF did not initially find that the Reformation constituted a "firearm" under the NFA. Am. Compl. ¶ 178.

Given this initial classification, ATF subsequently informed Franklin "that information listed on your website regarding the transfer and interstate transport of your Reformation firearm do not accurately reflect the provisions required for the transfer and interstate transport of a short-barreled shotgun as required under 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 922(b)(4)."  Pl.'s Ex. N at 1, ECF No. 22-14.  Because ATF initially determined that the Reformation constituted a short-barreled shotgun under the GCA but not under the NFA, and because "[o]ther than the Reformation firearms now produced by Franklin Armory[], ATF is unaware of any other firearm manufacturer having produced or sold a [GCA-only short-barreled shotgun]" such that similarly classified firearms had "not previously been available in the marketplace," ATF warned Franklin that "existing federal firearm regulations do not provide a mechanism to process requests [for sale or transfer] regarding [such firearms] submitted pursuant to Sections 922(a)(4) or (b)(4)," given their unique nature.  *Id.* at 2.

On or about March 9, 2020, Franklin submitted its "novel" Antithesis firearm to ATF for classification by the FTISB.  Am. Compl. ¶ 114; Pl.'s Ex. B at 2-3, ECF No. 22-2.  ATF's subsequent classification decision, issued via letter addressed to Franklin President Jay Jacobson dated December 23, 2021, after "testing and evaluation" by the FTISB, explained that the Antithesis constituted a "'short-barreled rifle' under 18 U.S.C. § 921(a)(8) and a 'firearm' as defined under [both the GCA and NFA,] 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(a)(3)."  Pl.'s Ex. F at 1, 5, ECF No. 22-6.

---

Nov. 4, 2022) (citing *Daughetee v. CHR Hansen, Inc.*, No. C09-4100, 2011 WL 1113868, at *2 (N.D. Iowa Mar. 25, 2011)).

Franklin, joined by associational Plaintiff FRAC, filed their original Complaint in this action on January 4, 2023, alleging that ATF had misclassified the Antithesis, and challenging the ATF's delay in promulgating procedures by which to seek authorization to sell or transfer the Reformation in its GCA-only classification as unlawfully withheld or unreasonably delayed and as constituting an arbitrary and capricious de facto "enforcement policy." *See* Compl. ¶¶ 217-243, ECF No. 1. Defendants moved to dismiss or transfer Plaintiffs' claims shortly thereafter, and then on May 4, 2023, ATF completed its consideration of the Reformation firearm, marking the culmination of a deliberative process that Defendants cautioned was ongoing at the time Plaintiffs' original Complaint was filed. *See* Def.'s Mot. Dismiss or Transfer at 3 n.1, ECF No. 9 (stating that ATF was "actively considering the relief Plaintiffs requested regarding the Reformation[,]" and "expect[ed] to reach a decision as to the Reformation within 45 to 60 days."). In an amended classification letter issued to Franklin President Jay Jacobson on May 5, 2023, ATF explained that it had reconsidered its initial classification of the Reformation, and now determined that the Reformation is correctly classified "as a 'shotgun' under both the GCA *and the NFA*." Pl.'s Ex. Q at 1, ECF No. 22-17. *See* NFA Handbook, § 7.2.4.1 (revised 2009), https://perma.cc/DE74-3YZF ("classifications are subject to change if later determined to be erroneous . . ."). As Plaintiffs readily admit, authorization processes allowing for the sale, transfer, and delivery of weapons classified as firearms under both the NFA and GCA—such as the Reformation and Antithesis—are currently available to gunmakers including Franklin, because the requirements of 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by the completion and approval of ATF Form 5320.4 (known as Form 4) and ATF Form 5320.20. *See* Am. Compl. ¶ 22, n.3.

Following ATF's reclassification of the Reformation, Plaintiffs filed an Amended Complaint on June 12, 2023, mooting Defendants' then-pending motion to dismiss or transfer. Their Amended Complaint asserts four claims: Plaintiffs allege that ATF's classifications of the Antithesis and

Reformation firearms were arbitrary and capricious, and challenge the lack of procedures by which to seek authorization to sell, deliver, or transfer hypothetical GCA-only firearms—which no manufacturer currently produces—as unreasonably delayed and as constituting a de facto arbitrary and capricious "enforcement policy." *See* Am. Compl. ¶¶ 285-328.

## III.   FRAC

FRAC states that it "is a non-profit association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies . . . representing U.S. firearms manufacturers, retailers, importers, and innovators." Am. Compl. ¶ 29.   FRAC also alleges that it has maintained its headquarters in Bismarck, North Dakota, since 2021, and does not maintain an office at any other location. *Id.* ¶¶ 46-51.

FRAC was formally incorporated under Delaware law in 2020.  Pl.'s Ex. R ¶ 13, ECF No. 22-18.  Shortly thereafter, representatives of FRAC filed initial lobbying registration reports with the Clerk of the United States House of Representatives, in accordance with the Lobbying Disclosure Act of 1995, 2 U.S.C. § 1603(a)(1).   Therein, FRAC's address is listed as "1776 K Street NW, Washington, DC 20006."  *See* Def.'s Exs. 1 and 2 at line 7.[2]  Although the Lobbying Disclosure Act of 1995 requires that these reports "shall contain," *inter alia*, "the name, address, *and principal place of business* of the registrant's client," 2 U.S.C. § 1603(b)(2) (emphasis added), and the form included a space to provide FRAC's "[p]rincipal place of business (if different than [the address provided on] line 7)," this line is left blank on both documents, indicating that FRAC's "principal place of business" matched the address on line 7, located in the District of Columbia.  *See* Def.'s Exs. 1 and 2 at lines 7-8.

---

[2]  Available at Clerk of the United States House of Representatives, Lobbying Disclosures, https://disclosurespreview.house.gov/?index=%22lobbying-disclosures%22&size=10&keyword=%22\%22firearms%20regulatory%20accountability%20coalitio n\%22%22&sort=[{%22_score%22:true},{%22field%22:%22registrant.name%22,%22order%22:% 22asc%22}] [https://perma.cc/Y7PG-7CZ8].

According to records maintained by the North Dakota Secretary of State, an entity named "Firearms Regulatory Accountability Coalition, Inc.," filed for North Dakota incorporation using a North Dakota address and filing type "Corporation – Nonprofit – Foreign" on February 16, 2021.[3] By April 19, 2021, however, FRAC continued to provide its address as "1776 K ST NW, Washington, DC 20006" when purchasing advertising on the social media platform Facebook. *See* Def.'s Ex. 3.[4] Indeed, FRAC continues publicly advertise its location as "Washington, D.C." on social media platforms to this day.[5] FRAC's Washington address was also reaffirmed by FRAC's representatives in filings required by federal law as recently as January 20, 2023—*after* this suit was filed—in a series of fifteen additional Congressional disclosures. *See* U.S House of Representatives, Lobbying Disclosures, https://perma.cc/Y7PG-7CZ8; 2 U.S.C. § 1603(b)(2). Only on April 5, 2023, in response to Defendants' original motion to dismiss or transfer this case (and over two years after purportedly transitioning its office to North Dakota), did FRAC alter its Congressional disclosures to provide any indication of North Dakota residency. *See* Pls.' Opp'n and Mot. Summ. J. Exs. 6 and 7, ECF Nos. 11-6 and 11-7.

