**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Firearms Regulatory Accountability ) <br> Coalition, Inc., and Franklin Armory, Inc. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ) <br> Merrick Garland, in his official capacity ) <br> as Attorney General of the United States, ) <br> et al., ) <br> ) <br> Defendants. ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 1:23-cv-003 |

Before the Court is the Defendants' Rule 12(b)(1) and 12(b)(3) motion to dismiss the Amended Complaint (Doc. No. 22), filed on June 26, 2023. See Doc. No. 23. In the alternative, Defendants move to transfer the venue. The Defendants supplemented their motion with a memorandum in support, filed on June 26, 2023. See Doc. No. 24. The Plaintiffs filed a response in opposition to the motion on July 17, 2023. See Doc. No. 26. The Defendants filed a reply on July 31, 2023. See Doc. No. 30. For the reasons set forth below, the Defendant's motion is denied.

### I.     BACKGROUND

This case arises from a dispute between the Plaintiffs, Firearms Regulatory Accountability Coalition ("FRAC") and Franklin Armory, Inc. ("Franklin"), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). The Plaintiffs seek to challenge ATF's classification of two firearms made by the gunmaker, Franklin: the FAI-15 Antithesis short-barreled rifle ("Antithesis") and the Reformation short-barreled shotgun ("Reformation"). In their Amended Complaint, the Plaintiffs present numerous arguments in support of their position.

1

First, the Plaintiffs challenge ATF's classification of the FAI-15 Antithesis as a "short-barreled rifle" under two statutes: the Gun Control Act ("GCA") and the National Firearms Act ("NFA"). Second, the Plaintiffs challenge ATF's recent classification of the Reformation as a "short-barreled shotgun" under both the NFA and GCA. Finally, Plaintiffs challenge ATF's failure to promulgate a statutorily required process for parties to seek authorization to sell, deliver, and transport across state lines weapons classified as short-barreled shotguns under the GCA.

The ATF has yet to promulgate statutorily required procedures for selling and transferring legal weapons purportedly regulated by the GCA. As such, the Plaintiffs filed suit to remedy that delay and to challenge the agency's classification of the weapons. Prior to ruling on the substantive merits of the case, the Court must first address jurisdiction. The Defendants contend the Plaintiffs Amended Complaint should be dismissed, arguing the Plaintiffs lack standing under Rule 12(b)(1), lack of venue under Rule 12(b)(3) or, in the alternative, the suit should be transferred under 28 U.S.C. § 1404.

### III.   STANDARD OF REVIEW

Plaintiffs bear the burden of proving that venue is proper in response to a motion to dismiss under Rule 12(b)(3). See Rare Breed Triggers, LLC v. Garland, No. 3:22-CV-85, 2022 WL 17175089, at 2 (D.N.D. Nov. 4, 2022); E.W. Wylie Corp. v. Transp. Tech. Servs., Inc., No. 3:11-cv-47, 2011 WL 13111712, at *2 (D.N.D. Oct. 24, 2011). See also Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (applying the "preponderance of the evidence" standard). A court may consider materials outside the pleadings to determine whether venue is proper. Rare Breed Triggers, 2022 WL 17175089, at 3 (citing Daughetee v. CHR Hansen, Inc., No. C09-4100, 2011 WL 1113868, at 2 (N.D. Iowa Mar. 25, 2011)). See also Martensen v. Koch, 942 F. Supp. 2d 996

(N.D. Cal. 2013). "If the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court." Martensen, 942 F. Supp. 2d at 996 (citation omitted); see 28 U.S.C. § 1406(a).

In response to a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Osborn v. United States, 918 F.2d 724, 729-30 (8th Cir. 1990) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); Missouri v. W. Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995). In order for the Court to have subject-matter jurisdiction over a challenge to agency action, the plaintiff must have standing to sue. See Young Am. Corp. v. Affiliated Comp. Servs. (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005). A court may likewise examine materials outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. See Osborn, 918 F.2d at 730.

## II.  LEGAL DISCUSSION

The Defendants move to dismiss the Plaintiffs' claims under Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure. See Doc. No. 23. In the alternative, the Defendants move to transfer the venue. The Defendants present numerous arguments in support of its position. For the reasons set forth below, the Defendant's motion is denied.

