**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**

FIREARMS REGULATORY
ACCOUNTABILITY COALITION, INC., *and*
FRANKLIN ARMORY, INC.,

     Plaintiffs,

     v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United States,
*et al.*,

     Defendants.

_____/

Case No. 1:23-cv-00003-DLH

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

    I.    Statutory and Regulatory Framework. .......................................................1

    II.    This Litigation. ...........................................................................................2

    III.    Uncontroverted Facts Upon Which Defendants Rely in Support of Summary Judgment. ..............................................................................3

        A.    Franklin's Antithesis short-barreled rifle. ......................................3

        B.    Franklin's Reformation short-barreled shotgun. ............................4

LEGAL STANDARD ............................................................................................7

ARGUMENT .........................................................................................................7

    I.    The Court Should Grant Judgment to Defendants on Plaintiffs' Antithesis Claim ..........................................................................................7

        A.    ATF's use of objective design features to ascertain the intent of a firearm's design is legally sound. ..................................................7

        B.    ATF's classification of the Antithesis was neither arbitrary nor capricious. ........................................................................................9

        C.    Plaintiffs' contention that ATF did not supply a reasoned basis for its decision is contradicted by Franklin's own filings. ...............15

        D.    The rule of lenity does not apply. .................................................16

    II.    The Court Should Grant Judgment to Defendants on Plaintiffs' Reformation Claims. ................................................................................18

        A.    ATF's classification of the Reformation was neither arbitrary nor capricious. ......................................................................................18

            1.    The Reformation has a "smooth bore." ..............................20

            2.    ATF reasonably interpreted "fixed shotgun shell" to include a cartridge suitable for use in a shotgun, such as the Reformation. ........................................................................21

        3.      The rule of lenity does not apply. ...........................................................25

B.      Plaintiffs' GCA-only Reformation claims (Counts 3 and 4) are moot............25

C.      ATF's promulgation of authorization processes for GCA-only short-barreled shotguns is neither required by law, nor unlawfully delayed.............29

        1.      Plaintiffs are not entitled to mandamus. ..................................29

        2.      ATF did not unlawfully delay creation of GCA-only authorization processes. ..........................................................31

D.      ATF's delay in promulgating authorization procedures for GCA-only short-barreled shotguns does not constitute an arbitrary "enforcement policy." .......................................................................38

CONCLUSION.........................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACLU of Mass. v. U.S. Conf. of Catholic Bishops,*
  705 F.3d 44 (1st Cir. 2013)........................................................................................28

*Adventist Health Sys./SunBelt, Inc. v. HHS,*
  17 F.4th 793 (8th Cir. 2021).......................................................................................7

*Aetna Life Ins. Co. of Hartford v. Haworth,*
  300 U.S. 227 (1937)....................................................................................................27

*Air Wisconsin Airlines Corp. v. Hoeper,*
  571 U.S. 237 (2014)....................................................................................................20

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013)......................................................................................................26

*Am. Hosp. Ass'n v. Burwell,*
  812 F.3d 183 (D.C. Cir. 2016)..................................................................................29

*Amawi v. Paxton,*
  956 F.3d 816 (5th Cir. 2020).....................................................................................27

*Arizonans for Off. English v. Arizona,*
  520 U.S. 43 (1997)......................................................................................................26

*Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Johnson,*
  407 F. Supp. 2d 38 (D.D.C. 2005)...........................................................................37

*Bittner v. United States,*
  598 U.S. 85 (2023)......................................................................................................17

*Cargill v. Garland,*
  57 F.4th 447 (5th Cir. 2023), *cert. granted,* 144 S. Ct. 374 (2023) .........................25

*Chapman v. United States,*
  500 U.S. 453 (1991)....................................................................................................16

*Chowdhury v. Blinken,*
  Case No. 1:21-cv-1205-RCL, 2022 WL 136795 (D.D.C. Jan. 14, 2022)...............37

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992)........................................................................................................26

*Ctr. for Biological Diversity v. Kempthorne,*
  498 F. Supp. 2d 293 (D.D.C. 2007) ........................................................................26

*Ctr. for Sci. in the Pub. Interest v. FDA,*
  74 F. Supp. 3d 295 (D.D.C. 2014) ................................................................... 32, 37

*Dep't of Com. v. New York,*
  139 S. Ct. 2551 (2019) ...........................................................................................19

*Dep't of State v. Ray,*
  502 U.S. 164 (1991) ................................................................................................37

*Donnell v. United States,*
  765 F.3d 817 (8th Cir. 2014) ..................................................................................16

*FAA v. Cooper,*
  566 U.S. 284 (2012) ................................................................................................20

*Falk v. U.S. ex rel. Dep't of Interior,*
  452 F.3d 951 (8th Cir. 2006) ....................................................................................7

*Fla. Power & Light Co. v. Lorion,*
  470 U.S. 729 (1985) ............................................................................................3, 27

*FRAC v. Garland,*
  No. 1:23-CV-024, 2023 WL 5942365 (D.N.D. Sept. 12, 2023), *appeal filed*, No. 23-3230
  (8th Cir. Oct. 6, 2023) ....................................................................................... 16, 17

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992) ................................................................................................39

*Freedom Ordnance Mfg., Inc. v. Brandon,*
  No. 3:16-cv-243, 2018 WL 7142127 (S.D. Ind. Mar. 27, 2018) ..............................7

*FTC v. Standard Oil of Cal.,*
  449 U.S. 232 (1980) ................................................................................................40

*Grace Healthcare of Benton v. HHS,*
  603 F.3d 412 (8th Cir. 2009) ....................................................................................9

*Gun Owners of Am., Inc. v. Garland,*
  19 F.4th 890 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 83 (2022) ............................9

*Gutierrez v. DHS,*
  No. 18-1958, 2019 WL 6219936 (D.D.C. Nov. 21, 2019) .....................................28

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ...................................................................................................33

*Hi-Tech Pharmacal Co. v. FDA,*
    587 F. Supp. 2d 1 (D.D.C. 2008) ...............................................................................31

*Honig v. Doe,*
    484 U.S. 305 (1988) ...................................................................................................26

*Hyatt v. U.S. Patent & Trademark Off.,*
    146 F. Supp. 3d 771 (E.D. Va. 2015) .........................................................................38

*In re Barr Labs., Inc.,*
    930 F.2d 72 (D.C. Cir. 1991) ................................................................... 35, 36, 37, 38

*In re Core Commc'ns, Inc.,*
    531 F.3d 849 (D.C. Cir. 2008) ...................................................................................32

*Indep. Mining Co. v. Babbitt,*
    105 F.3d 502 (9th Cir. 1997) .....................................................................................38

*Iowa Prot. & Advocacy Servs. v. Tanager, Inc.,*
    427 F.3d 541 (8th Cir. 2005) .....................................................................................28

*Irshad v. Johnson,*
    754 F.3d 604 (8th Cir. 2014) ...............................................................................32, 34

*Kleppe v. Sierra Club,*
    427 U.S. 390 (1976) .................................................................................................9, 10

*Long Term Care Pharmacy All. v. Leavitt,*
    530 F. Supp. 2d 173 (D.D.C. 2008) ...........................................................................32

*Maine Cmty. Health Options v. United States,*
    570 U.S. 296 (2020) ...................................................................................................23

*Marsh v. Or. Nat. Res. Council,*
    490 U.S. 360 (1989) .................................................................................................9, 10

*Martin v. Hadix,*
    527 U.S. 343 (1999) ...................................................................................................25

*Mashpee Wampanoag Tribal Council, Inc. v. Norton,*
    336 F.3d 1094 (D.C. Cir. 2003) ...........................................................................33, 36

*Mellouli v. Lynch,*
    575 U.S. 798 (2015) ...................................................................................................23

*Mexichem Specialty Resins, Inc. v. EPA,*
   787 F.3d 544 (D.C. Cir. 2015) ......................................................................................33

*Missouri ex rel. Nixon v. Craig,*
   163 F.3d 482 (8th Cir. 1998) .................................................................................. 26, 27

*Mod. Muzzleloading, Inc. v. Magaw,*
   18 F. Supp. 2d 29 (D.D.C. 1998) ......................................................................7, 17, 19, 24

*Muscarello v. United States,*
   524 U.S. 125 (1998) ..................................................................................................16

*Nat'l Ass'n of Home Builders v. Norton,*
   415 F.3d 8 (D.C. Cir. 2005) .......................................................................................38

*Noem v. Haaland,*
   542 F. Supp. 3d 898 (D.S.D. 2021), *appeal dismissed,* 41 F.4th 1013 (8th Cir. 2022)...........................16

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) ....................................................................................... 29, 30, 31, 39

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ..................................................................................................27

*Oil, Chem., & Atomic Workers Union v. OSHA,*
   145 F.3d 120 (3d Cir. 1998) .......................................................................................34

*Org. for Competitive Mkts. v. U.S. Dep't of Agric.,*
   912 F.3d 455 (8th Cir. 2018) ...............................................................................*passim*

*Orlov v. Howard,*
   523 F. Supp. 2d 30 (D.D.C. 2007) ...............................................................................31

*Pension Benefit Guar. Corp. v. LTV Corp.,*
   496 U.S. 633 (1990) ..................................................................................................25

*Prima Expl., Inc v. LaCounte,*
   No. 1:22-CV-143, 2023 WL 7019928 (D.N.D. Oct. 25, 2023), *appeal filed*, No. 23-3694
   (8th Cir. Dec. 15, 2023) ...................................................................................... 30, 31

*Prowse v. Payne,*
   984 F.3d 700 (8th Cir. 2021) ......................................................................................28

*Public Citizen v. U.S. Trade Representative,*
   5 F.3d 549 (D.C. Cir. 1993) .......................................................................................39

*Regions Hosp. v. Shalala,*
   522 U.S. 448 (1998) ...................................................................................22

*Roberts v. Sea-Land Services, Inc.,*
   566 U.S. 93 (2012) ....................................................................................20

*Sierra Club v. Thomas,*
   828 F.2d 783 (D.C. Cir. 1987) ............................................................ 32, 33

*Sig Sauer, Inc. v. Brandon,*
   826 F.3d 598 (1st Cir. 2016) ..............................................................*passim*

*Sig Sauer, Inc. v. Jones,*
   133 F. Supp. 3d 364 (D.N.H. 2015), *aff'd sub nom.* 826 F.3d 598 (1st Cir. 2016) ..............................13

*Sisseton-Wahpeton Oyate v. U.S. Corps of Eng'rs,*
   888 F.3d 906 (8th Cir. 2018) .....................................................................40

*South Dakota v. Hazen,*
   914 F.2d 147 (8th Cir.1990) ................................................................ 26, 27

*Staples v. United States,*
   511 U.S. 600 (1994) .................................................................... 17, 22, 35

*Sturgeon v. Frost,*
   577 U.S. 424 (2016) ....................................................................................20

*Teague v. Cooper,*
   720 F.3d 973 (8th Cir. 2013) ......................................................................28

*Telecommunications Research & Action Center v. FCC,*
   750 F.2d 70 (D.C. Cir. 1984) .............................................................*passim*

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
   578 U.S. 590 (2016) ....................................................................................39

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
   513 U.S. 18 (1994) ......................................................................................26

*United States v. Chem. Found.,*
   272 U.S. 1 (1926) ........................................................................................37

*United States v. Davis,*
   139 S. Ct. 2319 (2019) ................................................................................16

*United States v. Jackson,*
   124 F.3d 607 (4th Cir. 1997) ......................................................................21

*United States v. Janik*,
723 F.2d 537 (7th Cir. 1983) ................................................................................21

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010), *abrogated on other grounds*, *Frein v. Pennsylvania State Police*,
47 F.4th 247, 253 (3d Cir. 2022) ..........................................................................22

