IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| FIREARMS REGULATORY ) <br> ACCOUNTABILITY COALITION, INC., ) <br> and FRANKLIN ARMORY, INC. ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> MERRICK B. GARLAND, et al., ) <br> ) <br>     Defendants. ) | Civ. Action No. 1:23-CV-00003-DLH-CRH |

## **DECLARATION OF ANDREW R. LANGE**

1. This declaration is based on my personal knowledge as well as knowledge made available to me in the course of my official duties. I am over 21 years of age, and I am competent to testify on the matters herein.

2. Since January of 2023, I have been the Deputy Assistant Director, Office of Enforcement Programs and Services (EPS), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). EPS develops and delivers programmatic policy guidance and technical support relative to firearms and explosives. As part of my duties as the Deputy Assistant Director, I oversee the Firearms and Explosives Industry Division (FEID).

3. FEID develops policy and provides technical support on firearms and explosives to the Bureau, the firearms and explosives regulated industries, the general public, and other federal, State, and local agencies. FEID is responsible for developing firearms and explosives policy and providing guidance to ATF field operations for the enforcement and implementation of the firearms and explosives regulations and programs. The division also issues correspondence, originates and maintains statistics, initiates or contributes to internal and public reports, promulgates forms and issues open letters relative to firearms and explosives matters.

4. Relative to this matter, FEID, in consultation with other EPS offices and ATF's Office of Chief Counsel, attempted to draft forms for the transport and transfer of short-barreled

1

shotguns that are only regulated under the Gun Control Act (GCA), but not the National Firearms Act (NFA).

5. While the GCA defines "firearm" broadly to include rifles, shotguns, pistols and handguns, the NFA's definition of "firearm" is narrower, and includes only a subset of weapons, to include machineguns, short-barreled rifles, short-barreled shotguns and destructive devices. *See* 26 U.S.C. § 5845(a).

6. The NFA, 26 U.S.C. § 5845, defines a shotgun, in relevant part, as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger." It further defines a short-barreled shotgun as "(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length."

7. The GCA, 18 U.S.C. § 921(a)(5), defines a shotgun, as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." It further defines a short-barreled shotgun as "a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun … if such a weapon as modified has an overall length of less than twenty-six inches." 18 U.S.C. § 921(a)(6).

8. Because of the difference in the GCA and NFA definitions of "shotgun" as referenced above, ATF's Firearms and Ammunition Technology Division initially classified Franklin Armory's "Reformation" firearm as a short-barreled shotgun under the GCA, but not the NFA. This was the first time a firearm was classified as a "GCA-only" short-barreled shotgun.

9. All NFA weapons are subject to certain requirements: including taxation and registration in the National Firearms Registry and Transfer Record (NFRTR). In addition, in order to make an NFA firearm, the maker must submit an application for approval to ATF on Form 1 (ATF Form 5320.1), Application to Make and Register a Firearm. Form 1 requires the applicant to provide their name, contact information, date of birth, place of birth, a description of the firearm to be made, responses to a list of questions, certification by the Chief Law Enforcement Officer of the applicant's home city or county that making such firearm would not put them in violation of the law, and accompanied by a photo and fingerprints in order to run a background check. The firearm cannot be made until the applicant receives ATF's approval.

10. Similarly, in order to transfer an NFA firearm, the transferee must submit an application for approval to ATF on Form 4 (ATF Form 5320.4), Application for Tax Paid Transfer

and Registration of Firearm. Form 4 requires the transferor's full name and address and federal firearms license number (if applicable), the transferee's full name and address, date of birth, place of birth, a description of the firearm to be transferred, responses to a list of questions, certification by the Chief Law Enforcement Officer of the transferee's home city or county that the transfer of such weapon will not put the transferee in violation of the law, and accompanied by a photo and fingerprints in order to run a background check. The firearm cannot be transferred until the transferor receives ATF approval.

11. NFA weapons may not be transported across state lines or temporarily exported without the approval of ATF through the submission of ATF Form 5320.20, Application to Transfer Interstate or to Temporarily Export Certain National Firearms Act (NFA) Firearms. Form 5320.20 requires the name and address of the owner, description of the NFA firearm(s) to be transferred, the dates of transportation, the mode of transportation, and the origin and destination.

12. Non-NFA firearms do not require such forms, registration or approvals.

13. However, pursuant to the GCA, 18 U.S.C. 922(a)(4) provides in relevant part, "It shall be unlawful—for any person, other than a [federal firearms licensee] to transport in interstate or foreign commerce any destructive device, machinegun …, *short-barreled shotgun*, or short-barreled rifle, except as specifically authorized by the Attorney General consistent with public safety and necessity." (emphasis added).

14. Additionally, 18 U.S.C. 922(b)(4) provides in relevant part, "It shall be unlawful—for any [federal firearms licensee] to sell or deliver—to any person any destructive device, machinegun …, *short-barreled shotgun*, or short-barreled rifle, except as specifically authorized by the Attorney General consistent with public safety and necessity." (emphasis added).

15. Short-barreled shotguns covered by both the GCA and NFA utilize Form 5320.20 and Form 4 to satisfy the requirements of section 922(a)(4) and (b)(4). There were no existing forms for the transport or transfer of GCA-only short-barreled shotguns.

16. ATF Form 5320.20 could not be utilized for purposes of seeking authorization to transport interstate a GCA-only short-barreled shotgun as is. With an NFA firearm (or a firearm covered by both the GCA and NFA), ATF knows the possessor of such firearm because it is registered and cannot be transferred without ATF approval, a successful background check and a subsequent update to the NFRTR to reflect the new owner. However, a GCA-only firearm has no such requirements, the individual seeking the transport may not be the individual who originally purchased the firearm and presumably passed a background check, since any subsequent transfers through private sales will not necessarily require a background check.

