## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

FIREARMS REGULATORY
ACCOUNTABILITY COALITION, INC., *and*
FRANKLIN ARMORY, INC.,

     Plaintiffs,

     v.

MERRICK GARLAND, in his official
capacity as Attorney General of the United States,
*et al.*,

     Defendants.

_____/

Case No. 1:23-cv-00003-DMT-CRH

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION...................................................................................................................1

DEFENDANTS' STATEMENT OF MATERIAL FACTS.................................................1

I.    Antithesis short-barreled rifle............................................................................................2

II.    Reformation short-barreled shotgun..................................................................................3

ARGUMENT.......................................................................................................................6

I.    Plaintiffs' arguments for vacatur of ATF's Antithesis classification are meritless......6

    A.    The Antithesis is a "rifle" within the meaning of the GCA and NFA. .........6

    B.    The rule of lenity does not salvage Plaintiffs' arguments. ............................10

II.    Plaintiffs' arguments for summary judgment as to the Reformation are meritless. .......12

    A.    ATF's classification of the Reformation was neither arbitrary nor capricious............12

        1.    Plaintiffs misconstrue the statutory meaning of "smooth bore."...................13

        2.    The term "fixed shotgun shell" includes a cartridge suitable for use in a shotgun, such as the Reformation. ....................................................15

        3.    The rule of lenity does not apply. .......................................................20

    B.    Plaintiffs' argument that ATF unlawfully delayed promulgating GCA-only procedures for the Reformation fails because their claims are moot..........................20

    C.    The absence of GCA-only authorization procedures for the Reformation was not an unlawfully delayed act required by law................................................24

        1.    Plaintiffs' unlawful delay argument fails because they are not entitled to mandamus. .......................................................................24

        2.    ATF did not unlawfully delay creation of GCA-only authorization processes for the Reformation.......................................................28

    D.    ATF's alleged prior delay in promulgating GCA-only of authorization processes for the Reformation does not amount to a current arbitrary and capricious enforcement action..................................................................35

        1.    Delayed promulgation of the forms and procedures Plaintiffs seek does not constitute a final agency action challengeable under 5 U.S.C. § 704..........................................................................................35

2.    Any delayed promulgation of the forms and procedures Plaintiffs seek was neither arbitrary nor capricious............................................................37

III.    This Court's order denying Plaintiffs' prior motion for summary judgment as premature forecloses Plaintiffs' waiver and forfeiture arguments.............................................38

CONCLUSION.......................................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACLU of Mass. v. U.S. Conf. of Catholic Bishops,*
   705 F.3d 44 (1st Cir. 2013)........................................................................................24

*Adventist Health Sys./SunBelt, Inc. v. HHS,*
   17 F.4th 793 (8th Cir. 2021)......................................................................................6

*Aetna Life Ins. Co. of Hartford v. Haworth,*
   300 U.S. 227 (1937)..................................................................................................23

*Air Wisconsin Airlines Corp. v. Hoeper,*
   571 U.S. 237 (2014)..................................................................................................14

*Already, LLC v. Nike, Inc.,*
   568 U.S. 85 (2013) ...................................................................................................21

*Al-Rifahe v. Mayorkas,*
   776 F. Supp. 2d 927 (D. Minn. 2011) ......................................................................27

*Am. Hosp. Ass'n v. Burwell,*
   812 F.3d 183 (D.C. Cir. 2016) ...........................................................................25, 27

*Amawi v. Paxton,*
   956 F.3d 816 (5th Cir. 2020).....................................................................................22

*Arizonans for Off. English v. Arizona,*
   520 U.S. 43 (1997) ...................................................................................................21

*Bifulco v. United States,*
   447 U.S. 381 (1980)..................................................................................................11

*Bittner v. United States,*
   598 U.S. 85 (2023) ...................................................................................................11

*Bragdon v. Abbott,*
   524 U.S. 624 (1998)..................................................................................................16

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023),
   *aff'd,* 602 U.S. 406 (2024)......................................................................................20

*Chapman v. United States,*
    500 U.S. 453 (1991) ..................................................................................10

*Chowdhury v. Blinken,*
    Case No. 1:21-cv-1205-RCL, 2022 WL 136795 (D.D.C. Jan. 14, 2022) ..............34

*Church of Scientology of Cal. v. United States,*
    506 U.S. 9 (1992) ....................................................................................21

*Cobell v. Norton,*
    428 F.3d 1070 (D.C. Cir. 2005) .................................................................37

*Ctr. for Biological Diversity v. Kempthorne,*
    498 F. Supp. 2d 293 (D.D.C. 2007) ...........................................................21

*Ctr. for Sci. in the Pub. Interest v. FDA,*
    74 F. Supp. 3d 295 (D.D.C. 2014) .............................................................33

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019) ............................................................................12

*Dep't of State v. Ray,*
    502 U.S. 164 (1991) ................................................................................34

*Donnell v. United States,*
    765 F.3d 817 (8th Cir. 2014) ....................................................................10

*Drake v. Stenehjem,*
    No. 1:20-CV-00231, 2021 WL 5985071 (D.N.D. July 30, 2021) ....................38

*FAA v. Cooper,*
    566 U.S. 284 (2012) ................................................................................14

*Falk v. U.S. ex rel. Dep't of Interior,*
    452 F.3d 951 (8th Cir. 2006) ......................................................................6

*FCC v. Fox TV Stations, Inc.,*
    556 U.S. 502 (2009) ................................................................................10

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) ...........................................................................1, 22

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ................................................................................36

*Freedom Ordnance Mfg., Inc. v. Brandon,*
    No. 3:16-cv-243, 2018 WL 7142127 (S.D. Ind. Mar. 27, 2018) ......................6

*FTC v. Standard Oil of Cal.*,
   449 U.S. 232 (1980) ..................................................................................37

*Grace Healthcare of Benton v. HHS*,
   603 F.3d 412 (8th Cir. 2009) ......................................................................7

*Gutierrez v. DHS*,
   No. 18-1958, 2019 WL 6219936 (D.D.C. Nov. 21, 2019) .......................24

*Hi-Tech Pharmacal Co. v. FDA*,
   587 F. Supp. 2d 1 (D.D.C. 2008) ..............................................................27

*In re Barr Labs., Inc.*,
   930 F.2d 72 (D.C. Cir. 1991) .......................................................32, 33, 35

*Indep. Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) .....................................................................35

*Iowa Prot. & Advoc. Servs. v. Tanager, Inc.*,
   427 F.3d 541 (8th Cir. 2005) .....................................................................23

*Irshad v. Johnson*,
   754 F.3d 604 (8th Cir. 2014) ...............................................................28, 30

*Long Term Care Pharmacy All. v. Leavitt*,
   530 F. Supp. 2d 173 (D.D.C. 2008) ..........................................................29

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ...............................................................................10

*Maine Cmty. Health Options v. United States*,
   570 U.S. 296 (2020) .............................................................................18, 19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
   336 F.3d 1094 (D.C. Cir. 2003) ...........................................................29, 32

*Mellouli v. Lynch*,
   575 U.S. 798 (2015) ...................................................................................17

*Mexichem Specialty Resins, Inc. v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015) ..................................................................29

*Missouri ex rel. Nixon v. Craig*,
   163 F.3d 482 (8th Cir. 1998) ...............................................................21, 22

*Mod. Muzzleloading, Inc. v. Magaw*,
   18 F. Supp. 2d 29 (D.D.C. 1998) .............................................6, 10, 11, 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ...................................................................................................9

*Muscarello v. United States,*
   524 U.S. 125 (1998) ...............................................................................................10

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) ..........................................................................25, 27, 28, 36

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ...............................................................................................23

*Oil, Chem., & Atomic Workers Union v. OSHA,*
   145 F.3d 120 (3d Cir. 1998) .................................................................................30

*Org. for Competitive Mkts. v. U.S. Dep't of Agric.,*
   912 F.3d 455 (8th Cir. 2018) .......................................................................*passim*

*Orlov v. Howard,*
   523 F. Supp. 2d 30 (D.D.C. 2007) .....................................................................28

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,*
   551 U.S. 701 (2007) ...............................................................................................23

*Prima Expl., Inc v. LaCounte,*
   No. 1:22-CV-143, 2023 WL 7019928 (D.N.D. Oct. 25, 2023) ...................25, 28

*Prowse v. Payne,*
   984 F.3d 700 (8th Cir. 2021) ...............................................................................23

*Pub. Citizen v. U.S. Trade Representative,*
   5 F.3d 549 (D.C. Cir. 1993) .................................................................................36

*Ramirez v. U.S. Immigr. & Customs,*
   568 F. Supp. 3d 10 (D.D.C. 2021) .....................................................................37

*Regions Hosp. v. Shalala,*
   522 U.S. 448 (1998) ...............................................................................................17

*Roberts v. Sea-Land Services, Inc.,*
   566 U.S. 93 (2012) .................................................................................................14

*Sierra Club v. Thomas,*
   828 F.2d 783 (D.C. Cir. 1987) .......................................................................28, 29

*Sig Sauer, Inc. v. Brandon,*
   826 F.3d 598 (1st Cir. 2016) ............................................................................8, 11

*Sisseton-Wahpeton Oyate v. U.S. Corps of Eng'rs,*
    888 F.3d 906 (8th Cir. 2018) ...................................................................................37

*South Dakota v. Hazen,*
    914 F.2d 147 (8th Cir. 1990) ............................................................................. 21, 22

*Staples v. United States,*
    511 U.S. 600 (1994) ...............................................................................10, 17, 32

*Sturgeon v. Frost,*
    577 U.S. 424 (2016) ....................................................................................14

*Teague v. Cooper,*
    720 F.3d 973 (8th Cir. 2013) ............................................................................24

*Telecomms. Rsch. & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ....................................................................28, 29, 31

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.,*
    576 U.S. 519 (2015) ....................................................................................14

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ....................................................................................36

*United States v. Chem. Found.,*
    272 U.S. 1 (1926) .......................................................................................34

*United States v. Collar,*
    904 F.2d 441 (8th Cir. 1990) ............................................................................11

*United States v. Jackson,*
    124 F.3d 607 (4th Cir. 1997) ......................................................................... 13, 15

*United States v. Janik,*
    723 F.2d 537 (7th Cir. 1983) ......................................................................... 13, 15

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) ..............................................................................17

*United States v. Mitchell,*
    445 U.S. 535 (1980) ....................................................................................36

*United States v. Spinner,*
    152 F.3d 950 (D.C. Cir. 1998) ..........................................................................13

*United States v.Syverson,*
    90 F.3d 227 (7th Cir. 1996) ............................................................................8, 9

*Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982) ....................................................................................................11

*Voyageurs Nat'l Park Ass'n v. Norton,*
   381 F.3d 759 (8th Cir. 2004) ........................................................................................9

*Wilbur v. U.S. ex rel. Kadrie,*
   281 U.S. 206 (1930) ..............................................................................................26, 27

*Wisconsin Cent. Ltd. v. United States,*
   138 S. Ct. 2067 (2018) ................................................................................................15

*Zoller v. UBS Sec. LLC,*
   No. 16 C 11277, 2019 WL 2371724 (N.D. Ill. June 5, 2019) ......................................39

## STATUTES

5 U.S.C. § 555(b) ....................................................................................................27, 29

