## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:23-cv-00003-DLH-CRH |
| MERRICK B. GARLAND, *et al.*, | |
| Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFFS'
## RENEWED MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................................... i

INTRODUCTION ...........................................................................................................................1

ARGUMENT...................................................................................................................................1

    I.       ATF FAILS TO REBUT THE REFORMATION CLAIMS...................................3

          A.      The Reformation Lacks A "Smooth Bore.".................................................3

          B.      The Reformation Does Not Fire A "Fixed Shotgun Shell." .......................5

          C.      ATF Unlawfully Delayed Procedures For GCA-Only Shotguns. ...............7

    II.      ATF FAILS TO REBUT THE FAI-15 ANTITHESIS CLAIMS...........................7

CONCLUSION...............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Gardner,*
    513 U.S. 115 (1994)...................................................................................6

*Calcutt v. FDIC,*
    598 U.S. 623 (2023)...................................................................................8

*CSX Transp., Inc. v. Alabama Dep't of Revenue,*
    562 U.S. 277 (2011)...................................................................................5

*In re Cumbess,*
    960 F.3d 1325 (11th Cir. 2020) .................................................................4

*FRAC v. Garland,*
    112 F.4th 507 (8th Cir. 2024) ...................................................................2

*Garland v. Cargill,*
    602 U.S. 406 (2024)...................................................................................6

*Groff v. DeJoy,*
    600 U.S. 447 (2023)...................................................................................1

*Indep. Petrol. Ass'n of Am. v. DeWitt,*
    279 F.3d 1036 (D.C. Cir. 2002)..............................................................10

*Loper Bright v. Raimondo,*
    144 S. Ct. 2244 (2024)..............................................................................2

*Motor Vehicle Mfrs. Assn. v. State Farm,*
    463 U.S. 29 (1983)..................................................................................10

*Ohio v. EPA,*
    144 S. Ct. 2040 (2024)............................................................................10

*RCI Ent. v. San Antonio,*
    2006 WL 1149173 (W.D. Tex. Apr. 14, 2006).........................................7

*Reves v. Ernst & Young,*
    494 U.S. 56 (1990)...............................................................................4, 5

*Rotkiske v. Klemm,*
    589 U.S. 8 (2019)......................................................................................5

*Sig Sauer v. Jones*,
  133 F.Supp.3d 364 (D.N.H. 2015) ................................................................2, 9

*Sig Sauer v. Brandon*,
  826 F.3d 598 (1st Cir. 2016) .......................................................................9

*T.E.A.M. Scaffolding Sys. v. United Bhd. of Carpenters & Joiners*,
  29 F. App'x 414 (8th Cir. 2002) ..............................................................9, 10

*United States v. Jackson*,
  124 F.3d 607 (4th Cir. 1997) ......................................................................3

*United States v. Janik*,
  723 F.2d 537 (7th Cir. 1983) ......................................................................3

*United States v. Pulsifer*,
  39 F.4th 1018 (8th Cir. 2022) .....................................................................8

*United States v. Spinner*,
  152 F.3d 950 (D.C. Cir. 1998) ....................................................................3

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992) .................................................................................9

*Walmart v. DOJ*,
  2020 WL 8257236 (E.D. Tex. Dec. 9, 2020) ..................................................2

**Statutes**

5 U.S.C. § 551 ............................................................................................7

18 U.S.C. § 922 ..........................................................................................6

**Other Authorities**

27 C.F.R. § 479.11 ......................................................................................6

Antonin Scalia & Bryan A. Garner, Reading Law (2012) .................................5

Lawrence B. Solum, *The Fixation Thesis: The Role of Historical Fact in Original
  Meaning*, 91 Notre Dame L. Rev. 1 (2015) ..................................................4

*Webster's New Int'l Dictionary* (1923) ..........................................................4

## INTRODUCTION

ATF's opposition carries all the hallmarks of a brief that lacks textual support. ATF repeatedly asserts deferential review even though the Supreme Court has eliminated judicial deference to an agency's statutory interpretations. ATF appeals vaguely to "context" without identifying any context that supports its atextual readings of the phrases at issue. And ATF simply ignores Plaintiffs' rebuttals of its arguments.

