**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Firearms Regulatory Accountability Coalition, Inc., and Franklin Armory, Inc., | |
| Plaintiffs, | |
| vs. | Case No. 1:23-cv-00003 |
| Merrick Garland, in his official capacity as Attorney General of the United States et al., | |
| Defendants. | |

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

[¶ 1]    THIS MATTER comes before the Court on two Motions for Summary Judgment. The Defendants (collectively, "ATF") filed their motion on May 31, 2024. Doc. No. 41. Plaintiffs ("FRAC" or the "Coalition") responded on June 21, 2024. Doc. No. 43. The Coalition replied on July 5, 2024. Doc. No. 44. The Coalition filed a renewed Motion for Summary Judgment on August 30, 2024. Doc. No. 50.[1] ATF responded on September 20, 2024. Doc. No. 52. The Coalition replied on October 4, 2024. Doc. No. 53.

## BACKGROUND

[¶ 2]    The facts of this case are undisputed. See Doc. Nos. 41-1, p. 14; 50-1, p. 13. Firearms in the United States are regulated primarily by two statutes: the Gun Control Act ("GCA"), 18 U.S.C. § 921, and the National Firearms Act ("NFA"), 26 U.S.C. § 5801.

---

[1] The first Motion for Summary Judgment was denied without prejudice because it was filed before the administrative record was submitted. See Doc. Nos. 25, 49.

## I.    GCA

[¶ 3]    The GCA sets out procedures for licensing of individuals that engage in "importing, manufacturing, or dealing in firearms" covered by GCA. 18 U.S.C. §§ 922–23. In the GCA, a "shotgun" is a "weapon designed . . . and intended to be fired from the shoulder and designed . . . to use the energy of an explosive to fire through a smooth bore." Id. § 921(a)(5). A "short-barreled shotgun" has a barrel less than 18 inches and overall length less than 26 inches. Id. § 921(a)(6). A "rifle" is "a weapon designed . . . and intended to be fired from the shoulder and . . . use the energy of an explosive to fire only a single projectile through a rifled bore." Id. § 921(a)(7). A "short-barreled rifle" has a barrel less than 16 inches and overall length less than 26 inches. Id. § 921(a)(8).

[¶ 4]    Those with a federal firearms license ("FFL") cannot sell, deliver, or transport GCA short-barreled weapons to unlicensed persons unless authorized by the Attorney General. Id. § 922(b)(4). Unlicensed individuals cannot carry short-barreled weapons across state lines unless authorized by the Attorney General. Id. Selling, delivering, or transporting short-barreled weapons without authorization may be punished by up to five years' imprisonment and a fine up to $500,000. Id. §§ 924(a)(1)(B), (D); 3571(c)(3); 3559(a)(5).

## II.    NFA

[¶ 5]    In 1934, Congress passed the NFA "in response to rampant criminal gang violence" to "regulate certain weapons likely to be used for criminal purposes." FRAC v. Garland, 112 F.4th 507, 511 (8th Cir. 2024) (quoting United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 517 (1992) (plurality opinion)).

[¶ 6]    In the NFA, a "shotgun" is a "weapon designed . . . and intended to be fired from the shoulder and designed . . . to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore." 26 U.S.C. § 5845(d). For the NFA, shotguns with barrels less than 18 inches and

overall length under 26 inches are considered a "firearm" but the Court will refer to them as short-barreled shotguns for clarity in this Order. Id. § 5845(a). A "rifle" is "a weapon designed . . . and intended to be fired from the shoulder and designed . . . to use the energy of the explosive in a fixed cartridge to fire only a single projectile." Id. § 5845(c). Rifles with barrels less than 16 inches and overall length under 26 inches are "firearms," but the Court will refer to them as short-barreled rifles for clarity in this Order. Id. § 5845(a).

[¶ 7]    The NFA requires short-barreled weapons to pay additional taxes and follow additional regulations, including registering firearms with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Id. §§ 5811, -21–22, -41–42. Making and transferring NFA-regulated firearms requires submission of ATF applications and a $200 tax. Id. §§ 5812, -22; 27 C.F.R. §§ 479.61–.62, .66, .84. To receive a NFA firearm, (1) ATF must have your fingerprints on file and you must tell local law enforcement; and (2) possession requires entry into a federal database. 26 U.S.C. §§ 5812, 5841; 27 C.F.R. §§ 479.84(c), .85, .101, .102; 28 C.F.R. § 0.131(d). A NFA violation carries penalties up to ten years imprisonment and up to $10,000 fine. 26 U.S.C. § 5871.

### III.    ATF

[¶ 8]    ATF has delegated authority from the Attorney General to "[i]nvestigate, administer, and enforce the laws related to alcohol, tobacco, firearms, explosives, and arson." 28 C.F.R. § 0.130(a)(1). Under this authority, ATF determines the classification of weapons under GCA and NFA. 27 C.F.R. § 478.92(c). Classification is not required before production of a weapon, but if entities choose to, they may submit applications to ATF prior to sale. Id. The classification process was codified in 2022 but had been in place "for many years." Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, 24666 (Apr. 26, 2022).

> Firearm classifications are private letter rulings . . . . Should a requestor ignore the classification letter and move forward to produce and sell or import items classified

as firearms in violation of the GCA or NFA, the classification letter could be used
to prove the willfulness of the violation in a criminal prosecution . . . .

Id. at 24710. In ATF's NFA Handbook, it states letters can "later be determined to be erroneous"
but "may generally be relied upon by their recipients as the agency's official position concerning
the statute of the firearms." ATF, National Firearms Act Handbook § 7.2.4 (2009).

### IV.    The Reformation

[¶ 9]    In 2017, Franklin Armory submitted a classification request for a barrel design called
"NRS" (an acronym meaning "Not a Rifle or Shotgun") that had straight lands and grooves. Doc.
No. 42-2, pp. 1–5. After requiring a physical sample, which Franklin Armory submitted in March
2018, ATF issued a classification letter in November 2018 for three weapons using the NRS barrel
and advertised under the model name "Reformation" (collectively, the "Reformation"). Id. at 22,
41, 65–75, 158. ATF stated the Reformation was not a rifle under the GCA or NFA because the
straight lands and grooves did not spin a projectile and, therefore, were not rifling. Id. at 70–74.

