**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., *and* FRANKLIN ARMORY, INC., | |
| *Plaintiffs*, | Case No. 1:23-cv-00003-DMT-CRH |
| v. | |
| PAMELA BONDI,[1] in her official capacity as Attorney General of the United States, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' MOTION TO STAY ORDER AND JUDGMENT PENDING APPEAL,**
**AND RESPONSE TO PLAINTIFFS' MOTION TO CLARIFY OR IN THE**
**ALTERNATIVE AMEND THE ORDER AND JUDGMENT**

Defendants hereby move for a stay pending appeal of the Court's Order on the Parties' Motions for Summary Judgment, ECF No. 60 ("Order") and Final Judgment, ECF No. 61 ("Judgment"), and respond to Plaintiffs' motion to clarify or, in the alternative, amend the Order and Judgment, ECF No. 62 ("Pls.' Mot."). The Acting Solicitor General has authorized an appeal of the Court's Order and Judgment, and Defendants' hereby request that the Court stay its Order and Judgment pending resolution of Plaintiffs' post-Judgment motion and any subsequent appeal.

The Court's Order determined that ATF's 2021 and 2023 classifications of the Antithesis and Reformation short-barreled firearms produced by Franklin Armory exceeded ATF's statutory authority, and that ATF had unreasonably delayed promulgation of forms and procedures necessary for Franklin to seek authorization to sell or deliver the Reformation under that weapon's prior 2018 classification as a short-barreled shotgun under the Gun Control Act ("GCA") but not the National

---

[1] Merrick Garland has been substituted with Pamela Bondi as Attorney General of the United States, pursuant to Federal Rule of Civil Procedure 25(d).

1

Firearms Act ("NFA"). Order at 28. The Judgment vacated ATF's 2021 Antithesis classification and 2023 Reformation "reclassification," and required ATF "to create procedures for regulation of GCA-only weapons within 180 days." Judgment at 1. Defendants respectfully move this Court for a stay of its Order and Judgment pending resolution of Plaintiffs' motion and any subsequent appeal. If the Court grants Plaintiffs' motion to clarify or amend the Order and Judgment, it should further amend the Judgment to make clear that ATF need not promulgate forms and procedures for GCA-only short-barreled shotguns that Plaintiffs would not possess and the agency would not understand to exist, and stay any clarified or amended Order and Judgment pending resolution of any subsequent appeal.

As explained below, all four relevant factors weigh in favor of a stay. The balance of harms strongly weighs in favor of a stay. As detailed in the attached declaration from ATF, vacatur of the 2021 Antithesis classification and 2023 Reformation reclassification will irreparably damage public safety by permitting the proliferation of short-barreled firearms which are uniquely attractive to criminals due to their concealability and heightened capability to cause damage. In addition, the vacated classifications provide clarity to, and ease certain regulatory burdens on, the regulated community, such that their continued vacatur will cause confusion among, and costs to, that community, particularly with regard to treatment of such weapons under state and federal law. If a stay is not granted and Defendants ultimately prevail on appeal, individuals who have purchased the Reformation or Antithesis in the interim will be in possession of contraband, *i.e.*, unregistered NFA weapons, and may be subject to criminal penalties which cannot be fully remedied by an amnesty period. Such harms have already begun—on March 28, 2025, Franklin announced that it would begin shipping the Reformation short-barreled shotgun to customers across the country *immediately*. And ATF will also incur unrecoverable costs to promulgate forms and procedures allowing parties to seek authorization to sell or transfer GCA-only short-barreled shotguns like the Reformation under ATF's 2018 classification reinstated by the Court's Order. Promulgation of such forms would also generate

regulatory confusion, particularly if the Court were to vacate its 2018 Reformation classification as Plaintiffs have requested, since the forms and procedures at issue will be applicable to firearms that the agency would not understand to exist.

Plaintiffs' motion that the Court also vacate ATF's 2018 Reformation classification only worsens the irreparable harms to public safety. If Plaintiffs' motion is granted and the 2018 Reformation classification is also vacated, then the weapon will be completely outside of the transport and transfer requirements for short-barreled weapons under 18 U.S.C. §§ 922(a)(4) and (b)(4). Defendants' harms far outweigh any alleged harm Plaintiffs might incur from a temporary stay. Additionally, Defendants are likely to prevail on appeal on their arguments that the two classification decisions analyzed by the Court in its Order fall within ATF's statutory authority, and that neither the GCA nor the NFA require ATF to create forms and procedures enabling authorization for the sale or transport of GCA-only short-barreled shotguns. The Court should accordingly grant Defendants' motion to stay and deny Plaintiffs' motion to clarify. If the Court grants Plaintiffs' motion, it should further amend the Judgment to make clear that ATF need not promulgate forms and procedures for GCA-only short-barreled shotguns and stay any clarified or amended Order and Judgment pending resolution of any subsequent appeal of the clarified or amended Order and Judgment.

