IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

FIREARMS REGULATORY )
ACCOUNTABILITY COALITION, INC., )
and FRANKLIN ARMORY, INC. )
)
    Plaintiffs, )
)
v. )    Civ. Action No. 1:23-CV-00003-DLH-CRH
)
PAMELA BONDI, et al., )
)
    Defendants. )

## DECLARATION OF MEGAN A. BENNETT

1. This declaration is based on my personal knowledge as well as knowledge made available to me in the course of my official duties. I am over 21 years of age, and I am competent to testify on the matters herein.

2. Since March 31, 2024, I have been the Assistant Director, Office of Enforcement Programs and Services (EPS), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). EPS develops and delivers programmatic policy guidance and technical support relative to firearms and explosives to the Bureau, the firearms and explosives regulated industries, the general public, and other federal, state, and local agencies.

3. Included within EPS is the Firearms and Ammunition Technology Division, which is the federal technical authority relating to firearms and ammunition and their classification under the Gun Control Act ("GCA") and the National Firearms Act ("NFA"). ATF letter rulings classifying firearms may generally be relied upon by their recipients as the agency's official position concerning the status of the firearms under federal firearms laws. Nevertheless, classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations.

4. By letter dated January 7, 2020, ATF classified Franklin Armory's "Antithesis" firearm as a short-barreled rifle pursuant to the GCA and a firearm under the NFA as a rifle having a barrel or barrels of less than 16 inches in length. The Antithesis fell within the purview of these statutes because it was designed to be fired from the shoulder, fire a single shot through a rifled bore, and had a 14.5-inch barrel. ATF reiterated this determination by letter dated December 23, 2021, explaining that the barrel—rifled with six lands and grooves in a right twist—was designed to fire a single projectile, as a rifled barrel causes shot to scatter and is not conducive to hitting an intended target.

1

5. By letter dated November 13, 2018, ATF initially classified Franklin Armory's "Reformation" firearm as a short-barreled shotgun under the GCA, but not a firearm under the NFA.

6. By letter dated May 4, 2023, ATF reconsidered and amended its classification of the Reformation, recognizing it to be a firearm—a shotgun having a barrel of less than 18 inches in length—under the NFA. In amending its classification, ATF noted that a classification based on the type of ammunition used was unworkable, and that Congress likely did not intend to create an entirely different subset of short-barreled firearms for the NFA and the GCA.

7. Plaintiffs filed suit alleging the above classifications were arbitrary and capricious. The court entered judgment for the plaintiffs on February 18, 2025, vacating the Antithesis classification and the 2023 Reformation classification and reinstating the 2018 classification. Regarding the Antithesis, the court found that because the firearm could fire shotgun shells, it was not designed to fire "only a single projectile." As to the Reformation, although the court agreed that the terms cartridge and shell were interchangeable, the court found the Reformation was designed to fire a cartridge, not a fixed shotgun shell. And despite reinstating the 2018 classification, the court found the Reformation was not a shotgun at all, because the presence of straight lands and grooves in its barrel rendered it not smooth.

8. All NFA weapons are subject to certain requirements: including taxation, registration in the National Firearms Registry and Transfer Record (NFRTR), and prior ATF approval to make and transfer a firearm.

9. The Antithesis and Reformation are indisputably firearms designed, made and intended to be fired from the shoulder. Also undisputed, both have a barrel of less than 16 and 18 inches, respectively. The combination of the firepower of a shouldered weapon, combined with the concealability of the shortened barrels, are the exact design features that created the impetus for Congress to more tightly regulate such weapons.

10. This decision will cause the proliferation of these weapons and the evasion of appropriate controls. The court set aside ATF's classification that the Antithesis as a short-barreled rifle under the NFA and the GCA. Absent a stay, the Antithesis would have the central objective features of a short-barreled rifle, but ATF would not be able to classify it as a short-barreled rifle subject to the requirements of the NFA—approval, registration and taxation—and the GCA's transport and transfer requirements for such weapons in 18 U.S.C. 922(a)(4) and (b)(4), which require "specific[] authoriz[ation] by the Attorney General." The Antithesis has the features that made short-barreled rifles attractive to criminals in the first place—when used with rifle ammunition, it has a heightened ability to cause damage, with better accuracy from shoulder fire, and concealability. If the Antithesis is not subject to the NFA's statutory restrictions, it would be more susceptible to criminal use because of the lack of registration and approval requirements.