## LEGAL STANDARDS

Defendants bring this motion under Federal Rule of Civil Procedure 12(b)(3), because the District of North Dakota is not a proper venue, and Rule 12(b)(1) because Plaintiffs lack standing.

Plaintiffs bear the burden of proving that venue is proper in response to a motion to dismiss under Rule 12(b)(3). *See Rare Breed Triggers, LLC v. Garland*, No. 3:22-CV-85, 2022 WL 17175089, at

---

[3]   Available at North Dakota Secretary of State, FirstStop Business Search, https://firststop.sos.nd.gov/search/business [https://perma.cc/KL4T-28C5].

[4]   Available at Facebook Ad Library, FRACaction, https://www.facebook.com/ads/library/?active_status=all&ad_type=all&country=ALL&view_all_page_id=109498854552688&search_type=page&media_type=all.

[5]   *See* FRACaction Profile, Twitter, https://twitter.com/fracaction [https://perma.cc/5NYZ-TDTT?type=image].

*2 (D.N.D. Nov. 4, 2022); *Uviado, LLC ex rel. Khan v. U.S. ex rel. IRS*, 755 F. Supp. 2d 767, 779 & n.7 (S.D. Tex. 2010); *Martensen v. Koch*, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013); *E.W. Wylie Corp. v. Transp. Tech. Servs., Inc.*, No. 3:11-cv-47, 2011 WL 13111712, at *2 (D.N.D. Oct. 24, 2011). *See also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (applying the "preponderance of the evidence" standard). A court may consider materials outside the pleadings to determine whether venue is proper. *Rare Breed Triggers*, 2022 WL 17175089, at *3 (citing *Daughetee v. CHR Hansen, Inc.*, No. C09-4100, 2011 WL 1113868, at *2 (N.D. Iowa Mar. 25, 2011)). *See also Uviado*, 755 F. Supp. 2d at 780; *Martensen*, 942 F. Supp. 2d at 996. "If the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court." *Martensen*, 942 F. Supp. 2d at 996 (citation omitted); *see* 28 U.S.C. § 1406(a).

In response to a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Missouri v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995). In order for the Court to have subject-matter jurisdiction over a challenge to agency action, the plaintiff must have standing to sue. *See, e.g., Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005). A court may likewise examine materials outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. *See Osborn*, 918 F.2d at 730.

## ARGUMENT

I. **Plaintiffs' Amended Complaint Should Be Dismissed for Lack of Venue Because FRAC Lacks Associational Standing**

Dismissal is warranted where the Amended Complaint again fails to establish that FRAC has standing to invoke this Court's jurisdiction either on behalf of its alleged members or on behalf of

itself, and where Plaintiffs rely on FRAC to secure venue in the District of North Dakota.[6] "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

An organization like FRAC has standing either (1) by "its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," *Warth v. Seldin*, 422 U.S. 490, 511 (1975), or (2) as the representative of its members who have been harmed. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). Here, the Amended Complaint includes no allegations of direct harm to FRAC. Instead, Plaintiffs allege that "FRAC has associational standing to bring suit on behalf of its members" under the *Hunt* framework. Am. Compl. ¶ 69. When a plaintiff is suing in a representational capacity under *Hunt*, it must show that it is a traditional voluntary membership organization or the functional equivalent of one, 432 U.S. at 344, and that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of N.D. v. Otter Tail Power Co.*, 611 F.2d 684, 690 (8th Cir. 1979) (quoting *Hunt*, 432 U.S. at 343). These requirements are "strictly" construed, and each must be met to secure associational standing. *See Minn.*

---

[6] Although Defendants also argue that venue is improper because FRAC's principal place of business does not lie within this District and that Counts 3 and 4 should be dismissed under Fed. R. Civ. P. 12(b)(1), *see infra* Parts II-III, the Court need not reach those issues, or any other issue, if it dismisses or transfers the case to a different venue due to FRAC's lack of associational standing. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (citations omitted)).

*Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*, 557 F. Supp. 925, 934 (D. Minn. 1983) ("[t]he Eighth

Circuit has construed *Hunt* quite strictly.").[7]  On the face of the Complaint, FRAC fails *Hunt*'s test.

FRAC brings its claims for the benefit of a single purported member, Franklin, who is already

a party to this suit.  *See* Am. Compl. ¶¶ 38, 70.  But FRAC lacks associational standing to sue on

Franklin's behalf because: (1) FRAC has failed to demonstrate that it is a traditional membership

organization or the functional equivalent of one; (2) the narrow business interests of Franklin that

Plaintiffs seek to protect through this action are not germane to FRAC's alleged organizational

purpose; and (3) the claims asserted require the participation of FRAC's individual members in the

lawsuit.  Because FRAC fails to allege facts demonstrating that it has standing to sue on behalf of its

purported members or itself, this Court lacks subject matter jurisdiction to hear its claims.  FRAC

should therefore be dismissed as a Plaintiff, and accordingly, this case should be dismissed because

Plaintiffs rely upon FRAC to allege venue in the District of North Dakota.

### A.    FRAC is Neither a Traditional Voluntary Membership Organization Nor the Functional Equivalent of One for Purposes of Associational Standing

To assert associational standing on behalf of its members, *Hunt* first requires that an

organizational plaintiff be a traditional voluntary membership organization or the functional

equivalent of one.  *See* 432 U.S. at 344.  Based on the facts asserted in the Amended Complaint and

accompanying exhibits, the Court should conclude that FRAC is neither.

Plaintiffs assert that FRAC is a "traditional voluntary membership association" which

"currently represents fifteen member companies."  Am. Compl. ¶¶ 66-67.  But "a mere assertion that

an individual is a 'member' of an organization is not sufficient to establish membership."  *AARP v.*

*U.S.  Equal Emp. Opportunity Comm'n*, 226 F. Supp. 3d 7, 16 (D.D.C. 2016).  *See also Wash. Legal Found.*

*v. Leavitt*, 477 F. Supp. 2d 202, 210 (D.D.C. 2007) (rejecting the assertion that if "individuals view

---

[7] Although the issue was eventually held to be moot in light of a Supreme Court ruling on the merits referred to in *Minn. Pub. Int. Rsch. Grp. (MPIRG) v. Selective Serv. Sys.*, 747 F.2d 1204 (8th Cir. 1984), the *MPIRG* trial court initially denied standing under the *Hunt* framework.

themselves as members of the organization and . . . are viewed by the organization as members," then it establishes general membership (citation omitted)); *Heap v. Carter*, 112 F. Supp. 3d 402, 418 (E.D. Va. 2015) (holding that an organization's statement that "it maintains an active membership, including members who are enlisted in the United States Navy" without additional detail is insufficient to determine whether they are a voluntary membership organization or the functional equivalent (citation omitted)). FRAC must also possess the requisite "indicia of membership" in order to warrant status as a Plaintiff alongside Franklin. *Hunt,* 432 U.S. at 344. *See, e.g., Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007) (applying *Hunt*'s indicia of membership criteria); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000) (same).