### A.  STANDING

The Defendants argue dismissal is warranted because FRAC lacks standing. See Doc. No. 24, p. 11. In their principal motion, the Defendants contend FRAC lacks associational standing to challenge ATF's classification of Franklin's firearms because FRAC is neither a traditional voluntary membership organization nor the equivalent of one for standing purposes under *Hunt v.*

3

*Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). Id. In reply, the Defendants withdraw that portion of their motion due to intervening case law issued by the United States Supreme Court in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199, 2023 WL 4239254 (U.S. June 29, 2023). See Doc. No. 30, p. 7. Therefore, it is conceded that FRAC is a traditional voluntary membership organization or the equivalent of one for standing purposes. However, the Defendants still argue the narrow business interests that FRAC seeks to protect in this case are not germane to its organizational purpose and the claims asserted require the participation of FRAC's members. See Doc. No. 24, p. 11. In response, the Plaintiffs contend they seek to protect interests germane to its organizational purpose and that neither the claims asserted, nor relief requested, require the participation of FRAC's members. See Doc. Nos. 26, p. 15 and 24. In reply, the Defendants maintain the interests advanced by the Plaintiffs are particularized to Franklin and the claims require the participation of FRAC individual members. See Doc. Nos. 30, p. 7 and 10.

Although it is conceded FRAC qualifies as a membership organization, it must still meet the requirements of associational standing: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Associated Gen. Contractors of N.D. v. Otter Tail Power Co., 611 F.2d 684, 690 (8th Cir. 1979). The Defendants only challenge the second and third prongs of the associational standing requirements. See Doc. No. 30, p. 7.

### 1. INTERESTS GERMANE TO ORGANIZATIONAL PURPOSE

The second prong of associational standing requires FRAC to show that the interests it seeks to protect are germane to the organization's purpose. Associated Gen. Contractors of N.D., 611 F.2d at 690. The Defendants argue FRAC has failed to meet this prong. See Doc. No. 24, p. 22. FRAC contends this element of associational standing is easily satisfied. See Doc. No. 26, p. 23. In reply, the Defendants maintain the interests advanced by the Plaintiffs are particularized to Franklin and not germane to FRAC's organizational purpose. See Doc. No. 30, p. 7.

FRAC satisfies the second prong of associational standing. The second prong of associational standing requires FRAC to show that the interests it seeks to protect are germane to the organization's purpose. Associated Gen. Contractors of N.D., 611 F.2d at 690. FRAC can successfully make this showing so long as the "suit furthers [the association's] mission." Kuehl v. Sellner, 887 F. 3d 845, 851 (8th Cir. 2018).

FRAC is a non-profit association "committed to holding the government accountable for unlawful policies and practices and ensuring that the government's regulation of the industry is conducted in an open and transparent matter." See Doc. No. 22-18, ¶ 6. Part of its mission is to "aggressively advocate for and defend firearms, ammunition, and accessories manufacturers, retailers, and importers from government overreach." See Doc. No. 22-18, ¶ 7. FRAC frequently files comments with firearms regulatory agencies and contests firearms issues at all levels of the federal judiciary system. Id. In addition, FRAC serves as the premier national trade association representing U.S. firearms, ammunition, and accessories manufacturers, retailers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States. See Doc. No. 22-18, ¶ 5. As such, FRAC's Board unanimously approved the organization's initiation of the instant lawsuit and concluded that remedying the allegedly unlawful actions by ATF would

be germane to the firearms industry, FRAC and its purpose, and the members of FRAC. See Doc. No. 22-18, ¶¶ 31, 33.