*United States v. Mitchell*,
445 U.S. 535 (1980) ..............................................................................................38

*United States v. Sherwood*,
312 U.S. 584 (1941) ..............................................................................................38

*United States v. Siciliano*,
578 F.3d 61 (1st Cir. 2009) ......................................................................................8

*United States v. Spinner*,
152 F.3d 950 (D.C. Cir. 1998) ..............................................................................21

*United States v. Syverson*,
90 F.3d 227 (7th Cir. 1996) .............................................................................. 9, 14

*United States v. Thompson/Ctr. Arms Co.*,
504 U.S. 505 (1992) ..............................................................................................10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) ..........................................................................................8, 17

*Washington v. Davis*,
426 U.S. 229 (1976) ................................................................................................8

*Wilbur v. U.S. ex rel. Kadrie*,
281 U.S. 206 (1930) ..............................................................................................30

## STATUTES

5 U.S.C. § 555 ........................................................................................................31

5 U.S.C. § 702 ........................................................................................................38

5 U.S.C. § 704 ........................................................................................................38

5 U.S.C. § 706 ..................................................................................................*passim*

18 U.S.C. § 921 ................................................................................................*passim*

18 U.S.C. § 922 ................................................................................................*passim*

18 U.S.C. § 923 ........................................................................................................................1

18 U.S.C. § 926 ...........................................................................................................5, 23, 34

26 U.S.C. § 5801 ......................................................................................................................1

26 U.S.C. § 5811 ......................................................................................................................2

26 U.S.C. § 5821 ......................................................................................................................2

26 U.S.C. § 5822 ......................................................................................................................2

26 U.S.C. § 5841 ......................................................................................................................2

26 U.S.C. § 5842 ......................................................................................................................2

26 U.S.C. § 5845 ...............................................................................................................*passim*

28 U.S.C. § 599A ......................................................................................................................2

Consolidated and Further Continuing Appropriations Act, 2012,
  Pub. L. No. 112-55, 125 Stat. 609 (November 18, 2011) ...................................................23

## LEGISLATIVE MATERIALS

H.R. Rep. No. 83-1337 (1954) ...............................................................................................22

H.R. Rep. No. 90-1577 (1967) ..................................................................................30, 32, 35

S. Rep. No. 90-1501 (1967) ......................................................................................30, 32, 35

## REGULATIONS

27 C.F.R. § 478.28.............................................................................................................30, 33

27 C.F.R. § 478.92...............................................................................................................2, 17

27 C.F.R. § 478.98................................................................................................................... 33

28 C.F.R. § 0.130......................................................................................................................2

Definition of "Frame or Receiver" and Identification of Firearms,
  87 Fed. Reg. 24,652 (Apr. 26, 2022) ................................................................................36

Factoring Criteria for Firearms with Attached "Stabilizing Braces",
  88 Fed. Reg. 6478 (Jan. 31, 2023) ....................................................................................37

**OTHER AUTHORITIES**

*Smoothbore*, Merriam-Webster Online Dictionary,
    https://perma.cc/G4KH-UNUQ ........................................................................................21

NFA Handbook § 7.2.4 (revised 2009),
    https://perma.cc/DE74-3YZF ................................................................................. 2, 6, 17

*Smooth-bore*, Oxford English Dictionary Online,
    https://www.oed.com/dictionary/smooth-bore_n?tab=meaning_and_use#22092059 ......... 20, 21

## INTRODUCTION

By this action, Plaintiffs Franklin Armory ("Franklin") and Firearms Regulatory Accountability Coalition ("FRAC") ask the Court to set aside Defendants' classifications of two firearms—the FAI-15 Antithesis short-barreled rifle ("Antithesis") and the Reformation short-barreled shotgun ("Reformation")—under the National Firearms Act ("NFA") and the Gun Control Act ("GCA"), as arbitrary and capricious. Plaintiffs' claims fail because Defendants' classifications were reasonable and reasonably explained. That is all that the Administrative Procedure Act ("APA") requires, and the Court should accordingly grant summary judgment to Defendants on Plaintiffs' classification claims.

Unsatisfied with Defendants' amended classification of the Reformation firearm in particular, Plaintiffs also seek the extraordinary—and in this context, unwarranted—remedy of mandamus, demanding that the Court compel Defendants to create processes enabling Franklin to seek authorization to sell, deliver, or transport GCA-only short-barreled shotguns, and challenging the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF") alleged delay in creating those processes as a *de facto* arbitrary and capricious "enforcement policy." The Court should grant judgment to Defendants on each of these claims as well because Plaintiffs' claims regarding authorization process for GCA-only short-barreled shotguns are moot following reclassification of the Reformation (and, in any event, fail to challenge a discrete final agency action), and because the GCA-only authorization processes Plaintiffs seek are neither required by law nor unlawfully delayed.

## BACKGROUND

## I.    Statutory and Regulatory Framework.

The NFA and GCA comprise the relevant federal framework governing the commercial firearms market. The GCA, 18 U.S.C. § 921 *et seq.*, requires anyone who deals in GCA-covered firearms to obtain a federal firearms license before "importing, manufacturing, or dealing in firearms," and establishes rules that licensees must follow. *Id.* §§ 922, 923.  The NFA, 26 U.S.C. § 5801 *et seq.*, subjects

a narrower category of "firearms" to various taxes and regulatory requirements, including that firearms covered by the NFA be registered with ATF. *Id.* §§ 5811, 5821, 5822, 5841, 5842. "Firearms" subject to both the GCA and NFA include short-barreled rifles like the Antithesis, *see* 18 U.S.C. §§ 921(a)(7)-(8) (GCA); 26 U.S.C. §§ 5845(a)(3)-(4), 5845(c) (NFA), and short-barreled shotguns like the Reformation, *see* 18 U.S.C. §§ 921(a)(5)-(6) (GCA); 26 U.S.C. §§ 5845(a)(1)-(2), 5845(d) (NFA).

Under 28 C.F.R. §§ 0.130(a)(1)-(3) and 28 U.S.C. § 599A, the Director of ATF is authorized to enforce the provisions of the GCA and NFA at issue in this case. Pursuant to that authority, ATF encourages—but does not require—firearms manufacturers or makers to seek classification letters from ATF prior to manufacturing or making a firearm, by submitting a firearm sample for evaluation by the agency's Firearms Technology Industry Services Branch ("FTISB"). *See* 27 C.F.R. § 478.92(c); *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016) (describing the classification process); NFA Handbook § 7.2.4 (rev. 2009), https://perma.cc/DE74-3YZF. A classification sets forth "the agency's official position concerning the status of the firearms under Federal firearms laws." *Id.* § 7.2.4.1.

## II.   This Litigation.

In their Amended Complaint, ECF No. 22 ("Am. Compl."), Plaintiffs challenge ATF's classification of the Antithesis and the Reformation under the GCA and NFA and challenge the lack of a process by which to seek authorization to sell, deliver, or transfer hypothetical GCA-only short-barreled shotguns as unlawfully delayed and as constituting a *de facto* arbitrary and capricious "enforcement policy." *See* Am. Compl. ¶¶ 285-328. On June 26, 2023, Defendants filed a motion to dismiss or transfer, in response to which Plaintiffs filed a pre-answer motion for summary judgment, which Defendants moved to stay. ECF Nos. 23-27. Following denial of their motion to dismiss or transfer on April 4, 2024, and motion to stay on April 16, 2024, ECF Nos. 36-37, Defendants filed an Answer to Plaintiffs' Amended Complaint. ECF No. 40. Defendants now submit this motion for summary judgment, along with the certified administrative record ("AR").

III.     **Uncontroverted Facts Upon Which Defendants Rely in Support of Summary Judgment.**

Because this action is brought under the APA, judicial review is limited by statute to the administrative record presented by ATF, which contains the materials relied upon by the agency in reaching its decisions. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Defendants provide the following summary of key material facts from the record to assist the Court with its adjudication.

A.     **Franklin's Antithesis short-barreled rifle.**

On March 9, 2020, Franklin submitted its Antithesis firearm to ATF for classification. AR 134-138. ATF's subsequent classification decision, dated December 23, 2021, found that:

> The submitted [Antithesis] sample is of similar design and appearance to that of a standard AR-type rifle. However, the [Antithesis] sample utilizes [a] short-stroke piston gas-operation with a cylindrical piston surrounding the barrel. The overall length of the submitted [] sample is approximately 33 inches. The sample is equipped with a multiple position shoulder stock. The submitted sample's barrel is approximately 14.5 inches in length. The barrel extension and the barrel breech are fit and chambered to accept the .45 Colt and .410 Bore cartridges. The bore of the sample's barrel is approximately 0.443 inch in diameter. The bore is rifled with six lands and grooves in a right twist with a major diameter of approximately 0.454 inch. The rifling present in the bore of the submitted sample is of sufficient depth and twist to impart spin to a projectile.

AR 147. After expert "testing and evaluation" by FTISB, ATF explained that the Antithesis constituted a "'short-barreled rifle' under 18 U.S.C. § 921(a)(8) and a 'firearm' as defined under [both the GCA and NFA,] 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(a)(3)." AR 145, 149. In support of this conclusion, ATF further observed that "rifling is an objective design feature specific to firearms. Rifling is an objective feature explicitly designed to impart spin on a single projectile around its longitudinal axis. This spinning of a projectile stabilizes the projectile and improves its aerodynamic stability and accuracy." AR 148. Likewise, ATF explained that "a rifled bore is disadvantageous as an objective design feature when using shot ammunition, as the twist of the shot column traveling down the bore will spread the shot pattern. This is the reason that a smooth bore is traditionally used for this purpose." *Id.* Finally, ATF considered the fact that for any given diameter of firearm barrel (including for the 0.443 inch diameter barrel found on the Antithesis), there often exists ammunition

commercially available of the same caliber in both single or multiple projectile varieties, meaning that

a rifle designed, made, and intended to fire only a single projectile through its rifled barrel will regularly

be capable of firing alternative multiple-projectile ammunition, despite its status as a rifle. *See* AR 123.

      **B.**    **Franklin's Reformation short-barreled shotgun.**

On March 13, 2018, Franklin submitted the Reformation in the form of three sample weapons

to ATF for classification. AR 22.[1]  ATF's initial Reformation classification decision, dated November

13, 2018, explained that the Reformation constituted "a 'firearm' under the [GCA], 18 U.S.C. §

92l(a)(3), a 'shotgun' under 18 U.S.C. § 92l(a)(5), and a 'short barreled shotgun' under 18 U.S.C. §

92l(a)(6)."  AR 70-72.  Notably, ATF found that all of the "Reformation" samples possessed a

"shoulder stock," and a "[b]arrel [with] straight lands and grooves (smooth bore barrel)," of "16- 5/16

inches" or shorter, chambered for ".300 BLK" ammunition. *Id.* ATF's testing of the Reformation

supported its determination that the firearm possessed a smooth bore barrel, as ATF explained that

through testing, "it was clear that the rounds did not spin upon leaving the barrel, as they would

tumble within several yards of exiting the barrel and strike the target sideways creating a 'keyhole'

profile on the target. This was further evidence that the lands and grooves are not 'rifling.'" AR 68.

ATF further observed, consistent with longstanding interpretation, that "smooth bore" is a term of

art meaning "having a barrel with an unrifled bore," such that "[i]n the context of firearms—the

relevant context in this case—'smooth' means only 'unrifled.'" AR 68-69. "Therefore, under Federal

law, barrels having straight lands and grooves used to fire rifle ammunition are categorized as smooth

bore barrels because the barrels lack functional rifling to impart a stabilizing rotation to a projectile."

*Id.* ATF did not initially determine whether the Reformation was a "firearm" under the NFA. AR 74.