17. Nor could ATF Form 4 be utilized for the transfer of GCA-only short-barreled shotguns because Form 4 also serves as the mechanism for registration and these GCA-only short-barreled shotguns were not required to be registered. Moreover, ATF did not want the

same Form 4s being utilized for firearms that needed to be registered and firearms that did not, as this would inevitably result in confusion and create the opportunity for firearms that should be registered to inadvertently be missing from the NFRTR.

18. Because the possession of unregistered NFA firearms is a crime, it is extremely important that the NFRTR must be as accurate as possible to prove registration if need be.

19. Therefore, new forms and processes would need to be created. By letter dated November 8, 2019, to Franklin Armory, ATF acknowledged the uniqueness of a GCA-only short-barreled shotgun, the inability to use current NFA forms and the resulting need for new procedures and forms for transport and transfer.

20. However, it soon became apparent that this was not a straightforward task and there were a number of issues, both legal and practical, that needed to be resolved, as discussed further below. In early 2020, ATF created the first drafts of Form 5310.19, Application to Transport Interstate-Temporarily Export Certain Firearms Regulated Only by the Gun Control Act, and Form 5310.20, Application for Federal Firearms License Holder to Transfer Certain Firearms to Non-Licensees. However, there were a number of problems with the drafts and with the processes that would accompany them.

21. As to the transport of GCA-only short-barreled shotguns, because it would be unclear if the current possessor had ever undergone a background check, a background check would need to be conducted before ATF could approve such transport. Failure to conduct a background check and allow a prohibited person to transport a short-barreled rifle interstate would clearly not be "consistent with public safety and necessity" as required for approval under section 922(a)(4).

22. Therefore, another background check would have to be conducted before transportation. To do that, the person seeking to transport would need to complete an ATF Form 4473, Firearms Transaction Record, which is used for virtually all transfers of firearms between a federal firearms licensee and an individual prospective purchaser. Along with seeking identifying information, ATF Form 4473 asks a serious of questions regarding a purchaser's status (*i.e.*, have you ever been convicted of a felony, have you ever been convicted of a misdemeanor crime of domestic violence), any of which generating a "yes" response would prohibit transfer of the firearm. Form 4473 also includes the National Instant Criminal Background Check System (NICS) results, which has three potential outcomes; "proceed," "delay," or "deny." Obviously in the case of a denial, the transportation request would not be approved.

23. In the event of a proceed, the Form 4473 would almost certainly have to accompany draft Form 5310.19 as proof of the successful background check. However, with the exception of the records of federal firearms licensees that have gone out of business, or tied to a particular criminal investigation, ATF does not have custody and control of Forms 4473, they remain with the licensee. ATF is mindful of the restrictions in 18 U.S.C. § 926(a), which states, "[n]o such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or

4

transferred to a facility owned, managed, or controlled by the United States." And while the Form 4473 itself wouldn't necessarily need to be retained by ATF, draft Form 5310.19, noting at least part of the contents of Form 4473, would need to be retained for some period of time—and be searchable--to show that the owner of the firearm transported did in fact comply with section 922(a)(4).

24. In the event of a delay response from NICS, it is unclear how such status should be treated. For the transfer of a GCA firearm, if a NICS check comes back as a delay, the licensee may still transfer the firearm if three business days have elapsed without a denial. Sometimes a proceed follows the three business days, sometimes a delay eventually comes back as a denial, in which case ATF must retrieve the firearm, and in some cases the delay never gets resolved. It would not be "consistent with public safety and necessity" to grant the transport of a short-barreled firearm possessed by someone with a delay response from NICS. However, questions arose: would ATF have to wait an unknown number of days to see if an ultimate proceed was issued, would there be an appeals process for someone who received a denial or delay they believed was in error? What would that process look like and who would ultimately decide?

25. As to transfers of GCA-only short-barreled shotguns, a background check is clearly required, but the same background check issues apply: the need for and retention of Forms 4473, retention of draft Form 5310.20 for an appropriate period of time, concerns about the restrictions of 18 U.S.C. § 926(a), what to do about delay results from the background checks, and possible appeals process for delays or denials.

26. Additionally, as to transfers, they could not be made if the transfer would put the prospective purchaser in violation of state law. State laws regarding the possession of short-barreled rifles and shotguns are by no means consistent, so it would need to be determined what the law of the state held regarding these firearms. Even more fundamentally, it did not appear to ATF that any state had an equivalent "GCA-only" type short-barreled shotgun. As such, the following issues arose: who would research each individual state's laws to ensure compliance, would ATF have to classify these firearms to see if they fit the definition of each state's laws, does ATF even have the authority to classify firearms for state, as opposed to federal, purposes?

27. Forms 5310.19 and 5310.20 went through revisions in 2020. In July, the greatest issue with the creation of forms and processes for GCA-only short-barreled shotguns arose, regarding a question about what "consistent with public safety and necessity" meant in the context of a short-barreled firearm not subject to requirements of the NFA. Relatedly, who decides and how; would an appeals process be necessary or even feasible in the event of a denial of transport or transfer? Overall, ATF came to the conclusion that the transport and transfer of short-barreled shotguns outside of the requirements of the NFA is in and of itself inconsistent with public safety and necessity because the approval contradicts Congress' intent to more closely regulate concealable shotguns through the NFA.

28. After encountering the myriad issues above, and amid concerns about the correctness of the classification of the Reformation as a GCA-only short-barreled shotgun, ATF

determined that it was neither legally nor practically feasible to permit the transfer or transport of GCA-only short-barreled shotguns outside the requirements of the NFA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of May 2024.

_____
Andrew R. Lange