5 U.S.C. § 702 ..............................................................................................................36

5 U.S.C. § 704 ........................................................................................................35, 36

5 U.S.C. § 706(1) ..............................................................................................21, 25, 30

5 U.S.C. § 706(2) ....................................................................................................36, 37

5 U.S.C. § 706(2)(A) ......................................................................................................6

8 U.S.C. § 1159 ............................................................................................................27

18 U.S.C. § 92l(a)(3) ..................................................................................................2, 3

18 U.S.C. § 921(a)(5) ..............................................................................................3, 12

18 U.S.C. § 92l(a)(6) ....................................................................................................3

18 U.S.C. § 921(a)(8) ....................................................................................................2

18 U.S.C. § 922 ............................................................................................................26

18 U.S.C. § 922(a)(4) ............................................................................................*passim*

18 U.S.C. § 922(b)(4) ............................................................................................*passim*

18 U.S.C. § 926(a) ..........................................................................................4, 18, 30

26 U.S.C. § 5845(a)(3) ...................................................................................................2

26 U.S.C. § 5845(b) ......................................................................................................20

26 U.S.C. § 5845(d) ............................................................................ 12, 13, 17, 18

**RULES**

Fed. R. Civ. P. 56(f) ....................................................................................................39

**REGULATIONS**

27 C.F.R. § 178.11 (1997) ...........................................................................................16

27 C.F.R. § 478.11 ......................................................................................................16

27 C.F.R. § 478.28 ......................................................................................................29

27 C.F.R. § 478.28(a) ..................................................................................................26

27 C.F.R. § 478.92(c) ..................................................................................................11

27 C.F.R. § 478.98 ......................................................................................................29

87 Fed. Reg. 24,652 (Apr. 26, 2022) ..........................................................................33

88 Fed. Reg. 6478 (Jan. 31, 2023) ..............................................................................33

**OTHER AUTHORITIES**

144 Cong Rec. S9102 (daily ed. July 28, 1998) ..........................................................18

Consolidated and Further Continuing Appropriations Act, 2012,
    Pub. L. No. 112-55, 125 Stat. 609 (Nov. 18, 2011) ...............................................18

H.R. Rep. No. 83-1337 (1954) ....................................................................................17

H.R. Rep. No. 90-1577 (1968) .................................................................. 26, 31, 34, 38

NFA Handbook, § 7.2.4.1,
    https://perma.cc/DE74-3YZF .................................................................................4

ix

NFA Handbook, § 7.2.4,
  https://perma.cc/DE74-3YZF ..................................................................................11

Merriam-Webster Online Dictionary,
  https://perma.cc/G4KH-UNUQ ...........................................................................15

Oxford English Dictionary,
  https://www.oed.com/dictionary/smooth-bore_n?tab=meaning_and_use#22092059 (last visited
  Sept. 20, 2024)...................................................................................................14

S. Rep. No. 90-1501 (1968) ................................................................... 26, 31, 34, 38

Stonehenge, *Shot-gun* 306 (1859) ..........................................................................15

**INTRODUCTION**

Plaintiffs' latest motion for summary judgment, ECF No. 50 ("Pls.' Mot."), marks their third attempt to argue the merits of their claims. *See* ECF Nos. 12, 25, 50. Yet their motion largely ignores Defendants' Motion for Summary Judgment ("Defs.' Mot.") and accompanying Administrative Record ("AR"), ECF Nos. 41-42, which well explain why the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") classified Franklin Armory's Antithesis and Reformation firearms under the Gun Control Act ("GCA") and National Firearms Act ("NFA"). For the reasons set forth in Defendants' motion and for those addressed below, Plaintiffs' arguments fail because they misinterpret and misapply the text of the NFA and GCA to the firearms at issue in this case. Because ATF's classification decisions were reasonable in light of the record before the agency at the time of its decisions, its classifications of the Antithesis and Reformation should not be vacated.

Plaintiffs' motion also remains cluttered with moot claims, even though Defendants have fully set forth why there is no merit to Plaintiffs' demand for ATF to provide sale or transport authorization procedures for hypothetical GCA-only short-barreled shotguns. Plaintiffs are, by their admission, no longer subject to any imagined enforcement policy regarding such firearms, and for that reason and others, they cannot make out a claim for unlawfully delayed agency action or an arbitrary and capricious enforcement policy.

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Because this action is brought under the Administrative Procedure Act ("APA"), judicial review is limited by statute to the administrative record, which contains the materials relied upon by ATF in reaching its decisions. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Nevertheless, in accordance with Local Rule 7.1(A)(2), Defendants submitted a statement of facts with their motion for summary judgment to aid the Court in its review of their motion. *See* Defs.' Mot. at 3-6. To ensure compliance with Local Rule 7.1(A)(3), Defendants now also provide the following

1

abridged summary of key material facts on which they rely to oppose Plaintiffs' renewed motion for summary judgment.

## I.     Antithesis short-barreled rifle.

On March 9, 2020, Franklin submitted its Antithesis firearm to ATF for classification. AR134-138. ATF's subsequent classification decision, dated December 23, 2021, found that:

> The submitted [Antithesis] sample is of similar design and appearance to that of a standard AR-type rifle. However, the [Antithesis] sample utilizes [a] short-stroke piston gas-operation with a cylindrical piston surrounding the barrel. The overall length of the submitted [] sample is approximately 33 inches. The sample is equipped with a multiple position shoulder stock. The submitted sample's barrel is approximately 14.5 inches in length. The barrel extension and the barrel breech are fit and chambered to accept the .45 Colt and .410 Bore cartridges. The bore of the sample's barrel is approximately 0.443 inch in diameter. The bore is rifled with six lands and grooves in a right twist with a major diameter of approximately 0.454 inch. The rifling present in the bore of the submitted sample is of sufficient depth and twist to impart spin to a projectile.

AR147. After expert "testing and evaluation" by FTISB, ATF explained that the Antithesis constituted a "'short-barreled rifle' under 18 U.S.C. § 921(a)(8) and a 'firearm' as defined under [both the GCA and NFA,] 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(a)(3)."  AR145, AR149. In support of this conclusion, ATF observed that "rifling is an objective design feature specific to firearms. Rifling is an objective feature explicitly designed to impart spin on a single projectile around its longitudinal axis. This spinning of a projectile stabilizes the projectile and improves its aerodynamic stability and accuracy." AR148. Likewise, ATF explained that "a rifled bore is disadvantageous as an objective design feature when using shot ammunition, as the twist of the shot column traveling down the bore will spread the shot pattern. This is the reason that a smooth bore is traditionally used for this purpose." *Id.* Finally, ATF considered the fact that for any given diameter of firearm barrel (including for the 0.443 inch diameter barrel found on the Antithesis), there often exists ammunition commercially available of the same caliber in both single or multiple projectile varieties, meaning that a rifle designed, made, and intended to fire only a single projectile through its rifled barrel will also be capable of firing alternative multiple-projectile ammunition, despite its status as a rifle. *See* AR123.

## II.   Reformation short-barreled shotgun.

On March 13, 2018, Franklin submitted the Reformation to ATF for classification. AR22. ATF's initial Reformation classification decision, dated November 13, 2018, explained that the Reformation constituted "a 'firearm' under the [GCA], 18 U.S.C. § 92l(a)(3), a 'shotgun' under 18 U.S.C. § 92l(a)(5), and a 'short barreled shotgun' under 18 U.S.C. § 92l(a)(6)." AR70-72. Notably, ATF found that all of the "Reformation" samples possessed a "shoulder stock," and a "[b]arrel [with] straight lands and grooves (smooth bore barrel)," of "16- 5/16 inches" or shorter, chambered for ".300 BLK" ammunition. *Id.* ATF's testing of the Reformation supported its determination that the firearm possessed a smooth bore barrel, as ATF explained that through testing, "it was clear that the rounds did not spin upon leaving the barrel, as they would tumble within several yards of exiting the barrel and strike the target sideways creating a 'keyhole' profile on the target. This was further evidence that the lands and grooves are not 'rifling.'" AR68. ATF observed, consistent with longstanding interpretation, that "smooth bore" is a term of art meaning "having a barrel with an unrifled bore," such that "[i]n the context of firearms—the relevant context in this case—'smooth' means only 'unrifled.'" AR68-69. "Therefore, under Federal law, barrels having straight lands and grooves used to fire rifle ammunition are categorized as smooth bore barrels because the barrels lack functional rifling to impart a stabilizing rotation to a projectile." *Id.* ATF did not initially determine whether the Reformation was a "firearm" under the NFA. AR74.

Because ATF initially determined that the Reformation was a short-barreled shotgun under the GCA but not the NFA, and because "[o]ther than the Reformation firearms now produced by [Franklin], ATF is unaware of any other firearm manufacturer having produced or sold a [GCA-only short-barreled shotgun]," ATF warned Franklin that "existing federal firearm regulations do not provide a mechanism to process requests [for transport or transfer] regarding [such firearms] submitted pursuant to Sections 922(a)(4) or (b)(4)." AR107. Relatedly, ATF issued an Open Letter on

December 19, 2019, stating that it was "developing the procedures and forms to address this new type of firearm." AR115.

Throughout the first half of 2020, ATF explored creating transport and transfer authorization processes for GCA-only short-barreled shotguns. *See* Declaration of Andrew R. Lange ("Lange Decl.") ¶¶ 4, 20, ECF No. 41-2; AR222-225. However, it soon became apparent that the creation of procedures for transport and transfer of GCA-only short-barreled shotguns was problematic on a number of grounds. Specifically, ATF's efforts exposed the fact that creating such GCA-only authorization processes would necessitate creating a new set of searchable forms (arguably in tension with 18 U.S.C. § 926(a)), and generated additional concerns relating to background check requirements, ATF's authority to interpret state law as necessary, the standard for "consistent with public safety and necessity," and the requirement—if any—for an appeals process. *See* Lange Decl. ¶¶ 21-27; AR216-221.

Due to mounting concerns about the correctness of the initial classification decision (and the resulting concerns regarding creation of authorization procedures for transport or transfer of the Reformation as described above), ATF amended its classification of the Reformation on May 5, 2023, marking the culmination of a deliberative process that Defendants cautioned was ongoing at the time Plaintiffs' Complaint was filed. *See* Defs.' Mot. Dismiss or Transfer at 3 n.1, ECF No. 9. Plaintiffs have admitted, through sworn declaration of Franklin President Jay Jacobson, that Franklin was aware that ATF's reclassification of the Reformation was pending before this litigation even began. *See* Compl. ¶ 201, ECF No. 1 (alleging that ATF "informed Franklin that the agency would like to reclassify the Reformation as an NFA firearm" prior to the filing of Plaintiffs' original complaint) (citing Compl. Ex. A, Decl. of Jay Jacobson ¶ 53, ECF No. 1-1). In its amended classification letter, ATF explained that it had determined that the Reformation is correctly classified as both a short-barreled shotgun under the GCA, and a firearm under the NFA. *See* AR151-59; NFA Handbook, §

7.2.4.1, https://perma.cc/DE74-3YZF ("classifications are subject to change if later determined to be erroneous . . .").