Regarding the Reformation, ATF continues to argue that whether a weapon's bore is "smooth" does not depend on the bore's "texture," ATF Opp. 13, but the word "smooth" most definitely *does* refer to an object's texture. ATF resists that obvious reading by continuing to cite online dictionary definitions of a word that does not exist in the statutes. Plaintiffs have explained multiple times that this is interpretive error in multiple ways, and ATF simply ignores these arguments. ATF, moreover, makes no textual argument that the Reformation fires a "shotgun shell," resorting to purpose-based assertions that are not grounded in the text.

On the FAI-15 Antithesis, ATF misunderstands the statutory phrase "designed and made … to fire only a single projectile." As ATF's own citation explains, that phrase centers on manufacturer intent. And capability plus marketing is determinative of manufacturer intent. ATF cites out-of-circuit cases it thinks helpful (they are not), but offers no logical reason why a manufacturer might not intend a product to do something it is capable of and marketed for.

Statutory interpretation must "heed … what a statute actually says," *Groff v. DeJoy*, 600 U.S. 447, 468 (2023), and that decides this case.

## ARGUMENT

As an initial matter, ATF invokes the wrong legal standard, continuing to demand interpretive deference even after *Loper Bright*. ATF asserts (at 10) that its decision "is entitled to deference" and (at 6) that the standard is "highly deferential." *See also* ATF MSJ at 9, Dkt. 41-1 (arguing that "deference to ATF's *interpretation*" is "especially warranted in firearm classification cases" (emphasis added)). ATF continues to heavily rely on a case in which the court "deferred to ATF's *interpretation*" of a different provision. *Id.* (citing *Sig Sauer*) (emphasis added). And ATF

argues that it wins because it purportedly "reasonably *interpreted*" the various statutory phrases. *Id.* at 21 (emphasis added); *see also, e.g.*, ATF Opp. 12 ("ATF's classification was *reasonable*.").

*Loper Bright* directly rejects these arguments. Agencies still receive reasonableness review for factfinding, but this lawsuit predominantly concerns pure questions of "legal interpretation." *Loper Bright v. Raimondo*, 144 S. Ct. 2244, 2268 (2024). Specifically, Plaintiffs' claims concern the meaning of "fires through a smooth bore" and "fixed shotgun shell" and "designed ... and made ... to fire only a single projectile." And under *Loper Bright*, this Court must determine the meaning of those phrases with its independent judgment and "may not defer" to ATF's reading. *Id.* at 2273; *see also FRAC v. Garland*, 112 F.4th 507, 519 & n.12 (8th Cir. 2024) (reasonableness review not applicable to statutory questions). Plaintiffs have explained all this, *see* Dkt. 45, and ATF's only response (in two filings now) is that ATF and *Sig Sauer* have not directly cited the overruled *Chevron* decision, *see* Dkt. 46 at 1. That is not a serious rejoinder—no one thinks that *Loper Bright* allows interpretive deference so long as *Chevron* is not cited.

ATF's interpretations are not entitled to *Skidmore* respect either. Plaintiffs gave three reasons why in their July 8 notice of supplemental authority, *see* Dkt. 45 at 2–3, and ATF simply ignored them in its response, *see* Dkt. 46. Now, ATF suggests (at 10–11) that this Court should "seek aid" from ATF's interpretation, citing *Loper Bright*'s discussion of *Skidmore*, but ATF again simply ignores Plaintiffs' arguments. Having had two chances, ATF apparently is unable to offer even the beginning of a defense of its request for *Skidmore* respect.[1]

---

[1] ATF observes (at 1) that this is Plaintiffs' "third attempt to argue the merits," but the increased litigation costs resulting from ATF's procedural machinations should not count in its favor. The two extra rounds have been caused by: (1) an amended complaint forced by ATF's about face on its NFA classification of the Reformation; and (2) ATF withholding its filing of administrative-record materials—which consist almost entirely of correspondence between Plaintiffs and ATF—for *11.5 months* after the amended complaint was filed, *compare, e.g.*, *Sig Sauer v. Jones*, 133 F.Supp.3d 364 (D.N.H. 2015) (ATF filed administrative record within 30 days of amended complaint); *Walmart v. DOJ*, 2020 WL 8257236 (E.D. Tex. Dec. 9, 2020) (DOJ representing that it is "common in APA cases" for federal agencies "promptly" to "produce an administrative record" even while "brief[ing] threshold defenses"). As Judge Hovland appeared to recognize, the delay is wholly attributable to ATF. *See* Dkt. 37 at 2.