[¶ 10]    Considering the classification of "shotgun," neither the NFA nor the GCA defines "smooth
bore." Id. at 68. ATF referred to the Online Merriam-Webster dictionary, which defines
"smoothbore" as "having a barrel with an unrifled bore." Id. ATF reasoned this was a broad
definition that included all unrifled bores. Id. "The definition of smooth bore does not require the
bore to be 'smooth' as that term is commonly used in other contexts. In the context of
firearms . . . 'smooth' means only 'unrifled.'" Id. at 69. "Therefore, under Federal law, barrels
having straight lands and grooves used to fire rifle ammunition are categorized as smooth bore
barrels because the barrels lack functional rifling" and are "shotguns" under the GCA. Id.

[¶ 11]    For the NFA, the definition of "shotgun" requires the weapon to be designed and intended
to use "shotgun shell[s]." Id. at 67. The Reformation "is chambered for a .300 Blackout cartridge,"
which is rifle ammunition. Id. at 73. Therefore, it could not be a shotgun under the NFA and was

classified as "any other weapon." <u>See</u> <u>id.</u> at 74. ATF classified the Reformation as a GCA-only regulated short-barrel shotgun.

[¶ 12]  In November 2019, after Franklin Armory began advertising the weapon, ATF sent a letter stating the GCA required specific ATF forms for GCA short-barreled shotguns; however, ATF only created NFA forms. <u>Id.</u> at 107. ATF told Franklin Armory it was "currently developing the procedures and forms to address this gap in the federal firearm regulations." <u>Id.</u> Until then, weapons like the Reformation could only be sold or transferred to those with an FFL and the owner could not take the weapon across state lines. <u>Id.</u> An open letter from ATF in December 2019 repeated that because the barrel design does not spin a projectile, the Reformation is not a rifle under the GCA or NFA. <u>Id.</u> at 114.

[¶ 13]  In 2020, ATF attempted to draft forms and procedures for GCA-only weapons, but soon identified several problems with verification of background checks, maintenance of records, appeal authority, and lack of state regulation. Doc. No. 41-2, ¶¶ 20–27; <u>see also</u> Doc. No. 42-2, p. 153. "ATF came to the conclusion that the transport and transfer of short-barreled shotguns outside of the requirements of the NFA is in and of itself inconsistent with public safety and necessity because the approval contradicts Congress' intent to more closely regulate concealable shotguns through the NFA." Doc. No. 41-2, ¶ 27. Therefore, "ATF determined that it was neither legally nor practically feasible to permit the transfer or transport of GCA-only short-barreled shotguns outside the requirements of the NFA." <u>Id.</u> ¶ 28.

V.    **The Antithesis**

[¶ 14]  In March 2020, Franklin Armory submitted another classification request for a weapon marketed under the model name "Antithesis" (the "Antithesis"), which can use both shotshells and cartridges. Doc. No. 42-2, pp. 134–38. Franklin Armory stated it designed and advertised this

weapon specifically to shoot both types of ammunition. Id. In December 2021, even though the statutes say rifles shoot "only a single projectile," ATF classified the Antithesis as a short-barrel rifle under the GCA and NFA. Id. at 145.

[¶ 15]  "While any bore, including a rifled bore, may be *capable* of expelling multiple projectile ammunition, not all bores are *designed* to expel multiple projectile ammunition." Id. at 148. ATF relied on both Supreme Court and Circuit Court caselaw to say objective design features are included in this standard and critical to consider. Id. See also Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 501 (1982); Sig Sauer v. Brandon, 826 F.3d 598 (1st Cir. 2016). Since rifling is "disadvantageous . . . when using shot ammunition" because the spin will spread the shot, "a rifled bore is an objective design feature designed and made to fire only a single projectile." Doc. No. 42-2, p. 148. ATF reasoned that Franklin Armory's intent for the weapon to fire multiple projectiles "must not be considered to the exclusion of the objective features of [the] weapon." Id. According to ATF, because the Antithesis has a rifled bore, it was designed and made to fire only a single projectile and considered a short-barreled rifle under the GCA and the NFA. Id. at 149.

**VI.    Reclassification**

[¶ 16]  In January 2023, the Coalition sued ATF and other relevant federal officers. Doc. No. 1. In early March, ATF filed a Motion for Extension of Time and stated it was "currently considering the relief Plaintiffs requested regarding the Reformation firearm . . . which may have bearing on the litigation." Doc. No. 6, p. 1. In late March, ATF filed a Motion to Dismiss and stated it "expects to reach a decision as to the Reformation within 45 to 60 days." Doc. No. 9, p. 11 n.1. On May 4, 2023, ATF issued a reclassification letter stating the Reformation was a shotgun under both the GCA and the NFA. Doc. No. 42-2, pp. 151–59. The next day, ATF filed a Motion to Stay and a

Response to the Coalition's Motion for Summary Judgment, arguing the issue was moot now that the Reformation had been reclassified. Doc. Nos. 15; 16, p. 9.

      **a. ATF's Reasoning**

[¶ 17]  ATF "revisited the relevant definitions and the Congressional intent . . . of the GCA and NFA and concluded that the difference in definitions between these Acts does not reflect an intent by Congress to create a distinct category of GCA-only short-barreled shotguns requiring a separate approval and documentation process." Id. at 154. Congress "did not intend for a firearm classification under these definitions to be driven by the classification of the type of *ammunition* the weapon is capable of firing, as opposed to the objective design features and capabilities of the *weapon itself*." Id.

[¶ 18]  Shotgun shell is not defined in the NFA, and "ATF gives undefined terms in a statute their ordinary meaning." Id. (citing Richards v. United States, 369 U.S. 1 (1962)). ATF cited three different sources and concluded "cartridge" and "shell" were used interchangeably and there is not statutory or practical difference between the two. Id. at 155–56. The definition from a National Rifle Association Glossary defined "shotshell" as "[t]he cartridge for a shotgun." Id. at 155. ATF concluded that "the term *'fixed shotgun shell'* is best interpreted to mean any cartridge suitable for use in a shotgun." Id. at 156.

[¶ 19]  ATF also discussed legislative history. Id. In 1968, the GCA definition of "shotgun" was "substantially similar" to the NFA: "a weapon designed . . . and intended . . . to use the energy of the explosive in a fixed shotgun shell." Id. The GCA was amended in 1999 to remove the specific type of ammunition with "an explosive" for the term "antique firearm" to include both rifles and shotguns. Id. "[T]here is no language in the statute that is indicative of any intent by Congress to create an entirely new subset of GCA-only firearms." Id. Rather, "Congress recognized the type

of projectile expelled from such weapons are interchangeable" and "inclusion of the terms . . . [was] intended to be synonymous." Id. at 157.