## BACKGROUND

### I.    The Court's Ruling on Summary Judgment

This case arises from Plaintiffs' Administrative Procedure Act ("APA") challenge to ATF's 2021 and 2023 classifications of the Antithesis and the Reformation firearms under the GCA and NFA as arbitrary or capricious, and their challenge to the lack of a process by which to seek authorization to sell, deliver, or transfer GCA-only short-barreled shotguns (which the Reformation was classified as from 2018 to 2023) as unlawfully delayed. *See* Am. Compl. ¶¶ 285-328, ECF No. 22.

Following the submission of motions for summary judgment by Defendants, ECF No. 41-1 ("Defs.' MSJ") and Plaintiffs, ECF No. 50-1 ("Pls.' MSJ"), the Court issued an Order on February 18, 2025, granting Plaintiffs' motion for summary judgment and denying summary judgment to Defendants. ECF No. 60. The Court held that ATF's 2021 classification of the Antithesis short-barreled rifle ("SBR") and 2023 reclassification of the Reformation short-barreled shotgun ("SBS") each exceeded the agency's statutory authority under the GCA and NFA, and that ATF unreasonably delayed promulgation of forms and procedures enabling regulated parties to seek authorization to sell or transfer the Reformation in its prior 2018 classification as a GCA-only SBS under 18 U.S.C. § 922(b)(4). *See* Order at 28, ECF No. 60. Defendants respectfully disagree with all three aspects of the Court's decision, and the Acting Solicitor General has authorized an appeal of the Court's Order and Judgment to the Eighth Circuit. But Defendants acknowledge that they are currently bound by the Court's Judgment: (1) vacating the 2021 classification of the Antithesis as an SBR under the GCA and NFA which concluded the Antithesis was "designed . . . to fire only a single projectile through a rifled bore"; (2) vacating the 2023 reclassification of the Reformation as an SBS under the GCA and NFA which concluded the Reformation has a "smooth bore" and fires a "fixed shotgun shell"; and (3) ordering ATF to implement procedures for regulation of GCA-only weapons by August 18, 2025 because ATF unreasonably delayed issuance of procedures and forms enabling regulated parties to seek authorization to sell or transfer GCA-only SBS firearms like the Reformation under its 2018 classification, pursuant to 18 U.S.C. § 922(b)(4).

In reaching these conclusions, the Court expressly stated that it had *not* vacated ATF's 2018 classification of the Reformation, wherein ATF had classified the Reformation as an SBS under the GCA but not the NFA. *See* Order at 23-24. As the Court explained: "'vacatur does nothing but reestablish the status quo,'" and following vacatur of ATF's 2023 reclassification "[t]he status quo for the Reformation, is the classification under the 2018 letter as a GCA-only weapon. No further action

4

from ATF is needed." Order at 23 (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022)).
*See also* Order at 24 (explaining that the Court had "determined ATF's classification of the Reformation
as a GCA-only weapon is valid").

## II.    Plaintiffs' Motion

Despite the Court's express statement that it was *not* vacating ATF's 2018 classification of the
Reformation, *see* Order at 23-24, Plaintiffs now ask the Court to clarify or amend its judgment to
vacate the 2018 Reformation classification too. *See* Pls.' Mot. at 7-8; Pls.' Proposed Order at 1, ECF
No. 62-2. Without waiting for further clarification from this Court, Plaintiff Franklin Armory appears
to have already begun "shipping a variety of Reformation model configurations to consumers through
federally licensed firearm dealers (FFLs) this week." The Shooting Wire, *Franklin Armory Brings
Reformation Back to Market* (March 28, 2025), https://www.shootingwire.com/releases/d2039969-
1935-4c18-ad1f-d89a4e1a739f ("Reformation Press Release").

Notably, Plaintiffs' motion to clarify or amend makes no mention of the Court's order
requiring ATF to create forms and procedures for GCA-only SBSs like the Reformation under its
2018 classification, despite Plaintiffs' prior concession that its request for relief as to the forms and
procedures was entirely "contingent" on the Court upholding ATF's 2018 classification of the
Reformation as a GCA-only SBS. *See* Pls.' Opp'n to Defs.' MSJ, ECF No. 43 at 18 ("Pls.' MSJ Opp'n");
*id.* at 19 ("*If* Plaintiffs prevail on the second argument but *not* the first—*rendering the Reformation a GCA-
only shotgun—then* Plaintiffs will need relief under Count 3 or Count 4 to obtain overall relief (i.e., the
ability to sell, deliver, and transfer GCA-only weapons like the Reformation)" (emphasis added)).