11. Moreover, the Antithesis is uniquely dangerous because Franklin Armory's marketing is encouraging owners to use it with shotgun ammunition, even though it has a rifled barrel,

2

which increases spray and scatter.

12. More concerning, this loophole is not limited to the Antithesis, as almost all rifles are minimally *capable* of firing shotgun ammunition. Therefore, under the court's reasoning, as long as the manufacturer of the firearm claims the firing of shotgun ammunition was the intent, regardless of how poorly it performs, manufacturers will likely be able to evade the restrictions on these weapons.

13. Relatedly, the idea that a manufacturer can remove a weapon from the requirements of the NFA by simply claiming an "intent" for that weapon when that intent does not match the characteristics of what the weapon is designed to do, creates a gaping loophole in the NFA overall. In addition to the definitions of rifles and shotguns, the NFA definitions of machinegun and silencer have an intent prong. *See* 26 U.S.C. § 5845(b) ("any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun"); 18 U.S.C. § 921(a)(25) ("including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication"). As such, the court's elevation of intent as the determinative factor would similarly allow devices designed to convert a weapon into a machinegun and muffle the report of a firearm to escape classification because of the manufacturer's claimed intent that the device is, for example, actually a coat hanger or door stop. This will result in greater criminal misuse of NFA weapons.

14. The judgment will also likely lead to confusion and liability for the regulated community. States have their own laws, and restrictions, regarding short-barreled weapons. Some laws essentially mirror the language of the NFA, and some do not. For example, in North Dakota, the definition of rifle closely tracks the NFA's definition as "any firearm designed or redesigned, made or remade, and intended to be fired from the shoulder and using the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each pull of the trigger." N.D. Stat. § 62.1-01-01(12). The judgment may give potential purchasers the impression that the Antithesis is not subject to similar restrictions under state law, even if that is not the case. It is also likely to create significant uncertainty for federal firearms licensees, who may not transfer a firearm without certifying that it is their "belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form." ATF Form 4473, "Firearms Transaction Record," p. 3. Such a transfer could put the licensee in violation of 18 U.S.C. § 922(b)(2) or in danger of having their license revoked. This will expose the regulated community to liability.

15. Likewise, the judgment will cause the proliferation of short-barreled shotguns and the evasion of appropriate controls. The judgment sets aside ATF's classification that the Reformation is a short-barreled shotgun under the NFA and the GCA. Absent a stay, the Reformation would have the central objective features of a short-barreled shotgun, but due to the judgment, ATF would not be able to classify it as a short-barreled shotgun subject to the requirements of the NFA. Similarly, the Reformation has the features that made short-barreled shotguns attractive to criminals in the first place—the heightened ability to cause damage through greater firepower, when used with shotgun ammunition, along with concealability. If the Reformation is not subject to statutory restrictions, it

3

would be susceptible to criminal use in like fashion.

16. And as with the Antithesis, the Reformation is in fact uniquely dangerous because Franklin Armory is marketing it to encourage use with rifle ammunition, which has been shown in ATF testing to tumble, resulting in decreased accuracy.

17. Circumvention of the NFA's requirements for short-barreled shotguns will be alarmingly easy. A "smooth-bore" barrel is a term of art that is widely understood in the firearms community to mean unrifled, not completely devoid of markings. All a maker or a manufacturer would need to do is engrave their name in the barrel or even make a scratch in it; the barrel is then not a smooth-bore under the court's reasoning. As a practical matter, it is hard to imagine anyone creating a firearm with an entirely smooth barrel and willingly making their firearm applicable to the NFA's requirements. This is not just a concern going forward—historically ATF has made several classifications based on the common understanding within the firearms community for what it means for a barrel to be smooth bore, and the decision may call those classifications into question.