In *Hunt*, the Supreme Court held that an organizational plaintiff's purported members "possess all of the indicia of membership in an organization" where members participated in: (a) electing the entity's leadership, (b) serving in the entity's leadership or influencing its direction, and (c) financing the entity's activities, including the costs of the lawsuit. 432 U.S. at 344-45. While Plaintiffs' Amended Complaint and attached declaration of FRAC President Travis White speak to the first two required indicia of membership, they fail to say anything about whether FRAC's members financed the costs of this lawsuit, as considered by the *Hunt* Court. *Compare id.* (finding associational standing where "[members] alone finance [the organization's] activities, including *the costs of this lawsuit*") (emphasis added), *with* Am. Compl. ¶ 67. Indeed, a public release announcing new litigation on FRAC's webpage includes a call for readers to "consider donating through our website to help us in our mission," demonstrating that FRAC's activities and lawsuits are not entirely funded by its members (i.e., corporate entities like Franklin), but rather by donations from the unaffiliated general public. *See* Travis R. White, *Brace Litigation Filed in North Dakota Federal Court*, Firearms Regulatory Accountability Coalition, Inc. (Feb. 9, 2023), https://perma.cc/JJ3K-TKZE?type=image. *Cf. MPIRG*, 557 F. Supp. at 933 (rejecting associational standing under *Hunt*'s second prong even where organization claiming to advocate on behalf of students was "primarily but not wholly funded by

11

students."). Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Osborn*, 918 F.2d at 730. Lacking such a showing, FRAC cannot be deemed a membership association under *Hunt* and therefore cannot have associational standing in the first instance.

**B.    The Interests Advanced by Plaintiffs Are Particularized to Franklin and Not Germane to FRAC's Organizational Purpose**

Even if FRAC qualifies as a membership organization, it still lacks standing to join Franklin as a Plaintiff in this case. *Hunt*'s second prong requires that "the interests it seeks to protect are germane to the organization's purpose[.]" *Associated Gen. Contractors*, 611 F.2d at 690 (quoting *Hunt*, 432 U.S. at 343). In *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,* the Supreme Court explained that *Hunt*'s "demand that an association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." 517 U.S. 544, 555-56 (1996). This action pertains to Franklin and its specific firearms alone—all FRAC contributes to this case is its allegation of North Dakota residency. Where Plaintiffs' Amended Complaint seeks to protect Franklin's narrow business interests through individualized reclassification of its specific firearms rather than any broader interest germane to FRAC's industry-wide organizational purpose, it is undeniable that Franklin—not FRAC—is Defendants' only "natural adversary" for these claims. *Id.* The Court should accordingly dismiss FRAC for lack of associational standing and allow Franklin's remaining justiciable claims to proceed in a proper venue.

In the Amended Complaint, FRAC states that it "is a non-profit association working to improve business conditions for the firearms industry by ensuring the industry receives fair and consistent treatment from firearms regulatory agencies," Am. Compl. ¶ 29; Pl.'s Ex. R ¶ 4. FRAC further asserts that its "organizational purpose" is to "protect[] the firearms industry from government abuse," and quotes the mission statement found on its website, stating that:

FRAC's sole mission is to aggressively advocate for and defend firearms, ammunition,

and accessories manufacturers and importers from government overreach. This includes holding the government accountable for arbitrary and capricious policies and rulings and ensuring that the government's regulation of the industry is conducted in an open and transparent manner.

*Id.* ¶ 71.  But FRAC's "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to [confer standing]." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).  Instead, *Hunt*'s second prong provides that an organizational plaintiff like FRAC only has standing to sue on behalf of its members when its purpose aligns with the interest it seeks to advance in the litigation.  *See* 432 U.S. at 343.

In this case, however, FRAC is not challenging ATF's practice of firearms classification and regulation as applied to the "firearms industry" as a whole.  Nor does this action seek "consistent treatment" for the broad spectrum of manufacturers and importers that FRAC claims to represent. Quite the opposite.  By their own admission, Plaintiffs seek *special* treatment in the form of reclassification for a single manufacturer—Franklin—who makes the Antithesis and Reformation firearms: "a new type of weapon" that is allegedly "unique" in its design.  *See, e.g.,* Am. Compl. ¶¶ 4, 11, 18, 165.  Such claims implicate the narrow business interests of Franklin and its "unique" firearms alone, not FRAC's industry-wide organizational purpose, and elevate Franklin's interests above those of FRAC's other members, who will remain subject to the requirements of the GCA and NFA regardless of the outcome of this case.  *See infra* Part I.C.2.  Advancing the narrow interests of a single member is not sufficient for associational standing under *Hunt. Cf. Associated Gen. Contractors*, 611 F.2d at 690-91 (Applying *Hunt* and finding that the right "to work on [a] project . . . without having to sign a collective bargaining agreement . . . and without having to pay wages and fringe benefits equal to minimum standards" was not germane to the organizational purpose of "improv[ing] labor conditions, eliminat[ing] unfair or unethical practices or promot[ing] fair competition."); *MPIRG*, 557 F. Supp. at 932-34 ("interest in availability of financial aid without allegedly unconstitutional restrictions" not germane to purpose even though the association was student-run, "many of the issues [it] has been

13

involved with relate to student concerns and [] it is an organization primarily but not wholly funded by students."); *Ass'n of Indep. Gas Station Owners v. QuikTrip Corp.*, No. 4:11-CV-2083-JCH, 2012 WL 2994079, at *3 (E.D. Mo. July 20, 2012) (interests protected not germane to organizational purpose).