The record makes it clear that this suit furthers a core component of FRAC's mission: advancing its members' interests and defending its members from government overreach. See Doc. No. 22-18, ¶ 10. Further, the interests FRAC seeks to protect are plainly germane to FRAC's purpose of "advocat[ing] for and defend[ing] firearms, ammunition, and accessories manufacturers and importers from government overreach." See Doc. No. 22-18, ¶ 7. It is well-established that an "[o]rganization[] dedicated to advocating for [an industry] certainly ha[s] an interest in [government action] that predominantly [a]ffect[s] [industry companies] such as the challenged" actions in this case. Pietsch v. Ward Cnty., 446 F. Supp. 3d 513, 529 (D.N.D. 2020) (Welte, C.J.), aff'd, 991 F.3d 907 (8th Cir. 2021); see PhRMA v. Williams, 64 F.4th 932, 936, 938, 946–48 (8th Cir. 2023) (affirming standing for trade association challenging government action affecting "three of its members" where suit was "germane to [organization]'s purpose" of "addressing distortions in the market for medicines" (internal quotation marks omitted)); Arkansas Med. Soc'y v. Reynolds, 6 F.3d 519, 521, 528 (8th Cir. 1993) (organizations representing Medicaid recipients challenging law that "would affect Medicaid recipients[]" were "obviously seeking to protect interests that [we]re directly relevant to the organizations' purposes"). Accordingly, FRAC satisfies the second element of association standing.

### 2. PARTICIPATION OF INDIVIDUAL MEMBERS

The third prong of associational standing requires FRAC to show neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. Associated Gen. Contractors of N.D., 611 F.2d at 690. The Defendants argue FRAC cannot satisfy

6

the third prong "because participation of FRAC's individual members would be required to sustain Plaintiffs' claims." See Doc. No. 24, p. 26. FRAC contends neither the claims asserted, nor the relief requested, require the participation of FRAC's members. See Doc. No. 26, p. 32. In reply, Defendants argue FRAC's associational standing should be rejected because the claims asserted by FRAC require the participation of FRAC's individual members, both because individualized proof would be required to grant Plaintiffs' motion for summary judgment as currently presented, and because the claims raise obvious potential conflicts[1] which make this case ill-suited to associational representation. See Doc. No. 30, p. 10.

FRAC can successfully satisfy the third prong of associational standing because neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit, nor do potential conflicts exist. Associated Gen. Contractors of N.D., 611 F.2d at 690. The Amended Complaint filed by FRAC alleges the ATF has violated the APA and seeks prospective declaratory relief and declaratory relief. See Doc. No. 22, pp. 38-43. The Eighth Circuit has repeatedly held that such claims do not require the participation of individual members. See Heartland Acad. Cmty. Church v. Waddle, 427 F.3d 525, 533 (8th Cir. 2005) (participation of members "not required" "because [plaintiff] seeks only declaratory and prospective injunctive relief"); Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1022 (8th Cir. 2012) (same); Iowa League of Cities, 711 F.3d at 854, 869 (no individual participation required for APA claim); Pietsch, 446 F. Supp. 3d at 530; see Warth, 422 U.S. at 515 (explaining Court has "expressly

---

[1] The conflict of interest exception does not apply here. FRAC's board—composed entirely of directors put forth by its members—voted unanimously to file this suit. See Doc. No. 22, p. 12. Further, the mere "fact that [members] may compete in the marketplace" does not defeat associational standing, Pharmaceutical Care Management Association v. Gerhart, No. 4:14- CV-000345, 2015 WL 6164444 (S.D. Iowa Feb. 18, 2015) at *5, even where a challenged law affects only one member. Retail Industry Leaders Association v. Fielder, 475 F.3d 180, 187-88 (4th Cir. 2007).

recognized standing in associations to represent their members" when "seek[ing] a declaration, injunction, or some other form of prospective relief," as opposed to "damages").

Ultimately, ATF argues that FRAC requires individual participation of their members and may not bring APA claims against an agency action that is typically specific to one party. However, "it is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." Voyageurs Nat'l Park Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004). The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985). Even the Defendants make this acknowledgement. See Doc. No. 24, p. 37 ("Because this action is brought pursuant to the APA, judicial review is limited to the administrative record presented by the agency, and discovery is generally not appropriate.) Other courts have found the same. Nat'l Org. of Veterans' Advocs., 981 F.3d at 1371 (holding plaintiff's "challenge . . . does not require 'individualized proof' because this case presents a purely legal question asking whether [agency actions] are unlawful under the Administrative Procedure Act"); Food & Water Watch v. FERC, 28 F.4th 277, 283 (D.C. Cir. 2022) (holding plaintiffs' "relief sought under the [APA] does not require the participation of individual members."); see Iowa League of Cities, 711 F.3d at 854, 869 (same); Firearms Imp./Exp. Roundtable Trade Grp., 854 F. Supp. at 9–10, 14–15 & n.13 (holding firearms trade group's APA challenge to ATF's letter-adjudication of single member's permit application did not "require[] that an individual member participate"). Accordingly, FRAC satisfies the third prong of associational standing because neither the claims asserted, nor the relief requested, require the participation of FRAC's members.