Given this initial classification, ATF informed Franklin "that information listed on [its]

website regarding the transfer and interstate transport of [the] Reformation firearm do not accurately

---

[1] Franklin's submission also included a fourth sample, classified as an "Any Other Weapon" under the NFA. 26 U.S.C. § 5845(e). That classification is not at issue here. *See* Am. Compl. ¶ 174 n. 12.

reflect the provisions required for the transfer and interstate transport of a short-barreled shotgun as required under 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 922(b)(4)." AR 106. Because ATF initially determined that the Reformation was a short-barreled shotgun under the GCA but not the NFA, and because "[o]ther than the Reformation firearms now produced by [Franklin], ATF is unaware of any other firearm manufacturer having produced or sold a [GCA-only short-barreled shotgun]," ATF warned Franklin that "existing federal firearm regulations do not provide a mechanism to process requests [for transport or transfer] regarding [such firearms] submitted pursuant to Sections 922(a)(4) or (b)(4)." AR 107. Relatedly, ATF issued an Open Letter on December 19, 2019, stating that it was "developing the procedures and forms to address this new type of firearm. Once promulgated, these new procedures and forms will provide the mechanisms necessary for FFL holders and owners of [Reformation] firearms to request the statutorily required approvals." AR 115.

Throughout the first half of 2020, ATF explored creating transport and transfer authorization processes for GCA-only short-barreled shotguns. *See* Declaration of Andrew R. Lange ("Lange Decl.") ¶¶ 4, 20; AR 222-25. However, it soon became apparent that the creation of procedures for transport and transfer of GCA-only short-barreled shotguns was problematic on a number of grounds. Specifically, ATF's efforts exposed the fact that creating such GCA-only authorization processes would necessitate creating a new set of searchable forms (in tension with 18 U.S.C. § 926(a)), and generated additional concerns relating to background check requirements, ATF's authority to interpret state law as necessary, the standard for "consistent with public safety and necessity," and the requirement—if any—for an appeals process. *See* Lange Decl. ¶¶ 21-27; AR 216-21.

Due to concerns about the correctness of the initial classification (and the resulting concerns regarding creation of authorization procedures for transport or transfer of GCA-only short-barreled shotguns as described above), ATF amended its classification of the Reformation on May 5, 2023, marking the culmination of a deliberative process that Defendants cautioned was ongoing at the time

Plaintiffs' Complaint was filed. *See* Defs.' Mot. Dismiss or Transfer at 3 n.1, ECF No. 9 (stating that ATF "expect[ed] to reach a decision as to the Reformation within 45 to 60 days."). In its amended classification letter, ATF explained that it had now determined that the Reformation is correctly classified as both a short-barreled shotgun under the GCA, and a firearm under the NFA. *See* AR 151-59; NFA Handbook, § 7.2.4.1, https://perma.cc/DE74-3YZF ("classifications are subject to change if later determined to be erroneous . . .").

In support of that determination, ATF observed that Congress opted not to define the term "fixed shotgun shell" (or "fixed cartridge") in the NFA, and ATF therefore relied in part on the National Rifle Association Institute for Legislative Action ("NRA-ILA") Glossary of Terms to give those terms their ordinary meaning. *See* AR 155 (defining "shotshell" as "[t]he *cartridge* for a shotgun. It is also called a 'shell,' and its body mass may be of metal or plastic or of plastic or paper with a metal head."). Thus, ATF observed that "Congress used the term 'fixed shotgun shell' merely as shorthand for the expulsion of projectiles (whether in the form of multiple metallic shot or a single projectile) from a smooth bore weapon" like the Reformation, which "is consistent with the focus of the statutory structure on the design" of the firearm, "rather than the qualities of the projectile that firearm expels." AR 156. ATF found that there was no evidence to suggest that Congress intended to or did completely exempt from regulation under the NFA a weapon with a smooth bore, fired from the shoulder, with a barrel less than 18 inches long, firing a single projectile, simply because that projectile was ejected from a "cartridge" rather than a "shell," where those terms are "readily interchangeable." AR 155.

As Plaintiffs admit, authorization processes allowing for the sale, transport, and delivery of weapons classified as firearms under both the NFA and GCA—like the Reformation—are available to manufacturers including Franklin, because the requirements of 18 U.S.C. § 922(a)(4) and § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by completion and approval of ATF Form 5320.4 ("Form 4") and ATF Form 5320.20. *See* Am. Compl. ¶ 22; Lange Decl. ¶ 15.

**LEGAL STANDARD**

In reviewing ATF's actions under the APA, the Court may only "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Falk v. U.S. ex rel. Dep't of Interior*, 452 F.3d 951, 953 (8th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). "Arbitrary and capricious is a highly deferential standard of review. We defer to agency action so long as 'an agency examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Adventist Health Sys./SunBelt, Inc. v. HHS*, 17 F.4th 793, 803 (8th Cir. 2021) (quoting *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018)). *See also Freedom Ordnance Mfg., Inc. v. Brandon*, No. 3:16-cv-243, 2018 WL 7142127, at *7 (S.D. Ind. Mar. 27, 2018) ("[T]he court is tasked with reviewing what [ATF] actually did as opposed to what it could have done."); *Mod. Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 37 (D.D.C. 1998) ("[ATF] does not bear the burden of convincing the Court that its position is better … it merely need convince the Court that the decision was not arbitrary and capricious.").

**ARGUMENT**

**I.    The Court Should Grant Judgment to Defendants on Plaintiffs' Antithesis Claim.**

Plaintiffs dispute several aspects of ATF's classification of the Antithesis as a "short-barreled rifle" under the GCA and a "firearm" under the NFA, contending that ATF's decision was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). As discussed below, ATF conducted a thorough examination of the Antithesis, and offered a reasoned explanation for its decision based on the objective design features of Franklin's firearm that did not run counter to the evidence before it. This is all that is required. Because ATF's classification decision was a reasonable one in light of the record before it and was adequately explained, the Court should grant judgment to Defendants as to the Antithesis.

**A.    ATF's use of objective design features to ascertain the intent of a firearm's design is legally sound.**

ATF's classification of the Antithesis was rational and based on the weapon's objective design

features, which ATF permissibly considered to ascertain the intent of the firearm's design in accordance with law. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 501 (1982) (government properly examined "objective features" to ascertain an object's "designed for use").

*Sig Sauer, Inc. v. Brandon* is instructive of this methodology. In *Sig Sauer*, ATF classified firearm manufacturer Sig Sauer's "monolithic baffle core" as a silencer under the NFA. Sig Sauer sued under the APA, alleging that the silencer served a dual purpose as a muzzle brake (a device used to reduce recoil by allowing some of the kinetic energy of a firearm's discharge, in the form of compressed gas, to escape out of the attachment). 826 F.3d at 601. Sig Sauer pointed to the NFA definition of a silencer which defines a silencer as a part "intended only for use" in "assembling or fabricating a firearm silencer or firearm muffler." *Id.* at 599 (quoting 18 U.S.C. § 921(a)(24)). Sig Sauer argued ATF erroneously classified the part as a silencer merely because it was "capable of use" in assembling or fabricating a silencer. Thus, Sig Sauer argued, ATF failed to evaluate whether the part was "intended *only* for use" in "assembling or fabricating a silencer." Sig Sauer based its argument on ATF's examination of the part's objective design features and capabilities. All parties agreed the silencer could serve a dual purpose, but ATF argued this second purpose—as a muzzle brake—was merely incidental to the part's objective design features, and therefore the product was intended "only for use" in "assembling or fabricating a silencer." *Id.* at 601. Thus, ATF argued it could review the part's objective design features, not merely a designer's stated intent or a part's incidental capabilities, to determine whether a part was "intended only for use" in a particular fashion. The court adopted ATF's reasoning, holding that consideration of objective design features—as ATF has done here—was legally sound:

> ATF persuasively explained in its classification letter that it examines a part's design features—and thus the uses of which a part is capable—as part of the inquiry into whether a part is intended to be used only in assembling or fabricating a silencer. Such an objective approach to ferreting out a party's intent is a very familiar one in the law. *See, e.g., United States v. Siciliano*, 578 F.3d 61, 77 (1st Cir. 2009) (noting that objective evidence is useful to "buttress or rebut direct testimony as to intent"); *cf. Washington v. Davis*, 426 U.S. 229, 253 (1976) (Stevens, J., concurring) ("Frequently the most probative evidence of intent will be objective evidence of what actually happened

rather than evidence describing the subjective state of mind of the actor.") . . . . Nor do we have any reason to suppose it is an approach that the NFA prohibits. In fact, it is hard to believe that Congress intended to invite manufacturers to evade the NFA's carefully constructed regulatory regime simply by asserting an intended use for a part that objective evidence in the record—such as a part's design features—indicates is not actually an intended one. *See United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996) (holding that a device was "intended only for use" in assembling or fabricating a silencer notwithstanding designer's stated intention that it be used as a muzzle brake).

*Sig Sauer, Inc.*, 826 F.3d at 601-02.

Additionally, the court deferred to ATF's interpretation of the objective evidence before it as "within [ATF's] special competence." *Id.* at 603 (citations omitted). As the court recognized, deference to ATF's interpretation of this evidence is especially warranted in firearm classification cases such as this one given that proper evaluation of the evidence "requires a high level of technical expertise." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377 (1989) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)). The Court should provide the same deference to ATF's expertise here. *See, e.g., Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 908 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 83 (2022) (recognizing that "ATF unquestionably has abundant experience and expertise" in classifying firearms).

**B.  ATF's classification of the Antithesis was neither arbitrary nor capricious.**

Plaintiffs argue that ATF's classification was arbitrary and capricious because ATF allegedly failed to consider seven pieces of information in its classification decision. *See* Am. Compl. ¶ 289. But the objective design features of the Antithesis and the intent of its design indicate it is a short-barreled rifle under the GCA and a firearm under the NFA. As the administrative record demonstrates, ATF "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Grace Healthcare of Benton v. HHS*, 603 F.3d 412, 422 (8th Cir. 2009).

Much like *Sig Sauer*, this case rests upon a firearm's objective design features and whether that device was only intended for one use. In *Sig Sauer*, that one use was the "assembling or fabricating of a silencer." 826 F.3d 598. Here, that use is to fire a "single projectile." Similarly, the devices in each case also possess dual, incidental uses. And here too, given ATF's expertise in classification and that

proper evaluation of this evidence "requires a high level of technical expertise," *Marsh*, 490 U.S. at 377

(quoting *Kleppe*, 427 U.S. at 412), deference to ATF's interpretation of the evidence is warranted.

As relevant here, the GCA defines the term "rifle" as a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger," and defines a "short-barreled rifle" as a "rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle … if such weapon, as modified, has an overall length of less than twenty-six inches." 18 U.S.C. §§ 921(a)(7)-(8). For purposes of the Antithesis, a weapon is a "firearm" under the NFA if it is "a rifle having a barrel or barrels of less than 16 inches in length," 26 U.S.C. § 5845(a)(3), with "rifle," further defined by the NFA as a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge." 26 U.S.C. § 5845(c). *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality op.) ("[The NFA's] regulation of short-barreled rifles" targets "a concealable weapon" "likely to be used for criminal purposes").

It is undisputed that the Antithesis is a weapon designed to expel a projectile by action of an explosive, designed and intended to be fired from the shoulder, and that it possesses a rifled barrel less than 16 inches long. Because those undisputed objective design features—including in particular the rifled bore—indicate that the Antithesis was designed and intended to fire only a single projectile for each pull of the trigger, ATF reasonably determined that any capability to also fire multiple-projectile ammunition was merely incidental to the Antithesis' objective design. AR 123, 148 (finding that "a rifled bore is disadvantageous as an objective design feature when using shot ammunition, as the twist of the shot column traveling down the bore will spread the shot pattern. . . . a rifled bore is

10

an objective design feature designed and made to fire only a single projectile.") Accordingly, ATF's decision to classify the Antithesis as a "'short-barreled rifle' under 18 U.S.C. § 921(a)(8) and a 'firearm' as defined under [both the GCA and NFA,]" was neither arbitrary nor capricious. AR 123, 145, 149.