In support of that determination, ATF observed that Congress opted not to define the term "fixed shotgun shell" (or "fixed cartridge") in the NFA, and ATF therefore relied in part on the National Rifle Association Institute for Legislative Action ("NRA-ILA") Glossary of Terms to give those terms their ordinary meaning. *See* AR155 (defining "shotshell" as "[t]he *cartridge* for a shotgun. It is also called a 'shell,' and its body mass may be of metal or plastic or of plastic or paper with a metal head."). Thus, ATF observed that "Congress used the term 'fixed shotgun shell' merely as shorthand for the expulsion of projectiles (whether in the form of multiple metallic shot or a single projectile) from a smooth bore weapon" like the Reformation, which "is consistent with the focus of the statutory structure on the design" of the firearm, "rather than the qualities of the projectile that firearm expels." AR156. ATF found that there was no evidence to suggest that Congress intended to or did completely exempt from regulation under the NFA a weapon with a smooth bore, fired from the shoulder, with a barrel less than 18 inches long, firing a single projectile, simply because that projectile was ejected from a "cartridge" rather than a "shell," where those terms are "readily interchangeable." AR155.

Authorization processes allowing for the sale, transport, and delivery of weapons classified as firearms under both the NFA and GCA—like the Reformation—are available to manufacturers including Franklin, because the requirements of 18 U.S.C. § 922(a)(4) and § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by completion and approval of ATF Form 5320.4 ("Form 4") and ATF Form 5320.20. *See* Am. Compl. ¶ 22, 279, ECF No. 22; Lange Decl. ¶ 15. Franklin is (and has been since May of 2023) able to sell both the Reformation and Antithesis firearms to customers using existing NFA procedures.

**ARGUMENT**

In reviewing Plaintiffs' arguments under the APA, the Court may only "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Falk v. U.S. ex rel. Dep't of Interior*, 452 F.3d 951, 953 (8th Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). "Arbitrary and capricious is a highly deferential standard of review. We defer to agency action so long as 'an agency examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Adventist Health Sys./SunBelt, Inc. v. HHS*, 17 F.4th 793, 803 (8th Cir. 2021) (quoting *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018)). *See also Freedom Ordnance Mfg., Inc. v. Brandon*, No. 3:16-cv-243, 2018 WL 7142127, at *7 (S.D. Ind. Mar. 27, 2018) ("[T]he court is tasked with reviewing what [ATF] actually did as opposed to what it could have done."); *Mod. Muzzleloading, Inc. v. Magaw*, 18 F. Supp. 2d 29, 37 (D.D.C. 1998) ("[ATF] does not bear the burden of convincing the Court that its position is better … it merely need convince the Court that the decision was not arbitrary and capricious."). Plaintiffs' motion should be denied because all of ATF's actions regarding the Antithesis and Reformation firearms satisfy that highly deferential standard.

**I.    Plaintiffs' arguments for vacatur of ATF's Antithesis classification are meritless.**

Plaintiffs dispute several aspects of ATF's classification of the Antithesis as a "short-barreled rifle" under the GCA and a "firearm" under the NFA. As discussed below, ATF conducted a thorough examination of the Antithesis, and offered a reasoned explanation for its decision based on the objective design features of Franklin's firearm that did not run counter to the evidence before it. This is all that is required.

**A.    The Antithesis is a "rifle" within the meaning of the GCA and NFA.**

Plaintiffs first argue that the presence of a rifled barrel does not *per se* prove that a given firearm is designed and intended only to fire a single projectile. Pls.' Mot. at 34. But that is not the question

6

before the Court in this case. Rather, the Court must determine if ATF's conclusion that Franklin's Antithesis firearm, specifically, was designed and made to fire only a single projectile for each pull of the trigger was reasonable, in light of all of the objective design features considered by the agency. *See Grace Healthcare of Benton v. HHS*, 603 F.3d 412, 422 (8th Cir. 2009) (requiring only that the agency "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."). The objective design features considered by ATF here included not only the mere existence of rifling within the Antithesis' barrel, but also the fact that the degree of "rifling present in the bore of the [Antithesis] is of sufficient depth and twist to impart spin to a projectile," AR147, such that the twist of the shot column traveling down the bore would spread the shot pattern to a degree that would serve no practical purpose with shotgun ammunition, along with other evidence. *See* AR145-150; Defs.' Mot. at 9-16.

Weighed against this evidence, Plaintiffs simply note that the Antithesis is also technically capable of firing certain types of multiple-projectile ammunition. Pls.' Mot. at 34. But ATF rationally considered and explained its decision in light of that fact, noting that ammunition of the same caliber in both single and multiple projectile varieties is commercially available, meaning that a rifle designed, made, and intended to fire only a single projectile through its rifled barrel also will be capable of firing alternative multiple-projectile ammunition, despite its status as a rifle. *See* AR123. Plaintiffs' argument thus proves too much—were the Court to find that a firearm *capable* of firing multiple projectile ammunition cannot be classified as a rifle under the GCA and NFA, the statutory category of "rifle" would be nullified, since nearly every rifle on the market today is mechanically *capable* of firing multiple-projectile ammunition of the same caliber as the single-projectile ammunition the weapon is designed and intended to use. *See* AR123. A "rifle" is not transformed into something else merely by the type of ammunition inserted on a given day. Such an interpretation would impermissibly privilege the characteristics of ammunition over the design of the firearm itself, as Defendants explained. Defs.'

7

Mot. at 23 (citing AR157). Thankfully, no reading of the statute requires this absurd result. A firearm's proper classification is determined by its objective design features—not its incidental capabilities and manufacturer posturing. *See* Defs. Mot. at 9-15 (*citing Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016)).

Plaintiffs nevertheless encourage the Court to privilege "manufacturer marketing" over the objective design features of its weapon, Pls.' Mot. at 35, but no court has adopted that remarkable proposition, and many have rejected it. *See* Defs.' Mot. at 7-9, 14. *In United States v. Syverson*, for example, the Seventh Circuit rejected an invitation to accept a manufacturer's stated intent that "he had designed and manufactured the cylinder to be a muzzle break [*sic*]." 90 F.3d 227, 232 (7th Cir. 1996). Instead, it looked to the function of the alleged muzzle brake and determined this cast doubt on those "professed intentions." *Id.* The court explained that the conflict between the features of the alleged muzzle brake and the defendant's stated intent constituted sufficient evidence from which a jury could find *beyond a reasonable doubt* that the manufacturer intended the part to be used as a silencer despite its marketing statements to the contrary. *Id.* The First Circuit similarly rejected Plaintiffs' argument in *Sig Sauer*, explaining that "it is hard to believe that Congress intended to invite manufacturers to evade the NFA's carefully constructed regulatory regime simply by asserting an intended use for a part that objective evidence in the record—such as a part's design features— indicates is not actually an intended one." 826 F.3d at 602. In short, Plaintiffs' marketing assertions— in the face of the objective design features considered by ATF, *see* Defs.' Mot. at 11-15; AR145-150— do not transform their Antithesis rifle into something else. Just as in *Syverson*, then, the Court need only look to the function of the weapon to determine that its objective design features cast doubt on Plaintiffs' "professed intentions." 90 F.3d at 232.

Far from being a "post hoc justification," Pls.' Mot. at 38, ATF's reasoning is plain from the face of its classification decision, where it specifically addressed and refuted Franklin's

8

counterarguments regarding manufacturer intent, marketability, dual-use capability, and commercial advantage. *See* AR147-149. Plaintiffs' attempts to argue otherwise mischaracterize the contents of the agency's classification decision. For instance, despite conceding that ATF amply explained how "the twist of the shot column traveling down the bore will spread the shot pattern" of multiple projectile ammunition fired by a firearm with a bore rifled like that of the Antithesis, Plaintiffs assert that ATF "did not explain why it thought that significant." Pls.' Mot. at 36-37 (citing AR148). Not so. In the very same paragraph of its decision, ATF explained that this spreading of shot pellets made "a rifled bore [] disadvantageous as an objective design feature when using shot ammunition," and had explained in a previous paragraph that it classifies firearms based on their objective design features, in accordance with settled law. AR148. The logic of ATF's decision is thus apparent: because the key objective design features of the Antithesis were simultaneously "disadvantageous" to firing shot ammunition and advantageous to the firing of single-projectile ammunition, ATF permissibly weighed that feature as providing strong evidence that the Antithesis was designed, made, and intended to fire a single projectile through its rifled bore. *Id.* Plaintiffs' disagreement with ATF's conclusion is insufficient to justify vacatur. Under the APA, "[i]f an agency's determination is supportable on any rational basis, [the Court] must uphold it." *Org. for Competitive Mkts.*, 912 F.3d at 459 (quoting *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004)).

Nor has ATF "entirely failed to consider an important aspect of the problem" by declining to privilege Franklin's inscription of ".410/.45LC" on the body of the Antithesis over the objective design features of the weapon. Pls.' Mot. at 38 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). To the contrary, ATF expressly noted that it "considers the manufacturer's purported use of the item in determining whether a weapon is 'designed, made, and intended' for a particular purpose," and here, Franklin's inscription is one such indication of the "manufacturer's purported use" of the Antithesis. AR148. ATF then explained,

9

however, that it considered such evidence "not determinative" in the face of concrete objective design features such as degree of rifling present on the barrel of the sample submitted by Franklin, since "a rifled bore is an objective design feature designed and made to fire only a single projectile." *Id.* Again, while Plaintiffs may disagree with the relative weight ATF has assigned to Franklin's marketing claims, that does not provide a basis to vacate the agency's decision. *Mod. Muzzleloading*, 18 F. Supp. 2d at 37 ("[ATF] does not bear the burden of convincing the Court that its position is better … it merely need convince the Court that the decision was not arbitrary and capricious."). Here, ATF's classification letter makes clear that the agency did not fail entirely to consider Franklin's marketing claims, and that a rational basis was provided as to the Antithesis classification. *See FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 513 (2009) ("'a court is not to substitute its judgment for that of the agency,' and should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (citation omitted).

## B. The rule of lenity does not salvage Plaintiffs' arguments.

The rule of lenity does not require otherwise.  "To invoke the rule, [a court] must conclude that there is a grievous ambiguity or uncertainty in the statute," and it applies, "only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what Congress intended." *Donnell v. United States*, 765 F.3d 817, 820 (8th Cir. 2014) (citations omitted). *See also Chapman v. United States*, 500 U.S. 453, 463 (1991). The "simple existence of some statutory ambiguity, however, is not sufficient to warrant application of [the] rule, for most statutes are ambiguous to some degree." *Muscarello v. United States,* 524 U.S. 125, 138 (1998). Although the GCA and NFA are "criminal in nature, the rule of lenity does not apply and the ATF's decision is entitled to deference by the Court." *Mod. Muzzleloading*, 18 F. Supp. 2d at 33 (while the GCA does not speak directly to the question of how to classify an item, it does not contain a "grievous ambiguity") (citing *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994)).  *See also Loper Bright Enters. v. Raimondo*, 144 S.

Ct. 2244, 2262 (2024) (recognizing that "courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes" when considering claims under the Administrative Procedure Act).

Regarding Plaintiffs' Antithesis claim, the statutory definition of "rifle" is not so ambiguous as to leave the Court merely guessing what Congress intended. As in *Modern Muzzleloading*, the GCA and NFA do not address directly how to classify the Antithesis and Reformation. Therefore, although the parties may disagree on the appropriate classification of the weapon in this case, this does not create a "grievous ambiguity" in the statute, so the rule of lenity does not apply. 18 F. Supp. 2d at 33; *see United States v. Collar*, 904 F.2d 441, 443 (8th Cir. 1990) ("Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent.") (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). Notably, Plaintiff agrees that the statute is not ambiguous, let alone grievously so. *See* Pls.' Mot. at 34; Am. Compl. ¶ 224.