I.     **ATF FAILS TO REBUT THE REFORMATION CLAIMS**

    A.     **The Reformation Lacks A "Smooth Bore."**

ATF does not dispute that the Reformation does not fire through a bore that is smooth, and that is decisive. The interpretive question, as ATF puts it, is whether the Reformation "has a 'smooth bore.'" ATF MSJ 20. The statutory phrase "smooth bore" is an adjective followed by a noun that the adjective modifies. So, the question is whether a weapon's bore is smooth.

ATF resists that common-sense conclusion with deflection. ATF leads not by examining the statutory text but rather by citing (at 12) an unsubstantiated assertion in an industry trade publication as if it were binding precedent. That publication did not purport to examine the statutory language and is not authoritative. Next, ATF formulaically incants (at 13, 14) the principle that context matters, as if that is a silver bullet for unfavorable statutory text. But a litigant running from plain meaning by invoking context must explain why context helps it, and ATF has nothing on that score. *See* Dkt. 43 at 13. All ATF offers (at 14) is that "the relevant context is supplied by the GCA and NFA," which "pertain exclusively to the regulation of firearms." True enough, but that obviously does nothing to suggest that a "smooth bore" can be unsmooth. ATF also cites (at 14) the principle that terms of art are interpreted with reference to the cluster of ideas surrounding them, but makes no argument that "fires through a smooth bore" uses a term of art and cites no cluster of ideas. *See* Dkt. 43 at 13–14.

Still avoiding the statutory text, ATF next cites (at 13) three non-binding cases, but Plaintiffs have already explained why those cases are consistent with their interpretation and ATF has no response. In *United States v. Janik*, the court held that a weapon with a smooth bore is still a shotgun even if not "free from dirt." 723 F.2d 537, 549 (7th Cir. 1983). Plaintiffs' position is in no tension with the obvious fact that a shotgun is not transformed into something else when it accrues dirt. *United States v. Jackson* just quotes *Janik*. 124 F.3d 607, 613 n.4 (4th Cir. 1997). And *United States v. Spinner* merely says that a particular weapon "could well have had a smooth or a rifled bore." 152 F.3d 950, 958 (D.C. Cir. 1998).

ATF vastly overreads the occasional references to smooth as unrifled. Plaintiffs have

explained this multiple times, *see* Dkt. 25-1 at 16; Dkt. 43 at 13, Dkt. 50-1 at 16, and ATF offers no response whatsoever. A "bore of smooth surface" undoubtedly has often been "disting[uished] from r.fled [bores]." *Webster's New Int'l Dictionary* (1923). But that reflects historical reality, not definitional scope. Because for most of history the common way for a bore to become unsmooth has been through rifling, it is natural for dictionaries and courts to reference the fact that a smoothbore has no rifling. But A→~B (if rifled then not smooth) and B→~A (if smooth then not rifled) do not imply ~B→A (if not smooth then rifled). *See In re Cumbess*, 960 F.3d 1325, 1335 (11th Cir. 2020) ("[T]here's actually a name for the logical trap-door through which [ATF] has fallen—it's called the fallacy of 'denying the antecedent.'" (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring)). And just because most bores in existence at the time of enactment were either smooth or rifled does not mean that the definitional universe of bores consisted solely of those that are smooth or rifled. ATF has no rejoinder.