[¶ 20]   ATF noted the NFA was passed in part because of the violence committed with short-barreled shotguns and therefore allowing "a shoulder-fired weapon with a smooth bore and a barrel of less than 18 inches" to avoid the registration and taxation requirements because it fires different ammunition "is inconsistent with the structure, purpose and intent of the statute." Id. at 157. This focus on the design of the projectile, rather than the design of the weapon, is inconsistent with a statute that does not define "shotgun shell," "cartridge," and "projectile." Id.

## VII.    Current Procedural Posture

[¶ 21]   The Coalition amended its Complaint in response to the reclassification and named four claims for relief: (1) the classification of Antithesis was arbitrary and capricious, (2) as was the classification of the Reformation, (3) failure to promulgate procedures for GCA-only firearms, and (4) lack of procedures for GCA-only firearms is arbitrary and capricious. Doc. No. 22.

[¶ 22]   In August 2024, Senior United States District Judge Daniel L. Hovland recused himself and the case was reassigned to the undersigned. Doc. Nos. 47–48. The Court notified parties of a hearing on the Motions for Summary Judgment on October 21, 2024, which was held on January 23, 2025. Doc. Nos. 54, 59.

## WAIVER OF CLAIMS

[¶ 23]   The Coalition argues ATF waived its arguments because ATF did not respond to the merits in the initial motion for summary judgment. Doc. No. 50-1, p. 47. ATF argues jurisdiction was in doubt at that time and does not preclude it from raising arguments later. Doc. No. 44, p. 14.

[¶ 24]   Courts have discretion when deciding if waiver applies to arguments not brought under an initial motion for summary judgment. Novato Fire Protection Dist. v. United States, 181 F.3d 1135,

1141 n.6 (9th Cir. 1999). If arguments are withheld strategically, they cannot be raised later. <u>Holder</u> <u>v. Ill. Dep't of Corr.</u>, 751 F.3d 486, 493 (7th Cir. 2014). APA cases are unique in that the record for summary judgment is produced after initial motions for dismissal are resolved. <u>See</u> <u>G.Y.J.P.</u> <u>ex rel M.R.P.S. v. Wolf</u>, No, 1:20-cv-01511, 2020 WL 4192490, at *2 (D.D.C. July 21, 2020).

[¶ 25]    In this case, the Coalition's first summary judgment motion was dismissed without prejudice because it was filed before the administrative record was produced. Doc. No. 49. Even if ATF had made meritorious arguments, the Court could not review the merits because the administrative record was not available. <u>See</u> <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985) ("The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred.").

[¶ 26]    The Court finds no party was unfairly prejudiced or surprised by ATF's arguments raised in response to the second motion for summary judgment. Therefore, in the Court's discretion, the Court finds ATF has not waived its arguments.

## DEFERENCE

[¶ 27]    ATF argues the Court should give deference to its interpretation of GCA and NFA because firearm classification "requires a high level of technical expertise." Doc. No. 41-1, p. 20 (quoting <u>March v. Or. Nat. Res. Council</u>, 490 U.S. 360, 377 (1989)). The Coalition argues criminal statutes are not entitled to deference. Doc. No. 43, p. 19.

[¶ 28]    Both the GCA and the NFA carry serious criminal penalties for violation. <u>See</u> 18 U.S.C. §§ 924(a)(1)(B), (D); § 3571(c)(3); § 3559(a)(5); 26 U.S.C. § 5871. In other contexts, the Supreme Court has said, "[W]e have never held that the Government's reading of a criminal statute is entitled to any deference." <u>United States v. Apel</u>, 571 U.S. 359, 369 (2014). In the Supreme Court's recent decision regarding the NFA, deference to ATF is not discussed. <u>See</u> <u>Garland v. Cargill</u>, 602

U.S. 406 (2024). The First Circuit deferred to ATF in <u>Sig Sauer, Inc. v. Brandon</u> because interpretation was "within [ATF's] special competence." 826 F.3d 598, 603 (1st Cir. 2016) (quoting <u>Penobscot Air Servs., Ltd. v. FAA</u>, 164 F.3d 713, 718 (1st Cir. 1999)). However, this ruling occurred before <u>Loper Bright Enterprises v. Raimondo</u> was decided. 603 U.S. 369 (2024). In <u>Loper Bright</u> the Supreme Court overruled agency deference, stating the APA directs courts to "interpret constitutional and statutory provisions," which "makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are not entitled to deference." <u>Id.</u> at 392 (quoting 5 U.S.C. § 706). The "best reading" of a statute is "'the reading the court would have reached' if no agency were involved." <u>Id.</u> at 400 (quoting <u>Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 843 n.11 (1984)).

[¶ 29]   Final federal administrative agency action is reviewed by courts under authority of the APA. 5 U.S.C. § 706. An action may be set aside if it is "arbitrary, capricious," or "in excess of statutory . . . authority." <u>Id.</u> § 706(2)(A), (C).

[¶ 30]   If the Court is reviewing under excess of authority, the Court is to "exercise independent judgment in determining the meaning of statutory provisions." <u>Loper Bright</u>, 603 U.S. at 394. "[C]ourts may . . . seek aid from the interpretations of those responsible for implementing particular statutes." <u>Id.</u>; <u>see also</u> <u>Skidmore & Swift Co.</u>, 323 U.S. 134, 140 (1944). If the court's independent interpretation gives discretionary authority to the agency, then the reviewing court is to "reconiz[e] constitutional delegations, fix the boundaries of the delegated authority, and ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries." <u>Id.</u> at 395 (cleaned up) (citations and quotations omitted).

[¶ 31]   The arbitrary and capricious standard upholds agency action if it is "reasonable and reasonably explained." <u>FRAC v. Garland</u>, 112 F.4th 507, 519 (8th Cir. 2024) (quoting <u>FCC v.</u>

<u>Prometheus Radio Project</u>, 592 U.S. 414, 423 (2021)). "This standard is highly deferential to the agency, providing a narrow standard of review." <u>Id.</u> Therefore, after <u>Loper Bright</u> the only deference left in the APA is under the arbitrary and capricious standard of review. The Court will not defer to ATF's interpretations because of its expertise, if that expertise is contrary to the independent judgment of the court. Article III courts, and not administrative agencies, are the experts in statutory interpretation.