## LEGAL STANDARDS

*Motion for stay pending appeal.* In deciding whether to grant a stay pending appeal, courts
consider four factors: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent
a stay; (3) potential for harm to other interested parties if the stay is granted; and (4) potential harm to

the public interest if the stay is granted. *Fargo Women's Health Org. v. Schafer*, 1993 WL 603600, *2 (8th Cir. 1993) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *James River Flood Control Assoc. v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982). Where the federal government is a party, its interests and the public interest overlap in the balancing of harms. *Nken v. Holder*, 556 U.S. 418, 420 (2009). In *Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982), the Eighth Circuit granted an injunction pending appeal of a denial of a motion for a protective order because the merits of the appeal "involve[d] *substantial questions of law* which remain to be resolved," and injunctive relief pending appeal would not have imposed an undue burden on the non-moving party. *Id.* at 71 (emphasis added). In such cases, the equities of the case may "require the court to intervene to preserve the status quo pending the outcome" of the appeal. *Id.*; *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (noting that a stay pending appeal to maintain the status quo "is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.").

*Motion to clarify or amend judgment.* Rule 60(a) of the Federal Rules of Civil Procedure allows the Court to correct a clerical mistake, mistake from an oversight or omission "whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Similarly, Rule 60(b) permits the Court to "relieve a party . . . from a final judgment" due to "mistake [or] inadvertence," or "any other reason that justifies relief," *inter alia.* Fed. R. Civ. P. 60(b). Rule 60 motions "should only be applied in extraordinary circumstances." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988). Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Rule 59(e) motions serve the limited purpose of correcting "manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been

offered or raised prior to entry of judgment." *Id.* "Arguments and evidence which could, and should, have been raised or presented at an earlier time in the proceedings cannot be presented in a Rule 59(e) motion." *Johnson v. Chater*, 108 F.3d 942, 948 n.3 (8th Cir. 1997). Rule 59(e) is not designed to provide an avenue for a disappointed party to relitigate old matters. *Murchison v. N.D.*, No. 1:10-CV-046, 2010 WL 3056646, at *2 (D.N.D. July 29, 2010).

## ARGUMENT

**I.  Motion for Stay Pending Resolution of Plaintiffs' Motion and Any Subsequent Appeal**

**A.  The Balance of Harms Weighs Strongly in Favor of a Stay**

The Government and the public will suffer irreparable injury if the Order and Judgment are not stayed pending resolution of Plaintiffs' motion and any subsequent appeal. As this Court correctly acknowledged in the Order itself, "short-barreled weapons were squarely in Congress's consideration when passing NFA and GCA due to the effect on public safety." Order at 26. Indeed, short-barreled firearms of all types have long been closely regulated due to their "quasi-suspect character," *Staples v. United States*, 511 U.S. 600, 611-12 (1994). Congress specifically found that such weapons can "be used readily and efficiently by criminals," H.R. Rep. No. 83-1337, at A395 (1954). A long gun with a shortened barrel is thus "both dangerous and unusual" because "its concealability fosters its use in illicit activity," and "its heightened capability to cause damage." *United States v. Marzzarella*, 614 F.3d 85, 90-95 (3d Cir. 2010), *abrogated on other grounds, Frein v. Pennsylvania State Police*, 47 F.4th 247, 253 (3d Cir. 2022); *see also* Defs. MSJ at 22. Accordingly, the result of the Court's Order and Judgment removing the Reformation and Antithesis from the strictures of the GCA and NFA will be the proliferation of weapons particularly suited for criminal use without the public safety protections provided for such weapons by those statutes. In this context, the harm to the Government is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Morehouse Enters. v. ATF*, 78 F.4th 1011, 1017 (8th Cir. 2023).

The Reformation and Antithesis are both indisputably short-barreled firearms, and as such, pose an enormous risk to public safety that Congress sought to combat through enactment of comprehensive taxation, registration, and transfer approval requirements in the NFA and additional transport and transfer requirements in the GCA. *Cf.* Order at 26 (recognizing that "setting regulations for short-barreled weapons under GCA-only is of paramount importance to public health and welfare."). As ATF Assistant Director Megan Bennett explains in her declaration: "[t]he combination of the firepower of a shouldered weapon, combined with the concealability of the shortened barrels, are the exact design features that created the impetus for Congress to more tightly regulate such weapons." Decl. of Megan Bennett at ¶ 9 ("Bennett Decl.") (Exhibit 1). Plaintiffs may contest whether the Antithesis is a "rifle" and whether the Reformation is a "shotgun," but they cannot dispute that both weapons are "short-barreled," and that for the past 90 years, *every* short-barreled firearm in production has been subject to the requirements of the NFA and/or GCA. *Id.* This Cout's Order and Judgment has suddenly disrupted that well-established framework by creating a new class of short-barreled firearms unregulated by the NFA (and, if Plaintiffs' motion to clarify or amend is granted, unregulated by the approval requirements in the GCA), available for widespread proliferation for the first time in a century.