18. And like the Antithesis, those purchasing the Reformation may well be in violation of their state's laws. Again using North Dakota as an example, state law provides that the sale or possession of short-barreled shotguns and rifles is unlawful except for those possessed or used in the course of or in connection with the official duties of law enforcement or the military "or to any person who complies with the National Firearms Act." N.D. Stat. § 62.1-02-03. And without the prior approval procedure found in Section 922(a)(4) and (b)(4), individuals may now purchase, and dealers may now sell the Reformation, without realizing that a violation of state law has occurred.

19. Finally, the classification of a firearm based on the ammunition used is unworkable. This decision creates firearms that fall in and out of the NFA by virtue of its ammunition rather than the objective design features of the firearm. The requirement for registration will be dynamic, causing confusion for the public as to what firearms need to be registered. And as discussed below, like registration, there is no post-transfer mechanism to approve an NFA firearm. The approval of the transfer of NFA firearms must occur before the actual transfer of such firearm and thus cannot be changed based on the ammunition loaded into the firearm.

20. For the reasons stated above, even if the court were to reiterate that the Reformation 2018 classification is reinstated, much of the same harm arises because of its decision the NFA is inapplicable. Congress found the firearms regulated under the NFA, including shotguns with barrel(s) of less than 18 inches in length, to be dangerous and to pose a significant crime problem. Allowing an individual to make, transfer, and possess a shoulder-fired weapon with a barrel of less than 18 inches in length without registration and approval procedures simply because the firearm expels a single projectile using a metal casing, rather than a paper or plastic casing, circumvents the entire purpose of the NFA and invites the criminal misuse of these firearms.

21. Simply put, the court's decision 1) creates a new subset of firearms—neither rifles nor shotguns—and eviscerates the short-barreled distinction, and 2) readily circumvents the NFA by elevating intent over all else. For the first time since 1934, there are short-

barreled rifles and shotguns that are not regulated by the NFA, creating a ready market for criminal use.

22. If on further review this decision is not upheld, there will be individuals who will be in possession of contraband, i.e., unregistered NFA weapons, that may subject them to criminal penalties. The only avenue to register an NFA weapon post-manufacture and/or post-transfer would be through an amnesty period. An uncodified portion of Public Law 90-351, section 207(d), authorizes the Attorney General to establish "additional periods of amnesty, not to exceed ninety days" for the purpose of registering firearms subject to the NFA that the AG determines "will contribute to the purposes of this title." In ATF's experience, amnesty likely would not adequately capture unregistered NFA weapons like the Antithesis and the Reformation, in part because those who purchase these weapons for criminal use will not be interested in registering their weapons for obvious reasons.

23. The court also ordered ATF to create a process for approval to transport and transfer GCA-only short-barreled shotguns. Although the court has directed ATF to reinstate the 2018 classification of the Reformation as a GCA-only shotgun, should an appellate court find that the Reformation and Antithesis are NFA firearms, or otherwise overturn that order, undertaking such a process would waste time and resources.

24. This approval process would necessarily involve the creation of new forms to track approvals for transport and transfer. The process for creating such forms cannot be accomplished in 180 days. First, draft forms would need to be generated and approved by the agency's Office of Chief Counsel and Office of the Director. Once that occurs, because a National Instant Criminal Background Check would need to be conducted before a transfer could take place, the Federal Bureau of Investigation would need to be consulted and have an opportunity to make any edits deemed necessary. Once approved by the FBI, various offices within the Department of Justice would also need to approve the draft forms. Once that occurs, ATF expects that a draft form would be published in the Federal Register for 60 days for notice and comment to ATF. After that time period elapses, comments for an additional 30 days would be made to the Office of Management and Budget (OMB). Based on comments, changes may be made to the forms. Once the forms are finalized, OMB would issue approval numbers to each form before they may be issued. This process involves entities outside of ATF and thus a timeline that is not completely under ATF's control. Undertaking such a process for forms that may not in fact be necessary is again a waste of resources.

25. Further, if the court alters the judgment to set aside ATF's 2018 classification of the Reformation as a GCA-only short-barreled shotgun, there would be even greater waste. In that circumstance, there would be no firearm that had been identified as a GCA-only short-barreled shotgun, and thus no reason to develop such forms.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of April, 2025.

_____
Megan A. Bennett