Plaintiffs attempt to paper over this incongruity between litigation interest and organizational purpose through the conclusory assertion that this action will "prevent ATF from relying on arbitrary and capricious rationales to make future regulations and/or classification decisions" involving non-party manufacturers' firearms, and will implicitly "deter the ATF from flouting the requirements of the Administrative Procedure Act [("APA")] in the future." Am. Compl. ¶¶ 73, 75.[8] But regardless of the outcome of this case, ATF's future classification decisions are already subject to the requirements of the APA, including the prohibition on use of arbitrary and capricious rationale for final agency action. *See, e.g, Sig Sauer, Inc.*, 826 F.3d 598, 601 (subjecting ATF's classification decisions to APA review under the arbitrary or capricious standard). And the Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law" because "[s]uch claims amount to little more than attempts to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982) (internal citations omitted). Indeed, the Supreme Court recently rejected a similar theory of standing in the context of redressability, where plaintiffs argued that they could meet the burden of Article III by "insist[ing] that state courts are likely to defer to a federal court's

---

[8] Plaintiffs also argue that their claims related to authorization processes for GCA-only firearms (Counts 3 and 4) would "facilitate a better functioning market for an entire class of lawful weapons" in a manner germane to FRAC's purpose because the relief requested on these claims runs to an entire class of firearms rather than Franklin's products alone. Am. Compl. ¶ 74. This argument lacks merit because Plaintiffs' GCA-only firearm claims are now moot. ATF has reclassified the Reformation as a firearm under both the GCA and the NFA, and as Plaintiffs admit, the requirements of 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by the completion and approval of ATF Form 5320.4 (known as Form 4) and ATF Form 5320.20. *See* Am. Compl. ¶ 22 & n.3; Pl.'s Ex. N. *See also infra* Part III.

interpretation of federal law, thus giving rise to a substantial likelihood that a favorable judgment will redress their injury." *Haaland v. Brackeen*, No. 21-376, 2023 WL 4002951, at \*18 (U.S. June 15, 2023). Not so. "Redressability," the Court stated, "requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Id.* at \*19 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment)). The Court further explained that, "[o]therwise, redressability would be satisfied whenever a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on 'issuing advisory opinions.'" *Id.* (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)).

In any event, even if Plaintiffs were to prevail on the merits and obtain the relief requested as to classification of the Reformation and Antithesis, that relief will not ensure more "consistent treatment" across the industry as articulated by FRAC's mission because Plaintiffs are wrong on the law governing ATF classifications. Under 27 C.F.R. § 478.92, ATF classifications apply only to the particular firearm configuration submitted to ATF for testing. *See* 27 C.F.R. § 478.92(c) ("each classification is limited to the firearm in the configuration submitted."). Because ATF's classifications are non-precedential as a matter of law, victory for Plaintiffs in this case would necessarily accrue to Franklin and its unique firearms alone, rather than any broader organizational purpose FRAC claims to represent. This conclusion does not prevent Franklin from suing in its own right to advance its narrow business interests through reclassification—indeed, Franklin has already done so by filing this case. It merely requires dismissal of FRAC for lack of associational standing, and thus, dismissal or transfer of this action to a district where venue is proper for Franklin's self-interested claims.

## C.   The Claims Asserted Require the Participation of FRAC's Individual Members

Assuming, *arguendo*, that FRAC qualifies as a traditional voluntary membership organization or the functional equivalent of one, dismissal is also nevertheless warranted because participation of

FRAC's individual members would be required to sustain Plaintiffs' claims.  An association "has standing to bring suit on behalf of its members when . . . neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. This requirement for individual representation can arise in two ways: (1) where the need for "individualized proof" pervades plaintiffs' claims, as in *Terre Du Lac Ass'n v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir. 1985), and (2) where the status and interests of an association's members "are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." *Associated Gen. Contractors*, 611 F.2d at 691 (rejecting associational standing due to "actual and potential conflicts" among members' interests in the litigation).  Both are true here, and FRAC should therefore be dismissed for lack of associational standing.

       1.   The Merits of Plaintiffs' Claims Require Proof Individualized to Franklin Alone

The Eighth Circuit has long "construed *Hunt* quite strictly," finding that plaintiffs lack associational standing when the nature of the claims at issue involves individualized proof, or when the association is not in a position to speak for its members due their diverse or conflicting interests with respect to the claims asserted.  *See MPIRG*, 557 F. Supp. at 934-35.  In *Terre Du Lac*, plaintiffs urged the court to read *Hunt* narrowly, and to adopt the proposition that the rule against granting associational standing where the "participation of individual members" is required refers solely to participation in the form of in-court testimony.  The Eighth Circuit expressly rejected this approach, holding that "[s]uch a narrow reading of *Hunt* is unfounded," and that "[a]ssociational standing is properly denied where . . . the need for 'individualized proof' so pervades the claims asserted that the furtherance of the members' interests requires individual representation." *Terre Du Lac Ass'n*, 772 F.2d at 471 (quoting *Hunt*, 432 U.S. at 344).  Here too, FRAC lacks standing because Plaintiffs' claims require individualized examination of facts that are particularized to Franklin and Franklin alone. "Associational standing is *inappropriate* if whatever injury may have been suffered is peculiar to the

individual members concerned, and both the fact and extent of injury would require individualized proof." *Northland Parent Ass'n v. Excelsior Springs Sch. Dist. #40*, 571 F. Supp. 3d 1104, 1114 (W.D. Mo. 2021) (quoting *Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 977 (7th Cir. 2019)).

Specifically, the need for individualized proof inescapabilty pervades Plaintiffs' challenges to ATF's classifications of the Antithesis and Reformation firearms—classifications based on extensive analysis of the specific design features, method of operation, and intended use of the firearms provided by Franklin to ATF for testing. *See, e.g.,* Pl.'s Ex. F, at 2-5. To resolve Plaintiffs' classification claims, the Court must inevitably look to the individualized facts considered by ATF in making its classification decisions for Franklin's firearms, and any administrative record produced by ATF for judicial review will be highly individualized to Franklin's weapons. *See* Am. Compl. ¶¶ 208-213, 289 (articulating several specific features of the Antithesis and Reformation that, Plaintiffs contend, warrant reclassification). Plaintiffs' conclusory allegation that "[n]o claim requires any individualized proof from individual members because the claims can be decided on the administrative record without further factual development," *id.* ¶ 81, ignores that the Eighth Circuit has squarely rejected such a "narrow reading" of *Hunt* and repudiated the theory that "participation of individual members" refers solely to participation in the form of witness testimony. *Terre Du Lac Ass'n*, 772 F.2d at 471 (quoting Hunt, 432 U.S. at 344). Under *Terre Du Lac,* the individualized *substance* of the proof is what matters—not its form. And individualized proof pervades the substance of this action because the decisions Plaintiffs' challenge were based on extensive analysis of the specific objective design features, method of operation, and intended use of the individual firearms provided by Franklin to ATF for testing. This is precisely the kind of "individualized proof" that precludes associational standing.

Plaintiffs also allege that participation of individual members is not required merely because they seek declaratory and injunctive relief under the APA. *See* Am. Compl. ¶ 77. This too is incorrect as a matter of law. "[S]eeking equitable [declaratory and injunctive] relief does not *per se* overcome the

prudential prong of associational standing . . . [as] associational standing is only proper if neither *the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit." *Leaming v. Jackson Cnty.*, No. 03-00940-CV-W-SWH, 2006 WL 1046906, at *22 (W.D. Mo. Apr. 19, 2006) (quoting *Comm. for Reasonable Regul. of Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 365 F. Supp. 2d 1146, 1163 (D. Nev. 2005)) (finding that the participation of individual members was required in an action for declaratory and injunctive relief, defeating the association's standing).  *See also Cmty. Stabilization Project v. Cuomo*, 199 F.R.D. 327, 333 (D. Minn. 2001) (No associational standing in action for declaratory and injunctive relief where examination of individual members' circumstances was required) (citing *Terre Du Lac Ass'n*, 772 F.2d at 471); *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 263 F. Supp. 2d 82, 124 (D.D.C. 2003),  *aff'd*, 366 F.3d  930 (D.C. Cir. 2004) (Rejecting associational standing in an APA action for declaratory and injunctive relief seeking to vacate agency action where "the presence of [members] in this action is required to both assert and protect their interests.").  Here, as in *Warth*, "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515-16.  Because Plaintiffs' claims require individualized proof, participation of FRAC's individual members is required, and FRAC should accordingly be dismissed for lack of associational standing.