B.  **VENUE**

The Defendants also argue the Plaintiff's complaint should be dismissed because the District of North Dakota is not a proper venue. See Doc. No. 24, p. 31. The Defendants contend FRAC's principal place of business lies in the District of Columbia. Id. at p. 35. In the alternative, the Defendants move to transfer the case to a different venue. Id. at p. 35. In response, the Plaintiffs contend its principal place of business is in Bismarck, North Dakota, thus venue is proper in the District of North Dakota. See Doc. No. 26, p. 39.

The United States Supreme Court has held:

> "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the . . . corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination.

Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010).

The Defendants assert FRAC's principal place of business is Washington D.C. based upon an address that FRAC's lobbyists put on disclosure reports submitted to Congress in 2020, among other things. See Doc. Nos. 24-1 and 24-2. The Plaintiffs explained that the failure to update this address was an error that has since been corrected. See Doc No. 26, p. 39. The Supreme Court rejected a similar listing as insufficient proof of the location of a corporation's principal place of business. See Hertz Corp. 559 U.S. at 97 ("we reject suggestions such as . . . the one made by petitioner that the mere filing of a form . . . listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). In addition, the Defendants base their argument upon FRAC's location on the social media platform, Twitter, as Washington D.C., and provided the same address as listed on the disclosure reports. See Doc.

9

No. 24, p. 34. The Twitter disclosure dates back to 2021. See Doc. No. 24-3. The Court finds this listing to be just as unavailing as the disclosure reports.

In response, the Plaintiffs have provided evidence in support of their principal place of business being in Bismarck, North Dakota. FRAC was formed in 2020. See Doc. No. 22-18, p. 3. Travis White ("White") was appointed Chief Executive Officer, with an effective date to assume office on January 1, 2021. Id. White executed a lease for FRAC's corporate headquarters in Bismarck, North Dakota effective January 21, 2021. Id. FRAC maintains its headquarters at 2021 East Main Avenue, Suite I, Bismarck, North Dakota 58501. See Doc. Nos. 22, p. 8 and 22-18, p. 5. From FRAC's corporate headquarters in Bismarck, North Dakota, White directs, controls, and coordinates all FRAC's activities, considering input from FRAC members and FRAC's Board of Directors. See Doc. Nos. 22, p. 8 and 22-18, p. 4. FRAC has used this location as a principal place of business and operated exclusively from this address since the headquarters was leased in January of 2021. See Doc. No. 22-18, p. 5. Finally, from FRAC's headquarters, White prepares and runs FRAC's annual and special board meetings and member meetings, maintains FRAC's records, coordinates and oversees the filing of FRAC's taxes, corresponds with FRAC's counsel and lobbyists on behalf of the organization, holds weekly coordination meetings, and carries out the day-to-day decision making within the FRAC. Id.

The record reveals substantial evidence FRAC's Chief Executive Officer, Travis White, lives in North Dakota and operates the business from North Dakota.  FRAC's headquarters were located in Bismarck, North Dakota at the time this lawsuit was filed and there is no significant evidence to the contrary.  Although some of FRAC's reports from 2020 listed Washington D.C. as its address, they are unpersuasive. White directs and controls the activities from Bismarck, North Dakota.  As such, the Court finds North Dakota to be the "nerve center" for FRAC and thus,

its principal place of business. In summary, FRAC is a citizen of North Dakota, where its principal place of business is located. Therefore, venue is proper in the District of North Dakota. Dismissal or transfer based upon improper venue is unwarranted.

## V.  CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, the Defendant's motion to dismiss (Doc. No. 23) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 4th day of April, 2024.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court