Resisting ATF's conclusion, Plaintiffs first argue that ATF's classification ran counter to the evidence before it because ATF allegedly failed to consider the fact that projectile stabilization is not necessary in "comparatively short-range engagements." Am. Compl. ¶ 137. This argument refers to how shotgun ammunition is used for shorter-range targets and barrel rifling is used to stabilize projectiles for longer-range targets. Thus, Plaintiffs argue, the rifled barrel of the Antithesis does not *per se* prove the firearm is designed and intended only to fire a single projectile because shot does not need a rifled barrel for projectile stabilization at short-range. *See* AR 135. Strikingly, this argument seems to favor the contrary conclusion. Indeed, Defendants agree that "[a] rifled bore does not stabilize shot and, in fact, serves no function with that ammunition." AR 123. In other words, it is *incidental* that the Antithesis can fire shot, just as it was incidental that the silencer at issue in *Sig Sauer* could reduce recoil. *See* 826 F.3d at 601-02. Though the part's design to function as a silencer did not negate its dual use as a muzzle brake in *Sig Sauer*, that secondary use was merely *incidental* to the part's overall design as determined by its objective design features. *Id.* The same can be said of the Antithesis. Although the barrel's rifling does not negate the firearm's dual use with shotgun ammunition, the objective design features of the firearm—particularly the rifling of its barrel—indicate the firearm is designed to fire only a single projectile through a rifled bore and that any dual use is *incidental* because barrel rifling serves no practical purpose with shotgun ammunition, as Plaintiffs admit. Am. Compl. ¶ 137. ATF carefully considered the Antithesis' objective design features to discern the manufacturer's intent in its classification decision. The lack of any practical purpose between the rifled barrel and shot ammunition was one such objective design feature appropriately considered. *See* AR 123, 148.

Second, Plaintiffs argue a rifled barrel is useful in narrow circumstances, and that this narrow

11

possible alternative utility shows the Antithesis is designed and intended to fire both shot and rifle ammunition. *See* Am. Compl. ¶ 138 ("ATF did not acknowledge or discuss the fact that rapidly spreading the shot pattern *enhances* a weapon's utility in certain contexts, such as close-range shots at gamebirds."). As a threshold matter, this argument fails because Plaintiffs have provided no evidence of increased utility in circumstances such as the one alleged, nor have Plaintiffs provided any evidence of the frequency at which such alleged circumstances occur while hunting that would make the Antithesis particularly advantageous. But even accepting Plaintiffs' unsupported premise, *arguendo*, merely because a certain design is advantageous in some narrow circumstances does not make that design overall advantageous. Plaintiffs themselves note the particularity of that circumstance: that it may be useful in "*certain* hunting situations such as *unexpected* close range turkey hunting shots or close shots in the thick cover at fast fleeing gamebirds." AR 142 (emphasis added). Indeed, such a design may still be disadvantageous generally, as is the case here. And ATF adequately explained this finding in its classification letter, where it referenced traditional shotguns which all possess non-rifled barrels:

> While a weapon with a rifled bore that also fires shotshells may provide a commercial advantage, a rifled bore is disadvantageous as an objective design feature when using shot ammunition, as the twist of the shot column traveling down the bore will spread the shot pattern. This is the reason that a smooth bore is traditionally used for this purpose.

AR 148. The widespread and essentially exclusive use of smooth bores in shotguns supports ATF's conclusion that a rifled barrel is disadvantageous when used with shot. *See* AR 161 ("a rifle could not be used with bird shot, for the spiral grooves would of course scatter the pellets in a whirling maelstrom."). Indeed, the court accepted a similar argument in *Sig Sauer*, where ATF examined whether pistols were commonly sold with muzzle brakes—they are not—and thus concluded that any advantage muzzle brakes would supply to a pistol were merely incidental. 826 F.3d at 605. The same is true here. Therefore, contrary to Plaintiffs' assertion, ATF indeed considered this issue and rationally explained that the hypothetical benefits of spread shot favored ATF's classification. *See* AR 148.

The third and fourth elements Plaintiffs allege that ATF failed to consider are related. Plaintiffs

argue both that ATF did not discuss its results firing shot from the Antithesis, and that ATF did not acknowledge or discuss Franklin's own results firing shot. *See* Am. Compl. ¶¶ 141-42. But as ATF explained, the fact that the Antithesis *can* fire shot and rifle ammunition does not mean that the Antithesis was *designed and intended* to fire both shot and rifle ammunition. ATF has long held that a firearm's classification does not change simply because shotgun ammunition could be fired from a rifled bore. AR 169-70. As noted in *Sig Sauer*, ATF "examines a part's design features—and thus the uses of which a part is capable—as part of the inquiry into whether a part is intended to be used" for a specific purpose. 826 F.3d at 601. The Antithesis shares an objective design feature common in *all* rifles: its rifled barrel. That same feature is not present in shotguns. Though Plaintiffs may argue the Antithesis' ability to fire shot is an ability that is common in shotguns but not rifles, that ability is not an objective design feature but a function. Just as the part in *Sig Sauer* could *function* as a muzzle brake, it also possessed design features of a silencer that served no other purpose than to be used in a silencer to diminish the report of a portable firearm. Here, merely because the Antithesis can *function* as a shotgun, does not mean it possesses the objective design *features* of a shotgun. *See Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 371 (D.N.H. 2015) ("[Sig Sauer's] baffle core is a heavy part that probably could function as a doorstop, but that does not mean that it is intended to serve that purpose"), *aff'd sub nom.* 826 F.3d 598.[2]  The Antithesis' rifled barrel design is not a matter of serendipity—it is compelling evidence that the Antithesis was "designed, made, and intended" to fire only a single projectile, as ATF explained in its classification decision. *See* AR 147-49.

  Although similarly unsupported by record evidence, Plaintiffs' fifth and sixth grounds for

---

[2] Like Plaintiffs here, Sig Sauer also argued that ATF failed to account for testing data.  *See Sig Sauer*, 133 F. Supp. 3d at 371 n.12. The district court found that "ATF met this contention by noting that whether a silencer part reduces the sound of a firearm discharge by itself is not determinative of whether it can be classified as a silencer," *id.*, just as ATF here explained that "[w]hile any bore, including a rifled bore, may be *capable* of expelling multiple projectile ammunition, not all bores are *designed* to expel multiple projectile ammunition" for purposes of classification. AR 148.

dispute are again related, as both concern Franklin's stated intent. Plaintiffs argue that ATF failed to explain how Franklin's stated intent that the Antithesis was designed to fire shotshells factored into its analysis, and that ATF did not discuss the inscription of ".410/.45LC" on the weapon. Am. Compl. ¶¶ 146, 149. As noted above, ATF examines objective design features, such as a firearm's structure and build materials, to ascertain whether a firearm is designed and intended to fire only a single projectile. While ATF considers a manufacturer's stated intent, it is neither objective nor a design feature. Even the inscription on the side of the Antithesis is not so much a design feature but a marketing tool. And as courts have recognized, if stated intent could override a firearm's objective design features as Plaintiffs suggest, the NFA and GCA would be easily circumvented. *See Sig Sauer, Inc.*, 826 F.3d at 602 ("it is hard to believe that Congress intended to invite manufacturers to evade the NFA's carefully constructed regulatory regime simply by asserting an intended use for a part that objective evidence in the record—such as a part's design features—indicates is not actually an intended one."); *Syverson*, 90 F.3d at 232; AR 148 ("Classifications made without reference to the actual design of the firearm would create an absurd result: Federal regulation of only those firearms that the manufacturer wanted to market as such, while leaving other firearms completely unregulated."). While Franklin's stated intent—both in the form of its affirmative representations and the inscription it provided on the barrel—*was* considered by ATF, subjective intent of a manufacturer cannot override the objective design features of the firearm. As ATF explained, the objective design features of the Antithesis warrant classification as a short-barreled rifle under the GCA and a firearm under the NFA. *See* AR 148 ("While ATF considers the manufacturer's purported use of the item . . . a manufacturer's assertions, including marketing of the item, are not determinative").

Finally, Plaintiffs urge the Court to overrule ATF's expert judgment as to classification of the Antithesis in favor of total deference to Franklin's marketing materials, and hold that ATF's classification was unlawful because Plaintiffs believe some gun owners may value the ability to fire

14

shot from a rifled bore in some circumstances. Am. Compl. ¶ 152-56.[3]  But again, as ATF explained:

> [ATF] does not dispute the marketability of firearms chambered for dual cartridges. However, rifling is an objective design feature specific to firearms . . . . The decision to market a firearm as capable of firing shotshells in addition to traditional single-projectile ammunition does not indicate that the weapon was 'designed, made and intended' to fire other than single projectile, only that a commercial advantage exists *in spite* of the objective design of the weapon.

AR 148. ATF need only provide some rational basis to uphold its decision. *See Org. for Competitive Mkts.*, 912 F.3d at 459 ("If an agency's determination is supportable on any rational basis, we must uphold it."). Here, ATF's classification letter makes clear that such a basis was provided as to the Antithesis.

### C. Plaintiffs' contention that ATF did not supply a reasoned basis for its decision is contradicted by Plaintiffs' own filings.

Plaintiffs assert that ATF did not supply a reasoned basis for its classification, but this argument also fails to persuade. Plaintiffs argue that "ATF's stated premise—that 'the twist of the shot column traveling down the [rifled] bore will spread the shot pattern'—did not support its conclusion that 'rifled bore is disadvantageous as an objective design feature when using shot ammunition.'"  Am. Compl. ¶ 293. But Plaintiffs' own filings make clear that they knew and understood ATF's reasoning: that because shotgun ammunition is primarily used while hunting birds, a rifled barrel decreases the effectiveness of shot ammunition for this primary purpose by causing the cluster of shotgun pellets to spread too quickly when fired, such that too few or none of the pellets may be clustered closely enough to strike a bird. Franklin itself understood ATF's reasoning, as evidenced by their argument that "rifling's effect of rapidly increasing the spread of the resulting shot

---

[3] Plaintiffs argue that there is a market for dual use firearms, but as they admit, their examples are all handguns, AR 135, making this analogy inapt as to *long* guns like the Antithesis. Moreover, the Thompson/Center Arms "Contender" handgun they reference actually has a removable straight-grooved tube at its muzzle, the function of which is to stop or slow the shot from rotating as it moves through the rifled barrel to improve shot pattern. AR 166 ("This shows that while straight grooves are suitable for practical use with shot cartridges, rifled bores are not."), 167 ("However, as the shot pattern passes through the muzzle brake and enters the choke tube, the straight lands of the choke tube purportedly stop the swirling motion and make the shot pattern more uniform").

pattern is desirable in certain hunting situations such as unexpected close range turkey hunting shots and close shots in thick cover at fast fleeting gamebirds." Am. Compl. ¶ 122. In other words, Plaintiffs knew and understood that the design would not be useful in all but a handful of circumstances—certain "unexpected close range" shots at gamebirds. *Id.* The Court should not be persuaded by Plaintiffs' attempt to obfuscate their understanding now. *See Noem v. Haaland*, 542 F. Supp. 3d 898, 918–19 (D.S.D. 2021), *appeal dismissed,* 41 F.4th 1013 (8th Cir. 2022) ("Although courts cannot supply a reasoned basis for the agency's action that the agency itself has not given, courts should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned") (citation omitted).