Additionally, as recently highlighted by Justices Gorsuch and Jackson, one of the primary principles underlying lenity is to ensure criminal defendants have fair notice of what the law requires. *See Bittner v. United States*, 598 U.S. 85, 102 (2023). Here, although Plaintiffs invoke lenity to invalidate ATF's classification decisions, fair notice is served better by upholding ATF's classifications than it would be if the Court were to set aside those decisions. ATF's classification process exists, in part, to give interested parties fair notice of how the agency interprets the statutes it administers so that a party need not subject itself to prosecution in order to determine a weapon's status. *See* 27 C.F.R. § 478.92(c); *Sig Sauer*, 826 F.3d at 599 (describing the classification process). *See also* NFA Handbook, § 7.2.4, https://perma.cc/DE74-3YZF ("Submitting a prototype of the item to [ATF] for classification in advance of manufacture is a good business practice to avoid an unintended classification and violations of the law.")  Through the classification process, ATF thereby allows parties to contact ATF to receive fair notice on whether a given weapon falls within the ambit of the GCA and NFA. It would thus

undercut a central purpose of lenity to vacate ATF's classifications as Plaintiffs propose. *Cf. Village of Hoffman Ests. v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (regulation subject to relaxed scrutiny when a party may "clarify the meaning of the regulation by its own inquiry").

## II.   Plaintiffs' arguments for summary judgment as to the Reformation are meritless.

### A.   ATF's classification of the Reformation was neither arbitrary nor capricious.

Plaintiffs' challenge to ATF's classification of the Reformation fails for the same reason as its challenge to ATF's classification of the Antithesis: because both classification decisions were reasonable, rational, and based on the respective weapon's objective design features, which ATF permissibly considered and reasonably explained using its expertise to ascertain the intent of the weapon's design in accordance with law. *See supra* 6-10.

Notably, Plaintiffs' overarching contention that the Reformation is not a shotgun is belied by their industry's own trade publications, which independently classified the Reformation as the "Best New *Shotgun*" of 2019. Am. Compl. ¶ 249 (emphasis added). *Cf. Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575 (2019) (courts "are not required to exhibit a naiveté from which ordinary citizens are free"). At the very least, this demonstrates that ATF's classification was *reasonable*, which is all that the APA requires. *See Modern Muzzleloading*, 18 F. Supp. 2d at 37 ("[ATF] does not bear the burden of convincing the Court that its position is better . . . it merely need convince the Court that the decision was not arbitrary and capricious."). And any argument that ATF failed to adequately explain its reasoning is further belied by Franklin's admission that although it disagreed with "parts" of the decision, ATF's "arguments were expertly written and defended." AR76.

In their renewed motion, Plaintiffs dispute ATF's classification of the Reformation as a short-barreled shotgun on two specific grounds. First, they challenge ATF's determination that the Reformation has a "smooth bore," pursuant to 26 U.S.C. § 5845(d) (NFA) and 18 U.S.C. § 921(a)(5) (GCA). Pls.' Mot. at 13-17. And second, they challenge ATF's determination that the Reformation

12

uses "the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile," pursuant to the NFA. 26 U.S.C. § 5845(d). Pls.' Mot. at 17-25. Neither argument has merit.

1. Plaintiffs misconstrue the statutory meaning of "smooth bore."

Plaintiffs' first argument—that despite its uncontested lack of rifling, the Reformation cannot be found to have a "smooth bore" under GCA and NFA—distorts the plain meaning of an undefined statutory term by reading the words "smooth bore" in isolation, and removing them from the context of firearms regulation. *See* Defs. Mot. at 20-21. Tellingly, Plaintiffs' interpretation has been expressly rejected by multiple Courts of Appeals. As the Seventh Circuit concluded when interpreting the same statutory provision at issue here: "A shotgun is a gun with a smooth bore: a bore that has not been rifled to impart spin to the projectile on its way out of the barrel." *United States v. Janik*, 723 F.2d 537, 549 (7th Cir. 1983) (citation omitted). *See also United States v. Jackson*, 124 F.3d 607, 613 n.4 (4th Cir. 1997) (same). Even the decision Plaintiffs cite in their motion implicitly adopts ATF's framework—characterizing "smooth" as the antonym of "rifled." *See* Pls.' Mot. at 15 (citing *United States v. Spinner*, 152 F.3d 950, 958 (D.C. Cir. 1998)). Like the appellants in *Janik* and *Jackson*, Plaintiffs' argument that "smooth bore" refers to a barrel's mere texture, rather than the absence of rifling, "demonstrates a fundamental misunderstanding of what a shotgun is." *Jackson*, 124 F.3d at 613 n.4 (citing *Janik*, 723 F.2d at 549). That multiple Circuits have independently adopted ATF's reasoning when defining "smooth bore" in the criminal context—where the government's burden ("whether there was enough evidence to convict [] beyond a reasonable doubt") is significantly higher than in an APA case—demonstrates that ATF's interpretation of "smooth bore" as applied to the Reformation here is the correct one. *Janik*, 723 F.2d at 549.

The fact that ATF's application of the term "smooth bore" to firearms with straight lands and grooves has long been in accordance with these judicial interpretations further buttresses the agency's

13

decision. *See* AR172, AR180, AR184, AR190, AR200. Congress has repeatedly amended the NFA and GCA over the years, including in response to ATF classifications and court rulings. *See, e.g.,* Defs.' Mot. at 23-24 (discussing amendment of the GCA in response to classification of the Knight Disc Rifle and subsequent litigation). Yet during that time, Congress has declined to revisit the term "smooth bore." As the Supreme Court explained, "[i]f a word or phrase has been . . . given a uniform interpretation by inferior courts . . ., a later version of that act perpetuating the wording is presumed to carry forward that interpretation." *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 536-37 (2015) (citation omitted).

The Supreme Court has likewise instructed that "[s]tatutory language 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quoting *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012)). Here the relevant context is supplied by the GCA and NFA, which pertain exclusively to the regulation of firearms—a field within which the term "smooth bore" plainly refers to a barrel that lacks sufficient rifling to impart a stabilizing spin on a projectile, as ATF detailed at length in its classification letter. *See* AR68-69. "It is a cardinal rule of statutory construction that, when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it is taken." *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014) (quoting *FAA v. Cooper*, 566 U.S. 284, 292 (2012)).

Even accepting, *arguendo*, Plaintiffs' flawed premise that the GCA and NFA's use the term "smooth bore" can be divorced from the firearms context, both the Oxford English Dictionary and the Merriam-Webster Dictionary accord with ATF's determination. *See smooth-bore*, Oxford English Dictionary, https://www.oed.com/dictionary/smooth-bore_n?tab=meaning_and_use#22092059 (last visited Sept. 20, 2024) ("A cannon or gun of which the barrel is made with a smooth or unrifled

14

bore," or, in the attributive, "[h]aving a smooth or unrifled bore."); AR68-69 ("having a barrel with an unrifled bore.") (citing Merriam-Webster Online Dictionary, https://perma.cc/G4KH-UNUQ). Although Plaintiffs fault ATF for citing to the Merriam-Webster Online Dictionary in its decision, Pls.' Mot. at 13-14, Plaintiffs have offered no response to Defendants' identification of use of the term "smooth bore" in an adjective-and-noun formulation to mean "a barrel not rifled in any way," predating enactment of the GCA and NFA, in accordance with the definition cited in ATF's classification letter. *See* Defs.' Mot. at 21 n.4; Stonehenge, *Shot-gun* 306 (1859) (referring to "A ball from a smooth bore (that is, from a barrel not rifled in any way)").

Contrary to Plaintiffs' suggestion, then, the Court need not "revise [the] statute[] in light of new social problems and preferences" in order to uphold ATF's reasoned determination that the Reformation has a "smooth bore" Pls.' Mot. at 16 (quoting *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)). The term "smooth bore" means what it always has in the context of firearms— "a barrel not rifled in any way," Stonehenge, *Shot-gun* 306 (1859); "a bore that has not been rifled to impart spin to the projectile on its way out of the barrel." *Janik*, 723 F.2d at 549; *Jackson*, 124 F.3d at 613 n.4 (same). "Therefore, under Federal law, barrels having straight lands and grooves used to fire rifle ammunition are categorized as smooth bore barrels because the barrels lack functional rifling to impart a stabilizing rotation to a projectile." AR68-69. *See also* AR172, AR180, AR184, AR190, AR200.

### 2. The term "fixed shotgun shell" includes a cartridge suitable for use in a shotgun, such as the Reformation.

Plaintiffs' second argument—that Congress completely exempted from regulation under the NFA a weapon with a smooth bore and a barrel less than 18 inches in length, designed and intended to fire a single projectile from the shoulder, simply because that projectile was ejected from a "cartridge" rather than a "shell"—is similarly misguided. *See* Pls.' Mot. at 17-25; Defs.' Mot. at 21-25. This is so both because Plaintiffs' argument is unsupported by evidence, and because their argument

relies on misquoting the administrative record to generate the necessary support for its claim. As ATF explained in its classification decision, the terms "cartridge" and "shell" are "readily interchangeable," evidenced by their plain meaning in the firearm context and by reference to the NFA's broader statutory scheme. *See* AR155-156 ("Such an interpretation is consistent with the focus of the statutory structure on the design and capability of the firearm, rather than the qualities of the projectile that firearm expels.").

Plaintiffs concede in their motion that "neither the GCA nor NFA provide express definitions of the terms 'shotgun shell' and 'cartridge,'" Pls.' Mot. at 17, but they omit that regulations such as 27 C.F.R. § 478.11 have long used the terms interchangeably to describe ammunition fired from a rifle *or* a shotgun. 27 C.F.R. § 478.11 (defining "Semiautomatic rifle" as "[a]ny repeating rifle which utilizes a portion of the energy of a firing *cartridge* to extract the fired *cartridge* case and chamber the next round, and which requires a separate pull of the trigger to fire each *cartridge*," and "Semiautomatic shotgun" as "[a]ny repeating shotgun which utilizes a portion of the energy of a firing *cartridge* to extract the fired *cartridge* case and chamber the next round, and which requires a separate pull of the trigger to fire each *cartridge*.") (emphasis added).  These regulatory definitions predate Congress's 1998 amendment of the GCA, *see* 27 C.F.R. § 178.11 (1997), and as the Supreme Court has recognized, "Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Because "shell" and "cartridge" are interchangeable, ATF's determination that the Reformation fires a "fixed shotgun shell" was not erroneous.[1]

---

[1] Plaintiffs' interpretation—that "shell" and "cartridge" are not interchangeable—would also lead to absurd results.  Such an interpretation would require that the Reformation be regulated under the NFA when firing a "shell" on Tuesday, and unregulated if the user inserted a "cartridge" on Wednesday.