Seven paragraphs in ATF finally attempts to interpret the statutory text, and its effort reveals why that analysis is buried. ATF starts (at 14–15) by once again citing online dictionary definitions of a term that does not exist in the statutes. Plaintiffs have repeatedly explained that citing 2024 dictionaries for 1934 statutory language is interpretive malpractice. *See, e.g.*, Dkt. 45 at 3; Dkt. 50-1 at 13–14. It is "contemporaneous editions" of dictionaries that an interpreter should consult, not modern dictionaries. *Reves v. Ernst & Young*, 494 U.S. 56, 77 (1990). This is not controversial. *See* Lawrence B. Solum, *The Fixation Thesis: The Role of Historical Fact in Original Meaning*, 91 Notre Dame L. Rev. 1, 2 (2015) (the fixed-meaning canon is "intuitively obvious, even self-evident," as a matter of language).

ATF also continues to cite (at 14–15) definitions of "smoothbore" and "smooth-bore" even though the statutes do not use that word. In the actual statutes, "smooth bore" is not a single-word adjective (that modifies something else) or noun (that stands by itself). Rather, "smooth" is an adjective that modifies the separate word "bore." To see why this is incontestable, one need only replace "smooth bore" with an adjective. The result is an abomination of a sentence like "fires through a blue." A noun-less adjective simply does not go there. Plaintiffs have explained this,

4

*see, e.g.*, Dkt. 43 at 12; Dkt. 50-1 at 14–15, and ATF offers no rejoinder.

ATF now additionally cites (at 15) an 1859 dictionary that it did not cite in its classification decision, but its fishing trip does not help it. For one, the dictionaries that Plaintiffs cited from 1914, 1923, and 1934 trump any definition written 75 years before enactment. *See, e.g.*, *Reves*, 494 U.S. at 77 ("contemporaneous" definitions control). Those dictionaries establish that "smooth" meant what it means now, and that even the compound word "smoothbore" meant "having a bore of smooth surface." *See* Dkt. 50-1 at 15–16 (quoting enactment-era dictionaries). Second, as discussed, a reference to a smooth bore as one that is unrifled reflects historical reality, not definitional scope. *See* Antonin Scalia & Bryan A. Garner, Reading Law 418 (2012) (a dictionary definition "cannot delineate the periphery" of the term).  That smooth bores are "not rifled in any way," ATF Opp. 15, is fully consistent with Plaintiffs' position. ATF draws the additional inference (at 15) that all unrifled bores are smooth, but that again violates Logic 101: B→~A (if smooth then not rifled) does not imply ~B→A (if not smooth then rifled). Had Congress meant to reference all unrifled bores, it would have used language to that effect. *See Rotkiske v. Klemm*, 589 U.S. 8, 13–14 (2019) (courts "presume that Congress says in a statute what it means and means in a statute what it says" (cleaned)). Congress instead referenced bores that are "smooth."

Finally, ATF does not deny that any ambiguity must be resolved in Plaintiffs' favor under the rule of lenity. *See* Renewed MSJ 17. ATF argues (at 20) that there is no ambiguity, but cannot dispute that it loses if any ambiguity does exist.

**B.    The Reformation Does Not Fire A "Fixed Shotgun Shell."**

ATF does not like that the NFA limits its shotgun definition to weapons that fire a shotgun shell, but "Congress wrote the statute it wrote." *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 562 U.S. 277, 296 (2011). ATF previously determined that the Reformation "is not a shotgun as defined by the NFA" because it is "not chambered for shotgun shells." AR114. ATF was right then. ATF forthrightly acknowledges (at 16) that under its new reading "'shell' and 'cartridge' are interchangeable" in contravention of the meaningful-variation canon. And ATF does not deny that at the time of enactment those terms had well-understood and distinct meanings—they were not

5

interchangeable. *See* Renewed MSJ 17–18. The plain text controls.

ATF's responses are those typical of a litigant fighting plain meaning. ATF never argues that "shell" and "cartridge" have coextensive linguistic meaning. Instead, ATF appeals (at 17–18) to purported statutory purpose. But courts cannot disregard statutory text "merely because it draws a line more narrowly than one of [the statute's] conceivable statutory purposes might suggest." *Garland v. Cargill*, 602 U.S. 406, 427 (2024). In *Cargill*, for example, the Supreme Court rejected a similar purpose-based argument from ATF about the NFA. *Id.*; *see also, e.g.*, Dkt. 43 at 14–17.