## <u>THE REFORMATION</u>

[¶ 32] The Coalition presents several arguments concerning the Reformation: (1) ATF's classification of the Reformation exceeded its authority, (2) the classification was arbitrary and capricious, (3) the failure to promulgate constitutes an unreasonable delay, and (4) the failure to enforce GCA-only licensure was arbitrary and capricious. <u>See</u> Doc. No. 50-1.

### I.    Exceeds Authority

[¶ 33]  The Coalition argues ATF exceeded its authority by disregarding the plain text meaning of "smooth bore" and "shotgun shell." Doc. No. 50-1, pp. 20-21. ATF argues it provided a reasoned response that was in line with the evidence within its authority. Doc. No. 52, p. 17.

[¶ 34]  A reviewing court's independent analysis "begin[s] with the statute's plain language, giving words the meaning that proper grammar and usage would assign them. If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." <u>Union Pac. R.R. Co. v. Transp. Bd.</u>, 113 F.4th 823, 833 (8th Cir. 2024) (quoting <u>United States v. Lester</u>, 92 F.4th 740, 742 (8th Cir. 2024)). An agency exceeds its authority if its interpretation contradicts a reviewing court's interpretation. <u>See</u> <u>Cargill</u>, 602 U.S. at 415 ("We hold that a semiautomatic rifle equipped with a bump stock is not a 'machinegun' because it cannot fire more than one shot 'by a single function of the trigger.' And, even if it could, it would not do so

'automatically.' ATF therefore exceeded its statutory authority by issuing a Rule that classifies bump stocks as machineguns.").

[¶ 35]  "[E]very statute's meaning is fixed at the time of enactment." Wis. Cent. Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Sturgeon v. Frost, 577 U.S. 424, 438 (2016) (quoting Roberts v. Sea-Land Servs., Inc., 566 U.S. 93, 101 (2012)). Courts should apply special definitions if Congress intended them; otherwise, courts should use the plain meaning of the word. See Muscarello v. United States, 524 U.S. 125, 128 (1998). In Bailey v. United States, the Supreme Court interpreted the GCA "with the assumption that Congress intended each of its terms to have meaning. 'Judges should hesitate . . . to treat as surplusage statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense.'" 516 U.S. 137, 145 (1995) (cleaned up) (quoting Ratzlaf v. United States, 510 U.S. 135, 140–41 (1994)).

### a. Smooth bore

[¶ 36]  The Coalition argues ATF changed statutory language by defining "smooth bore" as "unrifled" and not using the plain meaning. Doc. No. 50-1, p. 21. ATF argues reading "smooth bore" in isolation distorts its meaning, which is "unrifled." Doc. No. 52, p. 24.

[¶ 37]  "As always, we start with the statutory text . . . ." Cargill, 602 U.S. at 415. The GCA states a "shotgun" fires projectiles "through a smooth bore." 18 U.S.C. § 921(a)(5). The Court has no evidence Congress intended a special definition of "smooth bore"; therefore, the Court will apply its plain meaning. The GCA was enacted in 1968. Gun Control Act, Pub. L. 90-351, 82 Stat. 226, June 19, 1968. In the 1960 Webster's New World Dictionary of the American Language, "smooth bore," as two words, has no entry; however, the adjective "smoothbore" is defined as "having no

grooves or ridges on the inner surface of the barrel: said of guns: opposed to *rifled*." <u>Smoothbore</u>, <u>Webster's New World Dictionary of the American Language</u> 1378 (College ed. 1960). "Rifled" does not have its own entry in 1960 but is listed as a variation of the verb "rifle," which means "to scrape, scratch, to cut spiral grooves within (a gun barrel, etc.)." <u>Id.</u> at 1253. "Shotgun" in the 1960 dictionary is "a smoothbore gun used for firing a charge of small shot at short range, as in hunting small game." <u>Id.</u> at 1349.

[¶ 38]  While some words have very different meanings with and without a space, some are interchangeable like "website" and "Web site" and "web site." <u>See</u> <u>Website</u>, <u>Merriam-Webster.com</u>, https://www.merriam-webster.com/dictionary/website (last visited Feb. 3, 2025). Spelling also changes depending on part of speech, the noun "common sense" is spelled "commonsense" when used as an adjective. <u>See</u> <u>Common sense</u>, <u>Merriam-Webster.com</u>, https://www.merriam-webster.com/dictionary/common%20sense (last visited Feb. 3, 2025).

[¶ 39]  The statute describes a bore that is smooth, while the dictionary lists the adjective "smoothbore." The Court has no evidence that in 1968 when the statute was enacted "smooth bore" had a distinct meaning from "smoothbore." It is more likely the spelling variation is due to the change in parts of speech. Therefore, the Court will treat "smooth bore" and "smoothbore" as interchangeable variants.

[¶ 40]  The definition of "smoothbore" in 1960 is unambiguous. The barrel has "no grooves or ridges on the inner surface." <u>Webster 1960</u>, at 1378. "Smoothbore" is the antonym to "rifled," which specifies "spiral grooves." <u>Id.</u> at 1253. Neither definition mentions any consideration of the rotation of the ammunition or functionality of the rifling. According to the contemporary dictionary, straight grooves in a barrel would not fit the definition of "smoothbore" or "rifle."

[¶ 41]  "ATF gives undefined terms in a statute their ordinary meaning." Doc. No. 42-2, p. 155. ATF used the "Merriam-Webster Online Dictionary" to define "smoothbore," not a dictionary at the time the statute was enacted. Doc. No. 42-2, p. 68. But even using this dictionary, "smooth bore" is defined as "having a barrel with an unrifled bore." Id. "Rifling" in the same dictionary is "the act or process of making **spiral** grooves." Id. (emphasis added). "Unrifled" in Merriam-Webster.com is defined as "not rifled: such as not having **spiral** grooves cut into the bore." Unrifled, Merriam-Webster.com https://www.merriam-webster.com/dictionary/unrifled (last visited Feb. 3, 2025) (emphasis added). None of these definitions mention the functionality of the grooves or rotation of the ammunition.

[¶ 42]  Even if "smoothbore" includes all bores that are "unrifled," that would only include weapons that do not have "spiral grooves." Instead of this plain meaning definition, ATF quotes a Firearms Encyclopedia to define "rifling" as grooves cut in a way that forces the bullet to rotate and concludes that "rifling" really means imparting rotation to a bullet. Id. There was no need for ATF to consult any source beyond the dictionary, even a noncontemporary dictionary, to apply the ordinary meaning of the word.