Specifically, by vacating ATF's 2021 classification of the Antithesis, this Court's ruling leaves that firearm outside of the taxation, registration, and transfer approval requirements Congress enacted in the GCA and NFA to lessen the risk posed by short-barreled firearms. *See* Bennett Decl. at ¶ 10; *see also id.* at ¶ 8 ("All NFA weapons are subject to certain requirements: including taxation, registration in the National Firearms Registry and Transfer Record (NFRTR), and prior ATF approval to make and transfer"). This Court's Order vacating the 2023 Reformation reclassification similarly renders that indisputably short-barreled firearm outside the taxation, registration, and approval requirements of the NFA. *See* Bennett Decl. at ¶ 20. Plaintiffs' motion to clarify or amend the Order and Judgment,

8

and Franklin's decision to begin selling the Reformation to the public *without* seeking the authorization required by 18 U.S.C. § 922(b)(4), brings the need for a stay into sharp relief. *See* Reformation Press Release at 1. If the Court also were to vacate the 2018 Reformation classification as Plaintiffs have now requested, *see* Pls.' Proposed Order at 1, it would render the Reformation totally unregulated by any of the GCA's restrictions on short-barreled firearms as well, including the requirement that parties seeking to transfer or transport GCA short-barreled firearms first obtain authorization from the Attorney General. *See* 18 U.S.C. §§ 922(a)(4), (b)(4); Bennett Decl. at ¶ 15.

Rendering the Reformation and Antithesis unregulated by the taxation, registration, and transfer approval requirements normally applicable to short-barreled firearms under the NFA and the additional transport and transfer requirements of the GCA has caused and will continue to cause irreparable harms to ATF and the public at large. As explained by Assistant Director Bennett, "[i]f the Antithesis is not subject to the NFA's statutory restrictions, it would be more susceptible to criminal use because of the lack of registration and approval requirements." Bennett Decl. at ¶ 10; *see id.* at ¶ 15 ("If the Reformation is not subject to statutory restrictions, it would be susceptible to criminal use in like fashion.") The Antithesis and Reformation are also "uniquely dangerous" in this respect. *See id.* at ¶ 11 ("[T]he Antithesis is uniquely dangerous because Franklin Armory's marketing is encouraging owners to use it with shotgun ammunition, even though it has a rifled barrel, which increases spray and scatter."); *id.* at ¶ 16 ("[T]he Reformation is in fact uniquely dangerous because Franklin Armory is marketing it to encourage use with rifle ammunition, which has been shown in ATF testing to tumble, resulting in decreased accuracy."). More broadly, the Court's ruling has harmful implications for ATF's ability to regulate other classes of dangerous devices going forward. As Assistant Director Bennett explains: "the court's elevation of intent as the determinative factor would [] allow devices designed to convert a weapon into a machinegun and muffle the report of a firearm to escape classification because of the manufacturer's claimed intent that the device is, for example,

actually a coat hanger or door stop. This will result in greater criminal misuse of NFA weapons."
Bennett Decl. ¶ 13. *See also id.* at ¶ 12 ("[U]nder the court's reasoning, as long as the manufacturer of
the firearm claims the firing of shotgun ammunition was the intent, regardless of how poorly it
performs, manufacturers will likely be able to evade the restrictions on these weapons.").

These harms are in no way speculative or uncertain. Indeed, it appears that Franklin has already
begun "shipping a variety of Reformation model configurations to consumers through federally
licensed firearm dealers (FFLs) this week." Reformation Press Release at 1. *See* Administrative Record
("AR") 25-41, ECF No. 42 (speculating that Franklin would make over $8,000,000 of sales in the first
year of production). Absent a stay, customers who accept delivery of such firearms risk criminal
prosecution if Defendants ultimately prevail on their argument that the Reformation is properly
classified as an NFA and GCA SBS on appeal. These individuals will be in possession of a firearm
they were led to believe by this Court's ruling was unregulated under the NFA, but which would in
fact constitute contraband as an "unregistered NFA weapon[]" if Defendants were to succeed on
appeal. Bennett Decl. at ¶ 22. The harm to the public caused by this regulatory uncertainty would be
irreparable absent a stay. As Assistant Director Bennett explains, a post-appeal amnesty period for
purchasers of the Antithesis and Reformation "likely would not adequately capture unregistered NFA
weapons like the Antithesis and the Reformation, in part because those who purchase these weapons
for criminal use will not be interested in registering their weapons for obvious reasons." *Id.*