   2.   The Interests of FRAC's Members are Too Diverse and the Possibilities of Conflict Too Obvious to Make FRAC an Appropriate Vehicle to Litigate These Claims

   Associational standing likewise is inappropriate when the "status and interests" of an organization's members "are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." *Associated Gen. Contractors*, 611 F.2d at 691. *See also MPIRG*, 557 F. Supp. at 934-35 (Finding associational plaintiff lacked standing where it was "clearly not in a position to speak for its members on this issue.").  Given the nature of Plaintiffs' claims, dismissal is therefore also warranted where the relief Plaintiffs seek stands to benefit

one manufacturer—Franklin—at the expense of FRAC's other purported members across the firearms industry.  At a minimum, the interests of FRAC's members are too diverse to make it an appropriate vehicle to litigate these claims.

In *Associated General Contractors*, a non-profit trade association composed of 138 general contractors alleged that a stabilization agreement negotiated between the defendants and several labor unions covering all construction work on a power plant project violated state labor laws and federal antitrust laws.  *See* 611 F.2d at 686-87.  Observing that "[s]ome members [of the association] are not qualified and others are not willing to work on the project; some stand to benefit from working on the project under the Agreement and still others will be hurt by not being able to do so," the Eighth Circuit held that the trade association failed to meet the third prong of the *Hunt* test because the "status and interests" of its members were "too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." *Id.* at 691.  The court considered both "actual and potential conflicts" among members' interests and rejected the association's arguments for standing even though "the association voted unanimously to bring the lawsuit," holding that "[i]t is for the court, not the members of the association, to determine whether their interests require individual representation." *Id.  See also Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1253 (4th Cir. 1991) (organization could not challenge constitutionality of affirmative action plan where some organization members benefitted from the plan while others would benefit from its demise).

Here too, although FRAC's Board approved the organization's initiation of this lawsuit (just as in *Associated General Contractors*), the diversity of interests and obvious potential for conflict among FRAC's members demands individual representation.  *See* 611 F.2d at 691; Am. Compl. ¶¶ 82-83. Franklin's interest in this action is clear: it designed and manufactured the Antithesis and Reformation firearms at issue, and now seeks to compel agency action to enable it to profit from the deregulated

sale of those weapons.  *See, e.g.,* Am. Compl. ¶ 63 (alleging that "inability to sell the Reformation to unlicensed customers is causing Franklin to lose millions of dollars in revenue.").  But the interests of FRAC's other purported members—Franklin's competitors—are far from aligned.  *See id.* ¶ 29 (alleging that FRAC represents other "U.S. firearms manufacturers, retailers, importers, and innovators," in addition to Franklin).  Because ATF's classification decisions are non-precedential, *see* 27 C.F.R. § 478.92, the relief sought in this case will not benefit other members when they seek classification of their own competing firearms.  Indeed, FRAC's other members have presumably complied with ATF-enforced federal firearms regulations and remain subject to the complained-of restrictions on the sale or transfer of short-barreled rifles and shotguns.  Therefore, the relief requested by Plaintiffs would amount to a special advantage for Franklin's products—the only firearms at issue in this case—by exempting the Antithesis and Reformation from the regulatory restrictions faced by FRAC's other members.  Although Franklin would surely benefit from the competitive advantage over rival manufacturers conferred by selective reclassification of its firearms and its firearms alone, such a judicially imposed advantage over FRAC's other members creates an obvious possibility of conflicting economic interests among members who are competitors in the firearms market, making FRAC a poor vehicle to litigate these claims.  *See Associated Gen. Contractors*, 611 F.2d at 691 (rejecting associational standing where "[s]ome members [of the association] are not qualified and others are not willing to work on the project; some stand to benefit from working on the project under the Agreement and still others will be hurt by not being able to do so"); *Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Plan. Ass'n*, 830 F.2d 1374, 1380-81 (7th Cir. 1987) (plaintiffs' "interests demand individual, not associational, representation" where the remedy sought would adversely affect some of the members while benefiting others); *Md. Highways Contractors Ass'n*, 933 F.2d at 1253 (same).

If Franklin wishes to challenge ATF's regulation of the Antithesis and Reformation, it may do so in a district where it or the Defendants reside, or where a substantial part of the events or omissions

giving rise to its claims occurred.  *See* 28 U.S.C. § 1391(e)(1).  And when Franklin presents its claims to a court with jurisdiction, the Government will defend them.  But the Eighth Circuit's strict requirements for associational standing prevent FRAC from joining this case simply to secure preferable venue on Franklin's behalf.  Because FRAC fails to satisfy *Hunt*'s requirements for associational standing, the Court should dismiss FRAC from this case and, since FRAC is the only party claiming North Dakota residency, dismiss Franklin's remaining claims for lack of venue.

## II.   Plaintiffs' Complaint Should Be Dismissed for Lack of Venue or Transferred to a Proper Venue

### A.     Venue Is Not Proper in This District

Even if FRAC did have associational standing, the District of North Dakota is not a proper venue for this case.  The Complaint cites 28 U.S.C. § 1391(e)(1) as the basis for venue.  *See* Am. Compl. ¶ 45.  Under that statute,

> [a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  However, there is no basis for venue in this district under this statute because none of its enumerated conditions apply to this district as a factual matter.

#### 1.   28 U.S.C. §§ 1391(e)(1)(A)-(B)

Plaintiffs do not assert that venue can be established through either of the first two options —§ 1391(e)(1)(A) or § 1391(e)(1)(B).  No Defendant resides in this district, so § 1391(e)(1)(A) does not apply.  "Federal officials are residents of the district where a 'significant amount' of their duties are performed."  *Rare Breed Triggers*, 2022 WL 17175089, at *3 (quoting *Smith v. Dalton*, 927 F. Supp. 1, 6 (D.D.C. 1996)).  The named Defendants in this case, an agency of the United States—ATF—and the officials in charge of that agency, sued in their official capacities, are all based in Washington, D.C.