### D.  The rule of lenity does not apply.

Plaintiffs attempt to use the rule of lenity to manufacture ambiguity in support of their claims. *See* Am. Compl. ¶ 224. But as this Court recently held when FRAC invoked lenity to support its reading of the same provisions in another case against ATF, "the NFA and GCA's definition of a rifle . . . is not unclear as argued by the Plaintiffs, nor is it so grievously ambiguous such that the rule of lenity is necessary." *FRAC v. Garland*, No. 1:23-CV-024, 2023 WL 5942365, at *7 (D.N.D. Sept. 12, 2023) (Hovland, J.), *appeal filed*, No. 23-3230 (8th Cir. Oct. 6, 2023). The same result should obtain here.

The rule of lenity is a principle of statutory construction providing that ambiguities within "a criminal statute should be resolved in the defendant's favor." *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). "To invoke the rule, [a court] must conclude that there is a grievous ambiguity or uncertainty in the statute," and it applies, "only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what Congress intended." *Donnell v. United States*, 765 F.3d 817, 820 (8th Cir. 2014) (citations omitted). *See also Chapman v. United States*, 500 U.S. 453, 463 (1991). The "simple existence of some statutory ambiguity, however, is not sufficient to warrant application of [the] rule, for most statutes are ambiguous to some degree." *Muscarello v. United States,* 524 U.S. 125, 138 (1998). Although the GCA and NFA are "criminal in nature, the rule of lenity

does not apply and the ATF's decision is entitled to deference by the Court." *Mod. Muzzleloading*, 18 F. Supp. 2d at 33 (while the GCA does not speak directly to the question of how to classify an item, it does not contain a "grievous ambiguity") (citing *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994)).

As relevant to their Antithesis claim, Plaintiffs take issue with the NFA and GCA's definition of "rifle"; however, that definition is not so ambiguous as to leave the Court merely guessing what Congress intended. As in *Modern Muzzleloading*, the GCA and NFA do not address directly how to classify the Antithesis and Reformation. Therefore, although the parties may disagree on the appropriate classification of the weapon in this case, this does not create a "grievous ambiguity" in the statute, so the rule of lenity does not apply. 18 F. Supp. 2d at 33; *see FRAC*, 2023 WL 5942365, at *7 ("Congress' intention is not unclear, ambiguous, or convoluted; therefore, an ambiguity would have to be manufactured, which is in direct contradiction of established law."). Notably, Plaintiff agrees that the statute is not ambiguous, let alone grievously so. *See* Am. Compl. ¶ 224.

Additionally, as highlighted by Justices Gorsuch and Jackson, one of the principles underlying lenity is to ensure criminal defendants have fair notice of what the law requires. *See Bittner v. United States*, 598 U.S. 85, 102 (2023). Here, although Plaintiffs invoke lenity to invalidate ATF's classification decisions, fair notice is served better by ATF's classifications than it would be if the court were to set aside those decisions. ATF's classification process exists, in part, to give interested parties fair notice of how the agency interprets the statutes it administers so that a party need not subject itself to prosecution in order to determine a weapon's status. *See* 27 C.F.R. § 478.92(c); *Sig Sauer*, 826 F.3d at 599 (describing the classification process); *See also* NFA Handbook, § 7.2.4, https://perma.cc/DE74-3YZF ("Submitting a prototype of the item to [ATF] for classification in advance of manufacture is a good business practice to avoid an unintended classification and violations of the law.") Through the classification process, ATF thereby allows parties to contact ATF to receive fair notice on whether a given weapon falls within the ambit of the GCA and NFA. *Cf. Hoffman Ests.*, 455 U.S. at 498 (regulation

17

subject to relaxed scrutiny when a party may "clarify the meaning of the regulation by its own inquiry"). It would thus undercut a central purpose of lenity to vacate ATF's classifications as Plaintiffs propose.

## II.     The Court Should Grant Judgment to Defendants on Plaintiffs' Reformation Claims.

### A.     ATF's classification of the Reformation was neither arbitrary nor capricious.

Plaintiffs' challenge to ATF's classification of the Reformation (Count 2) fails for the same reason as its challenge to ATF's classification of the Antithesis: because both classification decisions were reasonable, rational, and based on the respective weapon's objective design features, which ATF permissibly considered and reasonably explained using its expertise to ascertain the intent of the weapon's design in accordance with law. *See supra* 7-15.

As relevant to the Reformation, the GCA defines the term "shotgun" as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire through a smooth bore either a number of ball shot or a single projectile for each pull of the trigger," and defines a "short-barreled shotgun" as a "shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun … if such a weapon as modified has an overall length of less than twenty-six inches." 18 U.S.C. §§ 921(a)(5)-(6). For purposes of the NFA, the Reformation is a "firearm" because it is "a shotgun having a barrel or barrels of less than 18 inches in length," 26 U.S.C. § 5845(a)(1), with "shotgun" further defined by the NFA as a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell." 26 U.S.C. § 5845(d).

The Reformation is a weapon designed to expel projectiles by action of an explosive, to be fired from the shoulder, through a barrel less than 18 inches long possessing straight cut lands and

groves which ATF determined through its testing were insufficient to impart spin on the projectile, thus rendering it a "smooth bore" firearm. AR 68 ("[ATF] finds the [Reformation] barrel with straight cut lands and grooves . . . has insufficient rate of twist to spin and stabilize traditional .308 caliber ammunition to be considered 'rifling' under Federal law."). ATF thus properly classified the Reformation as a short-barreled shotgun under the GCA. *See id.* ("the dictionary definition specifically defines rifling and then defines 'smooth bore' broadly to encompass all unrifled bores."); 18 U.S.C. §§ 921(a)(5)-(6). And based on those objective design features, and ATF's determination that "Congress used the term 'fixed shotgun shell' merely as shorthand for the expulsion of projectiles (whether in the form of multiple metallic shot or a single projectile) from a smooth bore weapon," ATF further properly classified the Reformation as a short-barreled shotgun under the NFA. AR 155-56.

Plaintiffs dispute ATF's classification of the Reformation as a short-barreled shotgun on two grounds. First, they challenge ATF's determination that the Reformation has a "smooth bore," pursuant to 26 U.S.C. § 5845(d) (NFA) and 18 U.S.C. § 921(a)(5) (GCA). Am. Compl. ¶ 208. And second, they challenge ATF's determination that the Reformation uses "the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile," pursuant to the NFA. 26 U.S.C. § 5845(d). Neither argument should persuade.

Notably, Plaintiffs' overarching contention that the Reformation is not a shotgun is belied even by their own trade publications, which by Plaintiffs' own admission have independently classified the Reformation as the "Best New *Shotgun*" of 2019. Am. Compl. ¶ 249 (emphasis added). *Cf. Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575 (2019) (courts "are not required to exhibit a naiveté from which ordinary citizens are free"). At the very least, this demonstrates that ATF's classification was *reasonable*, which is all that the APA requires. *See Modern Muzzleloading*, 18 F. Supp. 2d at 37 ("[ATF] does not bear the burden of convincing the Court that its position is better . . . it merely need convince the Court that the decision was not arbitrary and capricious."). And any argument that ATF failed to

adequately explain its reasoning is further belied by Franklin's admission that although it disagreed with "parts" of the decision, ATF's "arguments were expertly written and defended." AR 76.

### 1. The Reformation has a "smooth bore."

Plaintiffs' first argument—that despite its indisputable lack of rifling, the Reformation cannot be found to have a "smooth bore" under GCA and NFA—attempts to distort the plain meaning of an undefined term by removing "smooth bore" from its context. But "[s]tatutory language 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quoting *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012)). Here the relevant context is supplied by the GCA and NFA, which pertain exclusively to the regulation of firearms—a field within which the term "smooth bore" plainly refers to a barrel that lacks sufficient rifling to impart a stabilizing spin on a projectile, as ATF detailed at length in its classification letter. *See* AR 68-69 ("[i]n the context of firearms—the relevant context in this case—'smooth' means only 'unrifled.' . . . Therefore, under Federal law, barrels having straight lands and grooves used to fire rifle ammunition are categorized as smooth bore barrels because the barrels lack functional rifling to impart a stabilizing rotation to a projectile."). ATF's interpretation of rifling is long-standing and consistent. *See* AR 172, 180, 184, 190, 200; *see also Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014) ("it is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it is taken." (quoting *FAA v. Cooper*, 566 U.S. 284, 292 (2012)).

Even accepting, *arguendo*, Plaintiffs' flawed premise that the GCA and NFA's use of "smooth bore" can be divorced from the statutory context, both the Oxford English Dictionary and the Merriam-Webster Dictionary accord with ATF's determination. *See smooth-bore*, Oxford English Dictionary,   https://www.oed.com/dictionary/smooth-bore_n?tab=meaning_and_use#22092059

(last visited May 29, 2024) ("A cannon or gun of which the barrel is made with a smooth or unrifled bore," or, in the attributive, "[h]aving a smooth or unrifled bore.");[4] AR 68-69 ("having a barrel with an unrifled bore.") (citing Merriam-Webster Online Dictionary, https://perma.cc/G4KH-UNUQ).

Plaintiffs' contextless interpretation also conflicts with the decisions of several Courts of Appeals, which have expressly rejected the argument that "smooth bore" refers to a barrel's mere texture, rather than the absence of rifling, for purposes of the GCA and NFA. As the Seventh Circuit concluded when interpreting the same statutory provision at issue here: "A shotgun is a gun with a smooth bore: a bore that has not been rifled to impart spin to the projectile on its way out of the barrel." *United States v. Janik*, 723 F.2d 537, 549 (7th Cir. 1983) (citation omitted). *See also United States v. Jackson*, 124 F.3d 607, 613 n.4 (4th Cir. 1997) (same). Even the decision Plaintiffs cite in their Amended Complaint implicitly adopts ATF's framework—characterizing "smooth" as the antonym of "rifled." *See* Am. Compl. ¶ 210 (citing *United States v. Spinner*, 152 F.3d 950, 958 (D.C. Cir. 1998)). That multiple courts have independently adopted ATF's reasoning when defining "smooth bore" in the criminal context—where the government's burden ("whether there was enough evidence to convict [] beyond a reasonable doubt") is significantly higher than in an APA case—demonstrates that ATF's determination that the Reformation has a "smooth bore" was at the very least reasonable, and not contrary to law. *Janik*, 723 F.2d at 549.

       2.   <u>ATF reasonably interpreted "fixed shotgun shell" to include a cartridge suitable for use in a shotgun, such as the Reformation.</u>

Plaintiffs' second argument—that Congress intended to completely exempt from regulation under the NFA a weapon with a smooth bore and a barrel less than 18 inches in length, designed and

---

[4] The Oxford English Dictionary Online further provides examples of historical use of the term "smooth bore" dating to the 19th Century, with one such example from 1859—well before enactment of the GCA and NFA—referring to "A ball from a smooth bore (*that is, from a barrel not rifled in any way*)." *Smooth-bore*, Oxford English Dictionary Online, https://www.oed.com/dictionary/smooth-bore_n?tab=meaning_and_use#22092059 (citing Stonehenge, *Shot-gun* 306 (1859)) (emphasis added).

intended to fire a single projectile from the shoulder, simply because that projectile was ejected from a "cartridge" rather than a "shell"—is similarly unsupported by context. To the contrary, and as ATF explained in its decision, the terms "cartridge" and "shell" are "readily interchangeable," as indicated by their plain meaning in the firearm context, and by reference to the NFA's broader statutory scheme. *See* AR 155-56 ("Such an interpretation is consistent with the focus of the statutory structure on the design and capability of the firearm, rather than the qualities of the projectile that firearm expels.").