ATF's classification of the Reformation as an NFA firearm on these grounds is further supported by the NRA-ILA Glossary of Terms, which defines a "shotshell" as "[t]he *cartridge* for a shotgun." AR155. But equally important to ATF's determination was its consideration of the need to apply the strictures of 26 U.S.C. § 5845(d) to the Reformation in a manner that enables the coherent application of the NFA's broader regulatory scheme. *See* AR156-158. In so doing, ATF explained that NFA firearms have long been regulated due to their "quasi-suspect character," *Staples*, 511 U.S. at 611-12, and that Congress has found they can "be used readily and efficiently by criminals," H.R. Rep. No. 83-1337, at A395 (1954). A long gun with a shortened barrel is "both dangerous and unusual" because "its concealability fosters its use in illicit activity," and "its heightened capability to cause damage." *United States v. Marzzarella,* 614 F.3d 85, 90-95 (3d Cir. 2010), *abrogated on other grounds*, *Frein v. Pennsylvania State Police*, 47 F.4th 247, 253 (3d Cir. 2022). Thus, reading "fixed shotgun shell" as Plaintiffs suggest, so as to wordlessly create an entire new subset of firearms that function the same, have the same firepower, and the same concealability as NFA weapons but fall outside of the NFA, would frustrate Congress' clear intent. *See* AR156-158 ("Congress evidenced no intent to create a category of non-NFA shoulder-fired short-barreled firearms subject only to GCA regulation").

This approach is consistent with the Supreme Court's instruction that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Regions Hosp. v. Shalala*, 522 U.S. 448, 460 n.5 (1998) (citations omitted); *see also Mellouli v. Lynch*, 575 U.S. 798, 809-10 (2015) ("Statutes should be interpreted 'as a symmetrical and coherent regulatory scheme.'") (citation omitted). Further supporting ATF's determination was its observation that a contrary reading of the statute would force ATF to privilege the design of the projectile fired by a weapon over the design of the firearm itself, contrary to the judicially-approved practice of considering a weapon's objective design features in order to ascertain the intent of the design in accordance with law. *See* Defs.' Mot. at 7-9. As ATF explained in its decision:

> eliminating from regulation under the NFA any smooth bore shoulder-fired firearm with a barrel or barrels of less than 18 inches utilizing a non-traditional shotgun shell would be inconsistent with the NFA's statutory scheme, because doing so would focus not on the design of the firearm itself, but the design of the projectile used therein. ATF would then be placed in the position of having to "classify" ammunition as a "fixed shotgun shell" or "fixed cartridge" (for purposes of an NFA "rifle") without any regulatory or published criteria as to how ATF interprets or applies those terms, as distinguished from mere "projectiles" expelled from GCA shotguns and rifles.

AR157.

Plaintiffs also point to the difference between the definitions of "shotgun" contained within the GCA and NFA to support their argument. Pls.' Mot. at 19. As Defendants have described, however, Congress's amendment to the GCA in 1997 was made with the express purpose of "expand[ing] the definition of the term 'antique firearm' to encompass these modern muzzle loading sporting firearms," 144 Cong Rec. S9102 (daily ed. July 28, 1998), which necessitated a change to the GCA alone because the "NFA does not have a replica prong in its definition of antique firearm, [so] no commensurate change was necessary to the NFA definition," Defs.' Mot. at 24. Contrary to Plaintiffs' assertion, then, there is no evidence to indicate that Congress created (through implication alone) a new class of short-barreled firearms falling outside the purview of the NFA. *See id.* at 24-25.

The Supreme Court's instruction to interpret different statutes to avoid conflicts between them affords a critical additional justification for ATF's classification decision. *See, e.g., Maine Cmty. Health Options v. United States*, 570 U.S. 296, 315 (2020). As relevant here, ATF explained that reading the term "fixed shotgun shell" in 26 U.S.C. § 5845(d) to require completely exempting the Reformation from regulation under the NFA (but not the GCA)—simply because it uses a "cartridge" rather than a "shell" when those terms are interchangeable—would thereby require the agency to create a process for regulated parties to seek authorization to sell, deliver, or transport such a "GCA-only" short-barreled firearm under 18 U.S.C. § 922(a)(4) and (b)(4). *See* Defs.' Mot. at 33-34 (detailing ATF's exploration of such a process). But the creation of such a "GCA-only" authorization process would itself require ATF to arguably run afoul of Congress' prohibition against maintaining such a system of

records outside the structure of the NFA. *See generally*, 18 U.S.C. § 926(a); Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 609 (November 18, 2011). The need to "regard each [statute] as effective" thus supports ATF's determination that the Reformation is properly classified as a short-barreled shotgun under both the GCA *and* the NFA, such that no database of authorization approvals would be required. *Maine Cmty. Health Options*, 570 U.S. at 315 (citation omitted). *See* AR153.[2]

To rebut this conclusion, Plaintiffs resort to misquoting the administrative record by inserting new words into ATF's classification decision from whole cloth, to make it appear as if ATF itself "*wanted to create*" a new searchable database, notwithstanding the limitations on maintenance of such a system of records imposed by Congress.  Pls.' Mot. at 23 (purportedly quoting AR153). But the first sentence Plaintiffs "quote" in the final paragraph of page 23 of their brief does not exist—the words "wanted to create" occur *nowhere* in the agency's decision. *Compare* Pls.' Mot. at 23 (inserting the words "wanted to create") *with* AR153.  Plaintiffs nevertheless lean heavily on their fictional quotation of ATF's classification decision to assert that the agency's "construction of the NFA was merely a pretext for bypassing Congress's prohibition on the creation of a database." Pls.' Mot at 25.  That argument too should accordingly be disregarded. Plaintiffs' misquotation of ATF's classification decision is all the more troubling now, after Defendants took steps to disabuse Plaintiffs and the Court of the notion

---

[2] The discovery of these conflicts and impediments, which occurred after ATF's initial classification decision, during the agency's exploration of what a hypothetical authorization process for GCA-only short-barreled shotguns might require, *see* Lange Decl. ¶¶ 20-28, also helps explain the agency's change in position between its initial Reformation classification (declining to opine on the status of the Reformation under the NFA) and its revised classification (classifying the Reformation as a firearm under both the GCA and NFA). As ATF explained in its amended decision: "[t]he lack of a viable GCA procedure, and concerns about the new collection of firearm owner information under the GCA not associated with a tax filing under the NFA, raises the issue of whether Congress intended there to be 'short-barreled shotguns' regulated solely under the GCA, and not subject to the registration and transfer requirements of the NFA. Given this contradiction, ATF has revisited the relevant definitions and the Congressional intent . . ." AR153-154 (citations omitted).  ATF thus adequately explained the reasons for amending its Reformation classification.

that ATF "wanted to create" a searchable database in their reply in support of their motion for summary judgment. *See* ECF No. 44 at 7 n.3 (warning that "Plaintiffs' assertion that ATF reclassified the Reformation because 'it wanted to create a 'searchable database' that maintains records of any [GCA] approval' is unfounded, illogical, and misrepresents the record evidence."). The Court should put an end to Plaintiffs' misrepresentations by rejecting their arguments here.

### 3.   The rule of lenity does not apply.

Plaintiffs cannot use the rule of lenity to manufacture ambiguity to rescue either of their classification challenges, as explained above. *See supra* 10-12. Regarding the Reformation in particular, Plaintiffs' citation to *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), *aff'd*, 602 U.S. 406 (2024), does not advance their argument. *See* Pls.' Mot. at 17, 23. In *Cargill*, the court determined that the definition of "machinegun" under 26 U.S.C. § 5845(b) was "plain" and "unambiguous," 57 F.4th at 451, 464, thus obviating any need to resort to the rule of lenity. But the court nonetheless proceeded to discuss how lenity would apply assuming that § 5845(b) was so ambiguous as to "provide [no] meaningful guidance" and to require the court to "'guess' at its definitive meaning." *Id.* at 469. No such grievous ambiguity exists in this case, as Plaintiffs themselves concede. *See* Pls.' Mot. at 17, 22.

**B.    Plaintiffs' argument that ATF unlawfully delayed promulgating GCA-only procedures for the Reformation fails because their claims are moot.**

At the threshold, any claims regarding ATF's alleged delay in producing GCA-only authorization forms for the Reformation prior to its reclassification (Counts 3 and 4) are moot because such forms are now available for the Reformation. In fact, Plaintiffs have been able to seek authorization to sell or transport the Reformation to their customers using those forms for over a year. *See* Am. Compl. ¶ 279 ("Now that ATF has classified the Reformation as both and [sic] NFA and GCA short-barreled rifle, the firearm may be sold and transferred using ATF Form 5320.4 and

ATF Form 5320.20."). [3] Because Franklin's Reformation firearm has been reclassified in a manner that provides access to the very authorization processes Plaintiffs seek, the Court is unable to grant relief from a "policy" that no longer applies to the firearms at issue in this case, and unable to compel ATF to create authorization forms which already exist.

An Article III court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). In particular, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). A live question must exist "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). Thus, "[i]t is of no consequence that the controversy was live at earlier stages in this case; it must be live when [the court] decide[s] the issues." *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998) (quoting *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990)). "Further, if [a] case is indeed moot, [courts] must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Id.*

The APA gives courts limited authority under § 706(1) to compel agency action unlawfully withheld or unreasonably delayed. But once the agency acts, relief under §706(1) "is no longer available to [a] plaintiff," and the claim is therefore moot. *Ctr. for Biological Diversity v. Kempthorne*, 498 F. Supp.

---

[3] To the extent Plaintiffs argue they are nevertheless still harmed by the imposition of additional requirements for sale or transfer of short-barreled firearms under the NFA, *see* Am. Compl. ¶ 279, that harm is immaterial to the mootness of their unlawful delay claims; such harm results from the Reformation's classification as an NFA firearm, *not* from ATF's alleged delay in promulgating procedures for GCA-only short-barreled firearms. Favorable judgment on Plaintiffs' unlawful delay and "enforcement policy" claims would do nothing to lessen authorization requirements of the NFA.

2d 293, 296–97 (D.D.C. 2007). *See Missouri ex rel. Nixon*, 163 F.3d at 484-85. As Plaintiffs admit, the requirements of 18 U.S.C. § 922(a)(4) and § 922(b)(4) are fulfilled for a firearm regulated under the GCA and NFA by the completion and approval of ATF Form 5320.4 (known as Form 4) and ATF Form 5320.20. *See, e.g.,* Am. Compl. ¶ 279.  It is therefore beyond dispute that because ATF has classified the Reformation as both a short-barreled shotgun under the GCA *and* a firearm under the NFA, Plaintiffs may avail themselves of the authorization process they seek, and are no longer subject to the alleged *de facto* "enforcement policy" they challenge. The Court cannot grant Plaintiffs relief from a policy that no longer applies to their firearms, nor can it compel ATF to create authorization forms which already exist. Counts 3 and 4 of the Amended Complaint are thus moot. *See Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (dismissing an appeal as moot because amendment "provided the plaintiffs the very relief their lawsuit sought"); *Missouri ex rel. Nixon*, 163 F.3d at 485 ("In other words, whatever wrong, if any, there may have been, changed circumstances have deprived us of the ability to provide the requested remedy. Therefore, it appears to us that the case is moot.") (citing *Hazen*, 914 F.2d at 150).