ATF also deploys a red herring, asserting (at 16) that the *GCA* uses "shell" and "cartridge" interchangeably because ATF used them interchangeably when promulgating GCA-implementing regulations prior to a GCA amendment. But courts do not presume "adoption of a previous administrative construction" that "contradict[s] the statute," *Brown v. Gardner*, 513 U.S. 115, 120–21 (1994), and more importantly, the GCA is not the statute being interpreted. The *NFA* regulations make clear that "shells" and "cartridges" are distinct. *See* 27 C.F.R. § 479.11. Any congressional acquiescence to ATF's regulations confirms that ammunition type matters under the NFA.

ATF also asserts (at 18–19) that the NFA's plain meaning creates a conflict with the Firearm Owners' Protection Act, but that is wrong. The GCA does not require a GCA-only database, *contra* ATF Opp. 18–19; it merely requires ATF to authorize weapon transactions "consistent with public safety and necessity." 18 U.S.C. § 922(a)(4), (b)(4). ATF prefers a database to carry out that mandate, and the Firearm Owners' Protection Act forecloses that preference, but it does not create a conflict with the GCA. *See* Renewed MSJ 23–24.[2]

Finally, ATF asserts (at 16 n.1) that under Plaintiffs' position the Reformation would flip between regulated and unregulated depending which ammunition a user chambers, but that is not true. The Reformation is not capable of firing shells; it only fires cartridges. AR153.

---

[2]  ATF devotes nearly a page (at 19–20) to a typo in Plaintiffs' motion, *compare* Renewed MSJ 8–9 (accurately quoting AR153), *with id.* at 23 (misplaced quotation mark), but it has no response to Plaintiffs' substantive point: because the GCA does not require a searchable database, ATF's claim that it needs one reflects its own preferences, not Congress's.

C.      **ATF Unlawfully Delayed Procedures For GCA-Only Shotguns.**

If the Court rules that the Reformation is a GCA-only shotgun, it should grant summary judgment on Plaintiffs' unlawful-delay claims. *See* Renewed MSJ 25–33; Dkt. 43 at 21–31. ATF has for years refused to create a process for GCA-only transactions.

These claims are justiciable. Indeed, ATF concedes (at 22) that "Counts 3 and 4 are contingent on Count 2," and does not dispute that "contingent claims" are "judicially cognizable," *RCI Ent. v. San Antonio*, 2006 WL 1149173, at *3 (W.D. Tex. Apr. 14, 2006); *see also* Dkt. 43 at 18–19; Dkt. 29 at 5. And that contingency does not rest on any "additional actions," ATF Opp. 22, because the status quo would immediately revert to ATF's years-long prohibition on GCA-only weapons. Additionally, ATF's attempt to moot the case after Plaintiffs filed suit is barred by the voluntary-cessation doctrine. *See* Renewed MSJ 29–31; Dkt. 43 at 19–21.

The claims are also meritorious. As to mandamus, Plaintiffs have shown that ATF was bound by both the GCA and its open letter to create a process for GCA-only transactions. Renewed MSJ 31–32; Dkt. 43 at 22–23 & n.3. Although ATF notes (at 25) that Congress did not set "a timetable," that goes to the *TRAC* factors, not whether ATF has a duty to act at all, *see* Dkt. 43 at 22–23. On the *TRAC* factors, ATF relies almost exclusively (at 29–35) on a declaration that does not appear in its compilation of administrative-record materials, contrary to this Court's instruction that review "is limited to the administrative record." Dkt. 49 at 2. And Plaintiffs have rebutted each of these improper arguments already. *See* Dkt. 43 at 22–29. Plaintiffs have also independently shown that ATF's delay is an arbitrary and capricious enforcement policy. *See* Renewed MSJ 32–33; Dkt. 43 at 29–31. ATF's retort (at 36) that the delay is not "final agency action" overlooks that the APA authorizes review of an agency's "failure to act." 5 U.S.C. § 551(13); *see also* Dkt. 43 at 30–31. And ATF's substantive response simply rehashes (at 37–38) its argument that the Reformation is not a GCA-only shotgun, while this claim is contingent on the opposite.