[¶ 43]  ATF argues Circuit courts have already interpreted smooth bore as "unrifled." Doc. No. 52, p. 24. The Coalition argues these cases do not give a definitive interpretation. Doc. No. 43, pp. 20–21.

[¶ 44]  If other courts have interpreted a word uniformly in past versions of a statute, and that wording has not changed, then "the wording is presumed to carry forward that interpretation." Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj. Inc., 576 U.S. 519, 536–37 (2015). In 1983, the Seventh Circuit stated that under the NFA, "[a] shotgun is a gun with a smooth bore: a bore that has not been rifled to impart spin to the projectile on its way out of the barrel." United

States v. Janik, 723 F.2d 537, 549 (1983). The court went through no analysis of the term, the statement was made to rebut the argument that the bore needed to be free of dirt in order to be considered smooth, and the definition did not pertain to whether or not the bore had straight or curved ridges. Id. The Fourth Circuit case cited by ATF merely cites the Seventh Circuit case in a footnote. United States v. Jackson, 124 F.3d 607, 613 n.4 (4th Cir. 1997). United States v. Spinner holds that a shotgun could have "a smooth or a rifled bore." 152 F.3d 950, 958 (D.C. Cir. 1998).

[¶ 45]  The Court does not find these rulings persuasive or part of "a uniform interpretation" this Court should follow. Inclusive Cmtys. Proj., 576 U.S. at 536–37. Congress defined "shotgun" specifically and said it had a "smooth bore." Congress did not define "smooth bore," the plain meaning for "smoothbore," which is interchangeable, from a contemporary dictionary is "having no grooves or ridges." The plain meaning of the statute is clear, and Congress's intent is not ambiguous, therefore, the Court's "judicial inquiry must end." Union Pac., 113 F.4th at 833.

[¶ 46]  Franklin Armory presented a square peg, and ATF shoved it into a round hole. If Congress wanted "shotgun" to be a catch-all category for anything that doesn't fit "rifle," it could have done so. See Thompson, 504 U.S. at 517 ("[T]he regulation of short-barreled [weapons] addresses a concealable weapon likely to be so used."). Congress used the terms it used. It defined them in a particular way. If Congress wants another definition, then it should amend the statute. It is not for ATF to redefine the terms because it thinks Congress didn't intend a certain outcome. Therefore, ATF exceeded its authority in defining "smoothbore" as anything lacking "functional rifling."

### b.  Fixed shotgun shell

[¶ 47]  The Coalition argues ATF's reclassification of the Reformation as a shotgun contradicts the NFA, which requires shotguns to be designed for "fixed shotgun shells" not "cartridges." Doc.

No. 50-1, p. 25. ATF argues "shell" and "cartridge" are used interchangeably and there is no meaningful difference in the definitions between the NFA and the GCA. Doc. No. 52, p. 27.

[¶ 48]  Neither the NFA nor the GCA define "shell" or "cartridge." The 1960 dictionary listing for "shell" has the relevant definition of "a small arms cartridge consisting of a metal or paper case holding the primer, the powder charge, and the bullet or shot." Webster 1960 at 1342. "Cartridge" is defined relevantly as "a cylindrical case of cardboard, metal, or other material, containing the charge, and usually the projectile, for a firearm." Id. at 225.

[¶ 49]  The Coalition cites a 1974 issue of Popular Mechanics that distinguishes between shells and cartridges. Doc. No. 50-1, p. 25. Even that definition states a "cartridge" is a "brass **shell** casing." Id. (emphasis added). ATF points to sections of the C.F.R. that define "semiautomatic shotgun" as one that can fire cartridges. Doc. No. 52, p. 27. Therefore, the Court concludes "shell" and "cartridge" are interchangeable.

[¶ 50]  However, Congress did not define "shotgun" in the NFA to fire only "shells" but "fixed shotgun shell[s]." 26 U.S.C. § 5845(d). "Shotgun shell" is not defined in Webster's 1960 dictionary. It is defined in a 1968 Small Arms Lexicon and Concise Encyclopedia as a "fixed round of ammunition designed for use in a shotgun." Doc. No. 42-2, p. 155. The NRA-ILA Glossary defines "shotshell" as "[t]he cartridge for a shotgun . . . also called a 'shell.'" Id. These definitions are consistent. "Shotgun shells" are ammunition for a shotgun and can be referred to as "shells." A "shotgun shell" is a "cartridge" in that it contains a projectile for a firearm, but there is still a difference between a rifle's cartridges and shotgun shells: namely that one is ammunition for a shotgun and the other is ammunition for a rifle. If they were the same, Congress would have used "cartridge" or "shell" or "ammunition." Instead, Congress said "shotgun shell." To ignore this would not give a particular meaning to each word of the statute. See Bailey, 516 U.S. at 145. This

Court will also take the Supreme Court's direction to have heightened resistance to treat the terms of a criminal offense as surplusage. See Ratzlaf, 510 U.S. at 140–41.

[¶ 51]  ATF states there is no evidence that Congress intended to create a class of firearms regulated only by the GCA. Doc. No. 42-2, p. 156. Further, the nonregulation of a short-barreled weapon would run counter to the NFA's purpose, which was to deter crime committed with short-barreled weapons. Id. While that may be the case, the Court does not reach extratextual evidence unless Congress's intent is not clear from the statute itself. Union Pac., 113 F.4th at 833. Congress had the opportunity to redefine the statutes and chose to create a discrepancy between the GCA and the NFA. ATF exceeded its authority by not giving the plain meaning to "shotgun shell" and reclassifying the Reformation as an NFA-regulated shotgun.

[¶ 52]  Because the Court finds ATF exceeded its authority in reclassifying the Reformation as a shotgun under the NFA, the Court does not reach the issue of whether ATF was arbitrary or capricious or application of the rule of lenity. See Doc. No. 50-1, p. 25, 33.

## II.    Delay of GCA-only Promulgation

[¶ 53]  ATF argues the issue of its delay to promulgate GCA-only forms is moot and, alternatively, the delay does not constitute a final action reviewable under the APA. Doc. Nos. 44, p. 11; 52, p. 46.