Additionally, because "States have their own laws, and restrictions, regarding short-barreled
weapons," some of which "mirror the language of the NFA," the Court's Order "will also likely lead
to confusion and liability for the regulated community" by "giv[ing] potential purchasers the
impression that the Antithesis is not subject to similar restrictions under state law, even if that is not
the case." *Id.* at ¶ 14; *see also id.* at ¶ 18 (same as to the Reformation). That regulatory confusion is
compounded by the fact that the Court's decision "creates firearms that fall in and out of the NFA by

virtue of its ammunition rather than the objective design features of the firearm," such that the requirement for NFA "registration will be dynamic," changing depending on the type of ammunition is loaded not the firearm on a given day. *Id.* at ¶ 19. That framework is unworkable and risks "causing confusion for the public as to what firearms need to be registered," particularly since "there is no post-transfer mechanism to approve an NFA firearm. NFA firearms must be approved before the transfer occurs and thus cannot be changed based on the ammunition loaded into the firearm." *Id.*

ATF will also suffer irreparable harm as a result of Court's Order requiring ATF to promulgate forms and procedures for the sale or transfer of GCA-only SBSs within 180 days. *See* Bennett Decl. at ¶¶ 23-25. Absent a stay, ATF will be forced to divert its attention from other pressing priorities and expend scarce agency resources to promulgate forms and procedures for a class of firearms which, by the Plaintiffs' own logic, they do not manufacture, and the agency does not understand to exist. *See* Pls.' Proposed Order at 1 (asking the Court to vacate the 2018 GCA-only SBS Reformation classification as a legal impossibility); Pls.' MSJ Opp'n at 18-19 (conceding that the forms issue is "contingent" on the Court upholding ATF's 2018 classification of the Reformation as a GCA-only SBS). The truncated 180-day timeline imposed by the Court makes that harm irreparable absent a stay of the Court's order pending appeal due to the lengthy nature of the appeals process; by the time any appeal is resolved, the Court's 180-day deadline will have already passed, and Defendants will be unable to obtain relief. *See, e.g.*, *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) ("[C]ourts have routinely issued stays where the release of documents would moot a defendant's right to appeal."); Bennett Decl. at ¶ 24 (explaining why "the process for creating such forms cannot be accomplished in 180 days").

By contrast, Plaintiffs will experience only minimal, if any, injuries from a stay of the Order and Judgment pending resolution of Plaintiffs' motion and any subsequent appeal. Even with respect to the 2021 and 2023 Antithesis and Reformation classifications Plaintiffs challenge, those decisions

do not forbid the sale (or purchase) or any firearm. Instead, they merely need to comply with the requirements of 18 U.S.C. § 922(a)(4) and § 922(b)(4) by completing ATF Form 5320.4 (known as Form 4) and ATF Form 5320.20, as Plaintiffs have acknowledged. *See* Am. Compl. ¶ 22 & n.3; Defs.' MSJ at 36 (explaining that Plaintiffs were already "able to seek authorization to sell, deliver, or transport all of their products using the procedures already available for NFA weapons (such as the Antithesis and Reformation)"). Thus, Plaintiffs or consumers who wish to purchase or sell the Antithesis or Reformation may do so even if the Court enters a stay; they simply must do so subject to the NFA's controls. The incidental costs associated with completion of ATF Forms 5320.4 and 5320.20 do not outweigh the substantial harms to the Government, the regulated community, and the public from vacatur of the challenged classifications. Indeed, Plaintiffs have been operating under this regulatory regime since 2023, and there is no compelling basis to disrupt that status quo while the appeal of this case proceeds. *See Nken*, 556, U.S. at 429 (stating that the purpose of a stay is to "suspend[] judicial alteration of the status quo"); *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 58 (5th Cir. 2014) (granting stay because of "disruption that would arise from a lack of continuity and stability"). A stay of the Order and Judgment pending resolution of Plaintiffs' motion and any subsequent appeal is warranted in these circumstances. *See Garland v. VanDerStok*, 144 S. Ct. 44 (2023) (granting stay of judgment setting aside ATF rule interpreting the frame and receiver of a firearm in part in part because judgment would exacerbate the proliferation of unmarked firearms).

## B.  Defendants Are Substantially Likely to Prevail on Appeal, and at a Minimum, Have Raised Serious Legal Questions for Appeal

The Court's Order determined that: (1) ATF's 2021 Antithesis classification exceeded the agency's statutory authority by finding that the Antithesis was "designed . . . to fire only a single projectile through a rifled bore"; (2) ATF's 2023 Reformation reclassification decision exceeded the agency's statutory authority by finding that the Reformation has a "smooth bore" and fires a "fixed shotgun shell"; and (3) ATF unreasonably delayed issuance of procedures and forms enabling

regulated parties to seek authorization to sell or transfer GCA-only SBS firearms like the Reformation under its 2018 classification, pursuant to 18 U.S.C. § 922(b)(4). Due to the strong showing of irreparable harm to the Government and the public absent a stay of this Court's Order and Judgment, a stay is warranted where Defendants have presented "substantial questions of law which remain to be resolved" on appeal. *Walker*, 678 F.2d at 71; *see also Wash. Metro. Area Transit Comm'n*, 559 F.2d at 844 (noting that a stay pending appeal to maintain the status quo "is appropriate when a *serious legal question* is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." (emphasis added)). But in all events, Defendants respectfully submit that they are likely to prevail on the merits of their appeal.