*See, e.g.*, 14D Arthur R. Miller, et al., Federal Practice and Procedure § 3815 (4th ed. 2013) ("[T]he relevant inquiry is the official residence . . . ."); *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1338 (M.D. Ala. 2001). Section 1391(e)(1)(B) also does not apply because no events giving rise to the claims in the Complaint occurred in this district, and as Plaintiffs concede, "no real property is involved in this action[.]" Am. Compl. ¶ 45. The events that gave rise to this case occurred primarily in the District of Columbia, West Virginia, and Nevada; the classification letters were issued by ATF's offices in the District of Columbia and West Virginia,[9] and sent to Franklin President Jay Jacobson at addresses in Minden, Nevada.[10] Assuming, *arguendo*, that Plaintiffs claims implicate FRAC at all, *but see supra* Part I, FRAC was formed as a Delaware corporation in 2020 and was not registered in North Dakota until February 16, 2021, months after ATF's classification of the firearms at issue here. Pl.'s Ex. R ¶ 13. Nowhere does the Amended Complaint allege that any event occurred in North Dakota or that any property is located in North Dakota.

       2.   28 U.S.C. § 1391(e)(1)(C)

Venue cannot be sustained under § 1391(e)(1)(C) because no Plaintiff resides in this district as a factual matter. For purposes of venue,

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, **only in the judicial district in which it maintains its principal place of business** . . . .

28 U.S.C. § 1391(c)(2) (emphasis added). Franklin and FRAC are both incorporated entities with the capacity to sue and be sued, so their residence as plaintiffs for these purposes depends on where they

---

[9] The examination reports underlying ATF's classification decisions were completed in Martinsburg, West Virginia. *See, e.g.*, Pl.'s Ex. F at 1. Classifications are a function of ATF headquarters, although the physical location of the examination facility is in West Virginia.

[10] *See* Pl.'s Ex. E at 1, ECF No. 22-5; Ex. J at 1, ECF No. 22-10; Ex. L at 1, and Ex. N at 1. Although one letter was mistakenly addressed to Tempe, Arizona, Defendants aver that this was an error.

maintain their "principal place[s] of business[.]"  *Id.  See also Rare Breed Triggers*, 2022 WL 17175089, at *3 (plaintiff "must establish its 'principal place of business' is in the District of North Dakota to show venue is proper.").  The phrase "principal place of business" refers to the place where a company's officers "direct, control, and coordinate the [company's] activities[,]" also referred to as the company's "nerve center."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  *See also Ariz. Yage Assembly v. Barr*, No. 3:20-cv-03098-WHO, 2020 WL 5629833, at *15 (N.D. Cal. Sept. 21, 2020) (applying the *Hertz* "nerve center" test "[f]or purposes of the federal venue statute" and finding that plaintiffs' pleading regarding corporations' state of incorporation was insufficient to establish venue); *Rare Breed Triggers*, 2022 WL 17175089, at *4-6 (same).

Here, Plaintiffs allege that FRAC's President, Travis White, directs and controls FRAC's activities from its headquarters in Bismarck, North Dakota. Am. Compl. ¶ 51.[11]  But in initial lobbying registration reports filed with the Clerk of the United States House of Representatives on October 20, 2020, and November 6, 2020, as required by federal law, *see* 2 U.S.C. § 1603(a)(1), FRAC's address is listed as "1776 K Street NW, Washington, DC 20006."  *See* Def.'s Exs. 1 and 2 at line 7.  Although the Lobbying Disclosure Act of 1995 expressly requires that these reports "shall contain[,]" *inter alia*, "the name, address, *and principal place of business* of the registrant's client," 2 U.S.C. § 1603(b)(2) (emphasis added), and the form included a space reserved for FRAC's "[p]rincipal place of business (if different than [the address provided on] line 7)," this line is left blank on FRAC's filings, conveying that FRAC's principal place of business was the same as its address—1776 K Street NW, Washington, D.C.—and *not* in North Dakota, as would be required for venue under § 1391(e)(1)(C).  *See* Def.'s Exs. 1 and 2 at lines 7-8.  Although FRAC's representatives filed fifteen additional lobbying disclosures between November 2020 and January 2023 (including a disclosure filed as recently as January 20,

---

[11] Plaintiffs provide no allegation that Franklin's principal place of business is in North Dakota, or anywhere other than Nevada.

2023), none of those filings list any addresses in North Dakota. *See generally* Clerk of the United States House of Representatives, Lobbying Disclosures.[12]  Only on April 5, 2023, in response to Defendants' original motion to dismiss or transfer this case (and over two years after purportedly transitioning its office to North Dakota), did FRAC alter its Congressional disclosures to provide any indication of North Dakota residency.  *See* Pls.' Opp'n and Mot. Summ. J. Exs. 6 and 7, ECF Nos. 11-6 and 11-7.

The Supreme Court has cautioned against finding a principal place of business that is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz,* 559 U.S. at 97.  Thus, the mere fact that FRAC maintains an address in North Dakota is insufficient to demonstrate that FRAC's principal place of business lies within this judicial district, particularly given statements to the contrary by FRAC itself. *See Rare Breed Triggers,* 2022 WL 17175089, at *4-6 (analyzing venue under the *Hertz* "nerve center" test and finding incorporation and office address in North Dakota insufficient to establish gunmaker's principal place of business).   And FRAC's other public statements about its location only serve to further distance itself from the District of North Dakota.  When FRAC sought to secure paid advertisements on the social media platform Facebook, it listed its location as "Washington, DC," and provided an address of "1776 K ST NW, Washington, DC 20006"—the same address listed on FRAC's lobbying disclosure reports submitted to Congress under 2 U.S.C. § 1603.  *See* Def.'s Exs. 1, 2, 3.[13]  As FRAC's CEO stated in an October 2022 interview with Recoil Magazine, "[t]he whole purpose of creating FRAC was to have a presence in Washington."  Blake Stilwell, *Firearms Regulatory Accountability Coalition: Taking On The BATFE,*

---

[12] Available at https://disclosurespreview.house.gov/?index=%22lobbying-disclosures%22&size=10&keyword=%22\%22firearms%20regulatory%20accountability%20coalition\%22%22&sort=[{%22_score%22:true},{%22field%22:%22registrant.name%22,%22order%22:%22asc%22}] [https://perma.cc/Y7PG-7CZ8]

[13] FRAC's location on the social media platform Twitter is likewise displayed as "Washington, D.C." *See* FRACaction Profile, Twitter, https://twitter.com/fracaction [https://perma.cc/5NYZ-TDTT?type=image].

Recoil (Oct. 10, 2022), https://www.recoilweb.com/firearms-regulatory-accountability-coalition-taking-on-the-batfe-176754.html [https://perma.cc/S6FD-TF3P].

Plaintiffs bear the burden of proof to demonstrate that venue is proper, *Martensen*, 942 F. Supp. 2d at 996; *Rare Breed Triggers*, 2022 WL 17175089, at *2. The Court should take FRAC's Congressional filings at their word. To find venue proper in the District of North Dakota would be to permit FRAC to simultaneously tell Congress and the public that its principal place of business lies in the District of Columbia when a Washington, D.C., address is convenient for its lobbying efforts, while telling the judiciary that FRAC resides in Bismarck when a North Dakota address is convenient to secure a favorable venue for litigation. Such forum-shopping disserves the interests of justice, and the Court should not condone FRAC's gamesmanship by allowing this action to proceed in the District of North Dakota.