Notably, ATF's classification of the Reformation as an NFA firearm on these grounds is supported by the NRA-ILA Glossary of Terms, which defines a "shotshell" as "[t]he *cartridge* for a shotgun." AR 155.  But equally important to ATF's determination was its consideration of the need to apply the strictures of 26 U.S.C. § 5845(d) to the Reformation in a manner that enables the coherent application of the NFA's broader regulatory scheme. *See* AR 156-58. In so doing, ATF explained that NFA firearms have long been regulated due to their "quasi-suspect character," *Staples*, 511 U.S. at 611-12, and that Congress has found they can "be used readily and efficiently by criminals," H.R. Rep. No. 83-1337, at A395 (1954). A long gun with a shortened barrel is "both dangerous and unusual" because "its concealability fosters its use in illicit activity," and "its heightened capability to cause damage." *United States v. Marzzarella,* 614 F.3d 85, 90-95 (3d Cir. 2010), *abrogated on other grounds*, *Frein v. Pennsylvania State Police*, 47 F.4th 247, 253 (3d Cir. 2022). Thus, reading "fixed shotgun shell" as Plaintiffs suggest, so as to wordlessly create a new subset of firearms that function the same, have the same firepower, and the same concealability as NFA weapons but fall outside of the NFA, would frustrate Congress' clear intent. *See* AR 156-58 ("Congress evidenced no intent to create a category of non-NFA shoulder-fired short-barreled firearms subject only to GCA regulation").

This approach is consistent with the Supreme Court's instruction that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Regions Hosp. v. Shalala*, 522 U.S. 448, 460 n.5 (1998)

(citations omitted); *see also Mellouli v. Lynch*, 575 U.S. 798, 809-10 (2015) ("Statutes should be interpreted 'as a symmetrical and coherent regulatory scheme.'" (citation omitted). Further supporting ATF's determination was its observation that a contrary reading of the statute would force ATF to privilege the design of the projectile fired by a weapon over the design of the firearm itself, contrary to the long-settled practice of considering a weapon's objective design features in order to ascertain the intent of the design in accordance with law. *See supra* 7-9. As ATF explained in its decision:

> eliminating from regulation under the NFA any smooth bore shoulder-fired firearm with a barrel or barrels of less than 18 inches utilizing a non-traditional shotgun shell would be inconsistent with the NFA's statutory scheme, because doing so would focus not on the design of the firearm itself, but the design of the projectile used therein. ATF would then be placed in the position of having to "classify" ammunition as a "fixed shotgun shell" or "fixed cartridge" (for purposes of an NFA "rifle") without any regulatory or published criteria as to how ATF interprets or applies those terms, as distinguished from mere "projectiles" expelled from GCA shotguns and rifles.

AR 157.[5]

Finally, although the definitions of "shotgun" differ slightly between the CGA and NFA, *compare* 18 U.S.C. § 921(a)(5) (GCA) *with* 26 U.S.C. § 5845(d) (NFA), those differences were not intended to and do not in fact create a new subset of non-NFA short barreled shotguns. AR 158. The difference came from Congress' expansion of the "antique firearm" provision of the GCA, in response to litigation. In 1997, ATF classified the "Knight Disc Rifle," made by Modern Muzzleloading, as not

---

[5] ATF's decision is further justified by the Supreme Court's instruction to interpret different statutes to avoid conflicts between them. *See, e.g., Maine Cmty. Health Options v. United States*, 570 U.S. 296, 315 (2020). As relevant here, ATF explained that reading the term "fixed shotgun shell" in 26 U.S.C. § 5845(d) to require completely exempting the Reformation from regulation under the NFA (but not the GCA), simply because it uses a "cartridge" rather than a "shell", would thereby require the agency to create a process for regulated parties to seek authorization to sell, deliver, or transport such a "GCA-only" short-barreled firearm under 18 U.S.C. § 922(a)(4) and (b)(4). *See infra* 33-34 (detailing ATF's exploration of such a process). But the creation of such a "GCA-only" authorization process would itself require ATF to arguably run afoul of Congress' prohibition against maintaining such a system of records outside the structure of the NFA. *See generally*, 18 U.S.C. § 926(a); Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 609 (November 18, 2011). The need to "regard each [statute] as effective" thus supports ATF's determination that the Reformation is properly classified as a short-barreled shotgun under both the GCA *and* the NFA. *See* AR 153.

falling within the antique firearm exemption's "replica" prong of the definition, thus subjecting it to all GCA requirements. Modern Muzzleloading sued under the APA, but the Government prevailed. *See Mod. Muzzleloading, Inc.*, 18 F. Supp. 2d 29. In the meantime, Senator Charles E. Grassley proposed an amendment "to exempt certain muzzle loading weapons from regulation under the [GCA]," noting that since ATF "has determined that certain of these weapons are not 'replicas' under the definition of 'antique firearms,' they are regulated as 'firearms' under the GCA. The [ATF] has restricted only one inline muzzle loader, the Knight DISC rifle, which is produced in my home state of Iowa." 144 Cong Rec. S 9099 (July 28, 1998). "The amendment would expand the definition of the term 'antique firearm' to encompass these modern muzzle loading sporting firearms." *Id.*

However, expanding the antique firearms definition alone risked capturing (and thus making unregulated) other muzzle-loading weapons like grenade launchers, bazookas, and cannons. To avoid that outcome, Congress chose to expand the "replica" exemption only to include muzzle-loading rifles and shotguns, *see* 18 U.S.C. 921(a)(16), but this in turn necessitated amendment of the GCA definitions of "rifle" and "shotgun." The GCA definition then in existence provided that shotguns used "the energy of the explosive in a fixed shotgun shell" to fire. 18 U.S.C. § 921(a)(5) (1997). Thus, it would be a contradiction in terms to refer to a "muzzle-loading shotgun" because the existing GCA definition required they use fixed (rather than muzzle-loading) ammunition. Accordingly, in order to avoid this contradiction and effectuate the expansion of the "antique firearms" provision motivating the amendment, the phrase "explosive in a fixed shotgun shell" within the GCA definition of "shotgun" was changed to "an explosive."[6] AR 214-15. Because the NFA does not have a replica prong in its definition of antique firearm, no commensurate change was necessary to the NFA definition.

It is precisely for reasons like this that the Supreme Court has recognized that "Congressional inaction lacks 'persuasive significance' because 'several equally tenable inferences' may be drawn from

_____

[6] The applicable portion of the GCA definition of "rifle" was similarly changed to "an explosive."

such inaction, 'including the inference that the existing legislation already incorporated the offered change.'" *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (citation omitted). Here too, then, the Court should not read Congress' silence as to the NFA when amending the GCA as indicative of an intent to create through implication alone a new class of highly dangerous short-barreled firearms falling outside the purview of the NFA. *Cf. Martin v. Hadix*, 527 U.S. 343, 355-56 (1999) ("According to respondents, the presence of this express command in [the first section] when coupled with [the second section]'s silence, supports the negative inference that [the second section] is not to apply to pending cases . . . Because [the two sections] address wholly distinct subject matters, [this] negative inference does not arise from the silence of [the second section].")

### 3.   The rule of lenity does not apply.

Plaintiffs cannot use the rule of lenity to manufacture ambiguity to rescue either of their classification challenges. *See supra* 16-18. As regards the Reformation in particular, Plaintiffs' citation to *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 374 (2023), does not advance their argument. *See* Am Compl. ¶ 224. In *Cargill*, the court determined that the definition of "machinegun" under 26 U.S.C. § 5845(b) was "plain" and "unambiguous," 57 F.4th at 451, 464, thus obviating any need to resort to the rule of lenity. But the court nonetheless proceeded to discuss how lenity would apply assuming that § 5845(b) was so ambiguous as to "provide [no] meaningful guidance" and to require the court to "'guess' at its definitive meaning." *Id.* at 469. No such grievous ambiguity exists in this case, as Plaintiffs themselves concede. *See* Am. Compl. ¶ 224.

### B.    Plaintiffs' GCA-only Reformation claims (Counts 3 and 4) are moot.

The Court should grant judgment to Defendants on Plaintiffs' Counts 3 and 4 because ATF's May 5, 2023 classification of the Reformation renders both claims moot. The Reformation firearm has been reclassified in a manner that provides access to the very authorization processes Plaintiffs seek, leaving the Court unable to grant relief from a "policy" that no longer applies to the firearms at

issue in this case, and unable to compel ATF to create authorization forms which already exist.

Article III limits federal courts to the resolution of only "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), and courts cannot "decide the merits of a legal question not posed in an Article III case or controversy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994). A court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). In particular, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). A live question must exist "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). Thus, "[i]t is of no consequence that the controversy was live at earlier stages in this case; it must be live when [the court] decide[s] the issues." *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998) (quoting *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir.1990)). "Further, if [a] case is indeed moot, [courts] must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Id.*

The APA gives courts limited authority under § 706(1) to compel agency action unlawfully withheld or unreasonably delayed. But once the agency issues the requested action, relief under §706(1) "is no longer available to [a] plaintiff," and the claim is therefore moot. *Ctr. for Biological Diversity v. Kempthorne*, 498 F. Supp. 2d 293, 296–97 (D.D.C. 2007). *See Missouri ex rel. Nixon*, 163 F.3d at 484-85. Plaintiffs do not credibly contest that reclassification of the Reformation renders their claims moot. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 26, at 37-39 (invoking instead two exceptions to mootness, neither of which applies). As Plaintiffs admit, the requirements of 18 U.S.C. § 922(a)(4) and § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by the completion and

approval of ATF Form 5320.4 (known as Form 4) and ATF Form 5320.20. *See* Am. Compl. ¶ 22 &

n.3.  It is therefore beyond dispute that because ATF has classified the Reformation as both a short-

barreled shotgun under the GCA *and* a firearm under the NFA, Plaintiffs may now avail themselves

of the authorization process they seek, and are no longer subject to the alleged *de facto* "enforcement

policy" they purport to challenge. The Court cannot grant Plaintiffs relief from a policy that no longer

applies to their firearms, nor can it compel ATF to create authorization forms which already exist.

Counts 3 and 4 of the Amended Complaint are thus moot. *See Amawi v. Paxton*, 956 F.3d 816, 821 (5th

Cir. 2020) (dismissing an appeal as moot because amendment "provided the plaintiffs the very relief

their lawsuit sought"); *Missouri ex rel. Nixon*, 163 F.3d at 485 ("In other words, whatever wrong, if any,

there may have been, changed circumstances have deprived us of the ability to provide the requested

remedy. Therefore, it appears to us that the case is moot.") (citing *Hazen*, 914 F.2d at 150).

 Nor does any exception to mootness apply. Plaintiffs first attempted to avoid mootness by

conceding that Counts 3 and 4 are contingent upon partial success of Count 2. *See* ECF No. 26 at 38.

But that concession exposes a ripeness problem of its own, since the Court lacks jurisdiction to enjoin

a hypothetical unformed future policy. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998)

("ripeness requirement" serves "to prevent the courts, through avoidance of premature adjudication,

from entangling themselves in abstract disagreements over administrative policies" (citation omitted);

*Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937) (a justiciable dispute must "admit[]

of specific relief through a decree of a conclusive character" and may not ask a court to "advis[e] what

the law would be upon a hypothetical state of facts"). Even if Plaintiffs were to succeed on Count 2,

the remedy would be remand to ATF for further proceedings addressing any defects identified by the

Court. *See Fla. Power & Light*, 470 U.S. at 744 ("If the record before the agency does not support the

agency action . . . the proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation. The reviewing court is not generally empowered to conduct a

*de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.")  The outcome of such a remand is unknown, and the promulgation of a GCA-only authorization process might therefore never be required, since ATF might not classify the Reformation as a GCA-only short-barreled shotgun at all on remand. Even if it did, there is no reason to believe that ATF would unreasonably delay issuance of such procedures in the manner Plaintiffs speculate. Accordingly, where the "unreasonable delay" and "enforcement policy" challenged in Counts 3 and 4 have yet to occur (and are unlikely to occur in the exact manner speculated even if Plaintiffs do succeed on Count 2), any contingent claim is unripe.