Unable to credibly contest that ATF's reclassification of the Reformation moots their claims, Plaintiffs instead invoke two exceptions to mootness, neither of which applies. *See* Pls.' Mot. at 29-30. First, Plaintiffs argue that mootness should be excused because Counts 3 and 4 are contingent on Count 2. *Id.* at 29 ("Absent issuance of forms and procedures for GCA-only firearms, Franklin will find itself precisely back where it started if this Court sets aside the agency's decision classifying the Reformation as an NFA shotgun but upholds ATF's GCA decision"). But this argument fails to address that Counts 3 and 4 are not only contingent on the success of Count 2, but also on ATF taking or refusing to take purely speculative additional actions, which have not and may never occur.

Even assuming Plaintiffs' partial success on Count 2, the proper remedy would be remand to ATF for further proceedings addressing any defects identified by the Court. *See Fla. Power & Light*,

470 U.S. at 744 ("If the record before the agency does not support the agency action . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.")  The outcome of such a remand is unknown, and the promulgation of a GCA-only authorization process might therefore never be required for the Reformation, because "ATF might not classify the Reformation as a GCA-only short-barreled shotgun at all on remand. Even if it did, there is no reason to believe that ATF would unreasonably delay issuance of such procedures in the manner Plaintiffs speculate." Defs.' Mot. at 27-28. Plaintiffs' assertion that "Franklin will find itself precisely back where it started if this Court sets aside the agency's decision classifying the Reformation as an NFA shotgun but upholds ATF's GCA decision" is thus purely speculative, Pls.' Mot. at 29. A justiciable dispute must "admit[] of specific relief through a decree of a conclusive character" and may not ask a court to "advis[e] what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937). *Cf. Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (the "ripeness requirement" serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies.") (citation omitted). Plaintiffs' claims are now purely hypothetical, and thus no longer present a justiciable dispute.

Nor does this case satisfy the voluntary cessation exception to mootness. *See* Pls.' Mot. at 29-30. That exception applies where the "defendant attempts to avoid . . . review by voluntarily ceasing allegedly illegal conduct." *Iowa Prot. & Advoc. Servs. v. Tanager, Inc.*, 427 F.3d 541, 543 (8th Cir. 2005). However, "the standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct." *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021). Unlike in *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007) (cited in Pls.' Mot. at 29), Plaintiffs

here have adduced no evidence upon which the Court can conclude that ATF would delay issuance of GCA-only processes were the Reformation to ultimately be classified as a GCA-only short-barreled shotgun in the future, or that such a delay would occur in a manner constituting an APA violation or a *de facto* "enforcement policy." To the contrary, Defendants have averred that "[i]f ATF's classification were ultimately vacated, ATF would take all necessary steps to comply with the Court's ruling and federal law, including revisiting the creation of forms for GCA-only short-barreled shotguns if necessary." ECF No. 44 at 7 n.2. Any future agency action would also necessarily turn on a different record, and the Court cannot prospectively review the record of a delay that has not yet occurred.

Moreover, the exception "does not apply when the voluntary cessation . . . occurs because of reasons unrelated to the litigation." *ACLU of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (citations omitted); *see, e.g., Teague v. Cooper*, 720 F.3d 973, 978 (8th Cir. 2013) (exception did not apply where legislature was not "seeking to 'moot a case'"). As Plaintiffs themselves conceded in their original complaint and sworn declaration, ATF's voluntary action here—reclassification of the Reformation—was pending *before this litigation even began*, dispelling any suggestion that ATF's reclassification was designed to moot proceedings which had yet to begin when ATF's amended classification was in progress. *See* Defs.' Mot. at 29 (citing Compl. Ex. A, Decl. of Jay Jacobson ¶ 53; Compl. ¶ 201). Plaintiffs have doggedly avoided acknowledging the fact of their prior concession throughout this litigation, *see generally* Pls.' Opp'n to Defs.' Mot. Summ. J. at 18-21, ECF No. 43, but they cannot avoid its fatal implication for their voluntary cessation argument. *See, e.g., Gutierrez v. DHS*, No. 18-1958, 2019 WL 6219936, at *6 (D.D.C. Nov. 21, 2019) (voluntary cessation exception did not apply when the voluntary action in question was pending before litigation started).

## C.   The absence of GCA-only authorization procedures for the Reformation was not an unlawfully delayed act required by law.

Even if Plaintiffs' claims were not moot, their arguments for summary judgment fail because the absence of sale or transfer authorization processes for hypothetical GCA-only short-barreled

shotguns is not an unlawfully delayed act required by law.

        1.   <u>Plaintiffs' unlawful delay argument fails because they are not entitled to mandamus.</u>

By their motion, Plaintiffs seek to "compel ATF to act," citing 5 U.S.C. § 706(1). Pls.' Mot. at 25. That is "an extraordinary remedy reserved for extraordinary situations." *Org. for Competitive Mkts.*, 912 F.3d at 463. And here, Plaintiffs' arguments for summary judgment fail because they plainly lack the "clear and indisputable right to relief" necessary for such extraordinary mandamus relief. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("*SUWA*") (noting that the APA "carried forward" the common law writ of mandamus in § 706(1)). "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n*, 812 F.3d at 189 (citation omitted). "These three threshold requirements are jurisdictional." *Id.*

At the threshold, then, Plaintiffs' § 706(1) claim can proceed only upon a showing that ATF "failed to take a *discrete* agency action that it is *required* to take." *SUWA*, 542 U.S. at 63-64. But Plaintiffs cannot identify a "specific, unequivocal command" concerning the timing of ATF's promulgation of authorization processes for GCA-only short-barreled shotguns, as is required for mandamus. *Id.* at 63 (citation omitted). They do not even attempt to demonstrate the existence of such a command in their motion. To the contrary, Plaintiffs concede that "Congress has *not* 'provided a timetable' in any substantive statute" or otherwise set a deadline for ATF to create authorization processes for hypothetical GCA-only short-barreled shotguns. Pls.' Mot. at 27 (emphasis added). That concession itself dooms their § 706(1) unlawful delay claim. *See, e.g., Prima Expl., Inc v. LaCounte*, No. 1:22-CV-143, 2023 WL 7019928, at *5 (D.N.D. Oct. 25, 2023) ("[plaintiff] does not point to any statute that compels the DOI to conclude its proceedings in a legal and timely fashion. Thus, there is no alleged ministerial or non-discretionary act unlawfully withheld or unreasonably delayed that this Court could

compel the [agency] to take. Accordingly, 5 U.S.C. § 706(1) does not give this Court subject matter jurisdiction"), *appeal filed*, No. 23-3694 (8th Cir. Dec. 15, 2023).

Indeed, federal law confers upon Defendants broad discretion to make determinations concerning when the sale, delivery, or interstate transportation of a "short-barreled shotgun, or short-barreled rifle," is "specifically authorized . . . consistent with public safety and necessity." 18 U.S.C. § 922(a)(4), (b)(4); *see also Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 220 (1930) ("Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself."). Augmenting that broad grant of discretion is the legislative history of 18 U.S.C. §§ 922(a)(4)-(b)(4), wherein Congress consistently referred to this list of covered weapons as "National Firearms Act weapons," demonstrating the absence of any specific, unequivocal command to promulgate separate authorization procedures for hypothetical *GCA-only* short-barreled firearms, as Plaintiffs demand. *See* H.R. Rep. No. 90-1577 at 13-14 (1968); S. Rep. No. 90-1501, at 33-34 (1968). Similarly, while 27 C.F.R. § 478.28(a) establishes procedures governing authorization for sale, delivery, and transportation of NFA firearms, neither it nor 18 U.S.C. § 922 requires ATF to promulgate processes for GCA-only firearms, as Plaintiffs concede. *See* 27 C.F.R. § 478.28(a); 18 U.S.C. § 922(a)(4), (b)(4); Pls.' Mot. at 27. Thus, ATF has already satisfied Congress' intent by creating forms by which Plaintiffs can seek authorization for the sale, delivery, and interstate transportation of existing NFA weapons like the Reformation and Antithesis—the only class of weapons contemplated by Congress in its creation of the 18 U.S.C. § 922(a)(4), (b)(4) authorization framework. *See* H.R. Rep. No. 90-1577 at 13-14 (1968); S. Rep. No. 90-1501, at 33-34 (1968) (contemplating authorization for "National Firearms Act weapons," not hypothetical GCA-only short-barreled firearms); Defs.' Mot. at 30, 32, 35.

In lieu of a specific, unequivocal command to promulgate the forms they seek, Plaintiffs fall back on an open letter, wherein ATF informed manufacturers that it was exploring the feasibility of

creating authorization procedures for GCA-only short-barreled firearms in an attempt to reconcile the "gap" created by ATF's initial incorrect classification of the Reformation as a GCA-only short-barreled shotgun.[4] *See* Pls.' Mot. at 32 (citing AR115). But ATF's discretionary exploration of such processes, absent any statutory requirement that they be adopted, is "[q]uite unlike a specific statutory command requiring an agency to promulgate regulations by a certain date" as would be required to establish an entitlement to mandamus relief. *SUWA*, 542 U.S. at 71. *See also Wilbur*, 281 U.S. at 220.

Nor can Plaintiffs establish an entitlement to mandamus by invoking 5 U.S.C. § 555(b). *See* Pls.' Mot. at 27. That generally applicable subsection of the APA—which provides that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"—is not a basis for relief under § 706(1), because "the general directive of [§] 555(b) is a far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed.'" *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) (quoting *SUWA*, 542 U.S. at 63). Plaintiffs' citation to *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 936 (D. Minn. 2011), is accordingly inapposite. *See* Pls.' Mot. at 27. There, the district court found that "once an adjustment of status application is properly before USCIS, the agency has an affirmative, nondiscretionary duty to process that application" under a separate statute, 8 U.S.C. § 1159. *Al-Rifahe*, 776 F. Supp. 2d at 935. No such freestanding affirmative nondiscretionary duty to act exists here, and thus § 555(b) is not a basis for relief under § 706(1). *See Hi-Tech Pharm. Co.*, 587 F. Supp. 2d at 9 ("a request for 'a

---

[4] As explained in the Lange Declaration, ECF No. 41-2, and Defendants' motion for summary judgment, the creation of such forms proved impractical, and due to concerns about the correctness of the initial classification (and the resulting concerns regarding creation of authorization procedures for transport or transfer of GCA-only short-barreled shotguns), ATF amended its classification of the Reformation on May 5, 2023. *See, e.g.,* Defs.' Mot. at 5-6. ATF's reclassification of the Reformation provided Plaintiffs the ability to sell, deliver, and transport both of the firearms at issue in this case, *see* Am. Compl. ¶ 279, and serves as an "adequate alternative remedy" for the alleged delay, further justifying rejection of Plaintiffs' § 706(1) claim. *Am. Hosp. Ass'n*, 812 F.3d at 189.

general order compelling compliance with [a statutory] mandate,' like Section 555(b), must fail because '[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action' under Section 706(1)."") (citation omitted).

In the absence of such a deadline or other "specific, unequivocal command" concerning ATF's promulgation of authorization processes for GCA-only short-barreled shotguns, Plaintiffs have failed to demonstrate the Court's jurisdiction over their unreasonable delay claim, and the motion for summary judgment should be denied. *SUWA*, 542 U.S. at 63; *cf. Prima Expl.*, 2023 WL 7019928, at *5 (dismissing § 706(1) claim absent "any statute that compels the [agency] to conclude its proceedings in a legal and timely fashion"); *Orlov v. Howard*, 523 F. Supp. 2d 30, 37 (D.D.C. 2007) ("there are no statutory guidelines compelling USCIS to adjudicate adjustment of status applications within a certain period of time. Thus, plaintiff plainly cannot assert that USCIS has failed to adjudicate his application within a time period in which it was *required* to do so.").