II.   **ATF FAILS TO REBUT THE FAI-15 ANTITHESIS CLAIMS**

ATF does not dispute that a weapon is a "rifle" under the statutes only if it is designed and made to (1) be fired from the shoulder; (2) fire only a single projectile per trigger pull; and (3) fire

7

through a rifled bore. *See* Renewed MSJ 33–34 (quoting statutes). As Plaintiffs explained, with respect to the FAI-15 Antithesis, ATF collapsed the second and third conditions when making its classification decision, concluding that "a rifled bore is … made to fire only a single projectile." Renewed MSJ 34 (quoting AR148). If that is true—if a rifled bore is necessarily made to fire only a single projectile—then the second condition is superfluous. ATF's reading, therefore, violates the "cardinal principle of statutory construction" that courts "must give effect" to "every clause and word of a statute." *United States v. Pulsifer*, 39 F.4th 1018, 1021 (8th Cir. 2022).

Now in litigation, ATF flatly disavows the reasoning it gave when classifying the FAI-15 Antithesis, asserting (at 6–7) that whether rifling "*per se* prove[s] that a given firearm is designed and intended only to fire a single projectile" is "not the question before the Court." But that question is very much before the Court—ATF put it there by grounding its classification decision in the assertion that rifled bores are *per se* "made to fire only a single projectile." AR148. This Court must evaluate the "legal rationale … adopted by [ATF]" when it made its classification decision. *Calcutt v. FDIC*, 598 U.S. 623, 624 (2023); *see also id.* (reviewing courts "must judge the propriety of [agency] action solely by the grounds invoked by the agency"). And ATF's legal rationale is clearly erroneous for the reasons discussed. ATF loses for that reason alone.

ATF loses also because its conclusion that "the marketing of a weapon and its capabilities" are not determinative of design, AR148, misinterprets the statutory text. Plaintiffs have explained that all of a product's marketed capabilities are part of its "design" under that word's plain meaning, Renewed MSJ 35, and ATF has no response. ATF instead argues (at 7) that mere capability cannot equal design, but Plaintiffs never said as much—and indeed have repeatedly disclaimed that position. *See, e.g.*, Dkt. 43 at 33 ("As Plaintiffs explained last year, capability alone is not enough."). Plaintiffs have noted that tennis balls, for example, are capable of being used to play fetch with dogs but generally are not designed for that purpose. Renewed MSJ 35. So, ATF's argument slays a strawman. Plaintiffs' actual position, stated repeatedly and clearly for years now, is this: capability plus marketing is sufficient to establish "design." *See, e.g.*, Dkt. 43 at 31–32. Because of tennis balls' fetch-game capability, a tennis ball marketed to play fetch plainly is

8

designed for fetch games. *See* Renewed MSJ 35. ATF has never explained why that might be wrong, and the cases it cites do not dispute it. *See* Dkt. 43 at 33.

ATF does not deny that the FAI-15 Antithesis is both capable of firing multiple shots and marketed to that end. ATF resorts to the baseless accusation (at 8) that Franklin's marketing is "manufacturer posturing," but that accusation has no record support. To the contrary, the record shows that ATF accepted that the FAI-15 Antithesis is marketed to fire shotshells. AR148 (recognizing Franklin's "decision to market [the] firearm as capable of firing shotshells"); *see also* ATF MSJ 15 ("ATF does not dispute the marketability of firearms chambered for dual cartridges."). ATF never questioned the sincerity of Franklin's marketing.

*Sig Sauer*, which ATF clearly thinks is its best case, explains that manufacturer intent controls and that examining capability is crucial for discerning that intent. The *Sig Sauer* court adopted "an objective approach to ferreting out a party's intent." 826 F.3d 598, 601–02 (1st Cir. 2016). The "[manufacturer's] intent," *id.* at 601, was the court's entire inquiry. And to determine how the product was "intended to be used," the court relied largely on "the uses of which [the product] is capable." *Id.* And though marketing materials were not at issue in *Sig Sauer*, those plainly are relevant too. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 523 (1992) (Scalia, J., concurring) (citing manufacturer's instructions and inscriptions as probative of intent).