### a.  Moot

[¶ 54]  ATF argues even if the Court finds in favor of the Coalition and GCA-only forms are required, the issue is moot because "there is no reason to believe that ATF would unreasonably delay issuance of such procedures." Doc. No. 44, p. 11. The Coalition argues ATF has not made any assurances to the Court that it would not resume its conduct. Doc. No. 43, p. 28.

[¶ 55]  A case is moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Felts v. Green, 91 F.4th 938, 941 (8th Cir. 2024) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). However, "a defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)). The party arguing mootness bears the burden to prove the conduct will not reasonably recur. Id.

[¶ 56]  In Prose v. Payne, a prisoner was denied hormone therapy and sued for injunctive relief. 984 F.3d 700, 701 (8th Cir. 2021). At oral argument, the court was informed the prisoner was already receiving treatment. Id. The court found the case moot because "although it is a closer call," the affidavit from the prison administrator that therapy would continue so long as medical professionals found it was necessary. Id. at 703.

[¶ 57]  Here, the Court has no such affidavit. ATF stated the process of developing procedures stalled in 2020. Doc. No. 41-2, ¶¶ 20–27. The Court has no evidence ATF will not come to the same conclusion and the forms will stall again. ATF has not met its burden to prove the delay will not be repeated. See Friends of the Earth, 528 U.S. at 189.

[¶ 58]  ATF argues reclassification was pending before the litigation began, and therefore voluntary cessation does not apply. Doc. No. 52, p. 35. The Coalition argues the decision to reclassify was not made "in a vacuum." Doc. No. 43, p. 28.

[¶ 59]  Voluntary cessation does not apply when the action is not taken to moot the case. See Teague v. Cooper, 720 F.3d 973, 978 (8th Cir. 2013). ATF relies on the Coalition's original declaration from Jay Jacobsen that he had been told several times by ATF employees that "the

agency might reclassify the Reformation" over the past three years. Doc. No. 1-1, p. 6. The Court finds a verbal statement from an employee a far cry from a pending reclassification proceeding. ATF was engaged in this lawsuit about the classification of the Reformation when it "revisited the relevant definitions and the Congressional intent of . . . the GCA and NFA." Doc. No. 42-2, p. 154. This reclassification would moot this case. ATF could have reclassified the weapon long before the litigation began but did not do so. Therefore, the Court finds ATF's actions sought to moot the case, voluntary cessation applies, and the action is likely to recur.

### b. Final Action

[¶ 60]   ATF argues delay of promulgation is not a final agency action reviewable under the APA. Doc. No. 52, p. 46. The Coalition argues the delay constitutes a failure to act. Doc. No. 43, p. 38.

[¶ 61]   The APA allows review of final agency action. 5 U.S.C. § 706. "Agency action" as defined by Title 5 includes an agency's "failure to act." Id. at § 551(13). The Eighth Circuit has twice declined to decide if extreme delay can amount to a "failure to act." See Debba v. Heinauer, 366 Fed. Appx. 696, 699 (8th Cir. 2010); Irshad v. Johnson, 754 F.3d 604, 607 (8th Cir. 2014). In both cases, the court found the agency's delay was not unreasonable and therefore declined to decide the issue.

[¶ 62]   In 2017 the D.C. Circuit found that EPA's stay of a rule amounted to a final action because there was no evidence the Secretary would reconsider, it "represent[ed] the final agency position on this issue, has the status of law, and has an immediate and direct effect on the parties." Clean Air Council v. Pruitt, 862 F.3d 1, 6–7 (D.C. Cir. 2017) (quoting Int'l Union, United Mine Workers of Am. V. Mine Safety & Health Admin., 823 F.2d 608, 614–15 (D.C. Cir. 1987)).

[¶ 63]   Here, ATF effectively did the same thing, but instead of officially telling anyone it was not promulgating procedures for GCA-only firearms, it did nothing for three years. Finally, during this

litigation, it reclassified the Reformation to continue to avoid the issue. The decision not to move forward with procedures effectively represented final agency action and had an immediate and direct effect on the parties. Franklin Armory just didn't know it until this case. Therefore, ATF's decision to stop developing procedures in 2020 when there was a GCA-only classified weapon constitutes a "failure to act" and should be considered a final action.

[¶ 64]  Even if the delay does not constitute a failure to act, and therefore a final action, judicial review is not precluded. The Court finds the analysis from the D.C. Circuit persuasive: "By definition, a claim of unreasonable delay cannot await final agency action before judicial review, since it is the very lack of agency action which gives rise to the complaint." Air Line Pilots Ass'n, Intern. v. C.A.B., 750 F.2d 81, 85 (D.C. Cir. 1984).

[¶ 65]  Therefore, the Court finds failure to promulgate is not moot and is reviewable under the APA.

## THE ANTITHESIS

[¶ 66]  The Coalition presents several arguments concerning the Antithesis: (1) ATF's classification exceeded its authority by disregarding statutory text, the classification is arbitrary and capricious because (2) ATF disregarded statutory text, and (3) the classification is arbitrary and capricious because ATF failed to consider an important aspect of the problem. See Doc. No. 50-1.

### I.    Exceeds Authority

[¶ 67]  The Coalition argues ATF's classification of the Antithesis as a rifle disregarded the plain statutory language that requires "rifles" to be designed to fire only single projectiles. Doc. No. 50-1, p. 42. ATF argues the Coalition's reading of the statute would nullify the category of "rifle"

because nearly every rifle on the market is capable of firing multiple-projectile ammunition. Doc. No. 52, p. 18.

[¶ 68]  The APA's reasonableness standard does not apply to exceeding authority. See 5 U.S.C. § 706. An agency exceeds its authority if its interpretation contradicts a reviewing court's interpretation. See Cargill, 602 U.S. at 415. A reviewing court's independent analysis "begin[s] with the statute's plain language, giving words the meaning that proper grammar and usage would assign them. If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." Union Pac., 113 F.4th at 833 (quoting Lester, 92 F.4th at 742). "[A] cardinal principle of statutory construction [is] that we must give effect, if possible, to every clause and word of a statute." United States v. Pulsifer, 39 F.4th 1018, 1021 (8th Cir. 2022).