1.  Defendants are likely to prevail on appeal as to the classifications.

As an initial matter, Defendants respectfully submit that the Court applied an incorrect standard of review when ruling on ATF's classification decisions. Plaintiffs only claimed that the Antithesis and Reformation classifications were arbitrary and capricious, *see* Am. Compl. 38-45, thus the classifications should have been reviewed deferentially because the relevant inquiries were fact-intensive: whether a firearm was "designed" and "intended" for certain functions, *see e.g.*, 26 U.S.C. 5845(c). That type of assessment to ascertain design and intent is "a very familiar one in the law," *Sig Sauer v. Brandon*, 826 F.3d 598, 601 (1st Cir. 2016), and it is appropriately undertaken by agency factfinders rather than courts. *Id.* That is especially true, where, as here, the agency has "special competence" with the evidence at issue and the evidence "requires a high level of technical expertise" to draw distinctions. *Id.* at 603. ATF broke down these weapons and tested physical evidence to make credibility determinations about the nominal inclusion of design features. The Court should not have done so *de novo* under an "excess of statutory [] authority" framework, particularly where Plaintiffs did not even bring a claim under 5 U.S.C. § 706(2)(C) in this case. *See generally* Am. Compl.

Even under *de novo* review, however, ATF's 2021 Antithesis SBR classification is consistent with the GCA and NFA. An SBR is a rifle with a barrel of less than 16 inches in length that is designed "to be fired from the shoulder" and designed "to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." 26 U.S.C. § 5845(c); *see* 18 U.S.C. § 921(a)(7). ATF had evidence that the firearm was designed to be shoulder-fired because it was equipped with a shoulder stock. AR 147. And it had evidence that the firearm was designed to fire a single projectile through a rifled bore because it had a rifled barrel that would impart spin to the ammunition. *Id.* The Court nevertheless reasoned that the Antithesis was not an SBR because it could theoretically fire multiple-projectile ammunition as well as traditional single-projectile ammunition. Order at 21-22. But in reaching that conclusion, the Court misunderstood the import of statutory language stating that rifles must be designed to fire "only a single projectile . . . for each pull of the trigger," 26 U.S.C. § 5845(c). That language distinguishes rifles from machineguns, *id.* § 5845(a); it does not create a new category of weapon that is neither rifle nor shotgun simply because it can theoretically fire both types of ammunition. Indeed, "almost all rifles are minimally *capable* of firing shotgun ammunition." Bennett Decl. at ¶ 12. As ATF explained, shot ammunition was not functional with the rifled barrel of the Antithesis because "the twist of the shot column traveling down the bore will spread the shot pattern." AR 147. In other words, the shot would spray rather than reach an intended target, supporting ATF's conclusion that the firearm was not genuinely designed for anything other than single-projectile rifle ammunition.

For similar reasons, Defendants are likely to succeed on their argument that ATF correctly classified the Reformation as an SBS under the NFA and the GCA. An SBS is a short-barreled firearm designed "to be fired from the shoulder" and designed "to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger." 26 U.S.C. § 5845(d); *see* 18 U.S.C. § 921(a)(5). ATF had evidence

that these firearms were designed to be shoulder-fired because they were equipped with a shoulder stock. AR 151-52. It had further evidence that they were designed to fire through a smooth bore a single projectile because these firearms did not have the rifled, spiral grooves that stabilize traditional rifle ammunition with spin. The Court nevertheless reasoned that the Reformation was not designed to fire through a "smooth bore" because it has straight lands and grooves. Order at 12-15. But in context, "smooth bore" means "unrifled"; it is a statutory reference that distinguishes shotguns from rifles, 26 U.S.C. § 5845(d); 18 U.S.C. § 921(a)(4), just as the statutes elsewhere distinguish smooth bore pistols from rifled pistols, 26 U.S.C. § 5845(e); *see* AR 67-68. A firearm is thus either a smooth bore firearm or a rifle, as courts of appeals have understood for decades. *See e.g., United States v. Janik*, 723 F.2d 537, 549 (7th Cir. 1983) ("A shotgun is a gun with a smooth bore: a bore that has not been rifled to impart spin to the project on its way out of the barrel."); *United States v. Jackson*, 124 F.3d 607, 613 n.4 (4th Cir. 1997) (same); *United States v. Spinner*, 152 F.3d 950, 958 (D.C. Cir. 1998) (similar).