Accordingly, the Court has two options: either it "[1] shall dismiss, or [2] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3). The Court has discretion as between those options. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *see also Fischer v. First Nat'l Bank of Omaha*, 466 F.2d 511, 511 (8th Cir. 1972) (dismissing an interlocutory appeal to a transfer order under § 1406). "[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged." 14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3827 (4th ed. 2022). Dismissal in this case would cause minimal prejudice because Plaintiffs could likely refile in another district where there is no venue problem. *See* Fed. R. Civ. P. 41(b).

In the alternative, the case should be transferred to a district in which venue is proper. At least two districts meet this criteria: the District of Nevada, where Franklin's principal place of business is located, and the District for the District of Columbia, where the Defendants reside.

25

**B.      Transfer Is Appropriate Even if Venue Is Proper in This District**

Even if the Court concludes that venue in this District is proper, the Court should nonetheless transfer the case under 28 U.S.C. § 1404(a).  Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  *See Nat'l Distillers & Chem. Corp. v. Dep't of Energy*, 487 F. Supp. 34, 36-37 (D. Del. 1980) (dismissing where venue was technically proper because plaintiffs appeared to have improperly joined parties for purpose of manufacturing venue).  A transfer motion under § 1404(a) "requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues."  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997) (citation omitted).  Courts are not limited to consideration of these "enumerated factors" and must make a "case-by-case evaluation of the particular circumstances."  *Id.* at 691 (citation omitted).  *See, e.g., Boston Telecom. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (considering, *inter alia*, the degree of "local interest in the lawsuit" and "the costs of resolving a dispute unrelated to a particular forum[]" in the context of a *forum non conveniens* analysis) (citation omitted).

Plaintiffs' claim to venue in this action rests entirely on the residence of a single individual, Travis White—CEO of an organization which had not even been founded at the time Franklin submitted the firearms at issue to ATF for classification.  *Compare* Pl.'s Ex. R. ¶ 14, *with* Am. Compl. ¶¶ 114, 172.  Here, the totality of the circumstances favors transfer to either the District of Nevada or the District for the District of Columbia.  Either district would be more convenient for the parties. The classification of Franklin's firearms was handled by the ATF in the District of Columbia and West Virginia.  And whether or not FRAC actually conducts its business in the District of Columbia, it is indisputable that Plaintiffs' counsel are based in Washington, D.C., so any in-person hearing would

be more convenient for the parties in the District for the District of Columbia.  Similarly, to the extent witnesses will be needed at any point in these proceedings,[14] the District for the District of Columbia or the District of Nevada would be a more convenient forum.  Franklin's President, Jay Jacobson, who has submitted a declaration supporting Plaintiffs' Complaint, appears to be based in Nevada, see Pl.'s Ex. E at 1; Ex. J at 1; Ex. L at 1, and Ex. N at 1, and the Amended Complaint provides no indication that any individual connected with the design or classification of the Antithesis and Reformation is in North Dakota.  And courts balancing the convenience of the parties may consider "the location where the conduct complained of occurred[.]"  *Terra Int'l*, 119 F.3d at 696.  Most of the complained-of events took place at ATF's Headquarters in the District of Columbia, *see supra* Part II(A), making that forum the more convenient.

The interests of justice also favor transfer.  In evaluating this factor, courts consider, *inter alia*, "judicial economy" and "the plaintiff's choice of forum[.]"  *Terra Int'l*, 119 F.3d at 696.  Here, the Court should transfer this case to discourage the sort of forum-shopping that Plaintiffs have undertaken.  *See Uviado*, 755 F. Supp. 2d at 786–87 (considering forum-shopping in evaluation of a transfer motion); *Gage v. Somerset Cnty.*, 322 F. Supp. 3d 53, 57-58 (D.D.C. 2018) (same).  As a Nevada corporation, Franklin is generally subject to federal law as it is interpreted in and by the Ninth Circuit, and justice favors uniform application of precedent to its conduct and business operations.  *Cf. Lab'y Corp. of Am. Holdings v. N.L.R.B.*, 942 F. Supp. 2d 1, 5 (D.D.C. 2013) ("It is not 'in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents.'") (quoting *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*, 654 F. Supp.

---

[14] Even if this Court or a transferee court denies a motion to dismiss, it is unlikely that resolution of this case will require witnesses or a trial. Because this action is brought pursuant to the APA, judicial review is limited to the administrative record presented by the agency, and discovery is generally not appropriate. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985); *see also Smirnov v. Clinton*, 806 F. Supp. 2d 1, 21 n.16 (D.D.C. 2011) ("[M]ost APA cases, [are resolved] through the consideration of cross motions for summary judgment . . . ."), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012).

734, 737 (D.D.C. 1986)).  Finally, transfer is further warranted due to the importance of the "local interest in having localized controversies at home."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). This case concerns the firearms of a Nevada gunmaker, regulated by a federal agency in Washington, D.C.  The challenged decisions were all made outside of this district, the impacts of a decision in this case will be felt in the district where Franklin resides, and Plaintiffs identify no local interest favoring venue in North Dakota.  *Cf. Nat'l Wildlife Fed'n v. Harvey*, 437 F.Supp.2d 42, 49-50 (D.D.C. 2006) (transfer appropriate where, *inter alia*, agency action had direct impact on transferee district, and the disputed decisions were not made in transferor district).

In enacting § 1391(e), "Congress did not intend to give plaintiffs the right to bring such suits in any district they might choose.  Instead, Congress gave plaintiffs the right to cho[o]se between one of several specifically listed potential districts.  That statutory scheme would be effectively destroyed if the Court were to allow a plaintiff to manufacture or create venue in any district it might choose by means of a collusive joinder of a party." *Nat'l Distillers & Chem. Corp*, 487 F. Supp. at 36-37 (dismissing where venue was technically proper under the venue statute because plaintiffs appeared to have joined parties for purposes of manufacturing venue) (internal citations omitted).  While deference should be given to a plaintiff's choice of forum, Plaintiffs should not be allowed to manufacture venue through contradictory statements of residency and inadequate assertions of associational standing.

## III.   Counts 3 and 4 of the Amended Complaint Should Be Dismissed

In addition to their classification challenge to the Antithesis and Reformation, Plaintiffs also contend that ATF unreasonably delayed creating forms that would have allowed Franklin to seek authorization to sell, deliver, and transfer the Reformation in its former GCA-only classification, and allege that ATF's purported delay in creating these forms constitutes an arbitrary and capricious "enforcement policy".  *See* Am. Compl. ¶¶ 300-328 (Counts 3 and 4).  But following ATF's reclassification of the Reformation, neither Franklin nor any other gunmaker produces a GCA-only

classified firearm for which such forms would be required.  Accordingly, both claims should be dismissed because they are moot and, in any event, without merit.