Nor does this case satisfy the voluntary cessation exception to mootness. Under that exception, a party's voluntary cessation may not moot a case absent a showing that the challenged action could not reasonably be expected to recur. The exception applies where the "defendant attempts to avoid . . . review by voluntarily ceasing allegedly illegal conduct.*" Iowa Prot. & Advocacy Servs. v. Tanager, Inc.*, 427 F.3d 541, 543 (8th Cir. 2005). However, "the standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct." *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021). There is no reason to believe that ATF would delay issuance of GCA-only processes were the Reformation to ultimately be classified as a GCA-only short-barreled shotgun in the future, nor that such a delay would occur in a manner constituting an APA violation or a *de facto* "enforcement policy."  Any future agency action will also necessarily turn on a different record, and the Court cannot prospectively review the record of a delay that has not yet occurred. Moreover, the exception "does not apply when the voluntary cessation . . . occurs because of reasons unrelated to the litigation." *ACLU of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (citations omitted); *see, e.g., Teague v. Cooper*, 720 F.3d 973, 978 (8th Cir. 2013) (exception did not apply where legislature was not "seeking to 'moot a case'"); *Gutierrez v. DHS*, No. 18-1958, 2019 WL 6219936, at *6 (D.D.C. Nov. 21, 2019) (completion of agency process pending before litigation started). As

Plaintiffs themselves conceded in their original complaint and declaration, ATF's voluntary action in question here—reclassification of the Reformation—was pending *before this litigation even began*, thus dispelling any suggestion that ATF's reclassification was designed to moot proceedings which had yet to begin when ATF's amended classification was in progress. *See* Compl. Ex. A, Decl. of Jay Jacobson ¶ 53, ECF No. 1-1; Compl. ¶ 201. Therefore, the voluntary cessation exception does not apply.

### C.   ATF's promulgation of authorization processes for GCA-only short-barreled shotguns is neither required by law, nor unlawfully delayed.

Even if Plaintiffs' unreasonable delay claim (Count 3) presents a live controversy—and it does not—the Court should grant summary judgment to Defendants.

#### 1.   Plaintiffs are not entitled to mandamus.

The APA places strict limits on judicial review of alleged agency inaction. Because the APA "carried forward" the common law writ of mandamus in § 706(1), the mandamus standard also applies to an APA claim of unreasonable delay. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("*SUWA*"); *Org. for Competitive Mkts.*, 912 F.3d at 463 (§ 706(1) is "an extraordinary remedy reserved for extraordinary situations."). "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citation omitted); *SUWA*, 542 U.S. at 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). "These three threshold requirements are jurisdictional." *Am. Hosp. Ass'n*, 812 F.3d at 189.

Plaintiffs here cannot identify a "specific, unequivocal command" concerning the timing of ATF's promulgation of authorization processes for GCA-only short-barreled shotguns. *SUWA*, 542 U.S. at 63 (citation omitted). To the contrary, Plaintiffs concede that "Congress has *not* 'provided a timetable' in any substantive statute" or otherwise set a deadline for ATF to create authorization processes for hypothetical GCA-only short-barreled shotguns. Pls.' Mot. Summ. J. at 27, ECF No.

25-1 (emphasis added). Their claims accordingly fail. *See, e.g., Prima Expl., Inc v. LaCounte*, No. 1:22-CV-143, 2023 WL 7019928, at *5 (D.N.D. Oct. 25, 2023) (Hovland, J.) ("[plaintiff] does not point to any statute that compels the DOI to conclude its proceedings in a legal and timely fashion. Thus, there is no alleged ministerial or non-discretionary act unlawfully withheld or unreasonably delayed that this Court could compel the [agency] to take. Accordingly, 5 U.S.C. § 706(1) does not give this Court subject matter jurisdiction"), *appeal filed*, No. 23-3694 (8th Cir. Dec. 15, 2023).

Indeed, federal law confers upon Defendants broad discretion to make determinations concerning when the sale, delivery, or interstate transportation of a "short-barreled shotgun, or short-barreled rifle," is "specifically authorized . . . consistent with public safety and necessity." 18 U.S.C. § 922(a)(4), (b)(4); *see also Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 220 (1930) ("Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself."). Augmenting that broad grant of discretion is the legislative history of 18 U.S.C. §§ 922(a)(4)-(b)(4), wherein Congress consistently referred to this list of covered weapons as "National Firearms Act weapons," demonstrating the absence of any specific, unequivocal command to promulgate separate authorization procedures for *GCA-only* firearms, as Plaintiffs demand. *See* H.R. Rep. No. 90-1577 at 13-14; S. Rep. No. 90-1501, at 33-34. Similarly, while 27 C.F.R. § 478.28(a) establishes procedures governing authorization for sale, delivery, and transportation of NFA firearms, neither it nor 18 U.S.C. § 922 provides a period of time within which ATF must promulgate processes for GCA-only firearms, as Plaintiffs concede. *See* 27 C.F.R. § 478.28(a); 18 U.S.C. § 922(a)(4), (b)(4); Pls.' Mot. Summ. J. at 27.

In the absence of such a deadline or any other "specific, unequivocal command" concerning ATF's promulgation of authorization processes for GCA-only short-barreled shotguns, Plaintiffs have failed to show any entitlement to mandamus and thus failed to demonstrate the Court's jurisdiction over their unreasonable delay claim. *See SUWA*, 542 U.S. at 63; *cf. Prima Expl.*, 2023 WL 7019928, at

30

*5 (dismissing § 706(1) claim absent "any statute that compels the [agency] to conclude its proceedings in a legal and timely fashion"); *Orlov v. Howard*, 523 F. Supp. 2d 30, 37 (D.D.C. 2007) ("there are no statutory guidelines compelling USCIS to adjudicate adjustment of status applications within a certain period of time. Thus, plaintiff plainly cannot assert that USCIS has failed to adjudicate his application within a time period in which it was *required* to do so."). ATF's decision to create authorization procedures for GCA-only short-barreled shotguns, is in other words "[q]uite unlike a specific statutory command requiring an agency to promulgate regulations by a certain date." *SUWA*, 542 U.S. at 71.

Finally, Plaintiff cannot establish an entitlement to mandamus by invoking 5 U.S.C. § 555(b). That subsection of the APA—which provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"—is not a basis for relief under § 706(1), and in any event, "the general directive of [§] 555(b) is a far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed.'" *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) (quoting *SUWA*, 542 U.S. at 63).

2.   ATF did not unlawfully delay creation of GCA-only authorization processes.

Even if Plaintiffs had demonstrated entitlement to mandamus—which they have not—their unlawful delay claim nonetheless fails under the factors set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). The D.C. Circuit identified six factors to guide a court's analysis in such cases:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 79-80 (citations omitted). The Eighth Circuit has similarly applied these *TRAC* factors "[t]o evaluate the reasonableness of delay." *Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014) (citing *TRAC*, 750 F.2d at 80, and rejecting claim of unlawful delay). The first and second factors are often considered together, as are the third and fifth factors. *See Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). In conducting this analysis, courts "must remember that, absent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable of [an administrative] proceeding is entitled to considerable deference." *Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987) (citation omitted). And even where a specific deadline exists, courts "are wary of becoming the ultimate monitor of Congressionally set deadlines, as 'courts are not charged with general guardianship against all potential mischief in the complicated tasks of government.'" *Org. for Competitive Mkts.*, 912 F.3d at 463 (citation omitted).

    **_Factors One and Two:_** The first *TRAC* factor is the "most important," *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), while the second factor provides that the content of such a "rule of reason" may be found in a "timetable or other indication of the speed with which [Congress] expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80 (citation omitted). Yet as noted above and as Plaintiffs admit, "Congress has not 'provided a timetable' in any substantive statute" or otherwise set a deadline for ATF to create authorization processes for hypothetical GCA-only short-barreled shotguns. Pls.' Mot. Summ. J. at 27. To the contrary, the statute confers broad discretion upon the Executive Branch to make authorization decisions, 18 U.S.C. § 922(a)(4), (b)(4), and in fact does not contemplate creation of a GCA-only authorization process at all, *see* H.R. Rep. No. 90-1577 at 13-14; S. Rep. No. 90-1501, at 33-34 (contemplating authorization for "National Firearms Act weapons," not GCA-only firearms). Because "Congress has established no statutory deadline[]," it "has left these matters to the agency's discretion, [and] a court may not mandate greater timeliness." *Long Term Care Pharmacy All. v. Leavitt*, 530 F. Supp. 2d 173, 186-87 (D.D.C. 2008); *see also*

*Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (in the absence of such a timetable, the agency is "entitled to considerable deference" regarding any alleged delay); *Heckler v. Chaney*, 470 U.S. 821, 832–33, (1985) (exercise of agency discretion generally unreviewable).

Nor can Plaintiffs otherwise offer a "rule of reason" for the Court to apply. *TRAC*, 750 F.2d at 80. "That issue cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Thus, where an agency action "involves complex scientific, technological, and policy questions," the agency:

> must be afforded the amount of time necessary to analyze such questions so that it can reach considered results . . . that will not be arbitrary and capricious or an abuse of discretion. Indeed, by decreasing the risk of later judicial invalidation and remand to the agency, additional time spent . . . may well ensure earlier, not later [resolution].

*Thomas*, 828 F.2d at 798-99.

Here, creation of the authorization processes Plaintiffs seek to compel would require entering unchartered territory. As stated above, there has never been a "GCA-only" short-barreled shotgun or rifle subject to the requirements of 18 U.S.C. § 922(a)(4), (b)(4) and its implementing regulations, 27 C.F.R. §§ 478.28, 478.98, without adhering to the requirements of the NFA as well. And while the NFA provides an avenue for transfer and interstate transportation of NFA firearms, for reasons explained in the attached declaration, this avenue could not be utilized for firearms that would not, and could not by law, be registered.[7] *See* Lange Decl. ¶¶ 16-19. The creation of new processes brought

---

[7] Indeed, Plaintiffs recognized that fact. As stated by Franklin's counsel at the time: "[t]he area I'm not sure about is the sale or delivery requirement . . . The regulation does not contemplate the existence of a non-NFA short barreled shotgun. Normally, the [27 C.F.R. §] 478.98 certification is made on the Form 4. But clearly we cannot submit a Form 4 for a weapon that is not in the NFRTR."  AR 87.

with it a host of issues to be resolved, including the utilization of the background check system, treatment of "delayed" responses to the background check, the necessary retention of forms while adhering to the limitations set forth in 18 U.S.C. § 926(a), ATF's authority to interpret state law as necessary, the standard to be applied to determine "consistent with public safety and necessity," and the required avenue of appeal—if any—for the denial of transport or transfer authorization. *See* AR 216-21; Lange Decl. ¶ 20-27.  Plainly, ATF's assessment of such complex legal, technical, and policy questions requires a substantial resource and time investment. Indeed, the agency extensively explored these issues prior to the reclassification of the Reformation, which revealed that creating such processes was not consistent with Congress' heightened concern regarding NFA weapons and the resulting registration, approval and taxation requirements. *See* Lange Decl. ¶¶ 20-28. As the Eighth Circuit similarly recognized when denying a § 706(1) claim in *Organization for Competitive Markets,* "this is not a case where an agency has failed to take action in the face of multiple unambiguous commands." 912 F.3d at 463. *See also Irshad*, 754 F.3d at 607-08 (denying a writ of mandamus to compel an agency to make a hasty decision "based upon a high-level analysis of complex, sensitive factors"); *Oil, Chem., & Atomic Workers Union v. OSHA*, 145 F.3d 120, 124 (3d Cir. 1998) (denying mandamus where agency had been "far from idle" in addressing action allegedly delayed).