> 2. ATF did not unlawfully delay creation of GCA-only authorization processes for the Reformation.

Even if Plaintiffs had demonstrated entitlement to mandamus—which they have not—they fail to prove the existence of an unlawful delay under the *TRAC* factors. *See Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"); *Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014) (citing *TRAC* and rejecting claim of unlawful delay). When conducting this analysis, courts "must remember that, absent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable of [an administrative] proceeding is entitled to considerable deference." *Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987) (citation omitted). And even where a specific deadline exists, the Court must remain "wary of becoming the ultimate monitor of Congressionally set deadlines, as 'courts are not charged with general guardianship against all potential mischief in the complicated tasks of government.'" *Org. for Competitive Mkts.*, 912 F.3d at 463 (citation omitted).

_**Factors One and Two:**_ The first *TRAC* factor requires that the "time agencies take to make decisions" be governed by a "rule of reason", while the second factor provides that the content of this "rule of reason" can be found in a "timetable or other indication of the speed with which [Congress] expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 79-80 (citation omitted). These factors are dispositive here, because it is undisputed that "Congress has not 'provided a timetable' in any substantive statute" or otherwise set a deadline for ATF to create authorization processes for hypothetical GCA-only short-barreled shotguns. Pls.' Mot. at 27.  Because "Congress has established no statutory deadline[]," it "has left these matters to the agency's discretion, [and] a court may not mandate greater timeliness." *Long Term Care Pharmacy All. v. Leavitt*, 530 F. Supp. 2d 173, 186-87 (D.D.C. 2008); *see also Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (in the absence of such a timetable, the agency is "entitled to considerable deference" regarding any alleged delay).

Nor do Plaintiffs otherwise offer a "rule of reason" for the Court to apply. *TRAC*, 750 F.2d at 80. "That issue cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Thus, where an agency action "involves complex scientific, technological, and policy questions," the agency "must be afforded the amount of time necessary to analyze such questions so that it can reach considered results . . . that will not be arbitrary and capricious or an abuse of discretion." *Thomas*, 828 F.2d at 798-99. *See also supra* 27 (explaining that Plaintiffs' reference to 5 U.S.C. § 555(b), *see* Pls.' Mot. at 27, is no substitute for a specific and unequivocal statutory deadline).

Here, creation of the authorization processes Plaintiffs seek to compel would require entering uncharted territory. As stated above, there has never been a "GCA-only" short-barreled firearm

subject to the requirements of 18 U.S.C. § 922(a)(4), (b)(4) and its implementing regulations, 27 C.F.R. §§ 478.28, 478.98, without adhering to the requirements of the NFA as well. And while the NFA provides an avenue for transfer and interstate transportation of NFA firearms, for reasons explained in the Lange Declaration, this avenue could not be utilized for firearms that would not, and could not by law, be registered. *See* Lange Decl. ¶¶ 16-19. Plaintiffs themselves recognized that impediment. As stated by Franklin's counsel at the time: "The regulation does not contemplate the existence of a non-NFA short barreled shotgun. Normally, the [27 C.F.R. §] 478.98 certification is made on the Form 4. But clearly we cannot submit a Form 4 for a weapon that is not in the NFRTR." AR87.

ATF's attempt to create new processes brought with it a host of other difficult issues too, including the utilization of the background check system, treatment of "delayed" responses to the background check, the necessary retention of forms while adhering to the limitations set forth in 18 U.S.C. § 926(a), ATF's authority to interpret state law as necessary, the standard to be applied to determine "consistent with public safety and necessity," and the required avenue of appeal—if any— for a denial of authorization. *See* AR216-221; Lange Decl. ¶ 20-27.[5] Plainly, ATF's assessment of such complex legal, technical, and policy questions requires a substantial resource and time investment. Indeed, the agency extensively explored these issues prior to the reclassification of the Reformation and that exploration revealed that creating such processes was not consistent with Congress' heightened concern regarding NFA weapons and the resulting registration, approval and taxation requirements. *See* Lange Decl. ¶¶ 20-28. As the Eighth Circuit similarly recognized when denying a § 706(1) claim in *Organization for Competitive Markets,* "this is not a case where an agency has failed to take action in the face of multiple unambiguous commands." 912 F.3d at 463. *See also Irshad*, 754 F.3d at

---

[5] Plaintiffs fail to grapple with *any* of these considerations in their motion, *see* Pls.' Mot. at 25-32, despite this Court's instruction that they "should submit a motion with reference to the administrative record now available." ECF No. 49 at 2.

607-08 (denying a writ of mandamus to compel an agency to make a hasty decision "based upon a high-level analysis of complex, sensitive factors"); *Oil, Chem., & Atomic Workers Union v. OSHA*, 145 F.3d 120, 124 (3d Cir. 1998) (denying mandamus where agency had been "far from idle" in addressing action allegedly delayed).

Defendants agree that *Organization for Competitive Markets* provides a helpful point of comparison. There, USDA faced an express statutory deadline to promulgate certain regulations but failed to issue final rules within the period prescribed, yet the Eighth Circuit still found no relief was warranted. 912 F.3d at 462-63 (noting that USDA "proposed" several rules shortly after expiration of the statutory deadline, did not promulgate final rules until later, and even then only finalized rules on some of the subjects contemplated by the statute) (cited in Pls.' Mot. at 27). Here, by contrast, it is undisputed that Congress set *no* deadline for creation of authorization procedures. To the extent the statute contemplates the creation of any procedures at all, ATF has already satisfied Congress's intent by creating forms by which Plaintiffs can seek authorization to sell, deliver, or transport NFA firearms like the Reformation and Antithesis—the only class of weapons contemplated by Congress in its creation of the 18 U.S.C. §§ 922(a)(4), (b)(4) authorization framework. *See supra* 26; H.R. Rep. No. 90-1577 at 13-14; S. Rep. No. 90-1501, at 33-34 (contemplating authorization for "National Firearms Act weapons", not hypothetical GCA-only short-barreled firearms). Plaintiffs concede as much in their complaint, admitting that "[n]ow that ATF has classified the Reformation as both and NFA and GCA short-barreled rifle, the firearm may be sold and transferred using ATF Form 5320.4 and ATF Form 5320.20." Am. Compl. ¶ 279. Just as the Eighth Circuit declined to issue "extraordinary" mandamus relief in *Organization for Competitive Markets*, this Court should likewise decline to do so here, particularly since both parties agree that in this case, Congress declined to set *any* deadline for the agency action Plaintiffs seek to compel.

31

**_Factors Three and Five:_** As to the "nature and extent of the interests prejudiced by delay," _TRAC_, 750 F.2d at 80, Plaintiffs point primarily to their economic interest, but even here their arguments are contradicted by their prior admissions in this case. Most glaringly, Plaintiffs argue that Franklin "has lost millions of dollars because of ATF's delay," Pls.' Mot. at 28. _See also id._ at 29 (alleging that delay "cuts into Franklin's patent-protected period to market the Reformation"). But these arguments rest on a demonstrably false premise—that "Franklin has not been able to sell the Reformation" due to the absence of procedures for GCA-only short-barreled firearms. As Plaintiffs themselves conceded in their amended complaint, however, Franklin is currently able to sell the Reformation to willing customers, and has been free to do so for over a year now. _See_ Am. Compl. ¶ 279 ("Now that ATF has classified the Reformation as both and [sic] NFA and GCA short-barreled rifle, the firearm may be sold and transferred using ATF Form 5320.4 and ATF Form 5320.20."). Plaintiffs' misrepresentation undercuts their entire argument on factors three and five, and the Court should accordingly reject their claim that they are prejudiced by any prior delay, which no longer restricts their ability to sell or market the Reformation today.

Plaintiffs also conclusorily assert that the "human health and welfare" factor somehow favors their case, Pls.' Mot. at 28, but their products are indisputably highly dangerous short-barreled firearms of a class that Congress has deemed attractive to criminals by virtue of their "quasi-suspect character," _Staples_, 511 U.S. at 611-12. Rather, Plaintiffs' interest in speeding what it hopes will be commercial authorization to sell hypothetical GCA-only short-barreled firearms is plainly and purely economic. A prior delay in public's ability to "buy receive, and transport" Plaintiffs' product (which no longer prejudices customers since the Reformation is now able to be sold) does not amount to harm to human health and welfare. Pls.' Mot. at 28; _cf. In re Barr Labs., Inc._, 930 F.2d 72, 75 (D.C. Cir. 1991) (it can fairly be "assume[d]" that the interest of a generic drug manufacturer in obtaining approval to market its products was "entirely commercial").

*Factor Four:* When the fourth *TRAC* factor weighs in an agency's favor, courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it." *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100. That factor tilts heavily in Defendants' favor here, as Plaintiffs fail to establish that the Court has any basis to "reorder[] [ATF's] priorities." *In re Barr Labs.*, 930 F.2d at 76. "The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Id.* And here, Plaintiffs' assertion that creating the authorization process they seek "would not require significant time or resources" is contradicted by the record evidence. Pls.' Mot. at 31. To reiterate, the creation of authorization processes for weapons possessing features Congress deemed particularly dangerous and attractive to criminals implicates serious public safety concerns, as Congress recognized in requiring ATF to consider whether said authorization is "consistent with public safety and necessity." 18 U.S.C. § 922(a)(4), (b)(4). ATF devoted significant resources to exploring the feasibility of such procedures prior to its reclassification of the Reformation. *See generally*, Lange Decl. ¶¶ 20-28. A court order compelling ATF to create authorization processes for hypothetical GCA-only short-barreled shotguns in just 30 days, as Plaintiffs seek, would judicially curtail the agency's consideration of these complex issues, *see supra* 33-34, and instead grant Plaintiffs' policy preferences a super-priority over other urgent and complex tasks facing the agency.

As Plaintiffs themselves point out, during the time of the alleged delay, ATF was drafting and finalizing *Definition of "Frame or Receiver" and Identification of Firearms*, "a complex rule that amended more than a dozen federal regulations." Pls.' Mot. at 31; *see also* 87 Fed. Reg. 24,652 (Apr. 26, 2022) (noting ATF responded to over 290,000 comments received)[6]; *In re Barr Labs.*, 930 F.2d at 75 (refusing to grant relief, although the other *TRAC* factors favored it, where "a judicial order putting [plaintiff] at

---

[6] In addition, ATF was also drafting and finalizing *Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023) (noting over 237,000 comments received).

the head of the queue [would] simply move[] all others back one space and produce[] no net gain."). When faced with such competing priorities, "[d]ue to its expertise, [ATF] must be permitted flexibility in navigating th[ese] tough choices[.]" *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 305 (D.D.C. 2014).

**_Factor Six:_** As to the final factor, Plaintiffs assert that "the Court could find a form of impropriety here," simply because the alleged delay prevents the sale, delivery, and transportation of GCA-only short-barreled shotguns. Pls.' Mot. at 31-32. But this argument is curricular: it assumes that the alleged delay is in bad faith simply because there was delay. The Court should reject this *ipso facto* argument because "the mere fact of a delay is insufficient to show impropriety." *Chowdhury v. Blinken*, Case No. 1:21-cv-1205-RCL, 2022 WL 136795, at *5 (D.D.C. Jan. 14, 2022). To the contrary, "[t]he presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties[,]" *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926) (citation omitted); *Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) (similar).