ATF's classification decision rested on multiple clearly flawed premises, and ATF's opposition simply ignores these problems. *First*, ATF's resistance to acknowledging that a rifle-bored weapon firing multiple projectiles is not a rifle seemed to rest on its view that rifle bores are not "traditionally used for this purpose," AR148, but as Plaintiffs explained, innovative manufacturer design is no less manufacturer design than traditional designs, Renewed MSJ 36. ATF offers no response. *Second*, ATF repeatedly (at 2, 6, 7, 8, 9, 10, 12) invokes the term "objective design," but ATF misunderstands that term's meaning. ATF seems to think that "objective" refers to anything that is part of a weapon's functioning and not its marketing, but objective design actually is intent that can be "measured by [the parties] words and actions." *T.E.A.M. Scaffolding Sys. v. United Bhd. of Carpenters & Joiners*, 29 F. App'x 414, 417 (8th Cir.

9

2002). So, Franklin's .410/.45LC inscription, for example, is a marker of objective design because those "words and actions," *id.*, objectively indicate Franklin's intent—but ATF completely ignored the inscription. *Third*, ATF stated that "not all *bores* are designed to expel multiple projectile ammunition," AR148 (emphases altered), but the statutes concern the design of the firearm not the bore. Even if a rifled bore were always disadvantageous for firing shot (and it is not), a product can be designed for a certain end even if each component part does not advance that end—a racecar designed for speed still has brakes. ATF offers no response.

ATF also acted arbitrarily and capriciously. *First*, ATF gave no reasons for its conclusion that a rifled bore is disadvantageous for firing multiple projectiles. *See* Renewed MSJ 36–37. ATF noted that a rifled bore "will spread the shot pattern," AR148, but did not say why that makes the bore disadvantageous. ATF responds that it "explained that this spreading of shot pellets made a rifled bore disadvantageous," ATF Opp. 9 (quoting AR148) (cleaned), but that response only highlights the inadequacy of ATF's reasoning. The issue is that ATF never explained *why* spreading shot might make a rifled bore disadvantageous. ATF's circular reasoning rests on "only an unusually raw ipse dixit" and is therefore arbitrary and capricious. *Indep. Petrol. Ass'n of Am. v. DeWitt*, 279 F.3d 1036, 1042 (D.C. Cir. 2002). *Second*, ATF does not deny that its classification decision never mentioned the .410/.45LC inscription. *See Motor Vehicle Mfrs. Assn. v. State Farm*, 463 U.S. 29, 43 (1983). *Third*, ATF does not deny that it never addressed the fact that projectile stabilization is not needed in short-range engagements, *see* AR135, or that rapidly spreading the shot pattern enhances a weapon's utility in certain contexts, *see* AR142. An agency's decision is not "reasonably explained" when regulated entities "posed [a] concern" and the agency "offered no reasoned response." *Ohio v. EPA*, 144 S. Ct. 2040, 2054 (2024).

Finally, Plaintiffs have already rebutted the lenity arguments ATF pastes (at 10–12) from its summary-judgment motion. *See* Dkt. 43 at 36–37. ATF ignored Plaintiffs' arguments in its reply and ignores them now in its opposition. ATF's lenity arguments fail.

## CONCLUSION

The Court should grant Plaintiffs' motion.

October 4, 2024

By:     /s/ Stephen J. Obermeier
Stephen J. Obermeier
Jeremy J. Broggi
William K. Lane III
Michael J. Showalter
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
JBroggi@wiley.law
WLane@wiley.law
MShowalter@wiley.law
BGarriott@wiley.law

Benjamin J. Sand (ND ID #07981)
**CROWLEY FLECK PLLP**
100 W Broadway Ave
Bismarck, ND 58501
Tel: 701.223.6585
Fax: 701.222.4853
bsand@crowleyfleck.com

*Counsel for Plaintiffs*