[¶ 69]  The GCA defines rifle as "a weapon designed . . . and intended to be fired from the shoulder and designed . . . to use the energy of an explosive to fire **only** a single projectile through a rifled bore for each single pull of the trigger." 18 U.S.C. § 921(a)(7) (emphasis added). In the NFA, a "rifle" is "a weapon designed . . . and intended to be fired from the shoulder and **designed** . . . to use the energy of the explosive in a fixed cartridge to fire **only** a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge." 26 U.S.C. § 5845(c) (emphasis added). In 1996, Congress amended several GCA definitions to remove the type of ammunition mentioned. Compare 18 U.S.C. § 921, with id. (1995) (The definition for "shotgun" included "in a fixed shotgun shell" and "rifle" included "in a fixed metallic cartridge."). The definitions in the NFA have never been amended. Compare 26 U.S.C. § 5845, with id. (1986).

[¶ 70]  The Antithesis is "fit and chambered" for both .45 Colt rifle cartridges and .410 Bore shotgun shells. Doc. No. 42-2, p. 147. Franklin Armory designed it this way intentionally. Id.

Taking the plain language of the statute, the Antithesis cannot be considered a rifle under the GCA or NFA. Congress specifically amended the definitions in 1996 and chose to keep the distinction that rifles are "designed" to fire "only a single projectile." See 18 U.S.C. § 921.

[¶ 71]   ATF in essence argues the statutory language "designed" does not mean that manufacturer intent overcomes objective design features. See Doc. No. 42-2, p. 148. ATF considers the ability to fire multiple ammunition as incidental and a marketing scheme. Id.

[¶ 72]   Congress did not define "designed," therefore, the Court uses the plain meaning of the word. See 18 U.S.C. § 921. "Design" in the Webster 1960 dictionary can mean to "plan," "contrive," or "intend"; but the most relevant definition is "to make original plans, sketches, patterns, etc." Webster 1960 at 397. These definitions also focus on objective features like sketches and patterns. Franklin Armory designed the Antithesis to fire multiple kinds of ammunition. Doc. No. 42-2, p. 148. The weapon does not fire only a single projectile. Firing multiple projectiles is not incidental or a by-product. The Antithesis is a square peg and calling it round will not change how it fits into the round hole of these statutes. Therefore, ATF exceeded its authority by not giving the plain meaning to the words of the statute.

[¶ 73]   The Court declines to reach Coalition's alternative arguments. See Doc. No. 50-1, pp. 42–46.

## REMEDY

### I.   Vacatur

[¶ 74]   The Coalition requests the Court order ATF to promulgate procedures and reclassify the Reformation and Antithesis within 30 days. Doc. No. 22. ATF does not specifically respond to this argument, but otherwise argues the Court should not interfere with its authority under the statute by issuing a writ. Doc. No. 52, p. 36.

[¶ 75]  The APA directs reviewing courts to "set aside" agency actions that exceed authority or are arbitrary and capricious. 5 U.S.C. § 706. See also Iowa League of Cities, 711 F.3d at 876 (Section 706 "authorizes courts to strike down as ultra vires agency rules promulgated without valid statutory authority."). "[A] vacatur does nothing but re-establish the status quo absent the unlawful agency action." Texas v. United States, 40 F.4th 205, 220 (5th Cir. 2022).

[¶ 76]  The classifications of Reformation in 2023 and Antithesis are vacated. The status quo for the Reformation, is the classification under the 2018 letter as a GCA-only weapon. No further action from ATF is needed. The status quo for the Antithesis is that it is unclassified. The Court will not issue orders compelling reclassification of the Antithesis as that would bump Antithesis's application to the head of the line. See In re Barr Labs., 930 F.2d 72 (1991).

## II.    Writ of Mandamus

[¶ 77]  The Coalition argues the delay in promulgating GCA-only forms has been unreasonable enough to warrant a writ of mandamus. Doc. No. 50-1, p. 34. Under the APA, a court must compel agency action that is unreasonably delayed. 5 U.S.C. § 706. Writs are only issued as "an extraordinary remedy reserved for extraordinary situations." Org. for Competitive Markets v. U.S. Dep't of Agri., 912 F.3d 455, 462 (quoting In re MidAmerican Energy Co., 286 F.3d 483, 486 (8th Cir. 2002)).

### a.  Threshold

[¶ 78]  ATF argues Congress did not set a timeline for promulgation and therefore, delay does not violate a duty to act. Doc. No. 52, p. 36. The Coalition argues ATF was bound by the GCA and ATF's open letter to act. Doc. No. 53, p. 11.

[¶ 79]  The APA allows courts to issue writs of mandamus to redress unreasonable delay, but only when the agency "is required to take" discrete action. Norton v. S. Utah Wilderness All., 542 U.S.

55, 63–64 (2004). The D.C. Circuit listed the elements as: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." <u>Am. Hosp. Ass'n v. Burwell</u>, 812 F.3d 183, 189 (D.C. Cir. 2016). The first and third elements are not in contention. <u>See</u> Doc. No. 52, p. 36. Franklin Armory is subject to ATF regulation, and ATF is subject to review under the APA. Further, these weapons are under ATF's regulation exclusively and therefore, no alternative remedy is available.

[¶ 80]  Congress does not need to specifically tell the ATF to promulgate GCA-only forms. ATF has delegated authority to "[i]nvestigate, administer, and enforce" the GCA and NFA. <u>See</u> 28 C.F.R. § 01.130(a)(1). Weapon manufacturers cannot sell weapons without ATF approval without severe criminal consequences. <u>See</u> 26 U.S.C. § 5871 (NFA penalties); 18 U.S.C. §§ 924(a)(1)(B), (D); 3571(c)(3); 3559(a)(5) (GCA penalties). To administer these laws, ATF has a duty to create forms for the weapons falling under their regulation. This Court has determined ATF's classification of the Reformation as a GCA-only weapon is valid. Therefore, ATF has a duty to promulgate GCA-only procedures that comply with the GCA and NFA.

### b.  **TRAC** Factors

[¶ 81]  ATF argues even if action is required, the delay is not unreasonable under the <u>TRAC</u> factors. Doc. No. 52, p. 39. The Coalition argues the almost four-year delay satisfies <u>TRAC</u>. Doc. No. 43, p. 32.

[¶ 82]  The Third Circuit held "[a]n extreme delay that endangers human lives is [the] paradigm case for ordering agency rulemaking." <u>Coinbase, Inc v. SEC</u>, --- F.4th ----, 2025 WL 78330, at *20 (3d Cir. 2025). Cases with purely economic interests do not meet the standard for an "extreme situation" that would order agency action. <u>Id.</u> The D.C. Circuit issued a writ of mandamus after "[t]he petition to vacate [several FCC] rules ha[d] been pending since 1980" and "[t]he court ha[d]

afforded repeated opportunities for the [FCC] to take final action . . . to the detriment of petitioners." Radio-Television News Dirs. Ass'n v. FCC, 229 F.3d 269, 272 (D.C. Cir. 2000).