Defendants also are likely to succeed on appeal of the Court's second ground for vacating the 2023 reclassification—that the Reformation is not a SBS under the NFA because it does not fire a "fixed shotgun shell." The Court agreed that the terms "shell" and "cartridge" were interchangeable, but suggested that Reformation was not designed to shoot "shotgun" ammunition, Order at 16, presumably because the firearm could also, theoretically, fire .300 Blackout cartridges, which are typically used with rifles. As with the Antithesis, however, the Court did not properly credit the agency's assessment that this ammunition was not functional; testing the firearm, ATF repeatedly found that the Reformation's straight barrel "lack[ed] functional rifling to impart a stabilizing rotation" to that ammunition, so that ammunition would "tumble within several yards of exiting the barrel." AR 68-69.

At a minimum, the Government has presented strong questions as to the merits of both classifications, casting doubt on whether the Court's interpretation of the statutes was correct as a

matter of law, particularly in the face of contextual evidence that the Reformation is a "shotgun" by any sense of the ordinary public meaning of that term. *Compare* Am. Compl. ¶ 249 (conceding that the Reformation was independently classified as the "Best New *Shotgun*" of 2019 (emphasis added)) *with* Order at 12-15 (holding that the Reformation is *not* a shotgun because its barrel, while unrifled, is not literally "smooth"). Indeed, the Supreme Court stressed the importance of contextual evidence when interpreting the GCA less than a week ago. *See Bondi v. VanDerStok*, No. 23-852, 2025 WL 906503 (U.S. Mar. 26, 2025) ("As we have stressed, a statute's text and context are critical to determining" the meaning of statutory terms in the GCA).

       2.   <u>Defendants are likely to prevail on appeal as to the forms and procedures.</u>

Defendants also are likely to prevail on the merits of their argument that ATF did not unreasonably delay promulgation of forms and procedures for the Reformation under its 2018 classification as a GCA-only SBS. Plaintiffs do not understand themselves to have such a weapon, as their most recent motion reflects. If the Reformation is not regulated as an SBS under either the NFA or GCA, there can be no duty on the part of ATF to create a way for Plaintiffs to seek permission to sell it; no permission is needed. *See* 18 U.S.C. § 922(a)(4), (b)(4) (requiring parties to seek authorization before selling or transporting "short-barreled shotgun[s], or short-barreled rifle[s]," of which Plaintiffs argued the Reformation is neither). Plaintiffs themselves confirmed in their opposition to Defendants' Motion for Summary Judgment that their claims as to the forms and procedures were wholly "contingent" on the Court finding that the Reformation has a "smooth bore", but does not fire a "fixed shotgun shell," Pls.' MSJ Opp'n at 18-19, which the Court did not do, Order at 12-17. And if Defendants prevail on appeal, GCA-only SBS forms and procedures would still not be required— under the 2023 reclassification, Plaintiffs can seek approval to sell or transfer their weapons through the existing NFA process because their weapons were classified as falling within both the GCA and

NFA (as Plaintiffs concede, *see* Am. Compl. ¶ 22 & n.3). This is how the manufacturers of NFA weapons have obtained approval for decades.

In any event, even if a duty to promulgate forms and procedures for GCA-only SBSs existed, any delay between 2018 and now was appropriate. *Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014) (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*")). The time the agency took was reasonable, *TRAC*, 750 F.2d at 79-80, due to the "complexity of the task at hand," *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003); *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018)). *See* Defs. MSJ at 29-38.

## II. Response to Plaintiffs' Motion to Clarify or Amend the Order and Judgment

Plaintiffs' motion to clarify or amend the Order and Judgment should be denied because vacating ATF's 2018 Reformation classification would cause irreparable harm as explained above, and because vacating the 2018 Reformation classification while leaving in place the Court's ruling ordering ATF to promulgate forms and procedures for GCA-only SBSs on the basis of that classification would be internally inconsistent, as Plaintiffs themselves previously conceded. At a minimum, if the Court is inclined to grant Plaintiffs' motion to clarify or amend judgment, the Court should also amend the judgment such that ATF need not promulgate forms and procedures for GCA-only SBSs that Plaintiffs would not manufacture and the agency would not understand to exist, and stay any clarified or amended Order and Judgment pending resolution of any subsequent appeal of the clarified or amended Order and Judgment for the reasons set forth above.

### A. 2018 Reformation Classification

In their motion, Plaintiffs argue that the Court's Order and Judgment should be read to vacate not only the operative 2021 Antithesis classification and 2023 Reformation reclassification that were actually before the Court for review, but also to vacate ATF's 2018 Reformation classification *sub silentio*, wherein ATF had classified the Reformation as a SBS under the GCA but not the NFA before