### A.    Plaintiffs' GCA-Only Reformation Claims Are Moot Because ATF Has Reclassified the Reformation, Thereby Providing Access to the Authorization Procedures Plaintiffs Seek

The Court must dismiss Plaintiffs' third and fourth claims because ATF's May 4, 2023 classification of the Reformation renders both claims moot.  Article III of the Constitution limits federal courts to the resolution of only "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), and a court cannot "decide the merits of a legal question not posed in an Article III case or controversy."  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994).  A court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted).  In particular, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)).  A live legal question must exist "at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted).  Thus, "[i]t is of no consequence that the controversy was live at earlier stages in this case; it must be live when [the court] decide[s] the issues."  *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998) (quoting *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir.1990)).  "Further, if this case is indeed moot, [the court] must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Id.*

The APA gives courts limited authority under § 706(1) to compel agency action unlawfully withheld or unreasonably delayed.  But once the agency issues the requested action, relief under

§706(1) "is no longer available to [a] plaintiff," and the claim is therefore moot.  *Ctr. for Biological Diversity v. Kempthorne*, 498 F. Supp. 2d 293, 296–97 (D.D.C. 2007).  *See also Missouri ex rel. Nixon*, 163 F.3d 482, 484-85.  As Plaintiffs admit, the requirements of 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by the completion and approval of ATF Form 5320.4 (known as Form 4) and ATF Form 5320.20.  *See* Am. Compl. ¶ 22 & n.3; Pl.'s Ex. N.  It is therefore beyond dispute that because ATF has reclassified the Reformation as both a short-barreled shotgun under the GCA *and* a firearm under the NFA, Plaintiffs may now avail themselves of the authorization process they seek, and are no longer subject to the alleged de facto "enforcement policy" they purport to challenge.  Am. Compl. ¶ 326.[15]  The Court cannot grant Plaintiffs relief from a policy that no longer applies to their firearms, nor can it compel ATF to create authorization forms for the Reformation which already exist.  Counts 3 and 4 of the Amended Complaint are thus moot.  *See Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (dismissing an appeal as moot because a statutory amendment "provided the plaintiffs the very relief their lawsuit sought"); *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020) (*per curiam*) (holding that a claim for "declaratory and injunctive relief" against a law was moot when the law was amended to give "the precise relief that [the plaintiffs] requested"); *Missouri ex rel. Nixon*, 163 F.3d at 485 ("In other words, whatever wrong, if any, there may have been, changed circumstances have deprived us of the ability to provide the requested remedy.  Therefore, it appears to us that the case is moot.") (citing *Hazen*, 914 F.2d at 150).

---

[15] Plaintiffs' fourth claim asserts that ATF's failure to promulgate an authorization process for the Reformation amounts to a de facto arbitrary and capricious "enforcement policy."  *See* Am. Compl. ¶¶ 324-328.  This claim is not cognizable under 5 U.S.C. § 706(2) because it fails to challenge a final agency action, as required to waive sovereign immunity.  *See Public Citizen v. U.S. Trade Representative*, 5 F.3d 549, 552 (D.C. Cir. 1993) (finding that agency's failure to prepare an environmental impact statement independently required by statute was not final agency action).  But it is also moot because any such "enforcement policy" no longer applies to the Reformation firearm where Franklin is now able to seek authorization to sell the weapon as requested by the complaint.

**B.      Plaintiffs Are No Longer Injured by the Alleged Lack of An Authorization Process for GCA-Only Short-Barreled Shotguns**

Even if Plaintiffs wished to challenge the alleged lack of an authorization process for GCA-only short-barreled shotguns despite ATF's amended classification of the Reformation, they would lack standing to do so because they are no longer injured by the lack of such a process. *See Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (finding that a plaintiff cannot defend against a claim of mootness by asserting an injury broader than the injury alleged in the complaint). "[A]n essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must have "standing to invoke the authority of a federal court[,]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), ensuring that the plaintiff has a "personal stake in the outcome of [a] controversy" that "justif[ies] [the] exercise of the court's remedial powers on [its] behalf." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (citation omitted).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). A "threatened injury must be certainly impending to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). In addition, a "theory of standing [that] relies on a highly attenuated chain of possibilities[] does not satisfy" this requirement. *Id.* at 410. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citations omitted). *See also Warth*, 422 U.S. at 502 (plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Lujan*, 504 U.S. at 563 ("'[T]he 'injury in fact' test requires more than an injury to a

31

cognizable interest.  It requires that the party seeking review be himself among the injured.'" (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-735 (1972)).

The Amended Complaint alleges only that Franklin produces the Antithesis—classified as a short-barreled rifle under the GCA and NFA—and the Reformation, which until May 4, 2023, was classified as a GCA-only short-barreled shotgun for which ATF authorization processes for sale and transfer were not available.  *See* Am. Compl. ¶¶ 55, 59.  Plaintiffs do not allege that any party is injured in any way by the lack of an authorization process for GCA-only short-barreled shotguns except insofar as their Reformation firearm formerly constituted such a weapon.  *Id.* ¶¶ 62-65.  Indeed, Plaintiffs do not even allege that any non-party gunmaker currently produces a weapon classified as a firearm under the GCA but not the NFA, and the ATF is unaware of any such firearm in existence.  And now that the Reformation has been reclassified as a firearm under both the GCA *and* the NFA, Franklin may access the authorization process it seeks via completion and approval of ATF Forms 5320.4 and 5320.20.  *See* Am. Compl. ¶ 22; Pl.'s Ex. N at 1.  Accordingly, Franklin and FRAC suffer no "injury in fact" for standing purposes from the lack of authorization processes for GCA-only short-barreled shotguns because the Amended Complaint does not allege that it produces any such weapons other than the Reformation, which has now been reclassified,  *Spokeo*, 578 U.S. at 338.  *See* Am. Compl. ¶¶ 62-65.  Speculative "[a]llegations of possible future injury are not sufficient."  *Clapper*, 568 U.S. at 409 (2013) (citation omitted).

Without any allegation that a Plaintiff in this case produces a GCA-only short-barreled shotgun, Plaintiffs fail to demonstrate that the lack of an authorization process for such a hypothetical weapon causes them a concrete and particularized injury.  Accordingly, even if Plaintiffs' GCA-only authorization process claims were not moot—which they are—Counts 3 and 4 of the Amended Complaint must be dismissed for lack of standing.

## CONCLUSION

For the reasons stated above, Plaintiffs' Amended Complaint should be dismissed, or in the alternative, transferred to a proper venue.


Dated: June 26, 2023                              Respectfully submitted,

                                                  BRIAN M. BOYNTON
                                                  Principal Deputy Assistant Attorney General

                                                  BRIGHAM J. BOWEN
                                                  Assistant Branch Director

                                                  /s/ *Andrew J. Rising*
                                                  ANDREW J. RISING
                                                  D.C. Bar No. 1780432
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  1100 L Street, NW, Rm. 11406
                                                  Washington, D.C. 20005
                                                  Phone:   (202) 514-0265
                                                  E-mail:   andrew.j.rising@usdoj.gov

                                                  *Counsel for Defendants*