*Organization for Competitive Markets* provides a helpful point of comparison. There, USDA faced an express statutory deadline to promulgate certain regulations but failed to issue final rules within the period prescribed, yet the Eighth Circuit still found no relief was warranted. 912 F.3d at 462-63 (noting that USDA "proposed" several rules shortly after expiration of the statutory deadline, did not promulgate final rules until later, and even then only finalized rules on some of the subjects contemplated by the statute). Here, by contrast, it is undisputed that Congress set *no* deadline for creation of authorization procedures, and to the extent the statute contemplates the creation of any procedures at all, ATF has already satisfied Congress's intent by creating forms by which Plaintiffs can

seek authorization for the sale, delivery, and interstate transportation of NFA weapons like the Reformation and Antithesis—the only class of weapons contemplated by Congress in its creation of the 18 U.S.C. §§ 922(a)(4), (b)(4) authorization framework. *See* H.R. Rep. No. 90-1577 at 13-14; S. Rep. No. 90-1501, at 33-34 (contemplating authorization for "National Firearms Act weapons").  Just as the Eighth Circuit declined to issue "extraordinary" mandamus relief in *Organization for Competitive Markets*, this Court should likewise decline to do so here, particularly since both parties agree that in this case, Congress declined to set *any* deadline for the agency action Plaintiffs seek to compel.

Plaintiffs' alternative argument that the Court can discern a rule of reason because "ATF has undertaken significantly more burdensome actions in a fraction of the time" should not persuade. Am. Compl. ¶ 320. Plaintiffs offer no basis to conclude that the time it takes to promulgate other regulations on dissimilar subjects under different statutory authority provides a rule of reason to govern ATF's consideration of the authorization processes question at issue here, particularly as ATF's decision-making in the regulatory sphere is based on different criteria and evidence.

**_Factors Three and Five:_** The fifth and third factors provide that "the court should also take into account the nature and extent of the interests prejudiced by delay," and that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[.]" *TRAC*, 750 F.2d at 80. While Plaintiffs strain to contend that the "human health and welfare" factor somehow favors their case, Am. Compl. ¶ 316, their products are indisputably highly dangerous weapons of a class that Congress has deemed attractive to criminals by virtue of their "quasi-suspect character," *Staples*, 511 U.S. at 611-12. Rather, Plaintiffs' interest in speeding what it hopes will be commercial authorization to sell these firearms is plainly and purely economic—as belied by their Amended Complaint. *See, e.g.,* Am Compl. ¶ 245 (complaining that Franklin "produced 1,195 [Reformation] barrels" that it was previously "unable to sell"); *cf. In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (it can fairly be "assume[d]" that the interest of a generic drug manufacturer in

obtaining approval to market its products was "entirely commercial"). The fact that Plaintiffs are now able to seek authorization to sell, deliver, or transport all of their products using the procedures already available for NFA weapons (such as the Antithesis and Reformation) further undercuts their theory that they suffer significant harm because of ATF's alleged delay. Because Plaintiffs' asserted harms are purely economic, and no longer exist now that Franklin can seek the authorization it desires using existing the NFA forms, these factors tilt toward Defendants.

**_Factor Four:_** The fourth *TRAC* factor—"the effect of expediting delayed action on agency activities of a higher or competing priority," 750 F.2d at 80—carries significant weight. *See Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (noting when the fourth *TRAC* factor weighs in an agency's favor, courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it."). That factor tilts heavily in Defendants' favor here, as Plaintiffs cannot establish that the Court has any basis to "reorder[] [ATF's] priorities." *In re Barr Labs.*, 930 F.2d at 76. As the D.C. Circuit explained, "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Id.* To reiterate, the creation of authorization processes for weapons possessing features Congress deemed particularly dangerous and attractive to criminals implicates serious public safety concerns, as Congress recognized in requiring ATF to consider whether said authorization is "consistent with public safety and necessity." 18 U.S.C. § 922(a)(4), (b)(4). A court order compelling ATF to create authorization processes for GCA-only short-barreled shotguns in just 30 days, as Plaintiffs seek, would judicially curtail the agency's consideration of these complex issues, *see supra* 33-34, and instead grant Plaintiffs' policy preferences a super-priority over other urgent and complex tasks facing the agency. As Plaintiffs themselves point out, Am. Compl. ¶¶ 271-72, during this time the agency was drafting and finalizing *Definition of "Frame or Receiver" and Identification of Firearms*, "a complex rule that amended more than a dozen federal regulations." *Id.* ¶ 273.; *see also* 87 Fed. Reg. 24,652 (Apr. 26, 2022) (noting ATF

responded to over 290,000 comments received)[8]; *In re Barr Labs.*, 930 F.2d at 75 (refusing to grant relief, although the other *TRAC* factors favored it, where "a judicial order putting [plaintiff] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain."). "Due to its expertise, [ATF] must be permitted flexibility in navigating th[ese] tough choices[.]" *Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d at 305.

**_Factor Six:_** "[T]he sixth *TRAC* factor allows the Court to weigh any alleged impropriety against the other factors in the test." *Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Johnson*, 407 F. Supp. 2d 38, 41 (D.D.C. 2005). Plaintiffs assert that "there is a form of impropriety lurking behind the agency's lassitude" because the alleged delay prevents the sale, delivery, and transportation of GCA-only short-barreled shotguns. Am. Compl. ¶ 322. But this argument is curricular: it assumes that the alleged delay is in bad faith simply because there was delay. The Court should reject this *ipso facto* argument because "the mere fact of a delay is insufficient to show impropriety." *Chowdhury v. Blinken*, Case No. 1:21-cv-1205-RCL, 2022 WL 136795, at *5 (D.D.C. Jan. 14, 2022). To the contrary, "[t]he presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties[,]" *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) (citation omitted); *Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) (similar). The final factor therefore also favors ATF.

Because the *TRAC* factors favor ATF, the Court should grant Defendants' motion for summary judgment if it does not first reject Plaintiffs' entitlement to mandamus relief at the threshold. But even assuming, *arguendo*, that the factors suggested that ATF had unlawfully delayed taking an action required by law, "[e]quitable relief, particularly mandamus, does not necessarily follow a finding of a violation: respect for the autonomy and comparative institutional advantage of the executive

---

[8] In addition, ATF was also drafting and finalizing *Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023) (noting over 237,000 comments received).

branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Labs.*, 930 F.2d at 74 (citation omitted); *see also, e.g., Org. for Competitive Mkts.*, 912 F.3d at 462; *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 505 (9th Cir. 1997) (relief under Section 706(1) remains discretionary at all times, "even if all elements [of a *TRAC* analysis] are satisfied."). Thus, under the "deferential" standards of Section 706(1), "[i]t is hard for a petitioner to prevail . . . and most do not." *Hyatt v. U.S. Patent & Trademark Off.*, 146 F. Supp. 3d 771, 781 (E.D. Va. 2015) (citation omitted). Plaintiffs' claim is no exception.

### D. ATF's delay in promulgating authorization procedures for GCA-only short-barreled shotguns does not constitute an arbitrary "enforcement policy."

Assuming that Plaintiffs' arbitrary "enforcement policy" claim (Count 4) was not moot, it too still fails because delayed promulgation of the forms and procedures Plaintiffs seek does not constitute final agency action within the meaning of the APA, and even if it did, ATF's delay in promulgating authorization processes for then-GCA-only short-barreled shotguns was reasonable.

As a threshold matter, summary judgment should be granted to Defendants on Plaintiffs' claim that ATF's delay in promulgating forms for the Reformation constitutes an arbitrary and capricious enforcement policy because an action the agency has not taken cannot constitute a "final agency action" within the meaning of the APA. 5 U.S.C. § 704. Challenges to non-final agency action are barred by sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The APA does not subject to judicial review every act of an agency, but rather limits its waiver of sovereign immunity to review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also id.* § 702 ("A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) (noting that the

APA "bars review prior to final agency action"); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). A challenge under the APA also must be directed at a discrete, identifiable agency action the agency has taken or failed to take. *See SUWA*, 542 U.S. at 62–64. The APA does not permit a "broad programmatic attack" on a general course of conduct. *Id.* at 55.

Plaintiffs challenge ATF's alleged delay in creating authorization forms for GCA-only short-barreled shotguns through two avenues, claiming that ATF's alleged delay simultaneously constitutes both a required act unlawfully withheld, *supra* 29-38, *and* an arbitrary and capricious final "enforcement policy" in its own right. Am. Compl. ¶ 326. As noted above, both claims are now moot because ATF has reclassified the Reformation in a manner that provides access to the authorization process Plaintiffs seek, ending the alleged arbitrary and capricious "enforcement policy" Plaintiffs purport to challenge. *See supra* 25-29. But Plaintiffs' claims also fail because they are mutually exclusive. In order for the provision of GCA-only authorization forms to have been "unlawfully withheld" under 5 U.S.C. § 706(1) as Plaintiffs allege in Count 3, the challenged action must be one that the "agency *failed* to take[.]" *SUWA*, 542 U.S. at 64 (emphasis added). An action an agency fails to take cannot be "final," and thus cannot be simultaneously challenged as arbitrary and capricious under 5 U.S.C. § 706(2). *Cf. Public Citizen v. U.S. Trade Representative*, 5 F.3d 549, 552 (D.C. Cir. 1993) (agency's failure to prepare an Environmental Impact Statement independently required by statute was not final agency action).

For an agency action to be "final" such that it may be reviewed under 5 U.S.C. § 706(2), two conditions must be met: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes Co.*, 578 U.S. at 597 (citations omitted). *See also Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992) (for agency action to be final, its impact must be "sufficiently direct and immediate" and not "tentative"). As to the first prong, Plaintiffs themselves argue that ATF

had not reached the consummation of its decision-making process regarding the authorization procedures they seek. *See* Pls.' Mot. Summ. J. at 39 (acknowledging that ATF stated that it was still "developing the procedures and forms to address this new type of firearm."). And as to the second prong, it is indisputable that the *absence* of authorization forms is not itself an action which determines the rights or obligations of any party, or from which legal consequences will flow. Rather, ATF's prior decision to classify the Reformation as a short-barreled shotgun under the GCA alone—which has since been mooted by ATF's amended classification of the Reformation—was the agency action giving rise to the legal consequences Plaintiffs allege in Count 4. *See FTC v. Standard Oil of Cal.*, 449 U.S. 232, 239 (1980) (agency action is deemed final if it is "definitive" and has a "direct and immediate" effect on the party challenging the action) (citations omitted); *Sisseton-Wahpeton Oyate v. U.S. Corps of Eng'rs*, 888 F.3d 906, 914-15 (8th Cir. 2018) (letter issued by the Army Corps of Engineers was not a final agency action because it did not "affect the legal rights" of any person).

Because any delay in promulgating authorization processes for GCA-only short-barreled shotguns does not constitute a final agency action—as Plaintiffs concede by virtue of their § 706(1) unlawful delay claim—that alleged delay cannot also be challenged under as a final enforcement policy under 5 U.S.C. § 706(2), and summary judgment should accordingly be granted to Defendants on Count 4.[9]

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants on all counts.

---

[9] Even if the delayed promulgation of forms and procedures Plaintiffs challenge was final agency action (it was not), Plaintiffs claim that such a delay amounts to an arbitrary and capricious enforcement policy fails because any delay was not unreasonable. *Supra* 31-38; Lange Decl. ¶¶ 20-27.

Dated: May 31, 2024     Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ *Andrew J. Rising*
ANDREW J. RISING
D.C. Bar No. 1780432
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 11406
Washington, D.C. 20005
Phone: (202) 514-0265
E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*

41