Plaintiffs' argument that the absence of authorization procedures for GCA-only short-barreled shotguns creates a "gap in the federal firearm regulations" is also misleading. Pls.' Mot. at 32. First, the authorization framework established by Congress at 18 U.S.C. §§ 922(a)(4), (b)(4) does not contemplate (much less require) the creation of regulatory processes for GCA-only short-barreled firearms at all, as explained above. *See supra* 26 (citing H.R. Rep. No. 90-1577 at 13-14; S. Rep. No. 90-1501 at 33-34 (contemplating authorization for "National Firearms Act weapons", not hypothetical GCA-only short-barreled firearms)). And second, as Defendants noted in briefing on their motion for summary judgment, ECF No. 44 at 8, the "gap" Plaintiffs' reference was created not by the lack of procedures itself, but by ATF's initial erroneous classification of the Reformation as a GCA-only short-barreled shotgun, as ATF explained in its open letter. *See* AR107 ("*Because GCA/SBS firearms*

34

*have not previously been available in the marketplace*, existing federal firearms regulations do not provide a mechanism to process requests . . . pursuant to Sections 922(a)(4) or (b)(4)") (emphasis added). ATF eliminated this gap by correcting its classification of the Reformation, which provided Plaintiffs the ability to seek the authorization they desire through established procedures. Plaintiffs again offer no response to these points, and the final *TRAC* factor therefore also favors ATF.

Because the *TRAC* factors favor ATF, the Court should deny Plaintiffs' motion for summary judgment if it does not first reject their entitlement to relief at the threshold. But even assuming, *arguendo*, that the factors suggested that ATF had unlawfully delayed taking an action required by law, "[e]quitable relief, particularly mandamus, does not necessarily follow a finding of a violation: respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Labs.*, 930 F.2d at 74 (citation omitted); *see also, e.g., Org. for Competitive Mkts.*, 912 F.3d at 462; *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 505 (9th Cir. 1997) (relief under Section 706(1) remains discretionary at all times, "even if all elements [of a *TRAC* analysis] are satisfied."). Particularly now that Franklin is free to sell the Reformation using existing procedures, *see* Am. Compl. ¶ 279, the Court should decline to award any relief on Plaintiffs' § 706(1) claim.

**D.    ATF's alleged prior delay in promulgating GCA-only of authorization processes for the Reformation does not amount to a current arbitrary and capricious enforcement action.**

Assuming that Plaintiffs' arbitrary enforcement policy claim was not moot, their arguments still fail because delayed promulgation of the forms and procedures Plaintiffs seek does not constitute final agency action within the meaning of the APA. *See* 5 U.S.C. § 704 (limiting "Actions reviewable" to those "made reviewable by statute and final agency action for which there is no other adequate remedy in a court[.]"). Even if it did, any delay in promulgating authorization processes for the GCA-only short-barreled shotguns is reasonable, because no such firearms exist.

35

1.  Delayed promulgation of the forms and procedures Plaintiffs seek does not
    constitute a final agency action challengeable under 5 U.S.C. § 704.

Plaintiffs' argument that ATF's delay in promulgating forms for the Reformation constitutes

an arbitrary and capricious enforcement policy fails because an action the agency has *not taken* cannot

constitute a "final agency action" within the meaning of the APA. 5 U.S.C. § 704. *Cf. Pub. Citizen v.

U.S. Trade Representative*, 5 F.3d 549, 552 (D.C. Cir. 1993) (agency's failure to prepare an Environmental

Impact Statement independently required by statute was not final agency action). The APA does not

subject to judicial review every act of an agency, but rather limits its waiver of sovereign immunity to

review of "[a]gency action made reviewable by statute and final agency action for which there is no

other adequate remedy in a court." 5 U.S.C. § 704; *see also id.* § 702 ("A person suffering legal wrong

because of agency action . . . is entitled to judicial review thereof."); *U.S. Army Corps of Eng'rs v. Hawkes

Co.*, 578 U.S. 590, 597 (2016). A challenge under the APA also must be directed at a discrete,

identifiable agency action the agency has taken or failed to take. *See SUWA*, 542 U.S. at 62–64. The

APA does not permit a "broad programmatic attack" on a general course of conduct. *Id.* at 55.

Challenges to non-final agency action are therefore barred by sovereign immunity. *See United States v.

Mitchell*, 445 U.S. 535, 538 (1980).

For an agency action to be "final" such that it may be reviewed under 5 U.S.C. § 706(2), two

conditions must be met: "[f]irst, the action must mark the consummation of the agency's

decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second,

the action must be one by which rights or obligations have been determined, or from which legal

consequences will flow." *Hawkes Co.*, 578 U.S. at 597 (citations omitted). *See also Franklin v.

Massachusetts*, 505 U.S. 788, 796-97 (1992) (for agency action to be final, its impact must be "sufficiently

direct and immediate" and not "tentative"). As to the first prong, Plaintiffs themselves argue that ATF

had not reached the consummation of its decision-making process regarding the authorization

procedures they seek. *See* Pls.' Mot. at 32 (acknowledging that ATF had not completed "developing

the procedures and forms to address this new type of firearm."). And as to the second prong, it is indisputable that the *absence* of authorization forms is not itself an action which determines the rights or obligations of any party, or from which legal consequences will flow. Rather, ATF's prior decision to classify the Reformation as a short-barreled shotgun under the GCA alone—which has since been mooted by ATF's amended classification of the Reformation—was the agency action giving rise to the legal consequences Plaintiffs allege in Count 4. *See FTC v. Standard Oil of Cal.*, 449 U.S. 232, 239 (1980) (agency action is deemed final if it is "definitive" and has a "direct and immediate" effect on the party challenging the action) (citations omitted); *Sisseton-Wahpeton Oyate v. U.S. Corps of Eng'rs*, 888 F.3d 906, 914-15 (8th Cir. 2018) (letter issued by the Army Corps of Engineers was not a final agency action because it did not "affect the legal rights" of any person).

Because any delay in promulgating authorization processes for GCA-only short-barreled shotguns does not constitute a final agency action—as Plaintiffs concede by virtue of their § 706(1) unlawful delay claim—that alleged delay cannot also be challenged under as a final enforcement policy under 5 U.S.C. § 706(2).

> 2.    Any delayed promulgation of the forms and procedures Plaintiffs seek was neither arbitrary nor capricious.

Plaintiffs' final claim also fails for another reason: because no weapon currently in existence is classified as a GCA-only short-barreled shotgun, the absence of authorization forms for such hypothetical firearms is not "arbitrary and capricious." Pls.' Mot. at 32-33. Indeed, a decision to spend scarce agency resources promulgating procedures that would apply to no weapon currently in existence would itself lack a reasoned basis. *Cf. Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 42 (D.D.C. 2021) ("the Court must endeavor to avoid involving itself in the minutiae of agency decision making, particularly when it concerns 'the allocation of scarce resources' at issue here.") (quoting *Cobell v. Norton*, 428 F.3d 1070, 1073 (D.C. Cir. 2005)). It is thus perfectly rational for ATF

not to have promulgated forms by which to seek authorization to sell or transport GCA-only short-barreled shotguns when no such weapon exists.

Contrary to Plaintiffs' assertion that "ATF has never offered any explanation" for the absence of these forms, the agency plainly articulated its reasoning during the administrative process, explaining that such forms did not exist "*[b]ecause GCA/SBS firearms have not previously been available in the marketplace.*" AR107 (emphasis added). *See also* Lange Decl. ¶¶ 20-28 (detailing complications weighing against the creation of GCA-only authorization processes that the agency considered while exploring this option). So too today, there exist no GCA-only short-barreled shotguns in the marketplace, and it thus remains irrational for ATF to expend scarce agency resources to promulgate and administer complex procedures for a purely hypothetical firearm.

Plaintiffs further argue that ATF's delay is "not in accordance with law," Pls.' Mot. at 33, but that argument merely rehashes their claim for mandamus relief. As explained above, the 18 U.S.C. § 922(a)(4), (b)(4) authorization framework established by Congress plainly does not require ATF to promulgate of procedures for a class of GCA-only short-barreled firearms that does not exist. *See supra* 26 (citing H.R. Rep. No. 90-1577 at 13-14 (1968); S. Rep. No. 90-1501, at 33-34 (1968) (contemplating authorization for "National Firearms Act weapons", not hypothetical GCA-only short-barreled firearms)).

## III. This Court's order denying Plaintiffs' prior motion for summary judgment as premature forecloses Plaintiffs' waiver and forfeiture arguments.

Finally, Plaintiffs argue that Defendants have waived and forfeited the ability to respond to their renewed motion for summary judgment on the merits at all because, in their telling, Defendants could have raised such arguments in response to Plaintiffs' prior motion. Pls.' Mot. at 39. But Plaintiffs omit that the Court subsequently denied their initial motion as "premature," holding that merits

arguments could not be considered in the absence of the administrative record.  *See* ECF No. 49 at 2.[7]

Accordingly, Defendants could not have responded on the merits to Plaintiffs' "premature" motion—

and the Court would have been unable to consider the merits even if Defendants had so responded—

because as this Court correctly recognized, judicial review under the APA "'**is confined to the

administrative record**'"  and "Plaintiffs' motion was filed before the administrative record was

produced." *Id.* (quoting ECF No. 25-1 at 13 n.4) (emphasis in original).  Because the Court could not

have considered merits arguments in response to Plaintiffs' premature motion due to the absence of

an administrative record, such arguments were thus unavailable to Defendants, and Defendants have

accordingly not waived or forfeited the merits of this case.  The cases cited in Plaintiffs' brief confirm

that a waiver or forfeiture argument fails where the litigant "could not have made th[e] argument in

their response brief." *Zoller v. UBS Sec. LLC*, No. 16 C 11277, 2019 WL 2371724, at *3 (N.D. Ill. June

5, 2019) (cited in Pls.' Mot. at 39). Such is the case here.[8]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' renewed motion for summary

judgment.

---

[7] District Courts routinely deny motions for summary judgment filed at the outset of a case as premature. *See, e.g., Drake v. Stenehjem*, No. 1:20-CV-00231, 2021 WL 5585071 (D.N.D. July 30, 2021) (Traynor, J.). Such a denial does not then prohibit the non-moving party from making merits arguments at a later stage of the case, despite the absence of such arguments in their response to the procedurally improper premature motion. *See id.* at *5 (denying motion for summary judgment as premature while  permitting both parties to "file dispositive motions at the appropriate time.").

[8] In any event, Rule 56 permits the Court to "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Thus, even if the merits of this case had been waived (and they have not), that would not be an impediment to the Court denying Plaintiffs' motion for summary judgment and granting judgment in Defendants' favor as Defendants have requested.

Dated: September 20, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ *Andrew J. Rising*
ANDREW J. RISING
D.C. Bar No. 1780432
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 11406
Washington, D.C. 20005
Phone:   (202) 514-0265
E-mail:   andrew.j.rising@usdoj.gov

*Counsel for Defendants*