[¶ 83]   The Eighth Circuit uses the TRAC factors in determine if the "delay is so egregious as to warrant mandamus." See Irshad, 754 F.3d at 607. The six factors are: (1) if the time taken is "governed by a rule of reason," (2) if Congress provided a timetable, (3) if human health and welfare are at stake, (4) the effect of court-ordered action on other agency activities, (5) interests prejudiced by the delay, and (6) improper agency action is not required for delay to be unreasonable. Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 79–80 (D.C. Cir. 1984).

*i.   Time*

[¶ 84]   The Coalition argues four years is an unreasonable delay under the APA. Doc. No. 50-1, p. 35. ATF argues Congress has provided no time requirement to produce these procedures. Doc. No. 52, p. 52.

[¶ 85]   According to the D.C. Circuit, "[t]ime is the first and most important factor." In re Pub. Emps. for Env't Resp., 957 F.3d 267, 273–74 (D.C. Circuit 2020) (quoting In re Core Comm'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008)) (cleaned up). "Although, there is no *per se* rule as to how long is too long, a reasonable time for agency action is typically counted in weeks or months, not years." Id. (quoting In re Am. Rivers, 372 F.3d at 419) (cleaned up). "A reasonable time . . . could encompass months, occasionally a year or two, but not several years . . . ." Id. (quoting Midwest Gas Users Ass'n v. FERC, 833 F.2d 341, 359 (D.C. Cir. 1987)) (cleaned up). The D.C. Circuit has found a delay of four years unreasonable when it required the public to pay tariffs for which the agency had no criteria for evaluation for reasonableness. MCI Telecomms. Corp. v. FCC, 627 F.2d 322, 327 (D.C. Cir. 1980).

[¶ 86]   ATF was not reasonable in stopping production of procedures in 2020 and doing nothing to inform Franklin Armory or others about the decision not to move forward for three years until trying to moot the issue in 2023 by reclassifying the Reformation. As the test states, it does not matter if the agency within the scope of its authority under the statute. Therefore, the Court finds ATF's delay was unreasonable.

### ii.   Other Factors

[¶ 87]   The Coalition argues factors three (health and welfare) and five (delay prejudices interests) support mandamus because an effective ban harms the public by not allowing them to buy, receive, and transport firearms useful for hunting, home defense and recreational shooting. Doc. No. 50-1, p. 36. ATF argues these factors favor no mandamus because the product is "indisputably highly dangerous short-barreled firearms . . . attractive to criminals." Doc. No. 52, p. 43.

[¶ 88]   "[D]elays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." Air Line Ass'n, 750 F.2d at 86.

[¶ 89]   As for health and welfare, the Court concurs that short-barreled weapons were squarely in Congress's consideration when passing NFA and GCA due to the effect on public safety. Therefore, setting regulations for short-barreled weapons under GCA-only is of paramount importance to public health and welfare.

[¶ 90]   As for prejudiced interests, while not as important as health and welfare, the Court recognizes the economic interest damaged by ATF delay. Even if Franklin Armory can now sell the Reformation under the NFA, it has lost the distinction of being able to sell in 2019 when it had the benefit of publicity for receiving awards in its market. Doc. No. 50-1, p. 36.

[¶ 91]  The Coalition argues factor four (effect on agency activities) supports mandamus because creating a form would not take a lot of time and effort. Id. at 39. ATF argues a 30-day writ would curtail analysis of complex issues and inappropriately reorder ATF's priorities. Doc. No. 52, p. 44.

[¶ 92]  In 1991, the D.C. Circuit did not issue a mandamus because the FDA moved slowly for every application and the court had "no basis for reordering agency priorities." In re Barr Labs., 930 F.2d 72 (D.C. Cir. 1991). In contrast, this procedure singles out a specific type of weapon for delay. The Court does have a basis for reordering: the APA standard for unreasonable delay. Unlike In re Barr Labs, this Court is not telling ATF to generally move faster or pushing one person to the front of a long line if it issues a mandamus. GCA-only procedures would not apply only to Franklin Armory, but to anyone who made such a weapon.

[¶ 93]  ATF states it was drafting a final rule during the time it was considering GCA-only procedures. Doc. No. 52, p. 42. But the TRAC factor concerns future projects and commitments, not past. ATF has given the Court no evidence producing forms would hinder other priorities. In fact, it argued there would be no delay in producing forms if required to do so. Id. at 34–35.

[¶ 94]  The Court finds the TRAC factors support the issuance of a writ of mandamus. ATF decided in 2020 not to pursue procedures, but did not reclassify the Reformation until 2023. ATF has known since 2017 that GCA-only weapons are a possibility. That is a timeline of seven years without procedures. Public health and welfare are harmed by not having procedures for GCA-only weapons. The Court is obligated to compel agency action that is unreasonably delayed. The Court has found the promulgation of GCA-only procedures is necessary and has been unreasonably delayed.

## <u>CONCLUSION</u>

[¶ 95]  Congress gave ATF the ability to enforce the law, not change it. Franklin Armory created a weapon that doesn't fit into the round holes made my Congress, but that does not give ATF authority to change the shape or size of the hole to make the Reformation fit. The separation of powers "is admitted on all hands to be essential to the preservation of liberty." The Federalist No. 51 (James Madison), https://consource.org/document/the-federalist-no-51-1788-2-6/20130122080331/ (last visited Feb. 3, 2025). Administrative agencies need to remember they are in the executive branch and leave legislating to Congress.

[¶ 96]  For the reasons set forth above, the Coalition's Motion for Summary Judgment (Doc. No. 50) is **GRANTED**, and ATF's Motion for Summary Judgment (Doc. No. 41) is **DENIED**. The Court Orders ATF classification of the Antithesis and reclassification of the Reformation **VACATED**. The Court further Orders ATF to create procedures for regulation of GCA-only weapons within 180 days from the date of this Order.

[¶ 97]  **IT IS SO ORDERED**.

[¶ 98]  **LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED  February 18, 2025.

Daniel M. Traynor, District Judge
United States District Court