revisiting that classification in 2023. *See* Pls.' Mot. at 4-7. Plaintiffs' interpretation is at odds with the text of the Court's Order and Judgment itself. As the Court made clear in its Order: "'vacatur does nothing but reestablish the status quo,'" and following vacatur of ATF's 2023 reclassification "[t]he status quo for the Reformation, is the classification under the 2018 letter as a GCA-only weapon. No further action from ATF is needed." Order at 23 (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022)). *See also* Order at 24 (explaining that the Court had "determined ATF's classification of the Reformation as a GCA-only weapon is valid"). The Court's Judgment confirms this understanding— the Court expressly "Order[ed] ATF['s] classification of the Antithesis and *reclassification* of the Reformation VACATED." Judgment at 1 (emphasis added). As Plaintiffs note, the Court "knows how to" distinguish between the 2018 and 2023 classification decisions, *Barnett v. Short*, 129 F.4th 534, 540 (8th Cir. 2025). By vacating only ATF's "classification of the Antithesis and *reclassification* of the Reformation," Judgment at 1 (emphasis added), the Court thus made plain that the 2018 GCA-only SBS Reformation classification remained in place as the restored "status quo." Order at 23-24.

The Court's ruling requiring ATF to promulgate forms and procedures for GCA-only SBSs likewise confirms that its Order did not vacate the 2018 classification of the Reformation as such a GCA-only SBS. *See* Order at 23-27. If the Court had indeed vacated ATF's 2018 GCA-only SBS classification of the Reformation *sub silentio* as Plaintiffs wrongly suggest (Pls.' Mot. at 5-6), the Court's ruling as to the forms and procedures would have been rendered meaningless, since Plaintiffs would not have a GCA-only SBS that required such a form. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them."). That much is undisputed. Plaintiffs have conceded that Counts III and IV of their Amended Complaint (their forms and procedures claims) were entirely "contingent" on the Court upholding ATF's 2018 classification of the Reformation as a GCA-only SBS. *See* Pls.' MSJ Opp'n at 18; *see also id.* at 19 ("*If* Plaintiffs prevail on the second argument

but not the first—rendering the Reformation *a GCA-only shotgun—then* Plaintiffs will need relief under Count 3 or Count 4 to obtain overall relief (i.e., the ability to sell, deliver, and transfer GCA-only weapons like the Reformation" (emphasis added)).

Nor should the Court alter or amend its Judgment to vacate the 2018 Reformation classification going forward, as Plaintiffs request in the alternative. *See* Pls.' Mot. at 7-8. Vacatur of the 2018 GCA-only SBS Reformation classification would compound the irreparable harms of the Court's decision by removing the Reformation from the GCA's requirements for short-barreled firearms entirely, eliminating the requirement that regulated parties seek authorization from the Attorney General before selling or transferring the Reformation under 18 U.S.C. § 922(b)(4). *See supra* 8-9. It would also fatally undercut the Court's own reasoning as to the need for forms and procedures for GCA-only SBSs and reasoning as to why the dispute is not moot. *See infra* 19-20.

**B.  GCA-only SBS Forms and Procedures**

Even if the Court is inclined to grant Plaintiffs' motion to clarify or amend the Order and Judgment, the Court must, at a minimum, further amend its Order and Judgment as to forms and procedures (Counts III and IV of Plaintiffs' Amended Complaint) so as to avoid creating a fatal inconsistency within the Court's decision. If the Court grants Plaintiffs' motion, it will render the Reformation a *firearm* under the GCA—not an SBS. *See* Pls.' Proposed Order at 1. Forms and procedures of the type sought by Plaintiffs already exist for GCA-only *firearms*. *See* 18 U.S.C. § 921(a)(3); ATF Form 5300.9 (available at https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download). Plaintiffs readily concede as much. *See* Pls.' Exhibit A at 7, ECF No. 62-1 (conceding that there are already "existing forms and procedures for GCA-only 'firearms.' 18 U.S.C. § 921(a)(3); see, e.g., Form 5300.9"). That is why Plaintiffs previously conceded that their "forms" claim was "contingent" on the Court's reinstatement of the 2018 GCA-only SBS Reformation classification. Pls.' MSJ Opp'n at 18-19. Accordingly, if

19

Plaintiffs' motion is granted such that ATF's 2018 GCA-only SBS classification is vacated too, then there can be no dispute that the forms and procedures ruling should be excised from the Court's Order and Judgment—at that point, the Reformation would not be a "GCA-only SBS," and Plaintiffs cannot receive relief as to a type of weapon that does not exist.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court stay its Order and Judgment pending the resolution of Plaintiffs' motion and any subsequent appeal of the Order and Judgment. If Plaintiffs' motion to clarify or amend is granted, Defendants' respectfully request that the Court further amend the Judgment to make clear that ATF need not promulgate forms and procedures for GCA-only short-barreled shotguns, and stay any clarified or amended Order and Judgment pending resolution of any subsequent appeal of the clarified or amended Order and Judgment.

Dated: April 1, 2025                    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Andrew Rising*
ANDREW J. RISING
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 12520
Washington, D.C. 20005
Phone:   (202) 514-0265
E-mail:   andrew.j.rising@usdoj.gov

*Counsel for Defendants*